# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

**PLAINTIFFS:**
Shawnee Ryan, her estate and surviving heirs

vs.

**DEFENDANTS:**
Colorado Department of Corrections, (CDOC)
Rick Raemisch (in personal and professional capacity)

**State Bureau of Prisons**
Travis Trani (in personal and professional capacity)

**Federal Bureau of Prisons**
Mark S. Inch (in personal and professional capacity)

*Dr. Frost (current, acting Chief Medical Officer (in personal and professional capacity)
Dr. Susan Tiona (in personal and professional capacity)
Dr. Andrew Martinez (in personal and professional capacity)

Ryan Long (in personal and professional capacity)
David Johnson (in personal and professional capacity)
Terry Jacques (in personal and professional capacity)

Hilary Victoroff N.P. (in personal and professional capacity)
Laura Sommerschield N.P. ((in personal and professional capacity)

Correctional Health Partners (dba CHP, dba Correctional Health Companies, Inc., dba Correctional healthcare Physicians, P.C., dba CHC Companies, Inc., dba Correctional Corporation of America) (in personal and professional capacity)
**Dr. Jennifer Miecks (in personal and professional capacity).
*Defendant "Frost" first name unknown, with CDOC, all avenues open to offenders, refusing to disclose first name. Court assistance requested.
**Defendant "Miecks" (prounced 'Mix") spelling of last name unknown; refused by CDOC, all avenues open to offenders. Court assistance requested.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
APR 23 2018
JEFFREY P. COLWELL
CLERK

## PRISONER'S MOTION AND AFFIDAVIT
## FOR LEAVE TO PROCEED PURSUANT TO 28 U.S.C. § 1915

I request leave to commence this civil action without prepayment of fees or security therefor pursuant to 28 U.S.C. § 1915. In support of my request, I declare that:

I am unable to pay such fees or give security therefor and that I am entitled to redress.

**The nature of this action is:** That the Colorado Department of Corrections did, for a period spanning aprx. 50 months, and does continue to present day; commit various aspects and types of fraud by violating the inmate catastrophic Medicaid clause of the Affordable Health Care Act by denying Ryan, for over four years; symptomatic,

palliative, and life-saving medical treatment in the form of bone marrow transplant; various hospitalizations in facilities equipped to handle her care and medical necessity; ordered by specialist treatments; and obstructed or denied life-saving and life-maintaining drug(s) that were fully covered and approved by Medicaid. That the Colorado Department of Corrections did; only when it finally served their own interests and *only under asserted legal duress from Ryan*; grant, in June 2017, the use of the same Medicaid available since July 2014, yet denied to Ryan multiple times between 2014 and 2017; to give Ryan a bone marrow transplant. Over four years too late to prevent permanent and life-threatening damage to vital organs and her body. That the Colorado Department of Corrections, did, knowingly and repeatedly, continuing to present day, withhold; willfully and wantonly, the same Medicaid coverage to provide Ryan with ordered by outside specialist and standard protocol for her diseases; post-transplant care and medication. That the Colorado Department of Corrections, did, and continues through present day, knowingly use the outside private entity of Correctional Health Physicians (CHP) to approve and deny procedures and treatments; when, in fact, CHP has absolutely nothing to do with the new federal law and state regulations governing inmate Medicaid approvals and denials (and) CHP has absolutely nothing to do with CDOC security and day-to-day clinical services operations. CHP is also, not on the Medicaid power of attorney Ryan signed in 2014 (*as instructed by CDOC to do*). Ryan and CDOC are the only parties accessing payment, approvals and denials of Medicaid. CHP, is nothing more than an outside private corporate entity that is in place to handle approvals and denials of care for CDOC cases not otherwise insured. CHP, is, however, the long-standing private entity that the CDOC has paid and continues to pay and/or move health care funds through. The new federal law, at least in Ryan's case, has altered that relationship in that Ryan's hospitals and in-hospital hematology and oncology teams direct bill Medicaid and utilize the liaison of Ryan's clinical nurse case manager rather than CHP when they do so. That the Colorado Department of Corrections, did and continues to present day, to willfully disregard the certification and licensing requirements of mid-level, non-specialized, and verifiably grossly under-trained in complex care nurse practitioners to handle all aspects of care for complex medical cases, which Ryan is. And execute that care, without a board certified, licensed medical doctor on shift, on staff, and immediately available to approve all decisions made. That the Colorado Department of Corrections knowingly allows the same practitioners to access monitoring and dosing levels control over Ryan's highly toxic and dangerous but life-maintaining, Class V chemo narcotic, in the form of the DEA federally regulated drug, Revlimid. Which contractually with DEA, only Ryan and her oncologist control dosing levels and monitoring. That the Colorado Department of Corrections, whose only role with Revlimid and DEA is to provide security and safety for the drug, does violate security and safety when they knowingly allow the same practitioners to act, without a licensed, board certified M.D. on shift, on staff and in direct supervision of them to control the drug's actual dosing, rather than the same practitioners simply following all orders from Ryan's oncologist. That the CDOC further violates federal regulators security directives when Ryan is endangered from orders and care not being followed, or verbally threatened to "not get" the drug if she does not conform to same practitioners alleged reckless handling; and when CDOC refuses to provide standard security and safety for Ryan even in the most simple form of their physical presence in a treatment room in order to deter physical harm to an inmate (*Ryan*). That the Colorado Department of Corrections, State and Federal Bureau of prisons and all designees are guilty of complicity with subsequent deliberate indifference, willful ignorance and gross negligence as a result of that complicity. Complicity, spanning years in this case, of silence of people not only in power but also in full control of all operations and responsibility for safety of all parties through responsibility to duty; who allow the practices above to continue even after they have been made fully aware of all activity of those under them. With regard to Defendants Bureaus of Prisons; the direct oversight and duty of the State Bureau of Prisons and Federal Bureau of Prisons to provide technical assistance, carries or should carry the same liabilities as the Colorado Department of Corrections as each, either has, or should have, or has the capacity to have; the same exact awareness and information regarding all claims within this lawsuit and are bound, to uphold the same state and federal statutes and constitutionality.

**It is a moot point, whether one agrees with, or believes in, the validity of the spirit and intent (or) the legislative wording behind 'Obamacare' (AHCA) and specifically, the inmate catastrophic Medicaid clause. The fact that this new federal law, adapted by the State of Colorado, is contentious in the extreme on political and socially accepted levels; is also moot. Reality, is that it is, was and remains the law at the time of Ryan's diagnoses while incarcerated, and as law; must therefore be upheld.**

**It is also a moot point, unfortunately, that previous federal and state political administrations (and) present administrations; in concert with legislators both federal and state; obviously, utterly failed and remain failing, to 'think' of 'how' to implement the new federal law into our correctional system and 'how' to**

reformat their now former relationship with private contractors such as, CHP. All, held not only a duty then, but remain holding a duty to uphold and execute the order of law. If anything, the failure of the Bureaus of Prisons to provide technical support *in something that is the magnitude of the new law*, becomes even more of a duty to *uphold* than their basic duty to e*nsure* law is upheld in day-to-day operations.

4. My assets and their value are listed below:

I have no assets and am fully indigent.

5. Are you in imminent danger of serious physical injury?

   __X__ Yes  ____No  (CHECK ONE).
   **Yes. See injunctions and requests for restraint and protection attached.**

6. I have attached to this motion a signed authorization directing my custodian to calculate and disburse funds from my inmate trust fund account or institutional equivalent to pay the required filing fee.

7. I have attached to this motion a certificate from the appropriate official at each penal institution in which I have been confined during the six-month period immediately preceding the filing of this action and a certified copy of my inmate trust fund account statement for the same six-month period.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that the information in this motion and affidavit is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on _March 20, 2018_ (Date)

_____
(Prisoner's Original Signature)

**AUTHORIZATION**

I, _____, request and authorize the agency holding me in custody to calculate and disburse funds from my inmate trust fund account or institutional equivalent in the amounts specified by 28 U.S.C. § 1915(b). This authorization is furnished in connection with this civil action and I understand that the total filing fee of $350.00 is due and will be paid from my inmate trust fund account or

institutional equivalent regardless of the outcome of this case.

Prisoner Name (please print): Shawnee Ryan

Prisoner Signature: _____

**CERTIFICATE OF PRISON OFFICIAL**

    I certify that the attached statement is an accurate copy of the inmate trust fund account statement or institutional equivalent for the past six months for the prisoner named below.

Prisoner's Name: Shawnee Ryan

Signature of Authorized Prison Official: _____
Date: 4/16/18

INF 6

```
= INMATE BANKING ======= INMATE BANKING HISTORY ========== 04/16/2018 = Page   1

Account: 159496 RYAN, SHAWNEE K                    DRDC        DRDC/INFR
     To:From Dates   03/16/2018: 04/16/2018
=================================================================
Trans Date     Description      Deposits  Withdrawls    Balance       Loc
----------     -----------      --------  ----------    -------       ---
03/16/2018 BALANCE AS OF 03/16/2018                                  -349.73
03/16/2018 POSTAGE-DEBIT                                0.50         -350.23 DU
03/23/2018 POSTAGE-DEBIT                                0.68         -350.91 DU
03/26/2018 XEROX-DEBIT                                  2.00         -352.91 DU
04/05/2018 JPAY CREDIT                       70.00                   -282.91 DU
04/09/2018 1 MEDICAL UNASSIGNED               7.04                   -275.87 DU
04/10/2018 POSTAGE-DEBIT                                0.50         -276.37 DU
04/12/2018 Canteen Ord#13468455                        14.31         -290.68 DU
04/16/2018 BALANCE AS OF 04/16/2018                                  -290.68
=================================================================
                      Total money order in hold:           0.00
                 Current balance as of 04/16/2018:      -290.68
                     **Reserved/Encumbered Monies:        15.41
                 Available money as of 04/16/2018:         8.30
```