IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No._____cv_____

**PLAINTIFFS:**
Shawnee Ryan, her estate and surviving heirs

vs.

**DEFENDANTS:**
**Colorado Department of Corrections, (CDOC)**
Rick Raemisch (in personal and professional capacity)

**State Bureau of Prisons**
Travis Trani (in personal and professional capacity)

**Federal Bureau of Prisons**
Mark S. Inch (in personal and professional capacity)

*Dr. Frost (current, acting Chief Medical Officer (in personal and professional capacity)
Dr. Susan Tiona (in personal and professional capacity)
Dr. Andrew Martinez (in personal and professional capacity)

Ryan Long (in personal and professional capacity)
David Johnson (in personal and professional capacity)
Terry Jacques (in personal and professional capacity)

Hilary Victoroff N.P. (in personal and professional capacity)
Laura Sommerschield N.P. ((in personal and professional capacity)

**Correctional Health Partners (dba CHP, dba Correctional Health Companies, Inc., dba Correctional healthcare Physicians, P.C., dba CHC Companies, Inc., dba Correctional Corporation of America)** (in personal and professional capacity)
**Dr. Jennifer Miecks** (in personal and professional capacity).
*Defendant "Frost" first name unknown, with CDOC, all avenues open to offenders, refusing to disclose first name. Court assistance requested.
**Defendant "Miecks" (prounced 'Mix") spelling of last name unknown; refused by CDOC, all avenues open to offenders. Court assistance requested.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 23 2018

JEFFREY P. COLWELL
CLERK

## MOTION FOR APPOINTMENT OF COUNSEL

I am a plaintiff in this civil case and am currently not represented by counsel. I believe that I am unable to proceed with the assertion of my claims in this case without the assistance of counsel.

**I believe I qualify for the appointment of counsel from the Civil Pro Bono Panel.**

I understand that, pursuant to the eligibility requirements set forth in D.C.COLO.LAttyR 15(e)(1), this motion may not be ruled upon before the court completes the initial review of this case required by 28 U.S.C. §§ 1915(e)(2), 1915A and D.C.COLO.LCivR 8.1.

I also understand that the court may deny this motion without prejudice with leave to re-file after the initial review is completed, if the case is not dismissed.

I am aware that **I am obligated, as a party in this case representing myself, to meet all obligations and deadlines imposed** under the law and the rules of procedure, local rules, and the practice of standards of this court until appointed counsel formally enters an appearance in this case.

I also confirm my understanding that, in the event this motion is granted, **there is no guarantee that appointment of counsel results in an attorney(s) automatically entering an appearance in this case** only that a member of the

Civil Pro Bono Panel will review the case for possible representation, which may be limited in scope. Under the court's Civil Pro Bono Representation rule, a judicial officer of this court may enter an Appointment Order authorizing appointment by the clerk of a member of the court's Civil Pro Bono Panel when the following considerations weigh in favor of appointment, subject to the eligibility restrictions and other provisions of D.C.COLO.LAttyR 15:

**(1) The nature and complexity of the action:** Shawnee Ryan (*Ryan*) entered CDOC aprx. November 5, 2012. Currently pending special needs parole approval of parole plan and release date. Serving two six-year sentences, consecutive, on charge of theft, with 3 years mandatory parole. Ryan, in 2012, was 55 years old, in excellent physical health on initial CDOC screenings, labs and physicals. No history of any kind of substance, alcohol use or abuse, no violence and no behavorial issues. Classified as minimum secured with a CARAS rating of one point and low risk LSI scoring. Ryan has consistently maintained an exceptionally good inmate record and remains carrying the same minimum security ratings and classifications as she did upon entry. As of April 1st, 2018, Ryan has served nearly two years past her PED and is two months shy of fully serving the governing six-year sentence. She carries an additional credit of 23 months of earned time and achieved time in addition to served time. Ryan, on entry; was immediately sent to what would be her home facility of LaVista Correctional Facility (*LVCF; a minimum to medium secured work camp facility*). In March 2013, Ryan became ill and could not fully recover. An astute M.D., after seeing high renal (*kidney*) insufficiency in a blood test, returned Ryan, along with case management assistance, on a progressive move back to Denver Womens Correctional Facility (*DWCF; a max-5 secured facility that is the only housing within Colorado that can house female inmates and give them access to complex, chronic medical care*) where she was placed on medical hold. Ordered, by LVCF medical doctors, to specific diagnostic work; it took DWCF Clinical Services, after assigning Ryan to Nurse Practitioner (*N.P.*) Hilary Victoroff (*Victoroff, see Claim Two*), from June 1, 2013 until September 2013 to see Ryan in clinical, let alone do the initial simple 24-hour urine analysis required. Due to high saturation of Bence Jones Proteins (*Lambda Light Chain Deposition Disease/monoclonal gammopathy*) within that sample; Ryan was ordered to be seen by a CDOC Nephrologist (*Dr. June Scott*), who had Ryan undergo ultrasound and biopsy testing where the result then returned as a (*by that time*) 30% atrophied right kidney and diagnosis of Light Chain Deposition Disease/monoclonal gammopathy/Bence Jones (LCDD) (*fatal, autoimmune*). It took CDOC until March 2014 for the second diagnosis of Multiple Myeloma blood cancer (*See medical information below (and) third part of Claim One*). By that time, Ryan's blood levels were in Stage III on both diseases, with the following side effects *at that time*: kidney insufficiency, cardiac issues, anemia factors and endangered immune system. All of which, Ryan did not have prior to incarceration. At that time, Ryan, solely through her own assertiveness through administrative processes, and strength of will to stay alive until release; was not receiving *any* medical care from DWCF clinical since initial diagnosis, and was being denied access to her CDOC Nephrologist. Ryan filed her first request for emergency intervention to then Warden David Johnson, under CDOC AR 850-04 (*grievance procedures*) requesting a staffing to break the lack of any medical care access. The result of staffing was that Victoroff was removed as assigned provider and Ryan's first board certified, licensed CDOC medical doctor was assigned in late March 2014. From there, the path of CDOC medical care is; in the most extreme of events, *but far from all events encountered by all over the next nearly five years*; tracked below in claims. Ryan, has maintained extensive, sequential tracking records of *all* care. Close estimation; to be backed up through compulsory process; of Ryan's medical costs to date, from November of 2012 entry into CDOC, to present day; is aprx. (5) million dollars; with close estimation of continuing annual cost of (1) million dollars for basic drugs and labs monitoring alone. Permanent damage to Ryan, resulting from extended chemo therapy is: Deep vein thrombosis (DVT), severe dilation of left atrium of heart, ecotopic rhythms, chronic orthothesis, bone lesions, hypogammaglobulinemia, anemia, pancreatic insufficiency, renal insufficiency, atrophy of right kidney, severe neuropathy in hands and feet, vision loss, edema.

**(2) The potential merit of the claims or defenses of the unrepresented party:** That the Colorado Department of Corrections did, while Ryan was an inmate, for a period spanning aprx. 55 months, and does continue to present day; commit various aspects and types of fraud by violating the inmate catastrophic Medicaid clause of the Affordable Health Care Act by denying Ryan, for nearly 4 years; symptomatic, palliative, and life-saving medical treatment in the form of bone marrow transplant; various hospitalizations in facilities equipped to handle her care and medical necessity; ordered by specialist treatments; and obstructed or denied life-saving and life-maintaining drug(s) that were fully covered and approved by Medicaid. That the Colorado Department of Corrections did; only when it finally served their own interests and *only under asserted legal duress from Ryan*; grant, in June 2017, *the use of the same Medicaid available since July 2014*, to give Ryan a bone marrow transplant. Over four years too late to prevent permanent and life-threatening damage to vital organs and her body. That the Colorado Department of Corrections, did, knowingly and repeatedly, continuing to present day, withhold; willfully and wantonly, the same Medicaid coverage to provide Ryan with ordered by outside specialist and standard protocol for her diseases; post-transplant care and medication. That the Colorado Department of Corrections, did, and continues through present day, knowingly use the outside private entity of Correctional Health Physicians (CHP) to approve and deny procedures and treatments; when, in fact, CHP has absolutely nothing to do with the new federal law and state regulations governing inmate Medicaid approvals and denials (and) CHP has absolutely nothing to do with CDOC security and day-to-day clinical services operations. CHP is also, not on the Medicaid power of attorney Ryan signed in 2014 (*as instructed by CDOC*

*to do*). Ryan and CDOC are the only parties accessing payment, approvals and denials of Medicaid. CHP, is nothing more than an outside private corporate entity that is in place to handle approvals and denials of care for CDOC cases *not otherwise insured. CHP, is, however, the long-standing private entity that the CDOC has paid and continues to pay and/or move health care funds through.* The new federal law, at least in Ryan's case, has altered that relationship in that Ryan's hospitals and in-hospital hematology and oncology teams direct bill Medicaid when applicable, and utilize the liaison of Ryan's clinical nurse case manager rather than CHP when they do so. That the Colorado Department of Corrections, did and continues to present day, to willfully disregard the certification and licensing requirements of mid-level, non-specialized, and verifiably grossly under-trained in complex care nurse practitioners to handle all aspects of care for complex medical cases, which Ryan is. And execute that care, without a board certified, licensed medical doctor on shift, on staff, and immediately available to approve all decisions made. That the Colorado Department of Corrections knowingly allows the same practitioners to access monitoring and dosing levels control over Ryan's highly toxic and dangerous but life-maintaining, Class V chemo narcotic, in the form of the DEA federally regulated drug, Revlimid. Which contractually with DEA, only Ryan and her oncologist control dosing levels and monitoring. That the Colorado Department of Corrections, whose only role with Revlimid and DEA is to provide security and safety for the drug, does violate security and safety when they knowingly allow the same practitioners to act, without a licensed, board certified M.D. on shift, on staff and in direct supervision of them to control the drug's actual dosing, rather than the same practitioners simply following all orders from Ryan's oncologist. That the CDOC further violates federal regulators security directives when Ryan is endangered from orders and care not being followed, or verbally intimidated to "not get" the drug if she does not conform to same practitioners alleged reckless handling; and when CDOC refuses to provide standard security and safety for Ryan even in the most simple form of their physical presence in a treatment room in order to deter physical harm to an inmate (*Ryan*). That the Colorado Department of Corrections, State and Federal Bureaus of Prisons knowingly allow alleged fraudulent use of administrative grievance policies governed by Colorado State Supreme Court (and) medical affidavits available to inmates and binding upon CDOC and its employees. That the Colorado Department of Corrections, State and Federal Bureau of prisons and all designees are guilty of complicity with subsequent deliberate indifference, willful ignorance and gross negligence as a result of that complicity. Complicity, spanning years in this case, of silence of people not only in power but also in full control of all operations and responsibility for safety of all parties through responsibility to duty; who allow the practices above to continue even after they have been made fully aware of all activity of those under them. With regard to Defendants Bureaus of Prisons; the direct oversight and duty of the State Bureau of Prisons and Federal Bureau of Prisons to provide technical assistance and oversight, carries or should carry the same liabilities as the Colorado Department of Corrections, as each, either has, or should have, or has the capacity to have; the same exact awareness and information regarding all claims within this lawsuit and are bound, to uphold the same state and federal statutes and constitutionality.

**It is a moot point, whether one agrees with, or believes in, the validity of the spirit and intent (or) the legislative wording behind 'Obamacare' (AHCA) and specifically, the inmate catastrophic Medicaid clause. The fact that this new federal law, adapted by the State of Colorado, is contentious in the extreme on political and socially accepted levels; is also moot. Reality, is that it is, was and remains the law at the time of Ryan's diagnoses while incarcerated, and as law; must therefore be upheld.**

**It is also a moot point, unfortunately, that previous federal and state political administrations (and) present administrations; in concert with legislators both federal and state; obviously, utterly failed and remain failing, to 'think' of 'how' to implement the new federal law into our correctional system and 'how' to reformat their now former relationship with private contractors such as, CHP. All, held not only a duty then, but remain holding a duty to uphold and execute the order of law. If anything, the failure of the Bureaus of Prisons to provide technical support *in something that is the magnitude of the new law*, becomes even more of a duty to *uphold* than their basic duty to e*nsure* law is upheld in day-to-day operations.**

**(3) The demonstrated inability of the unrepresented party to retain an attorney by other means;**
Ryan is fully indigent and also, to some extent, physically incapacitated with very limited access to legal services.
**(4) The degree to which the interests of justice, including the benefits to the court, will be served by appointment of counsel:**
Please review statements #1 and #2 above. Thank you.
D.C.COLO.LAttyR 15(f) (1)(B); *Hill v. SmithKline Beecham Corp.,* 393 F.3d 1111, 1115 (10th Cir. 2004).
X    General Representation – I request that appointment of volunteer counsel be granted by the court for *general* representation in this civil action subject to the rules and procedures set forth in D.C.COLO.LAttyR 15.
Dated at _Denver_ (city) _Colo._ (state), this _17th_ day _April_, 2018.

Shawnee Ryan #159496
DRDC-Infirmary-5 P.O. Box 392004 Denver, Colorado 80239