| | |
|---|---|
| Alfred A. Arraj US Courthouse<br>901 19th Street<br>Denver, Colorado 80294 | **FILED**<br>UNITED STATES DISTRICT COURT<br>DENVER, COLORADO<br><br>APR 23 2018<br><br>JEFFREY P. COLWELL<br>CLERK |
| **Plaintiffs:**<br>Shawnee Ryan, her surviving heirs and estate<br><br>vs<br><br>**Defendants:**<br>**Colorado Department of Corrections, (CDOC)**<br>Rick Raemisch (in personal and professional capacity)<br><br>**State Bureau of Prisons**<br>Travis Trani (in personal and professional capacity)<br><br>**Federal Bureau of Prisons**<br>Mark S. Inch (in personal and professional capacity)<br><br>*Dr. Frost (current, acting Chief Medical Officer (in personal and professional capacity)<br>Dr. Susan Tiona (in personal and professional capacity)<br>Dr. Andrew Martinez (in personal and professional capacity)<br><br>Ryan Long (in personal and professional capacity)<br>David Johnson (in personal and professional capacity)<br>Terry Jacques (in personal and professional capacity)<br><br>Hilary Victoroff N.P. (in personal and professional capacity)<br>Laura Sommerschield N.P. ((in personal and professional capacity)<br><br>**Correctional Health Partners (dba CHP, dba Correctional Health Companies, Inc., dba Correctional healthcare Physicians, P.C., dba CHC Companies, Inc., dba Correctional Corporation of America)** (in personal and professional capacity)<br>**Dr. Jennifer Miecks (in personal and professional capacity).<br>*Defendant "Frost" first name unknown, with CDOC, all avenues open to offenders, refusing to disclose first name. Court assistance requested.<br>**Defendant "Miecks" (prounced 'Mix") spelling of last name unknown; refused by CDOC, all avenues open to offenders. Court assistance requested. | ⋀ **COURT USE ONLY** ⋀ |
| Pro Se<br>Shawnee Ryan #159496<br>DRDC-Infirmary-5<br>Denver, Colorado 80239<br><br>**All Defendants:**<br>**Unknown** | **Case Number:**<br><br><br><br>Div.:    Ctrm: |
| **MOTION FOR PRELIMINARY INJUNCTIVE RELIEF for PROTECTION of SAFE HOUSING WHEN INCARCERATED** | |

Plaintiff Shawnee Ryan (Ryan) moves the court to enter an order of preliminary injunction, against Defendant Colorado Department of Corrections (CDOC), protecting her safe for her medical needs housing conditions and high-risk immune and neutropenic precautions, in the Denver Complex facility, known as the Denver Regional Diagnostic Center (DRDC) infirmary; as Ryan pends

parole release (and/or) until Ryan's immune system is fully restored, recovered and released from post bone marrow transplant care by the specialists governing her care, *and* the same specialists administered restoration of full immunizations i.e. all childhood and adult immunizations. (S*ee Medical Facts 1--9 (and) Claim One et al (and) Sommerschield Claim Two (and) reference state and federal health dept. requirements (and) CDC (Center for Disease Control) requirements concerning dense population environments*).

**Outside specialists care, from which Ryan will not be released from until fall 2019, and that have governed over 4 and ½ years of treatment to date; are:** Rocky Mountain Cancer Center-Aurora (*RMCC/Dr. John Burke*) (and) Colorado Blood Cancer Institute at Presbytarian/St. Lukes Hospital (*CBCI/Dr. Richard Nash*).

**Black letter AMA and FDA standard of care for Ryan's diagnoses (and) the current orders of Burke and Nash are; that Ryan will be fully inoculated by fall 2019.**

**Ryan, was placed into safe infirmary housing in early Feb. 2017** after a near fatal event (*see Victoroff, Claim Two*). **Ryan has been housed infirmary since.** From hospital release surrounding that event, Ryan lived, pending bone marrow transplant, in the infirmary, **until transplant in June and July 2017.** During that time, infirmary governing staff was a mid-level, general scope of practice, non-specialized trained nurse practitioner named **Jamie Harrelson.** Ryan, her outside care specialists and **former Chief Medical Officer (CMO) Tirella** began the process of establishing PAO Special Needs Infirmary housing status to continue protection of Ryan after the Victoroff event. Harrelson resisted. Ryan remained temporary infirmary housed until Harrelson rotated out of infirmary while Ryan was hospitalized for transplant. **On return and discharge from hospitalized transplant (July 2017), Ryan was ordered** *PAO and precautions status*, **by CMO Tirella and in agreement with then rotated infirmary staff. Ryan remained PAO until November 2017.** Tirella's order was based (*see entire complaint et al with focus on medical facts 1 through 9. Reference State and Federal Health Dept. requirements for all citizens in dense populations*) on his obeying all specialist orders, his knowledge of Ryan's medical needs, obeying all government health regulations (and) the DRDC infirmary being the only building CDOC has that is physically set up to handle high risk immune and neutropenic precautions *at fast notice*. Therefore, his order protected all parties. Infirmary staff rotating in after Harrelson, who stayed in place until rotation in of Sommerschield aprx September 1, 2018; affirmed need and maintained Tirella's orders. The Chief Medical Officer, within CDOC, is the head supervision of the clinical services staff at DWCF clinic and DRDC infirmary.

On or about November 13, 2017 and within a matter of days/hours after Tirella resigned and current acting CMO Dr. Frost took over; *newly rotated* infirmary staff, *N.P. Laura Sommerschield* convinced Frost to remove PAO status and asked for Ryan's immediate return to dense population. Sommerschield citing "no justification" for infirmary safe housing and precautions", despite ongoing fluctuations in and out of neutropenia showing in Ryan's blood labs (and) the status of the diagnosis post-transplant of hypoogammaglobulinemia. Frost removed PAO status, but did limited curtail Sommerschield temporarily; ordering that Ryan must be stable and blood levels maintained as stable. Sommerschield, verbally stated to Ryan, that Ryan "could "stay" for "a couple more weeks". (*Note: the DRDC infirmary is a severely segregated and isolated (for females) living unit. Ryan is there and needs to stay housed for medical, not pleasure reasons*). That was 6 months ago as of the date of this motion for injunction. Ryan's condition is not stable and levels have never maintained stability during that time, in addition to other serious physical needs arising as well (*vision surgeries, pancreas diagnostics and secondary infections when exposed to contagions*). **Nor, will Ryan be returned an immune system that *is* stabilized until all orders from specialists governing care are met (2019).** Acting CMO Frost (*see claim five, complicity*) has not restored PAO status classification nor adequately supervised care with necessary precautions.

**As an inmate, Ryan has no control** over the *power* of whoever happens, **at the moment,** to be running the infirmary (or) whoever, **for the moment,** is CMO. **For now,** that power remains, Sommerschield and acting CMO Frost. In the nearly 5 years of Ryan's diagnoses, Ryan has existed through 4 CMO's (*soon to be 5*), 6 HSA's (*Health Services Administrators*), 5 Wardens, 4 CDOC medical doctors on staff and countless rotating nurse practitioners as CDOC ever changes, regularly, the staff it hires and keeps employed. **Ryan can only focus on what is her lifelong need for specialized care and must regain as much control as she can in order to be as safe as possible whenever CDOC is involved in that care.**

Specialists and regulators cannot work blindly, which they do at this time, (due to CDOC not currently having both safety in on site supervising practitioner and capable professional medical staff, within DRDC Infirmary (or) DWCF Clinic, to provide adequate and accurate blood labs and care). Ryan only has control over not losing any ground she has gained over her diseases while CDOC, is in unilateral daily control. As of this filing, Ryan's release date and conditions are pending and not yet known.

**Ryan's need for injunctive relief and protection status is as follows:**
- Ryan's motion for preliminary injunction *does not alter the status quo*; CDOC *routinely* houses special medical needs in the DRDC infirmary and Ryan is now in her 15th month of housing infirmary status. *Return* of PAO classification, until Ryan discharges, simply protects, as much as possible in a prison environment, any *further unnecessary harm* to Ryan

(*Victoroff, Claim Two*).  Nor, is an action by Defendants required, other than a very simple *administrative clerical classification*, as Ryan's motion is restorative and *returns* status quo pre-Sommerschield and acting CMO Frost.  **PAO protects the status quo, it does not alter it adversely.**

- Granting preliminary injunction for safe housing does *not* grant movant any relief other than *physical protection of her person*.  It does *not* give her unfair relief, not yet ripe, of all she can potentially recover at full trial *if* prevailing on all merits of this case.

- Ryan's success of prevailing on all medical merits is exceptionally high.  Her fatal diagnoses and her status as a recovering bone marrow transplant patient who no longer has (*post-transplant*) any immune system defenses or antibodies protecting against contagious and infectious diseases; is clear and unequivocal.  That merit and need runs throughout the entirety of her claims, at no fault of her own, and is solely governed by factual medical fluctuations characteristic of her diagnoses.  Which Ryan will lifelong endure as clear and unequivocal medical fact.

- Ryan is continually monitored by RMCC and CBCI; **unless the CDOC is allowed to continue to strip Ryan of outside care and obvious need, which, at present time, under Sommerschield and acting CMO Frost; CDOC is doing.** (*See MOTION FOR INJUNCTIVE RELIEF and PROTECTION of MEDICAL CARE; Sommerscheld claim two, Medical Facts 1 through 9 and Claim One et al*).  If CDOC is allowed and not curtailed; Ryan risks death (*Victoroff, Claim Two*) and/or *a full loss of all extension of life she has gained back through transplant and previous years of chemo therapy*.  Infirmary housing, rather than dense population housing that has only a clinic environment of medical care, is the only avenue CDOC provides that meets needs of a case like Ryan.

- **There is no ability,** *in any other housing available within CDOC*; **to protect Ryan's high risk immune precautions needs**.  Ryan's medical records and housing records over the past 15 months; **verify** that infirmary status, when assigned as PAO (*permanently assigned offender-Special Needs*) is in place and allowed to stand without obstruction; Ryan's recovery becomes more solid.  Without, becomes sluggish and jeopardized.  Even if Ryan does not prevail on the merits of her claims of complicity, medical malpractice and negligence; her clear and unequivocal physical diagnoses and the standards of care that govern them; have no ability whatsoever to be dismissed.  Both, are reality that no party can deny, or, within law, constitutionality and morality; ignore.  Ryan was not given a death sentence, release date pends.  Ryan cannot be forced upon her any medical care that jeopardizes her ability to recover on release, nor can she be denied any symptomatic and palliative care (*which all Ryan's care is; nothing is curative*).

- The medical standards governing Ryan's recovery, and when she is medically allowed to receive return of full immunizations are black letter standards.  There is no ability, for any argument from any party; that shortcuts or other types of care exist.  They do not.  The immunizations she now no longer has, she carried in her body pre-transplant, for 60 years.  She returns post-transplant as an 'infant' would, requiring Center for Disease Control (*CDC*) and both State and Federal Public Health regulations (*Health Depts*) that mandate certain immunizations for all citizens entering into any dense population such as prison, school and overall society.  Regulations that are clear, unequivocal, state and federal controlled; not CDOC controlled.  Ryan will not be fully immunized post-transplant until late summer/early fall 2019.

- Ryan, as a ward of the State, has no personal control over any temporary thing the CDOC wishes to do or act on.  She can likely prevail on merits within suit and if fails, could obtain protections *through reversals*, should CDOC act as self-serving and *force her, until she obtains court controls*, back into dense population. Ryan, does not have 'linear time', if she wishes to stay alive (*which she does*), to be living in dense population while court processes run out.  Ryan, as an incarcerated ward of the State also has a clear constitutional right to live free of cruel punishment.  Which, the daily tortious treatment of temporary care individuals such as Sommerschield implied threats; are.  In a fully segregated environment, solely with CDOC in unilateral control over whether or not Ryan receives life maintaining medical care; the mental and emotional stress, for Ryan, in having to constant micromanage, (in the absence of **any CDOC supervision** of these people); is extreme duress.

- At the present moment (April 6, 2018) of this typing of this injunction motion; CDOC, knowing full well litigation now pends; has just moved Ryan (*with no guarantees of how long they will obey specialists orders to observe high-risk immune and neutropenic precautions*) into the same cell environment Tirella's orders gave all parties.  **CDOC, when legally pursued (caught), also has a somewhat infamous and certainly well-known reputation for altering bad behavior just immediate prior to what they believe a court will rule against them on.** A historical record in other cases, which is quite simplistic to remind the court of. This injunction is preemptive and if granted, stops the utter waste of Society and Court resources those types of actions/behavior are; **in addition to protecting Ryan's need**.  The only

solution prudent for all parties, that Ryan can find, is the third-party (court) control she seeks with this injunction; which places the court in control of all parties.

- Ryan has the same right to protection, as all inmates already living in dense population who have immune system defenses and antibodies. Ryan, would be fully unprotected should she be forced out of safe housing infirmary.

- **The non-moving party has no risk or even *any* hardship** in housing Ryan at PAO-Infirmary status and observing high-risk immune precautions. *Special Needs inmates, of which Ryan is one, albeit a 'different' type of special needs CDOC is used to are routinely PAO housed in infirmary.* There is also no ability for Defendants to successfully argue or prevail that they can "force" or "speed up" Ryan's recovery. Doing either is an impossible feat. *Attempting to do either* is grossly negligent.

- **Society** has no desire to continue to place Ryan at risk of life. **Society** also has no desire to disobey the convicting court's order. Which does give Ryan release; not death or risk of death. *It is Ryan's contention, in suit, that **Society**, through law and constitutionality, also has no wish to allow **any** entity, including CDOC, to knowingly, willfully and wantonly put forward any further risk of liability to **Society** should Ryan suffer further harm and/or death.* Ryan contends that **Society**, by their approval of existing law, constitutionality and Ryan's conviction and sentence; **expects** the CDOC to act within the position of trust **Society puts CDOC** in whenever an inmate is a ward of the State.

Ryan respectfully moves the court to order injunctive relief and protection, on behalf of Ryan, by ordering Defendant CDOC to *return* PAO housing classification status, *observing high-risk immune precautions,* until Ryan is *fully immunized and post-transplant released* by existing specialists and medical care teams. "High Risk Immune Precautions, as defined by specialists and common sense are: Any other inmate/patient, housed in same infirmary cell as Ryan, is to be housed in same *only when* Ryan is *not* neutropenic, is to *not* have any disease Ryan is not immunized against, is to *not* have infectious, open wound, blood or body fluids exposed, is to be held to clean and basic sanitation habits and is to *not* be on antibiotics for infectious illness or disease.

As initially Pro Se, Ryan requests her filing(s) to be interpreted and ordered liberally. "Pleading of Pro Se plaintiff must be read liberally and should be interpreted to raise strongest arguments that they suggest." Gray v Internal Affairs Bureau S.D.N.Y. Nov 17, 2003, 292 F. Supp 2d 475; (and) "Although inmates complaint was terse and disjointed, especially with respect to "who did what to whom, when, where and why," court construed complaint liberally...light of prose status and determined that it gave sufficient notice to prison medical personnel pursuant to Fed R. Civ. P 8(a)." Carter v Newland (D.Mass. June 26, 2006), 441 F. Supp 2d 208.

Respectfully submitted this _____17th_____ day of _____April_____, 2018.

Shawnee K. Ryan, Plaintiff