Alfred A. Arraj US Courthouse
901 19th Street
Denver, Colorado  80294

---

**Plaintiffs:**
Shawnee Ryan, her surviving heirs and estate

**vs**

**Defendants:**
**Colorado Department of Corrections, (CDOC)**
**Rick Raemisch** (in personal and professional capacity)

**State Bureau of Prisons**
**Travis Trani** (in personal and professional capacity)

**Federal Bureau of Prisons**
**Mark S. Inch** (in personal and professional capacity)

***Dr. Frost (current, acting Chief Medical Officer** (in personal and
professional capacity)
**Dr. Susan Tiona** (in personal and professional capacity)
**Dr. Andrew Martinez** (in personal and professional capacity)

**Ryan Long** (in personal and professional capacity)
**David Johnson** (in personal and professional capacity)
**Terry Jacques** (in personal and professional capacity)

**Hilary Victoroff N.P.** (in personal and professional capacity)
**Laura Sommerschield N.P.** ((in personal and professional capacity)

**Correctional Health Partners (dba CHP, dba Correctional Health**
**Companies, Inc., dba Correctional healthcare Physicians, P.C., dba**
**CHC Companies, Inc., dba Correctional Corporation of America) (in**
**personal and professional capacity)**
****Dr. Jennifer Miecks** (in personal and professional capacity).
*Defendant "Frost" first name unknown, with CDOC, all avenues open to offenders, refusing
to disclose first name. Court assistance requested.
**Defendant "Miecks" (prounced 'Mix") spelling of last name unknown; refused by CDOC,
all avenues open to offenders. Court assistance requested.

---

**Pro Se**
Shawnee Ryan  #159496
DRDC-Infirmary-5
Denver, Colorado  80239

**All Defendants:**
**Unknown**

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 23 2018

JEFFREY P. COL___
CLERK

∧  **COURT USE ONLY**  ∧

**Case Number:**

**Div.:**          **Ctrm:**

## MOTION FOR PRELIMINARY INJUNCTIVE RELIEF and PROTECTION of EXISTING SPECIALIST'S MEDICAL CARE WHEN INCARCERATED

Plaintiff Shawnee Ryan (*Ryan*) moves the court to enter an order of injunction against Defendant Colorado Department of Corrections (*CDOC*) that **fully restores** and protects all (*over 4 and ½ years in place, existing outside specialist care and existing hospital's care teams.*  **Those entities are:**  Rocky Mountain Cancer Center-Aurora RMCC/Dr. John Burke) Aurora South Hospital

and care team (and) Colorado Blood Cancer Institute at Presbytarian/St. Lukes Hospital (CBCI/Dr. Richard Nash). **Ryan's motion does not apply to 'prison conditions'.** This court does, or should, have the ability to order injunctive protection of existing care.

Ryan's medical care, since moment of diagnosis in 2013, has always been outside of the ability of the CDOC clinical services staff, on any level, to handle. As a result, **always CDOC handled** by transporting **Ryan out of facility to outside contracted specialized care and facilities.** Ryan's case is highly complex and she has one of the most complex support care required blood cancers known. (*See Medical Facts 1 through 9*). Ryan's diseases are fatal and specialist oncology and hematology, in addition to volatile maintenance drug therapy, with the possibility of additional bone marrow transplant(s) in her future; are Ryan's to deal with for the remainder of her life.

**Simplistically stated:  There is no ability, whatsoever, for CDOC, Ryan or anyone else to remove specialized medical care from Ryan's daily life if she wishes to live.  Which, she does.** (*See Complaint and Claims et al for overview of the difficulties CDOC and Ryan have in providing day-to-day care for Ryan, spanning years in duration (and) Medical Facts 1 through 9*). The only times, over the years (*as able to be proven through trial process and compulsory process reviews of medical history*) that Ryan and CDOC have **less difficulty** in handling her care, is when CDOC, in their rare moments, hires and **keeps employed** *board certified, licensed medical doctors and assigns Ryan to them.* **And, those M.D.'s work in concert (*which all have*), with Ryan's outside oncology and  hematology specialists and facilities** (*Rocky Mountain Cancer Center-Aurora (RMCC/Dr. John Burke) Aurora South Hospital and care team (and) Colorado Blood Cancer Institute at Presbytarian/St. Lukes Hospital (CBCI/Dr. Richard Nash*).

**A practice still solidly in place, once Ryan was housed in DRDC infirmary after the Victoroff event in Feb. 2017** (*See Victoroff, Claim Two*) **until the current rotation of N.P. Laura Sommerschield into the DRDC infirmary** (*See Sommerschield, Claim Two*).

**On aprx December 22, 2017, when Sommerschield began "treating independently" and took from and away from oncology and hematology specialists** (*provable as still ongoing to current day*); the risks and consequences have brought Ryan's recovery to become sluggish, deteriorating and added permanent damage consequences to Ryan's vision and further cause Ryan's recovery to be sluggish and jeopardized. **Ryan could not return, through administrative processes, *even partial control* of blood lab monitoring back to oncology specialists *until Feb. 21, 2018.***

**The overall point, for the court's consideration:** Ryan's medical needs and care are never going to change. They are absolute, undeniable medical fact. Nowhere, can the CDOC show, in any way, that they have the qualified specialized staff to handle (or) even have the capacity to safely handle support care. Over 4 and ½ years and aprx 5 million dollars in cost to Society to date, on an inmate shortly releasing to care of her own person, who has managed, for all that time, *to stay alive in extreme conditions*; is a blatant and very well documented truth that will be met at trial. To jeopardize Ryan's life and *recovery (and) all gained to date at such extreme monetary cost to Society; is not only completely unnecessary and unable to be justified by CDOC in any way, it is an obvious question of common sensibility.*

**Ryan's right and need for injunctive relief and protection status is as follows:**
- Ryan's success of prevailing on medical merits is exceptionally high.  Her fatal diagnoses and her status as a recovering bone marrow transplant patient who no longer has (*post-transplant*) any immune system defenses or antibodies protecting against contagious and infectious diseases; is clear and unequivocal.  Also clear and unequivocal is the medical fact that Ryan will not be fully restored post-transplant until current medical orders of final immunizations in 2019.  Also clear and unequivocal is the medical fact and nature of Ryan's diagnoses is that they require complex support care and must be continually monitored **by specialized oncology and hematology *and per DEA federal regulators controls*; is absolute.  CDOC and Clinical Services staff are none of those entities.**

- That her care and needs are fatal, lifelong, highly complex and in continual need of complex monitoring  (and) her daily maintenance drug  (Revlimid) needs are DEA federal regulated **with solely the oncology and hematology specialists named above in control of**; is clear and unequivocal.

- Ryan's medical records background of over 4 and ½ years; containing 41 rounds of chemo therapy treatment (*RMCC/Burke/Nallapareddy*); 2 rounds of DTPACE hospitalized treatment (*Aurora South*); her hematology and bone marrow transplant treatment (*CBCI/Nash/PSL*); nearly 5 million dollars in cost for all named specialized care that spans same number of years and including cardiac, intensive care and emergency admittances; have all been handled by her existing specialists and hospitals named:   Rocky Mountain Cancer Center (*RMCC*) and Dr. John Burke (*Burke*) and Dr. Sujatha Nallapareddy (*Nallapareddy*); Aurora South Hospital where RMCC has privileges; Colorado Blood Cancer

Institute (*CBCI*) at Presbytarian/St. Lukes Hospital (*PSL*) and Dr. Richard Nash (*Nash*. **Never fully handled by CDOC Clinical Services.**

- Simply stated, there is no justifiable reason, *other than potentially self-serving on the parts of individual staff (and) CHP*; for the recent attempts to alter care (*see complaint et al*). There is, however, extreme high risk in doing so. **Ryan's request for full protection of that specialized care, and facilities where her specialists have privileges to treat her (and) also that have the capacity to provide safe high-risk immune precautions; is justifiable. If looked at objectively and with sensibility, also prudent for all parties involved. CDOC as an agent of Society and the State, is in a position of trust to uphold the expectations of Society and the State. CDOC is not a private, self-serving entity, nor above law and constitutionality.**

- **The non-moving party is bound by care standards and also DEA federal regulations** concerning the drug Revlimid. CDOC is not even allowed (*by their own decision years ago (and) by oncology and hematology requiring Ryan to have a port access*) to draw Ryan's blood through port access. Which, blood monitoring is a constant care need for Ryan. **Non-moving party** is not suffering, in any way, should injunction be granted, *by coming out of complacency and regaining control over what over-extensions of power unqualified staff may have (and) coming more in touch, through oversight of who and what they hire third-party on the governing of healthcare approvals, denials and payments of Medicaid and other insurances.* **There is no harm whatsoever, in this injunctive relief, to non-moving party.**

- **Society** has no desire to increase any liability or risk there may be in Ryan's case, nor does **Society** wish any harm to come to Ryan. **Society** has no desire to disobey the sentencing court and jury's orders which, did not, include harm or risk to Ryan and do grant release back in to Society. Ryan is undeniably diagnosed with highly complex medical needs that have a black letter standard of care, and is being treated for those diagnoses, *when her existing care teams, specialists and drugs are not interfered with.* Ryan, albeit verifiably reluctantly treated by CDOC, is treated, when not obstructed, in the same manner as anyone in **Society** who has similar diagnoses. *Society does not discriminate against Ryan or segregate her away from Society's approvals, already in place, of the new federal inmate Medicaid coverage, existing law and constitutionality (and) approval of Ryan's sentence.*

**Ryan respectfully moves the court to order injunctive relief on behalf of Ryan, against the Colorado Department of Corrections. by *returning and maintaining all* of Ryan's specialized, diagnostic, monitoring and emergency care to RMCC and Dr. John Burke; CBCI and Dr. Richard Nash; and the two hospitals where *both have privileges and long-standing care teams with medical facilities and records, already familiar and able to deal with Ryan's case.* (Aurora South Hospital and Presbytarian/St. Lukes Hospital). All of which, are fully covered either by the new federal Medicaid law (or) CHP insurance coverage.**

As initially Pro Se, Ryan requests her filing(s) to be interpreted and ordered liberally. "Pleading of Pro Se plaintiff must be read liberally and should be interpreted to raise strongest arguments that they suggest." Gray v Internal Affairs Bureau S.D.N.Y. Nov 17, 2003, 292 F. Supp 2d 475; (and) "Although inmates complaint was terse and disjointed, especially with respect to "who did what to whom, when, where and why," court construed complaint liberally...light of prose status and determined that it gave sufficient notice to prison medical personnel pursuant to Fed R. Civ. P 8(a)." Carter v Newland (D.Mass. June 26, 2006), 441 F. Supp 2d 208.

**Respectfully submitted this** _____ **day of** _____, 2018.

Shawnee K. Ryan, Plaintiff