United States District Court for the
District of Colorado

Civil Action No.   18 cv 00956

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 17 2018

JEFFREY P. COLWELL
CLERK

Shawnee Ryan, Plaintiff

v,

United States of America (United States)
Federal Bureau of Prisons (et al)
Colorado Department of Corrections (et al)
Correctional Health Partners (dba CHP,
    dba Correctional Health Companies, Inc,
    dba Correctional Corporation of America
    dba Physician Health Partners, dba CHP
    Companies Inc., dba Correctional
    Healthcare Physicians, P.C. (et al)
Dr. Jennifer Mix M.D, (personal capacity)
Dr. Susan Tiona M.D. (personal capacity)
Hilary Victoroff N.P. (personal capacity)
Laura Sommerschield N.P. (personal capacity)

Defendants

Complaint with Jury Demand (Amended)

I) Shawnee Ryan (Ryan) Pro Se, under Leave to Proceed In forma Pauperis, granted May 24, 2018, comes now:

I) Nature of Case: This is a civil rights action filed by Ryan, an inmate in the custody of the Colorado Department of Corrections (CDOC) for actual damages, prospective reliefs and injunctive and declatory reliefs under 42 U.S.C. 1983; alleging denial of medical care, adequate to meet her needs, in violation of the Eighth Amendment to the United States Constitution (Defendants 1, 2, 3). Plaintiff further alleges the torts of medical malpractice, negligence, reckless disregard technical assault and battery and complicity against Defendants (4, 5, 6, 7, 8) under the Federal Torts Claim Act 28 U.S.C. 1346 (b) 2671-80.

II) Defendants:
• United States (#1) as the sole crafter and authority over the commonly named: "Inmate Catastrophic Medicaid Clause of the Affordable Health Care Act", (42 USCS (20)), Title 42 Public Health and Welfare, Chapter 6A; specifity to Affordable Health Care Act Inmate

② Catastrophic Provisions, Title 42 C.F.R. Part 435,1009 (a) (-1). (Incorporated into State of Colorado law as): Colorado Department of Health Care Policy and Financing HCPF 14-006).

Federal Bureau of Prisons (Bureau) #2 (et al.) as the scope of duty, under the Attorney General, to provide technical support to State, Federal and Tribal Corrections in the betterment of their systems. (18 USCS 4042) (4).

Colorado Department of Corrections, et al (CDOC) in its full capacity. #3

CHP (et al), in its full capacity as the contracted by CDOC official authority to institute and execute CDOC official policies specific to the new federal law of the inmate medicaid provisions of the Affordable Health Care Act (and) act within that official capacity to appraise and deny government controlled Medicaid in Ryan's case. #4

(3) • Dr. Jennifer Mix, M.D. (#5) (personal capacity)
Head employee in charge of all approvals
and denials of all medical care, by CHP et al,
in Ryan's case.

• Dr. Susan Tiona, M.D. (#6) (personal capacity)
Former Chief Medical Officer of CDOC from
2014 to 2017.

• Hilary Victoroff, N.P. (#7) (personal capacity)
Current employee of CDOC. Assigned as
Ryan's provider on and off from May 31, 2013
through May 23, 2018. Primary assigned at
Denver Womens Clinic with rotations to
DRDC Infirmary.

• Laura Sommerschield, N.P. (personal capacity)
Current employee of CDOC. Assigned to
DRDC Infirmary. (#8)

• All federal Defendants have executed and
acted, and continue to act, under color and
authority of federal and constitutional
law.

(9). All other Defendants have acted, and continue to act, under the ongoing catastrophic medical needs colored by federal law (and) have acted, and continue to act, under the color of state law and state constitution.

III) My assets and their values:
I have no tangible or monetary valued assets of any kind.

IV) Limitations: To her lay person knowledge, all tolling limitations are met. As to this Court's statements (Senior Judge Babcock (and) Magistrate Gallagher) that Ryan must, "prior to being able to be heard, specifically state which party committed violation of federal law, and do so with detail", Ryan cites "Pennhurst State School & Hospital v. Halderman 465 US 89, 107, 109, 109 n. 17, 114 n. 25, 104 S. Ct. 900 (1984), wherein Court can enforce State law to protect a constitutional right (and) wherein Court can use as foundation to determine what party is responsible for a federal law violation."
Ryan moves the Court to take Judicial Notice of its own records in her original Complaint with Jury Demand wherein she cites extensive

(5) and specific dates and events that factually show she was one of the first extreme high risk medical need and catastrophic inmates at, literally, the same time, in 2014, when the new federal law of the AHCA was executed into law. And, incorporated under, by the State of Colorado. Nowhere can Ryan find any legal precedents for her problem and restates that her case is both novel (and) unique to be heard, in addition to being highly complex law and medical. Simplistically stated, Ryan appears to be 'limited' only by the ambiguous, lacking in specifics of "how" our framers "wrote" the new law. Exactly how, to incorporate behemoth law into the behemoth of our corrections systems.

V) Statutory and Constitutional Merits Met.

Ryan believes she has met, and can meet, when due process is in place, all existing statutory and constitutional merits. Including, once evidence is heard, whether or not any Defendant has governmental immunity, or not.

(6) VI) Procedural Duty to Serve Defendants.
Defendants will be served either by the Court
via electronic agreements (and) U.S. Marshal's
agreement with the Court for indigent inmate.
Ryan has met the Court's Order to
supply information in her simultaneously
filed, "Pursuant to Court's Order to Provide
Service Addresses for Defendants".

VII) Course of Action:

• Facts:
  • On CDOC entry (Nov. 2012) Ryan was
    screened in excellent health, fully immunized.
  • On or around March 23, 2013, Ryan fell
    ill at La Vista Correctional Facility (LVCF),
    could not fully recover; a specific blood
    lab revealed kidney dysfunction, resulting
    in Ryan's EAO (Executive Authorization
    Order), progressive return to DWCF,
    where she was placed on medical hold
    November, 2013. Ryan remains on
    medical hold.
  • From September 2013 through April
    2014, various diagnostics confirmed
    (2) fatal diseases. Multiple Myeloma

(7) (blood cancer) (and) Light Chain Deposition/
Cast Neropathy (sic) aka Myeloma Kidney, aka
Bence Jones Proteins (blood autoimmune)

- Fast moving, aggressive, uncommon and complex
  three phase treatment as standard of care.

1) Chemo therapy; intensive, Purpose only as
   palliative and symptomatic to reduce
   (M) protein (and) Bence Jones proteins to
   low enough level to be able to conduct
   second phase transplant.

2) Bone marrow transplant. Either donor
   (or) autologous stem cell.

3) Post-transplant recovery with rebuild
   of immune system, spanning (2) years.
   Maintenance drug (anti-cloning-anti-
   embryonic Class X, DEA-contractually
   controlled/regulated and monitored
   by federal regulators) taken daily for
   remainder of life.

- At full diagnoses (April 2014) Ryan
  had advanced, since March 2013, to
  Stage III Multiple Myeloma and Stage
  IV Light Chain Cast. And, resulting
  30% atrophy of right Kidney, endangered
  immune, Myeloma lesions (bone fractures).

(3) * At present day the further damages of extended chemo therapy are: Severe neuropathy in feet and hands, DVT, severely dilated left atrium of heart, vision loss, detached retina(s), detached vitreous, hypogammaglobulinemia, anemia, kidney atrophy, edema, chronic orthostesis, renal insufficiency pancreatic insufficiency, ectopic rhythms.

Ryan moves the Court to take Judicial Notice of its own records in her original filing. "Complaint with Jury Demand" filed April 23, 2018 with specificity (but not limited to) "Medical Facts Relevant to Understanding Claims" for full facts of medical conditions, standards and needs of care.

* Average annual cost, including costs to care for all damages to Ryan's body from alleged denial of adequate care, alleged malpractice, alleged negligence, alleged deliberate indifference and reckless disregard (and alleged technical assault and battery, is apprx (1) million dollars.

d). Medical costs, to date, are (aprx) 5 million dollars.

A) Denial of adequate medical care in violation of Eighth Amendment (Defendants; United States, Bureau, CDOC)

Defendant, United States, framed, wrote and executed into federal law the Affordable Health Care Act in @ around January 2014. With specifity allowance of catastrophic inmate medicaid provisions (42 USCS (20), Title 42 Public Health and Welfare Chapter 6A; Title 42 C.F.R. Part 435,1009 (a)(i). Incorporated, 2014, by State of Colorado, as; Colorado Department of Health Care Policy and Financing HCPF 14-00%. Both, remain in full effect at current day.

Ryan, after aprx. (only) 8 rounds of phase One intensive chemotherapy, had lowered her m proteins (and) Bence Jones proteins to phase (2) transplant ready phase, by, August 14, 2014. Chemo began, in April 2014.

CDOC has assigned and ordered Ryan to the care, since Day One, of the following Outside contracted specialists; 1) Rocky

10 Mt. Cancer Center (RMCC) and oncologists Sujatha Nallapareddy, MD (and) Dr. John Burke, M.D. And, from 2013 to late Fall 2017; RMCC's hospital of practice: Aurora South. Assigned and ordered Colorado Blood Cancer Institute (CBCI), Dr. Richard Nash and CBCI hospital of practice; Presbyterian St. Lukes. At no time, has Ryan, with exception of a 24 hour period (apx.) May 23, 2016; any choice in who administers her care.

• The drug Revlimid, taken daily since May 2014 to present day and for maintenance life long is also assigned and ordered by CDOC. The only choice with the drug, that Ryan has, if she wishes to live, which she does, is to be the only party, other than her oncologist Dr. John Burke M.D., to hold the contractual agreement with DEA federal regulators (official, written, signed) allowing the federal authority to monitor and regulate her blood lab levels and exact dosing and intake of, Revlimid.

• For as long as Ryan has been a CDOC inmate, CDOC has contracted Defendant CHP (et al) to approve and deny all of Ryan's medical care. Voluminous administrative and medical records verify.

• The AHCA and adopted HCPF 14-006; allow

(11) For any hospitalized medical procedure identified as "catastrophic" in cost ($100,000 or higher), that includes a minimum of one overnight hospital stay, is fully covered by Medicaid. Ryan can find no specifics within the federal law or Colorado adoption, that clearly states which 'government' (State or Federal) authorizes, controls (or) disburses funds when a corrections system accesses the medicaid insurance. Nor, can Ryan find, anywhere within the federal law (or) any other State (or) federal law, that allows unilateral control over the medicaid account/benefit belonging to Ryan personally, to be given over to a private for-profit corporate entity such as, CHP etal. All law, Ryan can find, is limited to the issuance of a partial power of attorney to whomever Ryan designates, to submit claims and information on her informed behalf, being required of her, as an inmate and ward of CDOC, if, she wishes adequate medical care.

• Ryan, signed such a release in November 2014, under the understanding CDOC was using medicaid to cover one catastrophic cardiac event aprx. Nov. 4, 2014, CDOC then closed Ryan's account with Human Services, El Paso County in January 2015. At will, CDOC then went on, opening and closing Ryan's account until aprx. 2017, when

(12) CDOC finally grew to a level of understanding in 'how' to utilize the federal provision and subsequently ordered all chronic care, special needs and catastrophic cost inmates to sign the same partial power of attorney as Ryan did in November, 2014. All Colorado inmates, on release, are also ordered to hold active medicaid (or) other insurance.

• August 14, 2014, RMCC ordered Ryan to transplant. A procedure, costing millions of dollars and encompassing weeks/months of hospitalization. CHP denied as no medical necessity. RMCC appealed, was denied. At no time, was Ryan (or) RMCC told by CDOC (or) their agent, CHP of the existence of medicaid availability.

• From August 14, 2014 through to May, 2015, Ryan's oncologist(s), her (CDOC) Nephrologist, her (CDOC) assigned general MD's; applied for transplant and were repeatedly denied, with a wide variety of CHP reasons. Appealed and denied. Ryan refers back to original Complaint with Jury Demand for very detailed facts (Part One) of dates, who, specific wordings and events.

• From May, 2015 to June 2017, Ryan's oncologist and hematologist (and) her CDOC assigned general

(3) M.D. continued to apply for transplant and were denied.

· Ryan, from 2013 to present day, exhausted, repeatedly, all administrative processes attempting to obtain fully adequate medical care.

· June 2017, with no alternative other than Ryan's death, CDOC ordered Ryan's medicaid into place and Ryan underwent an autologous stem cell transplant under CDOC assigned CBCT at Presbyterian St. Lukes (PSL) Hospital, Medicaid fully approving and covering the procedure.

· By then, Ryan had undergone over (4) years of intensive chemo therapy, (4) rounds and (2) additional rounds of hospitalized, aggressive DTPACE Chemo treatment, Accumulating, over that period of time, all damages to her body and organs previously listed.

B) Technical Assault and Battery (Defendant CDOC) in violation of the Eighth and Fourteenth Amendments

· Ryan suffered significant and multiple physical impact as a result of her guardian turning

(iv) over official authority, over official policy regarding approvals and denials of all medical care to Defendant contractor, CHP et al.

• DOC knowingly and willfully, spanning years, kept Ryan within a zone of danger by never resolving, never heeding, never even acknowledging Ryan's extensive administrative processes. By showing such deliberate indifference, DOC acted with reckless disregard in allowing, for years, the only ability to keep Ryan alive as being such intensive and extended chemo therapy including (2) rounds of one of the most aggressive procedures there is, which is DTPACE, which Ryan's oncologist and hematologist, forced by their own medical powers upon DOC, by directly admitting Ryan to Aurora South Hospital, in January 2017 when she appeared for a regular appointment at RMCC in such poor condition they deemed medical necessity.

• Under due process scrutiny, Ryan contends DOC committed technical battery and assault, cruel and unusual punishment in denying Ryan adequate medical care by placing CHP in official authority when Ryan was in DOC care and custody not in the care and custody of a privately contracted insurance carrier.

(5) · Under compulsory processes, Ryan will bring forward, what she contends, is an admission of knowing and acknowledging need for life-essential transplant, by SDOC, not CHP; approving, activating and granting her medicaid coverage after the extreme of top-ranked, highly reputable oncology and hematology, acting in concert, in January 2017 in direct admitting Ryan for extreme hospitalized care.

· Whether technical assault and battery rises to a level of knowing intention (or) premeditated; is a determination for a jury upon hearing evidence.

C) Deliberate Indifference resulting in Denial of Adequate Medical Care in violation of the Eighth Amendment. (Defendants United States and Federal Bureau of Prisons)

· AHCA, with specificity to the inmate catastrophic provisions, is undeniably, a full and complete product of United States legislators. It is a moot point, whether one believes in it (or) past and present administrations and legislators utterly fail in framing the logistics into our correctional system. Reality is that it is, was and remains

(6) the law at the time of Ryan's medical need, As law, it must therefore be upheld.

° Ryan meets the direct entity prong against the United States due to the unequivocal fact that if Ryan prevails in declatory judgment that her constitutional right to adequate medical care is violated; the United States, after now (8) years, (2) administrations, (4) Sweeps of both Congress and Senate; know, or should know, or have/had the capacity to know 'what' and 'how' their corrections system's institutionalized medical care 'works; (and) were directly responsible to incorporate adequate law that could handle. Defendant Federal Bureau of Prisons, as an agent of the highest law enforcement we have, in the Attorney General, also meets the direct entity prong for same and similar reasons stated above.

° Ryan meets the indirect liability prong as both entities, spanning a minimum of eight years have maintained continual knowledge of the medical care within their corrections system, have been fully aware of the AHCA laws with specifity to the Inmate medicaid provision. Both know, or should know, or have/had the capacity to know where issues in implementing, executing and enforcing; exist within all (50) states.

17) In the case of Federal Bureau, they have specific scope of duty to provide technical support, for the betterment of the System. Ryan contends that the 8th Amendment standard draws its meaning from the evolving standards of decency that mark the progress of a maturing society... where Court cited that standards of decency in prison rise with Society's standard of living." Davenport v. DeRoberts, 844 F.2d 1310, 1314-16 (7th Cir. 1988).

D) Deliberate Indifference in violation of the Eighth Amendment (Defendant CDOC etal)

• Ryan, unequivocally, was in excellent health as determined by CDOC screening, upon entry in November 2012. Ryan, unequivocally, has been continually incarcerated by CDOC since. Ryan, unequivocally, has followed every medical order by all of her CDOC assigned internal and external providers. Ryan, unequivocally, has extensively and widespread within CDOC (etal), followed every administrative process available to an inmate to enforce, and protect all medical care CDOC (etal) has made available to her. Ryan, unequivocally, has voluminous medical history on file, both internal and external of CDOC (etal) as her standard of care for her highly complex diseases require constant specialist monitoring via her blood

(18) and her body.

* Ryan meets the direct entity prong on multiple levels: 1) CDOC (et al) has the absolute duty to provide adequate medical care, can do nothing that could prevent Ryan from a full recovery once released, must provide and meet all symptomatic and palliative care needs, must do nothing that jeopardizes Ryan's very life and physical safety. Knowingly and with years (in Ryan's case) contracted an outside, for profit, private insurance carrier to handle all approvals, denials of inmate medical need. Determination of exact specifics of that contracted is a matter for due process as Ryan is heard.

* Ryan meets the indirect prong in that CDOC (et al) clearly and unequivocally is duty required, by law, to be held in enough of a position of trust, to incarcerate Ryan, no matter what her needs are (or) become, in a competent and capable manner that upholds all law. Knowledge of that scope, duty and law; willfullness to employ all CDOC staff and contractors; and wanton alleged disregard for and to act, in accordance with all system standards is, in the case of the higher standards of a law enforcement agency unconscionable. Due and compulsory process is available to the Court to verify all alleged

20) by Ryan to be facts of specific dates and events, too voluminous to be held pre-hearing to "short and plain", and that are within original filing.

E) Medical Malpractice resulting in Gross Negligence (N.P. Hilary Victoroff, personal capacity)

• Ryan preserves ability to move for res gestae evidence in this claim, specific to Hilary Victoroff.

• N.P. Victoroff was the CDOC assigned provider, to Ryan, at the time of this incident

• End January 2017, Ryan was admitted to Aurora South Hospital, under the medical power of her CDOC assigned oncologist and hematologist for aggressive DTPACE. Direct admitted from RMCC Aurora and not returned to facility custody.

• At discharge on Feb. 3, 2017, Victoroff and Dew Clinic, ordered Ryan's return, under the strong objections of her security detail questioning 'why' the standard policy of hospitalized inmates returned for exam to DRDC Infirmary was being overridden.

(20) Ryan was delivered, on this Friday at apx. 3:00 p.m., directly into the hands of N.P. Victoroff

• Victoroff was clearly told, by Ryan, that Dr. Burke's direct order was for "30 minutes or less" to the ER at Aurora South if a temp of 100.³ (or) higher occured, Victoroff clearly responded "I believe you." The exchange witnessed and heard by multiple CDOC staff.

• Victoroff then left for her regular Saturday Sunday and Monday days off (and) left no orders for vitals monitoring or care until her return on Tuesday. Which, per CDOC Clinical and Security policies, left Ryan with no ability to access medical care unless Ryan can get a staff person (non-medical staff) to verify need and allow Ryan to access the clinic and medical staff.

• Ryan, by Saturday, knew she had a temp. Asserted herself, through security staff, into the clinic where an R.N. who

21) Knows Ryan well, consented to monitor her temperature. Ryan registered over 99° and just under the 100.3 mark.

• The next day Ryan was found by security staff unresponsive in her cell, removed to clinic, where she spent the entire day in and out of coherency, loss of kidney and bladder functions and increasing fever. By the time staff recieved an order from a provider for a routine CBC (which proved deep neutropenia) and made the on-site call to send Ryan to the DRDC infirmary, Ryan's temp was 103.8.

• The diagnoses of critical neutropenic fever, Influenza A, a spider bite to a finger on Ryan's right hand that had occurred while unresponsive in dense population cell and that had rapidly turned into staph infection then rising to Mrsa in location of the bite.

• Diagnoses by CDOC assigned Dr. John Burke, M.D. and his practicing team at Aurora South Hospital.

(22) 18. Hilary Victoroff is a mid-level, general scope of practice registered nurse practitioner.

19. Ryan lived. Discharged apx (10) days later. Recovered at DRDC Infirmary and went in for 2nd round of DTPACE in March 2017. Housed infirmary since, with the exception of May 18, 2018, through May 25, 2018.

F.) Medical Malpractice and Reckless Disregard (Defendant NP Laura Sommerschield)

20. Opthamologist Surgeons, assigned to Ryan by CDOC, on referral by assigned by CDOC Oncology Specialist Dr. John Burke, verified in mid-October 2017 that the extended use of the chemo drug Dexamethasone caused aggressive growth cataracts, in Ryan's eyes, that were so thick they could not see into Ryan's eyes.

21. Cataract vision loss began in July 2017 Ryan reported to CDOC and Dr. Burke.

(23) - Burke referred to specialist care in August 2017.

- Sommerschield, through CHP, scheduled an optometrist exam consult in mid-October 2017. Optometrist, when unable to see into Ryan's eyes, brought in, on that day opthamologist surgeon to examine.

(○) Oct. 25, 2017, in DRDC, Ryan developed an additional right eye (2) devious to eye hematomas. Sommerschield, placed a telephone call to the optometrist and claimed to Ryan, when Ryan began to question why it was taking so long, to fulfill the orders she had been told by surgeons as "immediate next" surgery beginning with left eye, that the optometrist (Dr. Williams) had "told her" that a 2nd opinion for need, was being "asked". In reality, an investigation by specific questioning from Ryan, Williams stated that he felt hematomas could "wait" for surgeon opinion because according to his computer screen, "immediate next" for surgery was surgeon ordered.

(24). As more time and rapid vision loss went by, Ryan asked Burke to intervene and Ryan, was near immediately scheduled for pre-op on Nov. 20, 2017.

· Surgeon scheduled as "Urgent" surgery.

· Surgeon, verbally, direct called Sommerscheild and reported, not only to Ryan, but also her administrators at Denver Health, the specifics of that call. Surgeon showed Ryan, when Ryan expressed her fear, on Nov. 20, that Sommerscheild would not obey "Urgent", her write personal cellphone # on the print copy of Ryan's transfer and medical papers, given so she could be reached directly (and) then handed those papers to Ryan's security detail.

· Sommerscheild still left her orders for "April 2018" surgery, in place. Repeatedly attempting to claim "no fault" as "DH" "sets all schedules". Unknowing until now, that administrative review by Denver Health and full disclosure of all (3) (given every time, for all inmates) scheduler's offered dates to DOC

(25) providers; was being physically shown to Ryan at each visit.

° "April 2018" was a personally chosen and kept date; by Laura Sommerfield.

° Ryan, again went to Burke to intervene.

° Ryan, had surgery on her left eye, on Dec. 18, 2017. On prep, the charge nurse commented how wonderful it was that at the age of 60 yrs. Ryan had "only" minor kidney insufficiency. Denver Health computers are direct tied to CDOC. Startled Ryan asked the nurse to verify patient information and inmate #. They in order to safely proceed to surgery, Ryan listed her extensive history. Which, surgeon(s) then determined to need their cataract specialist to perform and Ryan was bumped to end of day in order for him to be called in.

° At next day post-op, surgeon delivered the news of surgery failure due to extent of growth and "waiting too long" and that

(26) The left eye must "be redone".

· Sommerschield was (according to Surgeon) 'tested' to see which of (3) dates given, she would choose. Jan. 2, 2018, January 9, 2018 and latter January, 2018. Ryan, was verbally reassured that her file was "flagged" and they would not allow another extended schedule.

· Sommerschield chose latter January, 2018.

· Denver Health intervene and Ryan's second surgery on left eye was executed on Jan. 2, 2018 and no allowance to Sommerschield to choose. Right eye surgery was executed by Denver Health schedule on Jan. 14, 2018.

· A University Hospital Specialist surgeon was brought in for the 2nd surgery on left eye (and) both remaining surgeries were done in the large and adequate for Ryan's high risk(s) O.R. as Denver Health now had, from Ryan, not CDOC, full medical history albeit only verbally given at that time by Ryan.



(27). Laura Sommerschield is a mid-level general scope of practice registered nurse practitioner.

° Final (so far) diagnoses: Detached retina in left eye. Hemorraged retina Right eye with no detachment of retina yet. Extensive vitreous detachments in both eyes with vitrectomy (sic) surgeries recommended.

(G) Technical Assault and Battery (Defendants Victoroff, Sommerschield and CDOC (et al))

° Victoroff and Sommerschield continuing under tort. CDOC (et al) in violation of Eighth and Fourteenth Amendments.

° At the time of events stated in claims (E) and (F) Victoroff and Sommerschield were both under very specifically chosen by Ryan wording "Refusal(s) of Care" (ROC forms), Which are, per CDOC policy, legally binding sworn affidavits when filled out and signed by the inmate that bind all parties to 'what' the ROC states. Ryan's ROC's, on both, very clear and succinct removed both from any

(23) medical care of Ryan and involvement in her needs, with exceptions of emergency and immediate essential to life that is not under direct supervision of CDOC assigned specialists: Burke, RMCC; Nash, CBCF.

ROC's flagrantly and repeatedly disregarded, even through extensive administrative processes, by both, until and only under asserted legal duress from Ryan, to CDOC (etal) to enforce; spanning years in Victoroff's case (and) months in Sommerschield's case. Victoroff finally binding herself on apox May 22, 2018 and Sommerschield binding herself on July 11, 2018.

The physical damages asserted in claims (E) and (F) constitute, at minimum, technical assault and battery.

Ryan, preserves ability to move for present of res gestae evidence against both, in regard to this claim.

Defendant, CDOC (etal), by admission of the "ROC" form and policies, (and) by admission of

(20) their own administrative forms, policies and how they verifiably handle the grievance and administration's processes, Knowingly and willfully, spanning years, handled Ryan's need of enforcing protection for Ryan's physical safety, allowed Victoroff and Sommerschield's disregard of the ROC's they were under, until an inmate (Ryan) acted in their absence, to expose. An effort that took literally years (and) months, during which Ryan suffered physical damage that became both life-threatening (and) permanent. By CDOC (etal) admission in finally reaching cognizant level on May 18, 2018 (and) July 11, 2018 and enforcing Ryan's ROC's against Sommerschield (and) Victoroff, it is reasonable that CDOC (etal) knows the ROC is binding on all parties.

- Both events, if CDOC (etal) had enforced their own affidavit processes (and) grievance processes were preventable.

H) Deliberate Indifference resulting in Gross Negligence (Defendants Tiona and Mix)

- Ryan meets the direct prong with Defendant

(30) Mix. As the CDOC contracted carrier, responsible for all approvals (and) denials of the medical care in Ryan's case, including state and federal government controlled Medicaid, she acted each and every time in official authority.

• Medicaid under AHCA, is not in place, nor does any directive within the federal law exist, that provides for only "after the fact" medicaid payment. Nor does medicaid have "networks" of any kind. Nor does medicaid discriminate against Ryan because she is incarcerated. Nor provides for a privately employed and privately paid person to be "written in by a contract" even when contracted by a government agency, as a governmental, therefore immune, party.

• By admission of every denial for transplant, Jennifer Mix deliberately, knowingly and willfully showed both indifference and as a board certified M.D., reckless disregard. The result(s), under due process shown, nearly cost Ryan, her life. Ryan refers to specific dates within original filed Complaint with Jury Demand

(31.) Claim One, Part One.

- Ryan meets also the indirect prong.

- Ryan meets, with Defendant Tiona, the indirect prong only. As Tiona did act, at all times, with the official capacity of a CDOC employee.

- Tiona is, however, a board certified, licensed M.D. who held herself at all times, as an "expert" in under oath testimonies during numerous other lawsuits. Indirect prong is met as Tiona held the knowledge, or had the capacity to know, or should have known when she was acting in Ryan's case that she was either not the same caliber as CDOC assigned specialists, acted recklessly and had fully available to her the specifics of the new federal law.

- Ryan refers back to Claim One, Part One of Original filed Complaint with Jury Demand, for the extensive details and specifity of Tiona, literally spanning years, defied CDOC orders,

32) refused specialists, CDOC M.D's, CDOC nurse practitioners numerous repeated requests for specific levels of care, accommodations, medications (including essential to life medications) and transplant. Holds specific details of a personal verbal attack engaged in with Defendant Mix via email on or around early January 2016 which was exposed to Ryan by her CDOC assigned M.D. Tiona further committed written letters and administrative responses placing denials of care into writing. Details within Claim One, Part One.

Ryan contends that Tiona is not immune indirectly and should be held, to stay in this litigation so that probing under due process can occur.

Ryan preserves ability to move for res gestae evidence against both defendants.

VIII) <u>Previous lawsuits</u>:
      None.

IX) <u>Administrative Relief</u>:
     Exhausted.

(33) Request for Relief.

• Declatory judgment that Defendants United States and Federal Bureau of Prisons failed to install the new federal law of the Inmate Catastrophic Medicaid Provisions into the U.S. correctional System (et al) and the Colorado Department of Corrections (et al) to the extent that Ryan's Eighth Amendment right to adequate medical care was denied.

• Declatory judgment that CDOC (et al) contractually placed Defendant CHP (et al) as the official authority to institute CDOC (et al) official policies specific to the Inmate Catastrophic Medicaid Provisions (and) act within that capacity to approve and deny Medicaid covered and governed medical care to Ryan.

• Declatory judgment and compensatory monetary damages in the same amount/cost annually to CDOC (et al) to lifelong enable Ryan to care for herself and the damages suffered as a result of CDOC (et al) failing to obey State Statutes and Constitution, Federal Statutes and constitution, regulatory and accreditation standards regarding

(34) nurse practitioners and administrative policies.
T.B.D. annual amounts and estimated life
expectancy of Ryan through due process,
and compulsory processes.

• Issue injunction ordering Defendant Doc
(et al) to provide adequate medical care, at
all times, by following all outside contracted
specialists, medical doctors, DEA Federal
Regulators (and) Medicaid provisions, and orders.

• Award jury determined compensatory damages
against Defendants Mix, Tiona, Victoroff and
Sommerschield for physical, emotional and
permanent damages suffered as a result of
both equal capacity acting either in violation
of Federal and State law (Mix) regarding insurance,
(and/or) in same capacities as assigned specialists.

• Award punitive damages against Defendants
(1,2,3) at maximum level allowable by law to a
prisoner.

• Award punitive damages against Defendants
(4,5,6,7,8) at the amount(s) that the Jury

38) believes Plaintiff is entitled.

* Grant such other relief as it may appear
the Plaintiff is entitled.

XI) Jury Demand:
   Yes.

(Note: Ryan as soon as CDOC grants/returns
legal access to the DRDC Infirmary, will
for legibility and clarity and format
compliances, provide verbatim typewritten
copy of all filings made in this ordered
deadline of July 12, 2018).

XII) Declaration of Perjury.
   I declare under penalty of perjury that
the information in this motion and
affidavit is true and correct. See
28 U.S.C. 1746, 18 U.S.C. 1621.

Shawnee Ryan                    Date: July 12, 2018

Certificate of Mailing

I certify that I have mailed a true and accurate copy of this Complaint with Jury Demand (Amended) by placing same, postage prepaid and correctly addressed, in the official date stamped outgoing legal mail system of the Colorado Dept. of Corrections on this 12th day of July 2018.

Shawnee K Ryan

Clerk of Court
Alfred A. Arraj US Courthouse
901 19th Street Rm. A-105
Denver, Colorado 80294



U.S. POSTAGE >> PITNEY BOWES

ZIP 80216 $ 003.75⁰
02 1W
0001366873 JUL 13. 2018

STATE OF COLORADO
OFFICIAL MAIL
PENALTY FOR PRIVATE USE

Clerk of Court
Alfred A. Araj U.S. Courthouse
901 19th Street Rm. A-105
Denver, Colorado 80294

Colorado Department Of Corrections
Name Shawn Ryan
Register Number 159496
Unit DRDC-IA-3
Box Number 392004
City, State, Zip Denver, Colo. 80239

FACILITY Bridwell
DOC # 159496 Ryan SKR
OFFENDER LAST NAME INIT.
DATE REC'D 7/16/18 JB
11619