IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   18 – cv – 00956 – GPG

SHAWNEE RYAN,   Plaintiff

V.

**Defendants:**

**UNITED STATES OF AMERICA  (United States)**
**FEDERAL BUREAU OF PRISONS  (et al)**
**COLORADO DEPARTMENT OF CORRECTIONS (et al) (CDOC)**
**CORRECTIONAL HEALTH PARTNERS (et al)  (dba Correctional Health Partners, Inc., dba Correctional Health Companies, Inc., dba Correctional Corporation of America, dba Physician Health Partners, dba CHP Companies, Inc., dba Correctional Healthcare Physicians, P.C.)**
**DR. JENNIFER MIX, M.D. (personal capacity)**
**DR. SUS AN TIONA M.D. (personal capacity)**
**HILARY VICTOROFF N.P. (personal capacity)**
**LAURA SOMMERSCHIELD N.P. (personal capacity)**

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

JUL 30 2018

JEFFREY P. COLWELL
CLERK

---

**COMPLAINT WITH JURY DEMAND    (AMENDED)**

---

Shawnee Ryan (Ryan), Pro Se, under Leave to Proceed Informa Pauperis granted May 24, 2018; comes now:

I) **Nature of case:**  This is a civil rights action filed by Ryan, an inmate in the custody of the Colorado Department of Corrections (CDOC) for actual damages, prospective reliefs and injunctive and declatory reliefs under 42 U.S.C. 1983; alleging denial of medical care, adequate to meet her needs, in violation of the Eighth Amendment to the United States Constitution (Defendants 1,2,3).  Plaintiff further alleges the torts of medical malpractice, negligence, reckless disregard, technical assault and battery against Defendants (4,5,6,7,8) under the Federal Torts Claim Act 28 U.S.C. 1346 (b) 2671-80.

II) **Defendants:**

1) United States as the sole crafter and authority of the commonly named: "Inmate Catastrophic Medicaid Clause of the Affordable Health Care Act". (42 USCS (201), Title 42 Public Health and Welfare, Chapter 6A; specifity to Affordable Health Care Act Inmate Catastrophic Provisions, Title 42 C.F.R. Pat 435, 1009 (a) (1). (Incorporated into State of Colorado law as): Colorado Department of Health Care Policy and Financing HCPF 14-006).

1

2) Federal Bureau of Prisons (et al) (Bureau) as the scope of duty..".…under Attorney General, to provide technical support to State, Federal and Tribal corrections in the betterment of their systems…" (18 USCS 4042) (4).

3) Colorado Department of Corrections (et al) (CDOC) in its full capacity.

4) CHP (et al) in its full capacity as the contracted by CDOC official authority to institute and execute CDOC official policies specific to the new federal law of the inmate Medicaid provisions of the Affordable Health Care Act (and) act within that official capacity to approve and deny government controlled Medicaid in Ryan's case.

5) Dr. Jennifer Mix M.D. (personal capacity). Head employee in charge of all approvals and denials of all medical care, by CHP et al, in Ryan's case.

6) Dr. Susan Tiona M.D. (personal capacity). Former Chief Medical Officer of CDOC from 2014 to 2017.

7) Hilary Victoroff N.P. (personal capacity). Current employee of CDOC. Assigned as Ryan's provider on and off from May 31, 2013 through May 23, 2018. Primary assigned at Denver Womens Clinic with rotations to DRDC Infirmary.

8) Laura Sommerschield N.P. (personal capacity). Current employee of CDOC. Assigned to DRDC Infirmary.

- All federal Defendants have executed, and acted, and continued to act, under color and authority of federal and constitutional law.
- All other Defendants have acted, and continue to act, under the catastrophic medical needs colored by federal law (and) have acted, and continue to act, under the color of state law and state constitution.

III) My assets and their values:

I have no tangible or monetary valued assets of any kind.

IV) Limitations:

To her lay-person knowledge, all tolling limitations are met. As to this Court's statements (Senior Judge Babcock (and) Magistrate Gallagher), that Ryan must, *prior to being able to be heard*; specifically state which party committed violation of federal law, *and do so with detail*; Ryan cites "Pennhurst State School & Hospital v Halderman, 465 US 89, 107, 109, 109n. 17, 114 n. 25, 104 S. Ct. 900 (1984); wherein Court can enforce State law to protect a constitutional right (and) wherein Court can use as a foundation to determine *what party is responsible for a federal law violation.*" Ryan moves this Court to take Judicial Notice of its own records in her original Complaint with Jury Demand wherein she cites extensive and specific dates and events that factually show she was one of the first extreme high risk medical need and catastrophic inmates, at, literally, the *same time*, in 2014, when the new federal law of the AHCA was

2

executed into law. And, incorporated *under* by the State of Colorado. Nowhere, can Ryan find, *any* legal precedents for *her* problem, and restates that her case is both novel (and) unique to be heard; in addition to being highly complex law and medical. Simplistically stated: Ryan appears to be 'limited' only by the ambiguous, lacking in specifity of 'how' our framers 'wrote' the new law. Exactly how, to incorporate behemoth law into the behemoth of our corrections systems.

V) **Statutory and Constitutional Merits Met:**

Ryan believes she has met, and can meet when due process is in place; all *existing* statutory and constitutional merits. Including, once evidence is heard; whether or not any Defendant has governmental immunity, or not.

VI) **Procedural Duty to Serve Defendants:**

Defendants will be served either by the Court via electronic agreements (and) US Marshal's agreement with the Court for indigent inmate. Ryan has met the Court's Order to supply information in her simultaneously filed: "Pursuant to Court's Order to Provide Service Addresses for Defendants".

VII) **Cause of Action:**

**Facts:**

- On CDOC entry (Nov 2012) Ryan was screened in excellent health, fully immunized.
- On or around March 23, 2012, Ryan fell ill at LaVista Correctional Facility (LVCF); could not fully recover; a specific blood lab revealed kidney dysfunction; resulting in Ryan's EAO (Executive Authorization Order), progressive return to DWCF; where she was placed on medical hold in November 2013. Ryan remains on medical hold.
- From September 2013 through April 2014, various diagnostics confirmed (2) fatal diseases: Multiple Myeloma (blood cancer) (and) Light Chain Deposition/ Cast Nephropathy aka 'Myeloma Kidney' aka Bence Jones Proteins (blood autoimmune): 1) fast moving, aggressive, uncommon and complex three phase treatment as standard of care: 1) Chemo therapy; intensive. Purpose only as palliative and symptomatic to reduce (m) protein (and) Bence Jones proteins to low enough level to be able to conduct second phase transplant. 2) Bone marrow transplant. Either donor (or) autologous stem cell. 3) Post-transplant recovery with rebuild of immune system spanning two years. Maintenance drug (anti-cloning, anti-embryonic Class 5, DEA contractually controlled/regulated and monitored by federal regulators) taken daily for remainder of life.
- At full diagnoses (April 2014) Ryan had advanced, since March 2013, to Stage III Multiple Myeloma and Stage IV Light Chain Cast. And, resulting 30% atrophy of right kidney, endangered immune and Myeloma lesions (bone fractures).

3

- At present day, the further damages of extended chemo therapy are: severe neuropathy in feet and hands, DVT, severely dilated left atrium of heart, vision loss, detached retina(s), detached vitreous, hypogammaglobulinemia, anemia, kidney atrophy, edema, chronic orthothesis, renal insufficiency, pancreatic insufficiency, ectopic rhythms. Ryan moves the Court to take Judicial Notice of its own records in her original filing: "Complaint with Jury Demand" filed April 23, 2018 with specifity (but not limited to) "Medical Facts Relevant to Understanding Claims" for full facts of medical conditions, standards and needs of care.
- Average *annual* cost; <u>including</u> costs to care for all damages to Ryan's body from alleged denial of adequate care, alleged malpractice, alleged negligence, alleged deliberate indifference and reckless disregard (and) alleged technical assault and battery; is aprx. (1) million dollars.
- Medical costs to date are aprx. (5) million dollars.

A) **Denial of adequate medical care in violation of Eighth Amendment (Defendants 1, 2):**
   - Defendant United States, framed, wrote and executed into federal law the Affordable Health Care Act in (or) around January 2014. With specifity allowance of catastrophic inmate medical provisions (42 USCS (201), Title 42 Public Health and Welfare Chapter 6A; Title 42 C.F.R. Part 435, 1009 (a) (1). Incorporated 2014 by State of Colorado as: Colorado Department of Health Care Policy and Financing HCPF 14-006. Both, remain in full effect at current day.
   - Ryan, after aprx (only) 8 rounds of phase one intensive chemo therapy, had lowered her m proteins (and) Bence Jones proteins to phase (2) transplant ready phase, by, August 14, 2014. Chemo began in April 2014.
   - CDOC has assigned, and ordered, Ryan to the care, since Day One, of the following outside contracted specialists: 1) Rocky Mountain Cancer Center (RMCC) and oncologists Sujatha Nallapareddy M.D. (and) Dr. John Burke M.D. And, from 2013 to late Fall 2017; RMCC's hospital of practice; Aurora South. Assigned and ordered Colorado Blood Cancer Institute (CBCI), Dr. Richard Nash and CBCI hospital of practice; Presbytarian St. Lukes. At no time, has Ryan, with exception of a 24 hour period (aprx) May 23, 2016; **any** choice in who administers her care.
   - The drug Revlimid, taken daily since May 2014 to present day and for maintenance life-long; is also assigned and ordered by CDOC. The *only* choice with the drug, that Ryan has, if she wishes to live, which she does, is to be the only party, other than her oncologist Dr. John Burke M.D., to hold *contractual* agreement with DEA federal regulators to monitor and regulate her blood lab levels and exact dosing and intake of; Revlimid.

4

- For as long as Ryan has been a CDOC inmate, CDOC has contracted Defendant CHP (et al) to approve and deny all of Ryan's medical care. Voluminous administrative and medical records verify.
- The AHCA and adapted HCPF 14-006; allow for any hospitalized medical procedure, identified as "catastrophic" in cost ($100,000 in cost or higher), that includes a minimum of one overnight hospital stay; is fully covered by Medicaid. Ryan, can find no specifity *within the federal law* (or) *Colorado adaption* that clearly states 'which' 'government' (State or Federal) authorizes, controls (or) disburses funds when a corrections system accesses the Medicaid insurance. Nor, can Ryan find, anywhere *within the federal law* (or) *any other state or federal law* that allows unilateral control over the Medicaid account/benefit *belonging to Ryan personally*; to be given over to a private, for profit, corporate entity such as: CHP (et al). All law, that Ryan can find, is limited to the issuance of a partial power of attorney to whomever Ryan designates, to submit claims and information *on her informed behalf* being required of her; as an inmate and ward of CDOC, if, she wishes adequate medical care.
- Ryan signed such a release, in November 2014, under the understanding CDOC was using Medicaid to cover one catastrophic cardiac event aprx November 4, 2014. CDOC then closed Ryan's account with Human Services, El Paso County in January 2015. At will, CDOC then went on, opening and closing Ryan's account until aprx 2017, when CDOC finally grew to a level of understanding in 'how' to utilize the federal provision and subsequently ordered all chronic care, special needs and catastrophic cost inmates to sign the same partial power of attorney as Ryan did in November 2014. All Colorado inmates, on release, are also ordered to hold active Medicaid (or) other insurance.
- August 14, 2014; RMCC ordered Ryan to transplant. A procedure costing millions of dollars and encompassing weeks/months of hospitalization. *CHP* denied as no medical necessity. RMCC appealed, was denied. At no time, was Ryan (or) RMCC told, by CDOC (or) their agent CHP; of the existence of Medicaid availability.
- From August 14, 2014 through to May 2015; Ryan's oncologist(s), her (CDOC) Nephrologist, her (CDOC) assigned general M.D.'s; applied for transplant and were repeatedly denied, with a wide variety of CHP reasons. Appealed and denied. Ryan refers back to her original Complaint with Jury Demand for very detailed facts (Part One) of dates, who, specific wordings and events.
- From May 2015 to June 2017, Ryan's oncologist and hematologist (and) her CDOC assigned general M.D. continued to apply for transplant and were denied.
- Ryan, from 2013 to present day, exhausted, repeatedly, all administrative processes attempting to obtain fully adequate medical care.
- June 2017, with no alternative other than Ryan's death; *CDOC* ordered Ryan's Medicaid into place and Ryan underwent autologous stem cell transplant under CDOC assigned CBCI at Presbytarian St Lukes (PSL) Hospital. *Medicaid fully approving and covering the procedure.*

5

- By then, Ryan had undergone over (4) years of intensive chemo therapy, (41) rounds and (2) additional rounds of hospitalized, aggressive DTPACE Chemo treatment. Accumulating, over that period of time, *all* damages to her body and organs previously listed.

### B) Technical Assault and Battery (Defendant CDOC) in violation of the Eighth and Fourteenth Amendmendts:

- Ryan suffered significant and multiple impact as a result of her guardian turning over official authority and official policy regarding approvals and denials of all medical care to Defendant contractor; CHP (et al).
- CDOC knowingly and willfully, spanning years, kept Ryan within a zone of danger by never resolving, never heeding, never even acknowledging Ryan's extensive administrative processes. By showing such deliberate indifference; CDOC acted with reckless disregard in allowing, for years, the *only* ability to keep Ryan alive as being such intensive and extended chemo therapy; including (2) rounds of the most aggressive procedures there is, which is, DTPACE. Which, Ryan's oncologist and hematologist, forced by their own medical powers, upon CDOC, by directly admitting Ryan to Aurora South Hospital, in January 2017, when she appeared, for a regular appointment at RMCC in such poor condition they deemed medical necessity.
- Under due process scrutiny, Ryan contends CDOC committed technical battery and assault; cruel and unusual punishment, in denying Ryan adequate medical care by placing CHP in official authority, when Ryan was in CDOC care and custody; not in the care and custody of a privately contracted insurance carrier.
- Whether technical assault and battery rises to a level of knowing intention (or) premeditated; is a determination for a jury upon hearing evidence.

### C) Deliberate Indifference resulting in Denial of Adequate Medical Care in violation of the Eighth Amendment. (Defendants United States and Federal Bureau of Prisons)

- AHCA, with specifity to the inmate catastrophic provisions is undeniably, a full and complete product of United States legislators. It is a moot point whether one believes in it (or) past and present administrations and legislators utterly fail in framing the logistics into our correctional system. Reality, is that it is, was and remains the law at the time of Ryan's medical need. As law, it must therefore be upheld.
- Ryan meets the direct entity prong against the United States due to the unequivocal fact that if Ryan prevails in declatory judgment that her constitutional right to adequate medical care is violated; the United State, after now (8) years, (2) administrations, (4) sweeps of both Congress and Senate; know, or should know, or have/had the capacity to know 'what' and 'how' their corrections system's institutionalized medical care 'works'. And, were directly responsible to incorporate adequate law that could handle. Defendant Federal Bureau of Prisons, as an agent of the highest law enforcement

6

we have; in the Attorney General; also meets the direct entity prong for same and similar reasons stated above.
- Ryan meets the indirect liability prong as both entities, spanning a minimum of eight years, have maintained continual knowledge of the medical care within their corrections system and have been fully aware of the AHCA law with specifity to the inmate Medicaid provision.  Both know, or should know or have/had the capacity to know; where issues in implementing, executing and enforcing exist.  Within all 50 states.
- In the case of Federal Bureau; they have specific scope of duty to provide technical support, for the betterment of the system.  Ryan contends that ".. the Eighth Amendment draws its meaning from the evolving standards of decency that mark the progress of a maturing society…where Court cited that standards of decency in prison, rise, with Society's standard of living."  Davenport v DeRoberts, 844 F.2d 1310, 1314-16 (7th Cir 1988)

D) **Deliberate Indifference in violation of the Eighth Amendment (Defendant CDOC et al)**

- Ryan, unequivocally, was in excellent health as determined by CDOC screening, upon entry in November 2012.
- Ryan, unequivocally, has been continually incarcerated by CDOC since.
- Ryan, unequivocally, has followed every medical order by *all of her CDOC assigned* internal and *external* providers.
- Ryan, unequivocally, has extensively followed every administrative process available to an inmate to *enforce* and *protect all* medical care CDOC (et al) **has made available to her.**
- Ryan, unequivocally, has voluminous *medical history,* on file, **both internal <u>and external</u>** of CDOC (et al) as her standard of care, for her highly complex diseases, require constant specialists monitoring **via her blood and her body.**
- Ryan meets the direct entity prong on multiple levels:  1) CDOC (et al) has the absolute duty to provide adequate medical care and can do nothing that could prevent Ryan from a full recovery once released.  Must provide and meet all symptomatic and palliative care needs.  Must do nothing that jeopardizes Ryan's very life and physical safety.
- Knowingly, and with years (in Ryan's case) *contracted* an outside, for profit, private insurance carrier to handle *all* approvals and denials of inmate medical need.  Determination of exact specifics of that contract is a matter for due process as Ryan is heard.
- Ryan meets the indirect prong, in that CDOC (et al) clearly and unequivocally is duty required by law, to be held in enough of a position of trust to incarcerate Ryan.  No matter what her needs are (or) become, in a competent and capable manner that upholds all law.
- Knowledge of that scope, duty and law combined with willfulness to employ all CDOC and contractors.  To do so with wanton disregard for and to act in accordance with all system standards a law enforcement agency has is unconscionable.
- Due and compulsory process is available to the Court to verify all alleged by Ryan to be facts; of specific dates and events, too voluminous to be held <u>at pre-hearing level "short and plain".</u>  And are, within original filing.

### E) Medical Malpractice resulting in Gross Negligence (N.P. Hilary Victoroff, personal capacity)

- Ryan preserves ability to move for *res gestae* evidence in this claim.  Specific to Hilary Victoroff.
- N.P. Victoroff was the CDOC assigned provider to Ryan, at the time of this incident.
- End January 2017, Ryan was admitted to Aurora South Hospital under the medical power of her CDOC assigned oncologist and hematologist for aggressive DTPACE.  Direct admitted, from RMCC Aurora and not returned to facility custody.
- At discharge on Feb. 3, 2017; Victoroff and DW Clinic ordered Ryan's return, under the strong objections of her security detail questioning 'why' the standard policy of hospitalized inmates returned for exam to DRDC Infirmary was being overridden.
- Ryan was delivered, on this Friday date, at aprx 3:00 pm and directly into the hands of N.P. Victoroff.
- Victoroff was clearly told, by Ryan, that Dr. Burke's direct order was for "30 minutes or less" to the ER at Aurora South if a temp of 100.3 (or) higher occurred.  Victoroff clearly responded: "I believe you".  The exchange witnessed and heard by multiple CDOC staff.
- Victoroff then left, for her regular Saturday, Sunday and Monday days off (and) left no orders for vitals monitoring or care until her return on Tuesday.
- Which, per CDOC Clinical *and* Security policies; left Ryan with no ability to access medical care **_unless_** Ryan could get a staff person (non-medical staff) *to verify* and allow Ryan to access the clinic and medical staff.
- Ryan, by Saturday, knew she had a temp.
- Asserted herself, through security staff, into the clinic where an R.N. who knows Ryan well; *consented* to monitor her temperature.
- Ryan registered over 99.0 and just under the 100.3 mark.
- The next day, Ryan was found by security staff, unresponsive in her cell, removed to clinic, where she spent the entire day in and out of coherency, loss of kidney and bladder functions and increasing fever.
- By the time that staff received an order from a provider for a routine CBC (which proved deep neutropenia) and made the on-site call to send Ryan to the DRDC infirmary; Ryan's temp was 103.8
- The diagnoses of:  critical neutropenic fever, Influenza A, a spider bite to a finger on Ryan's right hand that had occurred while unresponsive in dense population cell and that had rapidly turned into a staph infection that then rose to MIRSA in location of the bite.
- Diagnoses by CDOC assigned Dr. John Burke M.D. and his practicing team at Aurora South Hospital.
- Hilary Victoroff is a mid-level general scope of practice registered nurse practitioner.
- Ryan lived.
- Discharged aprx (10) days later.  Recovered at DRDC Infirmary.
- Went in for 2nd round of DTPACE in March 2017.
- Housed infirmary since, with the exception of May 18, 2018 through May 25, 2018.

8

### F) Medical Malpractice and Reckless Disregard (Defendant N.P. Laura Sommerschield)

- Ophthalmologist surgeons, assigned to Ryan by CDOC on referral by CDOC assigned oncology specialist Dr. John Burke; verified in mid-October 2017 that the extended use of the chemo drug Dexamethasone caused aggressive growth cataracts, in Ryan's eyes, that were so thick they could not see into Ryan's eyes.
- Cataract vision loss began in July 2017. Ryan reported to CDOC and Dr. Burke.
- Burke referred to specialist care in August 2017.
- Sommerschield, through CHP, scheduled an *optometrist* exam consult in mid-October 2017. The *Optometrist,* when unable to see into Ryan's eyes, brought in, on that day, an ophthalmologist surgeon to examine.
- October 25, 2017, in DRDC, Ryan then developed an additional, in right eye, (2) obvious to the eye hematomas. Sommerschield, placed a telephone call to the *optometrist* and then claimed, to Ryan, when Ryan later began to question 'why' it was taking so long to fulfill the orders she had been told by *surgeons* as "immediate next" surgery and beginning with left eye; that the optometrist (Dr. Williams) had "told her" that a second opinion, for need, was being "asked".
- In reality, on later investigation through specific questioning from Ryan; Williams had stated that he felt *the hematomas* could "wait" for surgeon's *second opinion* because according to his computer screen; "immediate next" for *surgery* **was** surgeon ordered.
- As more time and rapid vision loss went by; Ryan asked Dr. Burke to intervene and Ryan was then near immediately scheduled for pre-op on November 20, 2017.
- Surgeon then scheduled for "Urgent" surgery.
- Surgeon, verifiably, direct called Sommerschield and then reported, not only to Ryan but also to her administrators at Denver Health; the specifics of that call. Surgeon showed Ryan, when Ryan expressed her fear that Sommerschield would not obey "Urgent"; her written personal cell phone number on the print copy of Ryan's transfer and medical papers, given so she could be reached directly (and) then handed those papers to Ryan's security detail.
- Sommerschield *still* left *her* orders for "April 2018" surgery in place. Repeatedly attempting to claim no fault, as "DH sets all schedules". Unknowing to her until now, that administrative review, by Denver Health, and full disclosure of all three (options given every time, for all inmates) scheduler's offered dates to CDOC providers; was being shown to Ryan at each visit.
- "April 2018" was a personally chosen and kept date; by Laura Sommerschield.
- Ryan, again went to Burke for intervention.
- Ryan, had surgery on her left eye on December 18, 2017. On prep, the charge nurse commented how wonderful it was that at the age of 60 years that Ryan had "only" minor kidney insufficiency. Denver Health computers are direct tied to CDOC. Startled, Ryan asked the nurse to verify patient information and inmate #. Then, in order to safely proceed to surgery, Ryan listed her extensive history. Which surgeons then determined to need their cataract specialist to have perform. Ryan was bumped to end of day in order for him to be called in.

9

- At next day post-op, surgeon delivered news of surgery failure due to extent of growth and having "waited too long". That the left eye must be "redone".
- Sommerschield was (according to surgeon) "tested" to see which of (3) dates given she would choose. January 2, 2018, January 9, 2018 and latter January 2018. Ryan was verbally reassured that her file was "flagged" and they would not allow another extended schedule.
- Sommerschield chose latter January 2018.
- Denver Health intervened and Ryan's second surgery on left eye was executed on January 2, 2018. No allowance to Sommerschield, to choose right eye surgery was executed by Denver Health schedulers, which was done on January 11, 2018.
- A University Hospital specialist surgeon was brought in for the second surgery on left eye. (and) both remaining surgeries were done in the large and adequate for Ryan's high risk(s) O.R. As Denver Health now had, *from Ryan, not CDOC,* full medical history. Albeit only verbally given at that time, by Ryan.
- Laura Sommerschield is a mid-level general scope of practice registered nurse practitioner.
- Final (so far) diagnoses: Detached retina in left eye. Hemorrhaged retina in right eye with no detachment of retina yet. Extensive vitreous detachments in both eyes with vitrectomy (sic) surgeries recommended.

### G) Technical Assault and Battery (Defendants Victoroff, Sommerschield and CDOC (et al)

- Victoroff and Sommerschield continuing under tort; CDOC (et al) in violation of Eighth and Fourteenth Amendments.
- At the time of the events stated in claims (E) and (F), Victoroff and Sommerschield were both under very specifically, chosen by Ryan, wording within "Refusals of Care" (ROC) forms.
    - Which are, per CDOC policy, legally binding sworn affidavits *when filled out and signed by the inmate,* that bind all parties to 'what' the ROC states. Ryan's ROC's on both, are very clear and succinct removal of both from *any* medical care of Ryan and involvement in her needs, with exception of emergency and immediate essential to life. They must be under *direct supervision of CDOC assigned specialists: Burke, RMCC, Nash, CBCI.*
    - ROC's flagrantly and repeatedly disregarded, even through extensive administrative processes by both. Until and only under asserted legal duress from Ryan to CDOC (et al) to enforce. Spanning years in Victoroff's case and months in Sommerschield's case.
    - Victoroff finally binding herself on May 22, 2018.
    - Sommerschield binding herself on July 11, 2018.
    - The physical damages asserted in claims (E) and (F) constitute, at minimum, technical assault and battery.
    - Ryan preserves ability to move for presentation of *res gestae* against both in regard to this claim.

10

- Defendant CDOC (et al), by admission of the "ROC" form and policies (and) by admission of their own administrative forms and how they verifiably handle the grievance and administration's processes; knowingly and willfully, spanning years, handled Ryan's need of enforcing protection for Ryan's physical safety; allowed Victoroff and Sommerschield's disregard of the ROC's they were under. *Until an inmate, in Ryan* acted in their absence to expose. An effort that took literally; years and months.
- During which, Ryan suffered physical damage that became both life-threatening (and) permanent.
- By CDOC admission, in finally reaching cognizant level on May 18, 2018 (and) July 11, 2018; and enforcing Ryan's ROC's against Sommerschield and Victoroff; it was reasonable that CDOC (et al) *knew* the ROC was and is, binding on all parties.
- Both events, if CDOC (et al) had enforced their own affidavit and grievance processes; were preventable.

### H) Deliberate Indifference resulting in Gross Negligence (Defendants Tiona and Mix)

- Ryan meets the direct prong with Defendant Mix. As the CDOC contracted carrier responsible for all approvals and denials of the medical care in Ryan's case; including state and federal government's controlled Medicaid; she acted, each and every time, in official authority.
- Medicaid under AHCA, is not in place, nor does any directive within the federal law exist; that provides for *only* "after the fact" Medicaid payment.
- Nor, does Medicaid discriminate against Ryan because she is incarcerated.
- Nor provides for a privately employed and privately paid person to be 'written in by a contract', even when contracted by a government agency, as a governmental and therefore immune party.
- By admission of every denial for transplant, Jennifer Mix deliberately, knowingly and willfully showed both indifference (and) as a board certified, licensed M.D.; reckless disregard. The result(s), under due process will show nearly costing Ryan her life. Ryan refers to specific dates within original filed Complaint with Jury Demand, Claim One, Part One.
- Ryan also meets the indirect prong. (Mix)
- Ryan meets, with Defendant Tiona, the indirect prong only. As Tiona did act, at all times, with the official capacity of a CDOC employee.
- Tiona is, however, a board certified, licensed M.D. who held herself, at all times, as an "expert" in under oath testimonies during numerous other lawsuits. Indirect prong is met, as Tiona held the knowledge, or had the capacity to know, or should have known when she was acting in Ryan's case that she was, either *not* the same caliber as CDOC assigned specialists. Known she acted recklessly (and) had fully available to her, the specifics of the new federal law.
- Ryan refers back to Claim One, Part One of original filed Complaint with Jury Demand, for extensive details and specificity of Tiona, literally spanning years, defying CDOC

11

orders, refusing specialists, CDOC M.D.'s, CDOC nurse practitioners and all's numerous, repeated requests for specific levels of care, accommodations, medications (including essential to life medications) and transplant.  Holds specific details of a personal verbal attack, engaged in with Defendant Mix via email on or around early January 2016, which was exposed to Ryan by her CDOC assigned M.D.  Tiona further committed various letters and administrative responses placing denials of care into writing.   Details, within Claim One, Part One.
- Ryan contends that Tiona is *not* immune indirectly and should be held to stay in this litigation so that probing under due process can occur.
- Ryan preserves ability to mover for *res gestae* evidence against both Defendants.

**VIII)  Previous lawsuits:**
None.

**IX) Administrative Relief:**
Exhausted.

**X)  Request for Relief:**
- Declatory judgment that Defendants United States and Federal Bureau of Prisons failed to instill the new federal law of the Inmate Catastrophic Medicaid Provisions into the U.S. Correctional system (et al) and into the Colorado Department of Corrections (et al) to the extent, that Ryan's Eighth Amendment right to adequate medical care was denied.

- Declatory judgment that CDOC (et al) contractually placed Defendant CHP (et al) as the official authority to institute CDOC (et al) official policies specific to the Inmate Catastrophic Medicaid Provisions (and) to act within that capacity  to approve and deny Medicaid covered and government medical care to Ryan.

- Declatory judgment and compensatory monetary damages in the same amount as cost annually is now, to CDOC (et al) in order to lifelong enable Ryan to care for herself and the damages she suffered as a result of CDOC's  failing to obey state statutes and constitution (and) federal statutes and constitution. And regulatory and accreditation standards regarding use of nurse practitioners and administrative policies.  TB.D. annual amounts and estimated life expectancy of Ryan through due processes and compulsory processes.

- Issue injunction ordering Defendant CDOC (et al) to provide adequate medical care, at all times, by following all outside contracted specialists, medical doctors, DEA federal regulators orders (and) Medicaid provisions.

- Award jury determined compensatory damages against Defendants Mix, Tiona, Victoroff and Sommerschield for physical, emotional and permanent damages suffered as a result of all acting in both equal capacity as specialists (and) in violation of federal and state law (Mix) regarding insurance.

- Award punitive damages against Defendants (1,2,3) at maximum level allowance by law to a prisoner.

- Award punitive damages against Defendants (4,5,6,7,8) at the amount(s) that the Jury believes Plaintiff is entitled.

- Grant such other relief as it may appear the Plaintiff is entitled.

**XI) Jury Demand**
Yes.

**XII) Declaration of Perjury**
I declare under penalty of perjury that the information in this motion and affidavit is true and correct. See 28 U.S.C. 1746; 18 U.S.C. 1621.

*[signature]*
Shawnee K. Ryan
July 12, 2018.

**Certificate of Mailing**
I certify that I have mailed a true and accurate copy of this Complaint with Jury Demand (Amended) by placing same, postage prepaid and correctly addressed, in the official date stamped outgoing mail system of the Colorado Dept. of Corrections on this 12th day of July, 2018.

*[signature]*
Shawnee K. Ryan

Clerk of Court
Alfred A. Arraj US Courthouse Rm. A-105
Denver, Colorado  80294

**Colorado Department Of Corrections**

Name: Lauren Rhea
Register Number: 159466
Unit: DRDC-Infirmary-3
Box Number: 39004
City, State, Zip: Denver, CO 80239

STATE OF COLORADO
OFFICIAL MAIL
PENALTY FOR PRIVATE USE

FACILITY: DRDC  DATE REC'D: 7-25-18
STAFF LAST NAME: Ricardson
OFFENDER LAST NAME: Ryan
DOC #: 159465

Clerk of Court
Alfred A. Arraj US Courthouse
901 19th Street Room A-105
Denver, Colorado 80295

ZIP 80216
02 1W
0001361571 JUL 26 2018
$001.10
U.S. POSTAGE >> PITNEY BOWES