IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  18 – cv – 00956 – GPG

SHAWNEE RYAN,  Plaintiff

V.

Defendants:

UNITED STATES OF AMERICA (United States)
FEDERAL BUREAU OF PRISONS (et al)
COLORADO DEPARTMENT OF CORRECTIONS (et al) (CDOC)
CORRECTIONAL HEALTH PARTNERS (et al) (dba Correctional Health Partners, Inc., dba Correctional Health Companies, Inc., dba Correctional Corporation of America, dba Physician Health Partners, dba CHP Companies, Inc., dba Correctional Healthcare Physicians, P.C.)
DR. JENNIFER MIX, M.D. (personal capacity)
DR. SUS AN TIONA M.D. (personal capacity)
HILARY VICTOROFF N.P. (personal capacity)
LAURA SOMMERSCHIELD N.P. (personal capacity)

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 07 2018

JEFFREY P. COLWELL
CLERK

---

**Correction to Complaint with Jury Demand (Amended)**

---

Plaintiff Shawnee Ryan (Ryan), comes now and makes the following correction to Complaint with Jury Demand (Amended):

On a review of her handwritten filing of July 12, 2018; Ryan realizes she inadvertently forgot to insert Defendant CHP (et al) in specific claim(s) against and in Demand.  As a result, her filing is in need of correction as follows:

- **VII) Cause of Action:**
  **I)     Defendant CHP (et al) (#4): Deliberate Indifference resulting in Reckless Disregard and Negligence (and) Misuse of an Official Policy Resulting in Injury and Denial of Adequate Medical Care**
- As the private, for profit corporate entity(ies) that CDOC (et al) contractually assigned as a third party administrator, to be their official policy, official authority and moving force of the new federal AHCA law; Ryan files under Federal Torts Claim Act 28 U.S.C. 1346 (b) 2671-80.
- Ryan relies on specifics stated not only in all other claims within the Complaint with Jury Demand (Amended) but also her original filing of Complaint with Jury Demand, filed April 23, 2018 (not limited to but with specificity within Claim One, Part One of original

1

filing) for specific dates and events which show CHP (et al) as the CDOC (et al) assigned approval and denial of all medical care in Ryan's case.
- Ryan meets the direct prong of the Deliberate Indifference standard in that CHP (et al) undeniably controlled all of Ryan's approvals and denials of care.
- No other entity, other than CHP (et al), had access to approve and deny medical care to Ryan, at any time, throughout all subsequent years of denials.
- Ryan meets the indirect and objective prong of standard, in that CHP (et al), represents themselves to Ryan's Guardian (CDOC et al) (and) nationwide throughout our correctional system; as qualified medical and professional insurance coverage. CHP (et al) does/did know, has/had the capacity to know and should know; that Ryan's diagnoses and all her orders from outside assigned specialist is/was extreme catastrophic cost, is/were serious to the point of life-threatening (and) would be extended admitted in hospital. Summarized as meeting all requirements for Medicaid to cover.
- Ryan further contends that CHP (et al) was, and is, also fully aware that as a private insurance carrier they, nor any of their representatives, have any authority to approve or deny the state and federally governed Medicaid coverage.
- Ryan contends that CHP (et al) is aware that when an inmate is covered by the new federal law Medicaid coverage; CHP (et al) receives no monetary gain or reimbursement for their services.
- Ryan contends that by placing Dr. Jennifer Mix M.D. as the primary board certified and licensed medical doctor in charge; CHP (et al) is representing that their abilities within approvals and denials are of the same caliber of medical ability as all outside assigned specialists in Ryan's case. **Gil v Reed, 381 F.3d 649, 660 (7th Cir 2004):** "We hold that Gil may rely on his treating physicians to establish the standard of care, even if those physicians are agents of Defendants". Wherein the issue was the failure of prison personnel to follow a surgeon's "angry reaction and reassertion of his earlier instructions (when he learned that prison personnel were not following them)" were enough to raise a genuine factual issue."
- Ryan contends that, in fact, as Mix has supersedes those assigned specialists when she overwrites their orders; she and her employer CHP are holding Mix to be *a higher level of medical caliber* than Dr. John Burke M.D., Dr. Richard Nash M.D and each and every member of the assigned teams both of them have. Which are comprehensive teams consisting of specialists in Cardiology, Gastro Intestinal, Hematology, Orthopedics, Nephrology and more.
- Ryan further contends, that since diagnosis in 2013, continuing to present day, as CHP (et al) ***continues to break apart diagnostic and medical care ordered by assigned outside specialists; into sub-sections; allegedly in order to conform those orders into CHP networks and CHP direct billing to themselves and the sphere of their contract with CDOC (et al); allegedly in order to avoid the new federal law covering Ryan's ordered care;*** that CHP (et al) is continuing to place Ryan into a zone of danger that is reckless, endangering and ultimately negligent. "Adequate medical care defined in DeCologero  requires treatment by qualified medical personnel who provide services

2

that are of a quality acceptable when measured by prudent professional standards in the community; tailored to an inmate's particular needs, and that are based on medical considerations." **Fernandez v US,** 941 F.2d 1488, 1493 (11th Cir 1991); accord, **US v DeCologero,** 821 F.2d 39, 43 (1st Cir 1987); **Tillery v Ownes,** 719 F. Supp 1256, 1305 (W.D. Pa 1989), aff'd, 907 F. 2d 418 (3rd Cir 1990); **Howard v City of Columbus**, 239 Ga. App. 399, 405-06, 521 S.E. 2 d 51 (1999); **Barret v. Coplan**, 292 F. Supp. 2d 281, 285 (D.N.H. 2003).

**An example, in addition to the primary issue within this suit of Multiple Myeloma with Light Chain Cast treatment; but not limited to:** is Ryan's now 3 and ½ year need for extensive gastro-intestinal diagnostics and treatment, which was finally approved by CHP (et al) for a March 1, 2018, as a consult, *from the long-standing referral orders to an outside specialist* made by Ryan's primary assigned outside caregiver; Dr. John Burke M.D:

- As previously stated, CHP does no examination of an inmate and instead *relies solely upon the paper file and verbal contacts with CDOC's internally assigned providers. 95% of the time, or greater, those providers are mid-level, general scope of practice nurse practitioners.* Again, in this issue, predominately Defendants Sommerschield and Victoroff.
- Victoroff relevant to all previous details of gastro-intestinal and pancreatic needs.
- Sommerschield as the direct provider in 2017 and 2018.
- Ryan has preserved ability to file for res gestae evidence regarding both.
- **For the purposes of 'short and plain' regarding this example used:** Sommerschield put the referral (made continuously from spring 2015 through fall 2017) in to CHP (et al) for approval. The consult was held March 1, 2018.
- The specialist, Dr. Joel Levine M.D., very clearly and specifically spoke to Ryan at that consult, with witnesses present, that he needed to be the one to handle collections of specimens (some consisting of up to 72 hours in duration) (and) that he absolutely did not trust CDOC Clinical Services to do so (and) *could not diagnose*, if they (CHP) "would not approve" his orders being done in Denver Health admittance; from anything that CDOC collected in-house. That he needed to see and handle, in real time, his list of orders.
- Ryan, very clearly, to Dr. Levine, stated she understood very well. That she would do all she could to enforce his orders. That she had, due to all of her experiences to date with the entity of Denver Health (who has never been Ryan's assigned team and who had already (Sommerschield Medical Malpractice Claim in Original Complaint with Jury Demand Filing) experienced a great deal of difficulty in attempting to care for the complexity of Ryan's needs when Denver Health had no knowledge of her medical facts on file) and that she 'did not want' to be at Denver Health and 'shouldn't be'. Levine, very clearly understood Ryan and acknowledged his understanding.
- Where both left it, on March 1, 2018 was that Ryan would sign (4) medical release of information forms (RMCC, CBCI, Aurora South, Presbytarian/St. Lukes) for Levine so that

3

he could obtain *actual medical facts data* accumulated over 5 years *by CDOC assigned teams of specialists*. And that his orders would be submitted with Ryan following up.
- Ryan signed the forms same day. All outside assigned specialists and the facilities they practice in; complied.
- Due to the inmate (Ryan) acting in the absence of CDOC (et al) since fall 2017 when Ryan's eye surgeons encountered same issues Levine has; Denver Health now has full **medical fact records.**
- But, *only through March 1, 2018 as CDOC has not provided factual medical data since and Sommerschield has only continued to provide 'narrative notes' of her analysis of all needs.*
- From March 1, 2018 through to July 11, 2018; CHP (et al) and Laura Sommerschield N.P. broke apart Levine's orders into separate components.
- The machinations during those months, while doing so, are very well documented and cannot be stated as "short and plain" for purposes of the court at this time.
- To current day, Levine has not had his needs met, Ryan can do no more than what she has in order to get them met, Sommerschield and CHP continue to deny and Ryan remains in documented extensive high pain levels, does not have the medication she needs, continues to see declines in her basic blood labs due to primarily a lack of nutrition (pancreatic insufficiency) and loss of nutrients through excessive and extreme intestinal dysfunctions. Which cause her basic blood levels into low and critically low levels and subsequently endanger her ability to be dosed with Revlimid. A life essential drug.
- Ryan contends that it is a matter for due process, probing and compulsory processes to obtain and provide specific details of the contract between CDOC and CHP. **Smedley v Corrections Corp of America**, 175 F. App'x 943, 946 (10th Cir 2005), ("in order to hold CCA liable for the alleged tortious acts of its agents, Plaintiff must show that CCA directly caused the constitutional violation by instituting an official policy of some nature that was (is) the direct cause *or moving force behind* the constitutional violations..").
- Defendant CHP (et al), is and has been the only approval and denial of all medical care within Ryan's medical records to date.

**Correction/Addition to:  Request for Relief:**

- Declatory judgment against Defendant CHP (et al), as the official authority over the official policy of CDOC (et al) AHCA Inmate Catastrophic Medicaid Provisions and Colorado HCPF 14-006 for Deliberate Indifference resulting in Reckless Disregard and Negligence (and) Misuse of an Official Policy Resulting in Injury and Denial of Adequate Medical Care.
- Jury determined monetary and punitive damages for all physical, emotional and permanent damages suffered.

4

Ryan respectfully asks the Court to accept her correction filing at this time.

Shawnee K. Ryan, Plaintiff


**Certificate of Mailing:** Placed in the outgoing legal mail system of the CDOC, postage prepaid and correctly addressed on this _3rd_ day of _August_, 2018.

Shawnee K. Ryan

Clerk of Court
Alfred A. Arraj US Courthouse
901 19th Street Room A-105
Denver, Colorado  80294

5



**Colorado Department Of Corrections**

Name: Douglas Ryan
Register Number: 154982
Unit: RCC/G-3
Box Number: 39200
City, State, Zip: Denver, CO 80239

STATE OF COLORADO
OFFICIAL MAIL
PENALTY FOR PRIVATE USE

U.S. POSTAGE » PITNEY BOWES
ZIP 80216 $ 000.68
02 1W
0001361571 AUG 06 2018

Clerk of Court
U.S. 10th District Court
Alfred A. Arraj U.S. Courthouse
901 19th Street Rm. A-105
Denver, CO 80294

