IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00956-GPG

SHAWNEE RYAN,

    Plaintiff,

v.

UNITED STATES OF AMERICA (UNITED STATES),
FEDERAL BUREAU OF PRISONS (ET AL),
COLORADO DEPARTMENT OF CORRECTIONS, (ET AL),
CORRECTIONAL HEALTH PARTNERS (dba CHP, dba Correctional Health Companies, Inc., dba Correctional Corporation of America, dba Physician Health Partners, dba CHP Companies Inc., dba Correctional Healthcare Physicians, P.C. (et al)),
DR. JENNIFER MIECKS (personal capacity),
DR. SUSAN TIONA (personal capacity),
HILARY VICTOROFF N.P. (personal capacity), and
LAURA SOMMERSCHIELD N.P. (personal capacity),

    Defendants.

---

ORDER DIRECTING PLAINTIFF TO FILE
SECOND AMENDED PRISONER COMPLAINT

---

    Plaintiff, Shawnee Ryan, is a prisoner in the custody of the Colorado Department of Corrections ("CDOC") and is held at the Denver Reception & Diagnostic Center ("DRDC") in Denver, Colorado.  In apparent response to the Court's Order Directing Plaintiff to Amend Complaint issued on May 24, 2018 (ECF No. 15), Plaintiff filed self-styled document titled "Complaint with Jury Demand (Amended)" ("Amended Complaint") on July 17, 2018 (ECF No. 21), along with motions requesting that the Court take "judicial notice" of all her prior filings.

    As required pursuant to D.C.COLO.LCivR 8.1(b) and 28 U.S.C. § 1915A, the Court has reviewed the Amended Complaint and construed the pleading liberally because the

1

Plaintiff is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. Based on the Court's review of the materials filed on July 17, 2018, Plaintiff will be ordered to file a Second Amended Complaint if she desires to pursue her claims further as follows:

## I.   Requests for "Judicial Notice" of Record

In her Amended Complaint and in two separate motions that she has filed, Plaintiff requests based on her *pro se* status that the Court take "judicial notice" of all her filings submitted from April 23, 2018 through June 15, 2018 in construing her claims. (ECF Nos. 21, 24, and 27). However, the amended pleading that the Plaintiff was ordered to file must stand entirely on its own; accordingly, it must contain all of the allegations, claims, and parties the Plaintiff intends to be before this Court. *See Murray v. Archambo,* 132 F.3d 609, 612 (10th Cir. 1998) (stating amended complaint supersedes original). Plaintiff may not present her claims and request for relief in multiple documents filed at different times. *See* FED. R. CIV. P. 7(a) (allowing for one operative complaint document).

The general rule that *pro se* pleadings must be construed liberally has limits and "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Accordingly, Plaintiff's requests for judicial notice of the record shall be denied and the Plaintiff is directed to file a single Second Amended Prisoner Complaint which contains all of the allegations, claims, and parties which the Plaintiff intends to be before this Court. *Pro se* status does not excuse the obligation of any litigant to comply with the same rules of procedure that govern other

2

litigants. *See Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir. 1992); *see also Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994).

Plaintiff must include in one Second Amended Prisoner Complaint document (1) a short and plain statement of each and every claim she intends to pursue in this action, (2) all factual allegations supporting each claim she intends to pursue, and (3) a clear statement of the relief she is requesting or what she wants the Court to do. The Local Rules of this Court at D.C.COLO.RCiv.R 1.2 and 5.1(c) require *pro se* litigants to use the Court-approved forms found on the Court's website. The United States Court of Appeals for the Tenth Circuit repeatedly has upheld the requirement that *pro se* litigants comply with local court rules requiring use of proper Court-approved forms. *See e.g.*, *Georgacarakos v. Watts,* 368 Fed.Appx. 917, 918-19 (10th Cir. 2010) (district court did not abuse its discretion in dismissing civil rights action without prejudice for federal prisoner's noncompliance with local rules requiring use of proper court-approved form to file complaint and district court's order to comply), *Durham v. Lappin*, 346 Fed.Appx. 330, 332-33 (10th Cir.2009) (it was within district court's discretion to dismiss prisoner's complaint for failure to comply with local rules requiring pro se litigants to use court-approved forms, and local rule did not violate prisoner's equal protection rights). Therefore, the Plaintiff is again directed to utilize the Court's current approved Prisoner Complaint form in filing her Second Amended Prisoner Complaint. Extra pages may be attached to the form only if additional space beyond that provided in the form is needed to describe any claim or to assert additional claims.

## II.    Naming of Defendants

### A.    Use of the term "et al."

In the caption of her Amended Complaint, Plaintiff names the "Federal Bureau of

Prisons (et al)," the "Colorado Department of Corrections (et al)," and "Correctional Health Partners [and various titles under which it apparently conducts business] (et al)." (ECF No. 21 at 1). While the Court must construe *pro se* complaints liberally, Plaintiff is not relieved of her duty to comply with the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") by providing defendants with "fair notice of the basis for her claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). In addition, Fed. R. Civ. P. 10(a) provides that the "title of the complaint must name all the parties[.]" Therefore, while Plaintiff writes "et al" after the names of these three defendants in the title of her Amended Complaint, she is required to name all parties, and the Court does not consider Plaintiff's inclusion of "et al" as suing additional defendants. Accordingly, Plaintiff is advised that her Second Amended Prisoner Complaint must include all of the named defendants in both the caption of the complaint as well as the defendants' section of the complaint form. FED. R. CIV. P. 10(a).

Plaintiff may use fictitious names, such as "John Doe" or "Jane Doe," if she does not know the real names of the individuals who allegedly violated her civil rights. However, she must provide sufficient information about each John Doe or Jane Doe defendant so that the defendant can be identified for service. Sufficient information may include the date and time of the alleged violation, the job description of the defendant, and exactly what actions the defendant took. Further, Plaintiff must sufficiently and plausibly allege personal participation of each identified defendant in the Second Amended Prisoner Complaint.

### B. Federal Defendants

Plaintiff continues to name the Federal Bureau of Prisons ("BOP") as a defendant in this matter and has also added the United States of America as an additional

4

defendant. With regard to the BOP, the Court previously noted in its Order Directing Plaintiff to Amend Complaint that:

> [T]he allegations of Plaintiff's Complaint reflect that she has exclusively been a state inmate in the custody of the CDOC in connection with the events and circumstances alleged in the pleading. There are no facts to indicate Plaintiff was ever held in federal custody at any time relevant to her Complaint. Further, Plaintiff has failed to identify any facts to reflect how the Federal Bureau of Prisons . . . would be involved with matters concerning a state inmate who is incarcerated by the CDOC. Unless Plaintiff can provide specific facts in her amended complaint which would demonstrate how these federal Defendants participated in or were directly involved with the matters Plaintiff is seeking to litigate in this case, the Federal Bureau of Prisons . . . would not be proper parties to this action.

ECF No. 15 at 5.

In her Amended Complaint, Plaintiff represents that the BOP is liable in her case because of "the scope of duty, under the Attorney General, to provide technical support to State, Federal and Tribal corrections in the betterment of their systems" under 18 U.S.C. § 4042(a)(4). (ECF No. 21 at 3). However, 18 U.S.C. § 4042 establishes "the duty of care owed by the [BOP] to <u>federal</u> prisoners" in the context of negligence claims under the Federal Tort Claims Act ("FTCA"). *United States v. Muniz,* 374 U.S. 150, 165-66 (1963) (emphasis added); *see also Jones v. United States,* 355 Fed.Appx. 117, 120-21 (10th Cir. 2009) ("[The BOP] has an independent duty to 'provide for the safekeeping, care, and subsistence' of persons in its custody."). Pursuant to 18 U.S.C. § 3621(b), the BOP may designate the place of a federal prisoner's imprisonment to be a state penal or correctional facility, with 18 U.S.C. § 4042(a)(4) allowing the BOP to then provide technical assistance in that regard. Plaintiff again pleads no facts or circumstances from which it may plausibly be understood that she is or has been a federal prisoner in the custody of the federal government. Further, the provisions of § 4042 do not create a private right of action against federal or state officials in civil rights actions. *See Williams*

5

*v. United States,* 405 F.2d 951, 954 (9th Cir. 1969) (the only cause of action available through 18 U.S.C. § 4042 is pursuant to the FTCA).  "This conclusion is consistent with the Supreme Court's unwillingness to presume the existence of a private right of action where none is explicitly articulated by Congress."  *Harper v. Williford,* 96 F.3d 1526, 1528 (D.C.Cir. 1996) (citing *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 13 (1981)).

Additionally, under her current amended complaint as pleaded, Plaintiff cannot sustain an action pursuant to the FTCA because the FTCA applies to only lawsuits for money damages for injury or loss of property negligently or wrongfully caused by <u>federal</u> government employees acting within the scope of their employment.  28 U.S.C. § 1346(b)(1); *see Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) ("[t]he FTCA constitutes a limited waiver of the federal government's sovereign immunity from private suit").  Plaintiff's Amended Complaint reflects that for the periods of time encompassed by her allegations, she is and was a state prisoner who has been in the sole custody of the CDOC.  Plaintiff provides no facts to link a federal government employee acting within the scope of their employment to the injuries she claims.

Finally, Plaintiff attempts to name the United States of America as a defendant in this action, asserting that the federal government is liable to her under the authority of the "Inmate Catastrophic Medicaid Clause of the Affordable Health Care Act" which she indicates is found at 42 U.S.C. § 201 and 42 C.F.R. Part 435.1009(a)(1).  (ECF No. 1 at 2-3).  However, the United States government can only be sued when it has expressly given its consent to be sued.  *United States v. Mitchell,* 463 U.S. 206, 212 (1983).  The consent must be clear and unequivocal and it will not be implied. *United States v. King,*

6

395 U.S. 1, 4 (1969). As with any jurisdictional issue, the partying bringing a lawsuit against the United States bears the burden of showing that sovereign immunity has been waived. *See James v. United States,* 970 F.2d 750, 753 (10th Cir. 1992). United States' agencies also have sovereign immunity absent a waiver. *See FDIC v. Meyer,* 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit").

The authority within the Affordable Health Care Act which the Plaintiff cites and relies upon to impose liability upon the United States does not set forth an express consent for the federal government to be sued for the claims proposed by the Plaintiff. Further, the United States has not consented to be sued for monetary damages based on a constitutional violation or, in other words, for a "*Bivens*-type cause of action." *Meyer,* 510 U.S. at 486 (citing *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971)). While the United States has consented to lawsuits for money damages for injury or loss of property negligently or wrongfully caused by <u>federal</u> government employees acting within the scope of their employment under the FTCA, as the Court has pointed out previously to the Plaintiff, she provides no facts to link the federal government or a federal government employee acting within the scope of their employment to the injuries she claims.

Lastly in this regard, Plaintiff is advised that a person who brings a court action under the FTCA may do so only after exhausting his or her administrative remedies by filing an administrative claim in writing with the appropriate federal agency and the claim then being denied by the agency. 28 U.S.C. § 2675(a). This requirement is jurisdictional and cannot be waived. *Three-M Enterprises, Inc. v. United States,* 548 F.2d 293, 294 (10th Cir. 1977).

The purpose of the administrative exhaustion rule is to give the agency notice of the claim and time to investigate and determine whether the claim is realistic or subject to settlement prior to litigation.  *Haceesa v. United States,* 309 F.3d 722, 734 (10th Cir. 2002), *cert. denied,* 124 S.Ct. 65 (Oct. 6, 2003).   Enforcement of the administrative exhaustion requirement allows the agency time to develop the necessary factual background and apply its specific expertise, and promotes judicial efficiency in that the courts may not have to be involved at all, if the agency can resolve the dispute at the administrative stage.   *McKart v. United States,* 395 U.S. 185, 194-95 (1969).

Plaintiff does not allege in her Amended Complaint with regard to any potential FTCA claim she intends to pursue that she has fulfilled the jurisdictional prerequisite of filing and administratively exhausting a written claim with the appropriate federal agency concerning the allegations made in her Amended Complaint prior to filing this lawsuit.   In the statement of her claim(s), Plaintiff provides no facts or other information indicating she has administratively exhausted a written claim in this regard directly with the appropriate federal agency.   If Plaintiff has not administratively exhausted any potential claim(s) under the FTCA, *see* 28 U.S.C. § 2675(a), then the Court will be without jurisdiction to entertain those.   The issue of subject matter jurisdiction may be raised *sua sponte* by the Court at any time during the course of the proceedings.   *See McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988).   If the Plaintiff intends to pursue an FTCA claim in this lawsuit, then she must demonstrate that the case is within the court's jurisdiction under the administrative exhaustion rule.   *See United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994).

Plaintiff is advised that when claims are unexhausted prior to the filing of a lawsuit under the FTCA, the person seeking relief under the FTCA cannot "cure the jurisdictional

defect" while the suit is pending. *Gabriel v. United States,* 683 Fed.Appx. 671, 672 (10th Cir. 2017) (unpublished) (quoting *Duplan v. Harper,* 188 F.3d 1195, 1199 (10th Cir. 1999). The proper disposition of FTCA claims where the claims have not been administratively exhausted prior to the filing of a lawsuit is a dismissal of those claims for lack of jurisdiction, with the dismissal to be made without prejudice. *Gabriel,* 683 Fed.Appx. at 673-74.

### III. Plaintiff's Amended Complaint

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, in the Second Amended Prisoner Complaint Plaintiff is being directed to file under this Order, she must clearly identify or concisely describe each of the claims she is alleging by asserting what each named defendant did to Plaintiff, when the defendant did it, how the defendant's action harmed her, and what specific legal right she believes the defendant violated. *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). "[I]n analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not [her] conclusory allegations." *Hall*, 935 F.2d at 1110. Plaintiff's claims must be presented clearly and concisely in a manageable format that allows a court and a defendant to know what claims are being asserted and to be able to respond to those claims. *New Home Appliance Ctr., Inc., v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957). Neither the Court nor the Defendants are required to guess in order to determine the number or nature of the claims being asserted and what specific factual allegations in Plaintiff's pleading support each asserted claim. In filing her Second Amended Prisoner Complaint, Plaintiff is generally advised that:

### A. Declaratory Judgment Relief

9

In her Amended Complaint, Plaintiff seeks several and various declaratory judgments as relief in this lawsuit. Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, declaratory relief may be provided "in a case of actual controversy within its jurisdiction . . . [by] any court of the United States . . . [which] may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The Declaratory Judgment Act does not create substantive rights; it merely creates a procedure by which parties may obtain relief under some other substantive theory. *Farmers Alliance Mut. Ins. Co. v. Jones,* 570 F.2d 1384, 1386 (10th Cir. 1978). The main purpose of the Declaratory Judgment Act is to settle actual disputes before they ripen into violations of law or breaches of duty. *United States v. Fisher-Otis Co.*, 496 F.2d 1146, 1151 (10th Cir. 1974).

Plaintiff alleges that Defendants have already violated the law or breached a duty and therefore, the Plaintiff's claims are not properly raised pursuant to the Declaratory Judgment Act. "The mere fact that Plaintiff's requested relief would give Plaintiff the satisfaction that [s]he was wronged in the past does not create an actual, live controversy." *See Shepard v. Rangel,* 12-cv-01108-RM-KLM, 2014 WL 7366662 at *2 (D. Colo. Dec. 24, 2014) (citations omitted). "Plaintiff is seeking a retrospective opinion that these Defendants wrongfully harmed [her], which is an impermissible use of a declaratory judgment." *Id.* Accordingly, any relief requested pursuant to the Declaratory Judgment Act would be subject to dismissal.

### B. Defendant CDOC

Plaintiff indicates she is seeking monetary damages and injunctive/restraint protections from the CDOC. (ECF No. 21 at 34-35). In this regard, the State of Colorado, its entities and agencies, and any state officials sued in their official capacities,

are protected by Eleventh Amendment immunity.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Meade v. Grubbs*, 841 F.2d 1512, 1525-26 (10th Cir. 1988).  "It is well established that absent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies."  *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994), *overrruled on other grounds by Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998).  Plaintiff indicates she is presenting certain of her claims as civil rights violations pursuant to 42 U.S.C. § 1983, and the State of Colorado has not waived its Eleventh Amendment immunity for § 1983 civil rights claims, *see Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988), and congressional enactment of § 1983 did not abrogate Eleventh Amendment immunity, *see Quern v. Jordan*, 440 U.S. 332, 340-345 (1979).  Therefore, any civil rights claims pursuant to 42 U.S.C. § 1983 against the State of Colorado, its entities and agencies, and any state officials sued in their official capacities, will be barred by Eleventh Amendment immunity.

The Eleventh Amendment, however, does not bar a federal court action so long as the plaintiff seeks in substance only prospective relief and not retrospective relief for alleged violations of federal law, and a plaintiff should assert a claim for prospective relief against individual state officers in their official capacity.  *Verizon Maryland v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d' Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *Hill v. Kemp*, 478 F.3d 1236 (10th Cir. 2007); *see also Ex parte Young*, 209 U.S. 123, 159-60 (1908).

With regard to any state law tort claims for which the Plaintiff seeks to hold liable the State of Colorado or an agency of the state or a state employee acting within the

11

course of their employment, Plaintiff must plead facts which demonstrate compliance with the Colorado Governmental Immunity Act ("CGIA"), C.R.S. § 24-10-109, et seq.  "The notice provisions of the CGIA apply when federal courts hear Colorado tort claims under supplemental jurisdiction."  *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hospital Dist.,* 353 F.3d 832, 838 (10th Cir. 2003).  "Colorado courts strictly construe 24-10-109(1) and consistently hold that '[c]omplying with the notice of claim [as set forth in section 24-10-109(1)] is a jurisdictional prerequisite to suit.'" *Id.* (quoting *Gallagher v. Board of Trustees for University of N. Colorado,* 54 P.3d 386, 391 (Colo. 2002)).  "In addition to construing its terms strictly, Colorado courts consistently hold that a plaintiff must plead compliance with the CGIA's notice provisions in the complaint to avoid dismissal."  *Id.* at 840 (citing cases).  "When a plaintiff fails to plead compliance with the CGIA, and a court addresses the case in the context of a motion to dismiss, the court must accept as a matter of 'fact' that the plaintiff failed to comply with the notice provisions.  This lack of compliance, then, is a jurisdictional issue."  *Id.*  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction, which here would be the Plaintiff.  *Merida Delgado v. Gonzales,* 428 F.3d 916, 919 (10th Cir. 2005).

### C.     Corporate Defendant

From her Amended Complaint, Plaintiff appears to desire to continue to pursue civil rights claims under 42 U.S.C. § 1983 against Correctional Health Partners as named and under various "doing business as" titles.   However, Plaintiff does not provide specific facts that demonstrate she suffered an injury caused by an official policy or custom of this corporate defendant.  See *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (holding that traditional municipal liability principles apply to claims brought pursuant to 42 U.S.C. § 1983 against private corporations); *Smedley v. Corrections Corp.*

*of America*, 175 F. App'x 943, 946 (10th Cir. 2005) ("in order to hold CCA liable for the alleged tortious acts of its agents, [Plaintiff] must show that CCA directly caused the constitutional violation by instituting an official policy of some nature that was the direct cause or moving force behind the constitutional violations") (internal citation and quotation marks omitted). As Plaintiff was advised in the Court's prior Order directing her to amend her complaint, she must allege facts showing that Defendant Correctional Health Partners established or effectuated the unconstitutional policy or custom which caused her alleged injury. *Smedley*, 175 F. App'x at 946.

As the Plaintiff was advised in the Court's prior Order directing her to amend her complaint, in order to establish liability based on a policy or custom, a plaintiff must show that a policy or custom exists that was established or effectuated by Defendant Correctional Health Partners and that there is a direct causal link between the policy or custom and the injury alleged. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Isolated incidents generally are insufficient to show corporate liability, unless a plaintiff can demonstrate that "the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009). Further, the corporate actor "cannot be held liable solely because it employs a tortfeasor – or, in other words . . . cannot be held liable under § 1983 on a respondeat superior theory." *Dubbs*, 336 F.3d at 1216 (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691 (1978)).

### D. Personal Participation

To impose personal liability on a defendant under § 1983, allegations of "personal participation in the specific constitutional violation complained of [are] essential." *Henry*

13

*v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *see also Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("[i]ndividual liability . . . must be based on personal involvement in the alleged constitutional violation."). The Tenth Circuit has explained the personal participation requirement as follows:

> [b]ecause § 1983 [is a] vehicle[ ] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. It is particularly important that plaintiffs make clear exactly who is alleged to have done what to whom, . . . as distinguished from collective allegations. When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights "were violated" will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that "defendants" infringed his rights.

*Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013).

To the extent Plaintiff has named a supervisory official such as Dr. Susan Tiona, M.D., and any other supervisory officials as Defendants in this lawsuit, such defendants may not be held liable for the unconstitutional conduct of their subordinates on a theory of respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A supervisor can only be held liable for his or her own deliberate intentional acts. *See Id.*; *See also Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("[Section] 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation."). In order to succeed in a personal capacity § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the

defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199. Conclusory allegations of participation are not sufficient. Also, the Plaintiff may not group the actions of defendants and other individuals together to establish liability; she must be specific as to each defendant's personal participation.

The Court cannot assume that defendants bear personal responsibility for events or incidents allegedly causing a constitutional violation without facts reflecting an affirmative link between the violation and each defendant' s participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Furthermore, the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Whitington v. Ortiz*, App'x 179, 193 (10th Cir. 2009) (unpublished) (stating that "the denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations.") (internal quotation marks and citation omitted). Further, sending "correspondence [to high-ranking prison official] outlining [a] complaint . . . without more, does not sufficiently implicate the [supervisory official] under § 1983." *Davis v. Ark. Valley Corr. Facility*, 99 F. App'x 838, 843 (10th Cir. 2004) (unpublished).

**IV. Orders**

For the reasons discussed above, it is

ORDERED that Plaintiff's letter request for status **(ECF No. 30)** is **DENIED as moot**. It is

FURTHER ORDERED that Plaintiff's Motion the Court to Take Judicial Notice of Its Own Records **(ECF No. 24)** and Motion Court to Take Judicial Notice of Its Own Record **(ECF No. 27)** are both **DENIED** as discussed in this Order.   It is

FURTHER ORDERED that Plaintiff shall file, **within thirty (30) days from the date of this Order**, a Second Amended Prisoner Complaint as directed in this Order. It is

FURTHER ORDERED that the Office of the Clerk shall mail the Plaintiff a blank copy of the Court's current approved Prisoner Complaint form and the instructions.   As required by this Court's rules at D.C.COLO.LCivR 5.1(c), Plaintiff shall utilize the current Court-approved Prisoner Complaint form revised as of December 2017, along with the applicable instructions, in submitting her Second Amended Prisoner Complaint.   It is

FURTHER ORDERED that, if Plaintiff fails to file a Second Amended Prisoner Complaint that complies with this Order within the time allowed, the action will be dismissed without further notice.

DATED October 1, 2018, at Denver, Colorado.

BY THE COURT:

Gordon P. Gallagher
United States Magistrate Judge