# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No.        __18 – cv – 00956 – GPG__
                         (*To be supplied by the Court*)


**SHAWNEE RYAN, Plaintiff**

**V.**

**COLORADO DEPARTMENT OF CORRECTIONS (CDOC) (Full capacity)**
**CORRECTIONAL HEALTH PARTNERS (As contractual third-party administrative agent of CDOC while in business and professional capacity): (dba Correctional Health Partners, Inc.; dba Correctional Health Companies, Inc.; dba Correctional Corporation of America; dba Physician Health Partners; dba CHP Companies, Inc.; Correctional Healthcare Physicians, P.C.)**
**DR. JENNIFER MIX, M.D.  (personal and professional capacity)**
**DR. SUSAN TIONA, M.D.  (personal and professional capacity)**
**HILARY VICTOROFF N.P.  (personal and professional capacity)**
**LAURA SOMMERSCHIELD N.P. (personal and professional capacity**)
  (*List each named defendant on a separate line.  If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names of defendants listed in the above caption must be identical to those contained in Section B.  Do not include addresses here.*)
_____
### PRISONER COMPLAINT (THIRD AMENDED)

---

| NOTICE |
|---|
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain:  an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may only include only:  the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.<br><br>**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

1

### A.   PLAINTIFF INFORMATION
*You must notify the court of any changes to your address where cross-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

Shawnee Ryan.  #159496. 3531 South Logan Street #349.  Englewood, Colorado 80113.
Cell Phone:  720-431-8319.   E-Mail:  shawneeryan216@gmail.com

Shawnee Hyatt-Ryan.  Shawnee Hyatt. Shawnee Casad.
(*Other names by which you have been known*)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

     Pretrial detainee

     Civilly committed detainee

     Immigration detainee

     Convicted and sentenced state prisoner

     Convicted and sentenced federal prisoner

X    Other (*Please explain*)    I am not a detained convicted and sentenced state
                        prisoner.  I was paroled on October 4, 2018.

### B. DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the Complaint.  If more space is needed, use extra paper to provide the information Requested.  The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

**Defendant 1: (Name, Job title, and complete mailing address)**
**COLORADO DEPARTMENT OF CORRECTIONS**
1250 Academy Park Loop.  Colorado Springs, Colorado 80910.

**At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?**  X Yes        No (*check one).*  **Briefly explain**:

Per the federal law of the Inmate Catastrophic Medicaid Provision of the Affordable Healthcare Act and the subsequent enactment into Colorado state law (HCPF 14-006), Defendant 1 was/is the official authority to approve and deny coverage and care. Defendant 1 contractually assigned that official authority and power over to Defendant 2.  At all times within suit,

(Additional Page Follows)

2

"B.  Defendant's Information."

Defendant 1 was the guardian of my person, under state law, under my state court ordered sentence of incarceration.

**Defendant 1 is being sued in his/her     individual and/or X official capacity.**

**Defendant 2: (Name, Job title, and complete mailing address)**
**CORRECTIONAL HEALTH PARTNERS: (dba Correctional Health Partners, Inc.; dba Correctional Health Companies, Inc.; dba Correctional Corporation of America; dba Physician Health Partners; dba CHP Companies, Inc.; Correctional Healthcare Physicians, P.C.).  Job title:**  As contractual third-party administrative agent of CDOC

1125 17th Street Suite 100, Denver, Colorado 80202.  866-932-7185.

**At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?**  X Yes        No (*check one).*  **Briefly explain**:

Defendant 2 was contractually acting as the third-party administrator for Defendant 1, in the approving and/or denying all inmate medical care, and in my case, that included my federal Medicaid under the Inmate Catastrophic Medicaid Provision of the Affordable Healthcare Act.

**Defendant 2 is being sued in his/her   X individual and/or X official capacity.**

**Defendant 3**: **(Name, Job title, and complete mailing address)**
**DR. JENNIFER MIX, M.D.  Job Title:**  Supervising M.D.  for Defendant 2.

1125 17th Street Suite 100, Denver, Colorado 80202.  866-932-7185.

**At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?**  X Yes        No (*check one).*  **Briefly explain**:

Defendant 3 is employed by Defendant 2. And is the only signature and advising M.D. of record, for all medical care in question in this suit, in my case.  Defendant 3 acted contractually as the third-party administrator approving and/or denying all my medical care including my federal Medicaid under the Inmate Catastrophic Medicaid Provision of the Affordable Healthcare Act. Defendant 3 also a fully licensed general practice medical doctor, under state law, who fully represented herself and acted as an equal or greater than medical authority over all referring care specialists when she denied medical care in my case.

**Defendant 3 is being sued in his/her   X individual and/or X official capacity.**

(Additional Page Follows)

3

"B.  Defendant's Information."

**Defendant 4: (Name, Job title, and complete mailing address)**
**DR. SUSAN TIONA, M.D.   Job title:**  Former Chief Medical Officer CDOC

(Service/only known address) 1250 Academy Park Loop.  Colorado Springs, Colorado 80910.

**At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?**  X Yes        No (*check one).*  **Briefly explain**:

All medical records documentation, of the denials of medical care, and the appeals, in my case and at question in this suit, were/are directly signed and/or authorized by Defendant 4 and in collaboration, per records; with Defendant's 1, 2 and 3.  Additionally, as the lead medical officer in the CDOC, Defendant 4 was fully aware of the federal law of the Inmate Catastrophic Medicaid Provision of the Affordable Healthcare Act (and) her employer's (Defendant 1) contractual signing over of the official authority and power to govern that law in my case. Defendant 4 is also a fully licensed general practice medical doctor, under state law, who fully represented herself and acted as an equal or greater than medical authority over all referring care specialists when she denied medical care in my case.

**Defendant 4 is being sued in his/her    X   individual and/or X official capacity.**


**Defendant 5: (Name, Job title, and complete mailing address)**
**HILARY VICTOROFF N.P.  Job Title:**  Current employed Nurse Practitioner, CDOC
(Service/only known address) 1250 Academy Park Loop.  Colorado Springs, Colorado 80910.

**At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?**  X Yes        No (*check one).*  **Briefly explain**:

At the time of claim, there were standard operating procedures in place within clinical services that Defendant 5 did not obey.  At time of claim, the discharge instructions from the hospital clearly have written recommendations and preferences from Dr. John Burke on them and were not obeyed.  At time of claim, my state of health and illness have very clear protocol for care that was not obeyed.  At time of claim, Defendant 5 fully represented herself in an equal or greater capacity of medical ability and knowledge in order to override her employer's protocol, standard protocol for my health state, an entire team of medical specialists at the hospital including specific written wording of care by Dr. Burke; doing so as a state licensed registered nurse practitioner.

**Defendant 5 is being sued in his/her   X  individual  and/or   X  official capacity.**


(Additional Page Follows)

4

"B. Defendant's Information."

**Defendant 6: (Name, Job title, and complete mailing address)**

 **LAURA SOMMERSCHIELD N.P. Job title:** Current employed Nurse Practitioner, CDOC

(Service/only known address) 1250 Academy Park Loop.  Colorado Springs, Colorado 80910.

**At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?**  X Yes        No (*check one).*  **Briefly explain**:  At time of claim, Defendant 6 was fully aware that multiple choices had initially been given her for scheduling of eye surgery, by Denver Health, who is the primary hospital provider for Defendant's 1 and 2. Defendant 6, with direct tie to computer base, access to surgeons and specialists, was fully aware of all orders for urgency. Defendant 6 at time of claim, was fully aware of her employer's standards of protocol for adequate medical care to be given and also fully aware of my high-risk medical (M5) status.  An assigned status given by her employer to my inmate classification. Defendant 6 is a state employee of Defendant 1 and entrusted by Defendant 1 to provide and give adequate medical care according to all protocols. At time of claim, Defendant 6 fully represented herself in an equal or greater capacity of medical ability and knowledge in order to override referring specialists and surgeon orders. doing so as a state licensed registered nurse practitioner.

**Defendant 6 is being sued in his/her   X individual and/or   X official capacity.**

**C.  JURISDICTION**
*Identify the federal legal basis for your claim(s): (check all that apply)*

| X | 42 U.S.C. 1983 (state, county, and municipal defendants |

| ☐ | *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,403 U.S. 388 (1971)* (federal defendants) |

| x | Other: (please identify):   Federal question pursuant to 28 U.S.C. 1331 (claims arising under the Constitution, laws or treaties of the United States): Specific to:  42:1983 Civil Rights Act in violation of Eighth Amendment to US Constitution & 42 USCS (201), Title 42 Public Health and Welfare, Chapter 6A; specificity to AHCA Inmate Catastrophic Medicaid Provision. |

**D.    STATEMENT OF CLAIM(S):**

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the dates on which the incident occurred, the name(s) of the specific person(s), involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space Is needed to describe the claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D.  STATEMENT OF CLAIM(S)."*

**CLAIM ONE:  Charge of Deliberate Indifference against Defendant Colorado Department of Corrections (CDOC) (full capacity) for failing to adequately follow and instill the 2014 onset federal law of the Inmate Catastrophic Medicaid Provisions of The Affordable Health Care Act; into the Colorado Department of Corrections medical and clinical services divisions.**

Supporting facts:

- On CDOC entry **(Nov 2012)** Ryan was screened in excellent health, fully immunized.
- On or around **March 23, 2012**, Ryan fell ill at LaVista Correctional Facility (LVCF); could not fully recover; a specific blood lab revealed kidney dysfunction; resulting in Ryan's EAO (Executive Authorization Order), progressive return to DWCF in **May 2013**; where she was placed on medical hold in **November 2013**.  Ryan remained on medical hold until her release to parole on **October 4, 2018**.
- From **September 2013 through April 2014,** various diagnostics confirmed (2) fatal diseases:  Multiple Myeloma (blood cancer) and Light Chain Deposition/Cast Nephropathy aka 'Myeloma Kidney' aka Bence Jones Proteins (blood autoimmune) aka Monocolonal gammopathy of unknown significance. All definitions of both diagnoses as fast moving, aggressive, uncommon and complex three phase treatment as standards of care required. Three phases are:  1) Intensive and varied chemo therapy.  Purpose as only palliative and symptomatic to reduce disease levels low enough to be able to give life-extending second phase treatment of bone marrow transplant. 2) Bone marrow transplant.  Either autologous stem cell (or) allogenic donor.   3)  Post-transplant recovery spanning two years with a rebuild of immune system.  Maintenance drug (anti-cloning, anti-embryonic Class 5 DEA contractually controlled/regulated and monitored by federal regulators) taken daily for remainder of life.  Both diagnoses are terminal and non-curable.  All treatments are symptomatic and palliative in nature and all result in lifelong extreme medical costs of care.
- At full diagnoses **(April 2014)** Ryan had advanced, since **March 2013**, to Stage III Multiple Myeloma and Stage IV Light Chain Cast.  Resulting in a then 30% atrophy of right kidney, endangered immune and Myeloma lesions (bone fractures).

(ADDITIONAL PAGE FOLLOWS)

(ADDITIONAL PAGE, CLAIM ONE: "D.  STATEMENT OF CLAIM(S)")

- In **January 2014,** the federal law of the Affordable Health Care Act was enacted into law and subsequently adapted into Colorado state law (HCPF 14-006).  Included in the Act was and remains the Inmate Catastrophic Medicaid Provision.
- The CDOC interpreted the law as they did, by not altering their third-party administrator contract with Defendant CHP (et al,) who is and remained through to Ryan's release; the official authority to approve and deny all inmate medical care and procedures.
- CHP (et al) is and fully represents themselves as a private, for profit corporate entity and is not a government entity.
- The CDOC conflicted that official authority granted to CHP (et al) by allowing administrative and clerical control of the new government Medicaid coverage to remain in-house with Ryan's clinical nurse case manager who was assigned at Ryan's time of catastrophic diagnosing and a cardiac event in **November 2014.**
- Unequivocally, Ryan was among the first, if not the first inmate, in the State of Colorado, to encounter not only catastrophic but extreme and extended catastrophic medical care need at or around the same time as the CDOC was incorporating the new federal provision into administrative capacities.  Ryan's need was final diagnosed in **March and April 2014** and the new law enacted in **January 2014** with the State adaption enacting **in or around June 2014.**
- Ryan's medical need, Ryan, all of her outside assigned specialists, clinics and hospitals and at times three CDOC employed licensed medical doctors went on, from diagnoses beginnings in **November 2013 through to June 2017**; applying to CHP (et al) and CDOC for second phase treatment of transplant.  Five times, spanning those years, CHP (et al) in their contractual capacity under CDOC, as the official authority and power over all inmate medical care denied all orders and appeals for transplant.
- Medicaid has, for more than a decade, approved and covered the type of phased care for Ryan's diagnoses.  Medicaid has no networks nor discriminates against Ryan in her status as an inmate.
- CDOC then went on, in or around **May 2017**, after Ryan's near death **in February 2017**, to grant Ryan an autologous stem cell transplant in **June 2017**.  Authorized and fully covered under the same AHCA Inmate Medicaid Provision, available in **August 2014** when transplant was first applied for and with direct billings by involved entities through Ryan's clinical nurse case manager (internal) at CDOC.
- In doing so, CDOC did not involve CHP (et al) in the transplant approval and execution of Medicaid payments.
- Simultaneously and knowingly leaving the contractual authority of medical care approvals and denials directly in the hands of CHP (et al).  Determination of actual contract language is a matter for compulsory process discovery.

(ADDITIONAL PAGE FOLLOWS)

(ADDITIONAL PAGE, CLAIM ONE: "D.  STATEMENT OF CLAIM(S)")

- Which then went on, to affect the third phase recovery process as CHP (et al) continued to approve and deny all ongoing medical care for Ryan, including post-transplant vital medical care, requested by specialists to be hospitalized and fully covered under the Inmate Medicaid Provision.  On parole release, Ryan has been free to seek that care and do so under the same Medicaid coverage she had, but was denied, as an inmate.  At present time, Ryan has and continues to face the effects of long term and untreated neutropenia while incarcerated and faces weakened marrow to the extent that another transplant, this time allogenic donor; is necessary.  Ryan remains on Medicaid.
- The medically documented damage, to Ryan, resulting from the years of CHP (et al) using its authority in denying Ryan full treatment is as follows:  severely dilated left atrium of heart; chronic renal insufficiency and anemia with atrophy of right kidney; detached retina in left eye; detached vitreous in both eyes; vision loss; hypogammaglobulinemia; hyperlipidemia; gene mutation resulting in preliminary acute leukemia; acute pancreatitis; chronic orthothesis; Deep Vein Thrombosis; severe neuropathy in hands and feet.

- **CLAIM TWO:   Charge of Deliberate Indifference against Defendant Colorado Department of Corrections (CDOC) (full capacity), in contractually turning over official authority and power for all approvals and denials of inmate medical care, including government regulated Medicaid covered care; to the private, for profit and non-governmental corporate entity(ies) of CHP (et al) as the CDOC's third-party administrator.**

Supporting facts:

- Ryan incorporates all of the facts stated in Claim One as relevant to Claim Two.
- Additionally, Ryan attests that all administrative processes were clearly and finally exhausted during the years of CHP (et al) denials of Medicaid covered care.  Those processes are the processes of the CDOC and thus CDOC was fully aware, or should have been aware, that their contracted official authority over all approvals and denials of inmate medical care (CHP et al) was violating the provisions of the Inmate Catastrophic Medicaid Provisions of the Affordable Healthcare Act.
- At no time, can the CDOC achieve a claim that they were unaware of Ryan's case, her life essential needs and the costs involved.
- At no time, can the CDOC achieve a claim that they were unaware of the actions, or should have been aware, of their contractually granted official authority over an official policy (CHP et al).
- At no time, can the CDOC achieve a claim that they were unaware of the entirety of the new federal law and the State of Colorado's adaption of that law.

**CLAIM THREE:  Charge against CHP (et al) employee Jennifer Mix M.D. of Deliberate Indifference to life essential need of medical care**

Supporting Facts:

- At all times of Ryan's incarceration and onset of diagnoses **(November 2013 through October 4, 2018**), Defendant Mix was the sole final authority over what medical care Ryan received or was denied.
- Defendant Mix is not governmental immunized and is a private society employee of the private, for profit corporate entity of CHP (et al).
- Defendant Mix is a general practice licensed medical doctor without the equal or higher qualifications of all of Ryan's CDOC assigned specialists, surgeons and professionals.
- At all times, from **March 2014 through October 4, 2018**, Defendant Mix was aware, through the administration of CDOC, the contact she had with internal assigned CDOC physicians and practitioners, all administrative processes and Ryan's outside specialists, surgeons and professional caregivers themselves; of all of Ryan's diagnoses and medical needs.
- Over the periods of time in question, Defendant Mix personally denied life essential transplant and appeals five times.
- In **May 2017**, Defendant Mix was made aware by CDOC administration that her previous denials were over ridden and transplant would be provided under Medicaid.
- From **on or around October 2014,** with the hiring of former Chief Medical Officer Tiona; Defendant Mix engaged directly with Tiona, in the denials of transplant and life essential care to Ryan.  A specific incident **in or around January 2016** of an email between the parties, was so offensive to Ryan's then CDOC physician, Dr. Ariola-Tirella, that he showed and read Ryan the email itself.  Due process will reveal, in part, that the firm contention of both was that no transplant would ever be given to Ryan.  At the time, both Defendants Mix and Tiona were aware of the written order from CDOC in **Fall 2015** that if denied special needs parole; Ryan would be given a transplant and treatment under Medicaid.
- By holding herself in as equal or above the highly specialized outside providers, Defendant Mix violated her licensing and legal parameters as a general practice M.D. and is held accountable in equal capacity.
- At no time, can Defendant Mix or her employer achieve a claim that they were unaware of the availability to Ryan and CDOC of Medicaid coverage adequate to meet Ryan's medical needs. By denying life essential medical care to Ryan, Defendant Mix willfully, knowingly and wantonly caused physical harm to Ryan's person.  The results are stated within Claim One of this filing.

(ADDITIONAL PAGE FOLLOWS)

(ADDITIONAL PAGE, CLAIM THREE: "D  STATEMENT OF CLAIM(S)")

- Defendant Mix, in her full personal, professional capacity, has her signatures, statements and/or fully documented by outside and internal care givers statements denying all transplant requests spanning the years they were requested.  At no time, can Defendant Mix achieve a claim that she had government immunity nor was not involved in the denial of life essential medical care for Ryan.

**CLAIM FOUR:  Charge of Deliberate Indifference resulting in Gross Negligence against Hilary Victoroff N.P.**

- N.P. Hilary Victoroff was the CDOC assigned internal provider to Ryan at the time of this incident.
- **End January 2017**, Ryan was direct admitted to Aurora South Hospital under the medical power of her CDOC assigned oncologist and hematologist for aggressive DTPCE chemo therapy.  Direct admitted from the Rocky Mountain Cancer Clinic/Aurora and not returned to facility custody.
- At discharge on **Feb. 3, 2017**; Defendant Victoroff ordered Ryan's return, under the strong objections of Ryan's CDOC security detail and transport questioning 'why' the standard policy of hospitalized inmates returned for exam to DRDC Infirmary was being overridden.
- Ryan was delivered, on this Friday date, at aprx. 3:00 p.m. and directly into the hands of Defendant Victoroff.
- Victoroff was clearly instructed, by the written discharge orders and by Ryan that Dr. Burke (Ryan's oncologist) wanted Ryan in the infirmary and had verbally instructed Ryan that his orders for neutropenic fever are "30 minutes or less to Aurora South emergency room if temp reaches 100.3 or higher.  Victoroff had in hand, on Ryan's return, the written discharge orders and also was clearly and directly told by Ryan of Burke's verbal order. To which Defendant Victoroff clearly replied and was overheard by clinic staff as "I believe you."
- Victoroff then left, for her regular Saturday, Sunday and Monday days off (and) left  no orders for vitals monitoring or care for Ryan until her return on Tuesday.
- Which, per CDOC Clinical *and* Security policies; left Ryan with no ability  to access medical care unless Ryan could get a staff person (non-medical staff) to verify need and allow Ryan to access the clinic and medical staff.
- Ryan, by Saturday, knew she had a temp.
- Asserted herself, at personal risk with security staff, into the clinic where an R.N. who knows Ryan well consented to monitor her temperature and vitals.
- Ryan registered just under the 100.3 benchmark and could not have and did not receive care because no orders from Defendant Victoroff had been left.
- The next day, Ryan was found unresponsive in her cell by security staff, removed to clinic, where she spent the entire day in and out of coherency, loss of kidney and bladder functions and increasing fever.
- By the time the staff received an order from a provider for a routine CBC (which proved deep neutropenia) and made the on-site call to send Ryan to the DRDC infirmary; Ryan's temp was 103.8.

(ADDITIONAL PAGE FOLLOWS)

(ADDITIONAL PAGE, CLAIM FOUR: "D.  STATEMENT OF CLAIM(S)")

- Ryan preserves the ability to move for *res gestae* evidence, specific to Hilary Victoroff.
- The diagnoses of:  critical neutropenic fever, Influenza A, a spider bite to a finger on Ryan's right hand that had occurred while unresponsive in dense population cell and that had rapidly turned into a staph infection that then rose to MIRSA in location of the bite were made by Dr. Burke and his team at Aurora South.
- Hilary Victoroff is a mid-level general scope of practice registered nurse practitioner.
- Ryan lived.
- Discharged aprx 10 days later.  Returned to facility at DRDC and recovered at DRDC Infirmary.
- At no time, during this event, did Hilary Victoroff act within the standard operating procedures of CDOC nor did she act within her licensing and medical capabilities in her decision making. Defendant Victoroff willfully, knowingly and wantonly held herself to an equal or greater standard of ability and medical authority as Ryan's outside attending specialists; assigned to Ryan by her employer CDOC. As such, Defendant Victoroff is accountable to be held to the same standards as those specialists and hospital.

**CLAIM FIVE:  Charge of Deliberate Indifference resulting in Reckless Disregard against Laura Sommerschield N.P.**

Supporting Facts:
- Ryan preserves the ability to move for *res gestae* evidence, specific to Laura Sommerschield.
- Ophthalmologist surgeons; assigned to Ryan by CDOC on referral by CDOC assigned oncology specialist Dr. John Burke; verified in mid-October 2017 that the prolonged by years and extended use of the chemo therapy drug Dexamethasone caused aggressive growing cataracts in Ryan's eyes.  Cataract's so thick they could not see into Ryan's eyes at examination.
- Cataract vision loss began in **July 2017**.  Ryan reported to CDOC.
- Ryan reported to Burke, in **August 2017**. Burke referred to specialist care.
- Defendant Sommerschield, through CHP, scheduled an *optometrist* exam consult in mid-**October 2017**.  CHP approved for optometry.
- The Optometrist, when unable to see into Ryan's eyes, brought in on that day, an Ophthalmologist surgeon to examine.
- Orders for "immediate next" surgery to the left eye were entered by surgeon.
- **October 25, 2017**, in DRDC, Ryan then developed an additional, in right eye, two obvious to the eye hematomas.  Sommerschield placed a telephone call to the *optometrist* and then told Ryan, when Ryan later began to question 'why' it was taking so to fulfill the "immediate next" orders of surgeon, that the *optometrist* had "told her" that a second opinion, if needed, was being "asked".
- In reality, on later investigation through specific questioning from Ryan to Denver Health; the optometrist had stated to Sommerschield that he felt the hematomas could wait for surgeon's second opinion on the hematomas because according to his computer screen at the time, Ryan was ordered for "immediate next" surgery.
- As more time and rapid vision loss went by; Ryan asked Burke to intervene.  He did and directly to Denver Health surgeons.  Ryan was then near immediately scheduled for pre-op on **November 20, 2017.**
- Surgeon then scheduled for "Urgent" surgery.
- Surgeon, verifiably, direct called Sommerschield and then reported not only directly to Ryan but also directly to her administrators at Denver Health; the specifics of that call.  Surgeon showed Ryan, when Ryan expressed fear that Sommerschield would not obey "Urgent"; her written personal cell phone number on the print copy of Ryan's transfer and medical papers, given so that she could be reached directly (and) then had Ryan watch her hand those same papers to Ryan's security detail for direct return to facility.
- Even still, Sommerschield left her orders, with CHP verifying, for "**April 2018**" surgery to begin.  Repeatedly through administrative processes and direct contact(s) to claim "no fault" as (quote) "DH sets all schedules" (end quote).  Unknowing to Sommerschield

(ADDITIONAL PAGE FOLLOWS)

14

(ADDITIONAL PAGE, CLAIM FIVE: "D.  STATEMENT OF CLAIM(S)")

until now, that Ryan's surgeon had reported Sommerschield and Ryan's case to Denver Health administrative review.  The end result being that Denver Health has always offered choice to CDOC in scheduling and now gives three options (given every time, for every inmate) of scheduler's offered dates to CDOC providers with those and subsequent CDOC provider choices now internally verified against Denver Health recommendations and orders. Actions direct resulting from Ryan's surgeon acting.

- Also unknown to Sommerschield until now, Ryan was disclosed, by surgeons and staff, all actions and orders, while they still followed security guidelines, by Denver Health Eye Clinic for Ryan's medical needs.
- The date of **"April 2018"** had been a personally chosen date by Sommerschield and was the farthest out, at the time, that Sommerschield could get.
- Ryan was still not on schedule for urgent surgery and again went to Burke for intervention.
- Ryan had surgery on her left eye on **December 18, 2017**.  On prep, the charge nurse commented how wonderful it was that at the age of 60 years Ryan had "only" minor kidney insufficiency.  Denver Health computers are directly tied to CDOC computers. Startled, Ryan asked the charge nurse to verify Ryan's inmate number and date of birth. Then, in order to proceed safely to surgery, Ryan listed her extensive history.  Which surgeons then determined to need their cataract specialist to have perform and special provisions in the minimal OR setting they had available.  Ryan was then bumped to end of day in order for cataract specialist to come in and prep to occur.
- At next day post op, surgeon delivered news of surgery failure due to extent of growth and having waited too long for surgery. That lenses must be corrected and the left eye surgery redone.
- Sommerschield was (according to surgeon) tested to see which of three offered by schedulers dates she would choose:  **January 2, 2018; January 9, 2018 and latter January 2018.**
- Sommerschield chose latter **January 2018**.
- Denver Health intervened and Ryan's second surgery on left eye was executed on **January 2, 2018**.  No allowance to Sommerschield, to choose right eye surgery was given and Denver Health schedulers executed right eye surgery date of **January 11, 2018**.
- A University Hospital specialist surgeon was brought in for the second surgery on Left eye.  Both remaining surgeries were done in the large and adequate for Ryan's high risks O.R.  As Denver Health now had, from the inmate (Ryan) and not CDOC; full medical history.
- Laura Sommerschield is a mid-level general scope of practice nurse practitioner.
- At no time, during this period of time, did Laura Sommerschield act within her licensing and medical capabilities in her decision making. Defendant Sommerschield holds indirect and direct personal capacity liability as she willfully, knowingly and wantonly

(Additional page follows)

15

(ADDITIONAL PAGE, CLAIM FIVE: "D.  STATEMENT OF CLAIM(S)")

held herself to an equal or greater standard of ability and medical authority as Ryan's eye surgeon(s).  As such, Defendant Sommerschield does not have immunity and is accountable to be held to the same standards as those specialists and hospital.

**E.  PREVIOUS LAWSUITS**

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?        Yes      X   No (*Check one).*

*If your answer is "Yes," complete this section of the form.  If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit.  Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):          _____

Docket number and court:          _____

Claims raised:                    _____

Disposition: (is the case still pending?
Has it been dismissed?; was relief granted?)          _____

Reasons for dismissal, if dismissed:   _____

Result on appeal, if appealed:     _____


**F.  ADMINISTRATIVE REMEDIES**

*WARNING:  Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions.  See 42 U.S.C. 1997 e (a).  Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

  X    Yes         No   (*check one)*

Did you exhaust administrative remedies?

  X    Yes         No  (*check one*)

**G:  REQUEST FOR RELIEFS**

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

- **Jury determined judgment and compensatory damages,** against Defendant Colorado Department of Corrections (CDOC), for deliberate indifference in failing to adequately follow and instill the 2014 onset federal law of the Inmate Catastrophic Medicaid Provisions of The Affordable Health Care Act; into the Colorado Department of Corrections medical and clinical services divisions. The subsequent act of CDOC, in contractually turning over official authority and power to assign the federal and state controlled Medicaid, to the private, for profit and non-governmental corporate entity(ies) of CHP (et al) as the CDOC's third-party administrator in charge of approving and denying all inmate health care, who then acted in that third-party capacity, under CDOC authority and direct supervision, to pick and choose what medical care Ryan was allowed to have, including life essential medical care that was/is fully covered by Medicaid; resulted in violation of Ryan's right to adequate medical care under the Eighth Amendment of the United States Constitution.  Further resulted, with prolonging by years; extreme and life-threatening treatments of chemo therapy drugs that have resulted in permanent and debilitating physical damage to Ryan's vital organs and body. Now requiring lifelong intensive medical care.  At all times, from diagnosis in November 2013 to October 4th, 2018 when released; the CDOC placed their Agent CHP (et al) under the color of federal and state law and constitutionality with regard to all of Ryan's medical care approvals and denials.

- **Jury determined judgment, compensatory and punitive damages** against Defendant(s) CHP (et al); for deliberate indifference in denying Ryan's life essential needs for adequate medical care, that CHP (et al), in their contractually given by CDOC official authority, knew were covered by Inmate Medicaid Provisions.  The diversion, by denying Medicaid covered treatment, with subsequent alignment by CHP (et al) to their own insurance coverage and network for lesser and non-supported by specialists and surgeons medical care; spanned over four years and repeatedly continued despite exhaustion of all administrative remedies. The actions of CHP (et al), acting as a government agent in control of when and if Medicaid could be used in Ryan's case; did create and cause permanent and debilitating physical damage to Ryan's vital organs and body, that are and will continue to be life-threatening and will require lifelong intensive medical care.

(Additional page(s) follow)

18

(Additional Page: "G:  REQUEST FOR RELIEF")

- **Jury determined judgment, compensatory and punitive** damages against Defendant Jennifer Mix M.D. in her official, personal and professional capacity, as the sole official CHP (et al) final sign off on all approvals and denials of medical care in Ryan's case, including care fully covered and governed by Medicaid; from September 2013 to October 2018. Defendant Mix is a private, general qualified physician, working in corporate capacity with no governmental status nor immunity; who repeatedly held herself above her licensing and abilities in overriding the repeated, spanning years, orders for life essential and urgent care for Ryan by specialists, surgeons and professionals. The actions of Defendant Mix in control of when and if government Medicaid could be used in inmate Ryan's case (and) acting far outside her generalized professional abilities and licensing; did create and cause permanent and debilitating physical damage to Ryan's vital organs and body, that are and will continue to be life-threatening and will require lifelong intensive medical care.

- **Jury determined judgment, compensatory and punitive damages** against former Chief Medical Officer (Defendant) Susan Tiona M.D., who is a general trained medical doctor who repeatedly, spanning years, gave the CDOC official sign off and approvals to Defendant Mix's denials of life essential care for Ryan that were ordered by specialists, surgeons and professionals. By holding herself in the capacity of her judgment being equal or greater than the higher training of those specialists, surgeons and professionals, while simultaneously knowing she was also violating the availability to give the ordered care through Medicaid; Defendant Tiona repeatedly, spanning years, and despite exhaustion of all administrative remedies, acted willfully and wantonly and in December 2015 and January 2016 against the direct orders of her employer; in her acts of denial of adequate medical care for Ryan. Defendant Tiona's combined acts resulted in subsequently creating the only means to keep Ryan alive being intensive and aggressive chemo therapy drugs, treated over a prolonged period of time that resulted in permanent and debilitating physical damage to Ryan's vital organs and body that are and will continue to be life-threatening and requiring lifelong intensive medical care.

- **Jury determined judgment, compensatory and punitive damages** against Defendant Hilary Victoroff N.P. for her personal and professional acts on February 3, 2017 that placed Ryan in a life-threatening event from which Ryan could only survive by intensive and specialized

(Additional page(s) follow)

19

(Additional Page: "G:  REQUEST FOR RELIEF")

hospital care.  Defendant Victoroff is a general scope of practice nurse practitioner who held herself at the same standard of professional ability and authority over Ryan's highly specialized oncologist and his team of highly specialized physicians at Aurora South Hospital in making the medical decisions that placed Ryan in that life-threatening event. Defendant Victoroff acted both willfully and wantonly, out of her sole discretion, and outside of the standards of her license, her abilities and her employer.

- **Jury determined judgment, compensatory and punitive damages** against Defendant Laura Sommerschield N.P. for her personal and professional acts from mid-October 2017 through January 11, 2018, that resulted in permanent vision damage and loss to Ryan.  Defendant Sommerschield is a general scope of practice nurse practitioner who held herself at the same standard of professional ability and authority over Ryan's specialized surgeon and an entire team of oncology specialists and surgeons at Denver Health in making the medical decisions that did end costing Ryan ability for permanent vision correction(s) and leaving Ryan with permanent detached retina damage. Defendant Sommerschield acted both willfully and wantonly, out of her sole discretion, and outside of the standards of her license and her abilities.

- **Grant such other relief as it may appear the Plaintiff is entitled.**

**H.  PLAINTIFF'S SIGNATURE:**  I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28. U.S.C. 1746; 18 U.S.C. 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify that to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous agreement for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*S/Shawnee Ryan*
_____
Shawnee Ryan
3135 South Logan Street #349
Englewood, Colorado 80113
720-431-8319
shawneeryan216@gmail.com

20

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email address:  Gallagher_chambers@cod.uscourts.gov

*S/Shawnee Ryan*
_____
Shawnee Ryan
3135 South Logan Street #349
Englewood, Colorado 80113
720-431-8319
shawneeryan216@gmail.com

Clerk of Court:  cod_cmecf@cod.uscourts.gov  (CMECF SYSTEM)