1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
 2
      Case No. 18-cv-00956-MSK-MEH
 3    _____

 4    SHAWNEE RYAN,

 5         Plaintiff,

 6    vs.

 7    JENNIFER (I) MIX, HILLARY (I) VICTOROFF, LAURA (I)
      SOMMERSCHIELD,
 8
           Defendants.
 9    _____

10

11            Proceedings before MICHAEL E. HEGARTY, United

12    States Magistrate Judge, United States District Court for the

13    District of Colorado, commencing at 2:34 p.m., June 24, 2019,

14    in the United States Courthouse, Denver, Colorado.

15    _____

16            WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

18    _____

19                          APPEARANCES

20            SHAWNEE RYAN, appearing Pro Se.

21            EDMUND KENNEDY and AMY COLONY, Attorneys at Law,

22    appearing for the Defendants.

23    _____

24                      DISCOVERY CONFERENCE

25
```

2

1             P R O C E E D I N G S

2             (Whereupon, the within electronically recorded

3  proceedings are herein transcribed, pursuant to order of

4  counsel.)

5             THE COURT:  Case Number 18-cv-956, Shawnee Ryan vs.

6  Jennifer Mix, et al.  Make your appearances.

7             Ms. Ryan, just give us your full name, please.

8             MS. RYAN:  Shawnee Ryan.

9             THE COURT:  Thank you.  And for the defendants?

10            MS. COLONY:  Yes, Your Honor.  Amy Colony for the

11  defendants, Hillary Victoroff and Laura Sommerschield.  I

12  have with me today some summer interns.  I've got a couple of

13  law student interns.

14            THE COURT:  Okay.

15            MS. COLONY:  Johnny Wynn (ph) and Riley Gaughne

16  (ph) and then a college student, Amanda Leigh (ph).

17            THE COURT:  Thank you.  Welcome.

18            MR. KENNEDY:  Ed Kennedy for Defendant Mix, Your

19  Honor.

20            THE COURT:  Okay.  Thank you.

21            All right, Ms. Ryan, do you have something that you

22  want to bring to my attention?

23            MS. RYAN:  Actually, I think that the issue was

24  raised by Ms. Colony and Mr. Ringel, but I can recap it.  The

25  --

3

1          THE COURT:  You can sit if you want.

2          MS. RYAN:  The -- the orders on May 29th from the

3    Court, and I have the transcript that Ms. Colony ordered, the

4    Court, after asking me if I was asking for emotional loss and

5    suffering for defendants Victorhoff and Sommerschield, and I

6    am not, ordered the containment of Ms. Colony only to what

7    the issue in front of her is.  And can find that on the

8    transcript, Your Honor, pages 10 through 12 that she has

9    asked for to be looked at.

10          And also, again, you will find, from -- on page 13,

11    your explanation to me about the emotional damages, as lines

12    6 through 25, and on page 14, especially relevant to the

13    issue that Ms. Colony seems to have, are lines 1 through 14.

14          I am -- I thought our problem was resolved at that

15    point.  She is contained just to those two areas, because I

16    do not have emotional loss and suffering.

17          Ms. Colony sent me an e-mail, which I copied the

18    Court.  When I sent out my request for discovery on

19    defendants Victorhoff and Sommerschield, she returned a -- an

20    e-mail to where she very clearly states, By filing your

21    lawsuit and as explained by Judge Hegarty, you waived any

22    privilege in your CDOC medical records and no release was

23    necessary for this office to obtain them from CDOC.  As

24    explained above, you have also waived privilege as to any

25    post-incarceration records related to your claims for ongoing

4

1    damages allegedly caused by the defendants' conduct.

2         The case -- the claim against Hillary Victorhoff is

3    four days in February of 2017, February 3rd through the 7th.

4    It's a gross negligence claim for leaving for four days after

5    I had just come out of intensive chemotherapy at Aurora South

6    Hospital and her leaving no orders whatsoever for me to be

7    monitored.  I developed a neutropenic fever, nearly passed

8    away, went back to the hospital.  None of those things are at

9    question for defendant Victorhoff, because from the moment

10   that I was put into the van to be taken to the hospital, she

11   never was my provider again.  So she has four days to deal

12   with in her claim and that's it.  She's not being charged by

13   me with causing my diseases or ongoing damages.  There is

14   nothing of the kind in the complaint against Hillary

15   Victorhoff.

16        If we are granted -- if I am granted the amendment

17   that I have before the Court, then there are two additional

18   claims for Defendant Victorhoff that are claims arising

19   regarding her handling with her client -- with her attorney

20   of my medical records and the removal of those medical

21   records from DOC was just a massive sweep.  All of my records

22   were contained.  You went into great length to say, on the

23   hearing of the 29th, that you had never seen a release that

24   said, All records.  Neither have I.

25        I had no idea that Ms. Colony had removed anything

1   from the Department of Corrections until we got to the Rule

2   26 hearing on the 29th.  The first contact that I had with

3   Ms. Colony was March 21st and there was a great deal of

4   contact in between.  I also replied to her answer for Hillary

5   Victorhoff and there was ample opportunity for her to let me

6   know, after I had told her, you know, you -- I would like you

7   to back the boat up here.  It's not just DOC records, there

8   is a long list of outside medical records, of which the Court

9   now has because I did give a copy to everyone.  That's all --

10  where all the medical -- my discoverable list that was due

11  within 14 days.

12          So I've -- I think, and as far as Laura

13  Sommerschield goes, she is confined in her complaint as to

14  her handling of the logistics of the chemotherapy drug caused

15  cataracts that were very fast growing in my eyes over the

16  span of about eight months where she allegedly continued to

17  obstruct the surgeon's orders, not get me there.  I had to

18  get Dr. Burke (ph) from outside to intervene, and that's it.

19          THE COURT:  Yeah, but tell me again, what did Ms.

20  Victorhoff do from February 3rd to February 7th.

21          MS. RYAN:  From February 3rd to February 7th, the

22  standard operating procedure for the Department of

23  Corrections is that when an inmate is taken out of the

24  hospital after -- especially after an intensive procedure,

25  which mine -- DT-PACE is the most aggressive chemo procedure

1    that there is.  Nothing is more aggressive than that.  My

2    security detail took me to the sally port at DRDC, which is

3    how you get into where the infirmary is, and the sally port

4    and master control said, No, Victorhoff wants her back,

5    return to general population and the clinic at DW.

6            And so, though my security guard argued, they still

7    returned me to the clinic at DW.  It was Friday afternoon at

8    3 o'clock on the 3rd and Hillary's days off are Saturday,

9    Sunday, Monday and Tuesday.

10           THE COURT:  So you contend you should have been in

11   one facility, they had orders by Victorhoff to send you to

12   another facility?

13           MS. RYAN:  That's correct.

14           THE COURT:  And you did, in fact, go to that

15   facility --

16           MS. RYAN:  I did.

17           THE COURT:  -- for the next four days?

18           MS. RYAN:  Yes.

19           THE COURT:  And then you -- you went back to where

20   you should -- believed you should have been?

21           MS. RYAN:  Not until after the neutropenic fever

22   developed.  During those four days, the discharge orders from

23   Aurora South Hospital very clearly and specifically state

24   that if a fever of 100.3 or higher is detected, then I am to

25   be returned in 30 minutes or less to Aurora South Hospital.

1          When an inmate is in general population, unlike the

2    infirmary, where someone is there and all you have to do is

3    hit a buzzer -- a bedside buzzer, you cannot leave your

4    building -- or your cell and just walk into the clinic at DW.

5          THE COURT:  So you were at GP for four days?

6          MS. RYAN:  I was in GP for -- for actually three

7    and a half days because they -- when I was found unresponsive

8    in my cell by COs Espinosa and Wade, it was so uncommon for

9    me they put me in a wheelchair and took me down to the

10   clinic.  The way -- the only way that an inmate can get into

11   the clinic is if their provider leaves an order.  She has to

12   have her temperature taken every day.

13         THE COURT:  Okay.

14         MS. RYAN:  So those are the four days --

15         THE COURT:  All right, let's just stop there.  And

16   what records are you contending that Ms. Colony obtained that

17   are beyond the scope of relevance for that clinic?

18         MS. RYAN:  Well, if there are -- as she said at

19   hearing, page 25, lines 7 through 14, in the transcript

20   hearing, that she has two boxes of my medical records.

21   That's the first I had ever heard of it, and it -- it sounds

22   like they have been in her hands since she took -- entered

23   into the case.  There would only be the discharge and all the

24   orders from all the infectious disease surgeons, everyone who

25   treated me in January -- in the end of January and released

1    me on February 3rd, and there would be very little -- few

2    pages of DOC records.  And then it -- I've also already given

3    her access to Aurora South for that and for what happened

4    when I got to Aurora South when I had the neutropenic fever

5    on the 7th.

6            So she's had those things and releases from me for

7    many months.  They would encompass, I would say, maybe a

8    stack 6 to 8 inches high.  They certainly wouldn't cover two

9    banker boxes full and Ms. Colony has not offered to tell me

10   what she has.  I've seen no discovery --

11           THE COURT:  Well, she --

12           MS. RYAN:  -- so --

13           THE COURT:  -- inherently offers it to you.  You're

14   entitled, at any time --

15           MS. RYAN:  Right.

16           THE COURT:  -- to go in and look at your -- look at

17   your own medical records.  All you have to do is make an

18   appointment with Ms. Colony and you can go and look at those

19   any time you want.

20           MS. RYAN:  Everything that I have asked for for

21   defendants Victorhoff and Sommerschield, that request is in

22   there.  Please provide for me --

23           THE COURT:  Okay --

24           MS. RYAN:  If she wishes for me to go in, then she

25   needs to --

1            THE COURT:  Well, the thing is this:  Typically --

2   do you charge for copies?

3            MS. COLONY:  My intent, Your Honor, was to take

4   whatever I find in the records that appear to be relevant to

5   our client, which also encompass her multiple myeloma

6   diagnosis, and put them on a disk --

7            THE COURT:  Right.

8            MS. COLONY:  -- and give her a disk.

9            THE COURT:  But do you have --

10            MS. COLONY:  We intended to mark them all

11   confidential and then send them to her on a disk.

12            THE COURT:  Sure, but do you have an objection to

13   providing her a complete copy of all of the records in your

14   possession?

15            MS. COLONY:  With paper copies?

16            THE COURT:  Well, no, not necessarily.  Do you have

17   the means to read documents off of a disk?

18            MS. RYAN:  I do, Your Honor, that's why I filed the

19   motion --

20            THE COURT:  Okay.

21            MS. RYAN:  -- to -- to quash and what you did

22   without prejudice.  Ms. Colony's statement just now, it's the

23   wording that is the issue here that my multiple myeloma

24   diagnoses is at stake here as well.  I'm sorry, but, no, it

25   is not.  It is -- there is nothing -- there are gynecological

1    records, there are -- there are dozens upon dozens of

2    specialists --

3           THE COURT:  Okay.  Yeah, we need to do this in baby

4    steps.  Do you have an objection to running a complete copy

5    of all of the medical records of Ms. Ryan in your possession

6    and giving it to her on a DVD?

7           MS. COLONY:  On a DVD?

8           THE COURT:  Or CD, whatever.

9           MS. COLONY:  CD.  No, I'm -- we can do that.

10          THE COURT:  Okay.  So let's do that.  Because you

11   need to know what you're talking about --

12          MS. RYAN:  Yes.

13          THE COURT:  -- you suspect what's in there --

14          MS. RYAN:  Yes.

15          THE COURT:  -- but it's better if you actually know

16   what's in there and then you can make a more educated

17   objection --

18          MS. RYAN:  All right.

19          THE COURT:  -- if you want to.  So is two weeks a

20   good enough time period to do that or --

21          MS. COLONY:  Sure.

22          THE COURT:  Okay.  Two weeks from now, why don't

23   you provide her electronically a copy of all of her -- all

24   the records in your possession that are her medical records.

25   Okay?

1          MS. RYAN:  If there's anything else that she has in

2    her -- I don't have any --

3          THE COURT:  Or DOC.

4          MS. COLONY:  Well, there may be some DOC-related

5    records for security reasons that I'm not allowed to

6    disclose, but I --

7          THE COURT:  Well, then you would have to -- well,

8    do -- in total, or you just redact them?  I mean, what do you

9    do with them?

10          MS. COLONY:  I'm -- I'm not sure because I haven't

11    looked through them yet.

12          THE COURT:  Okay.

13          MS. COLONY:  It's -- it's two packed boxes full.  I

14    haven't seen any of them, so --

15          THE COURT:  All right.  So, I mean, she's asking

16    for those and so I think -- and the case is, it looks like, a

17    year and a half old.  So this is something that we need to --

18    to get to as soon as possible.  It was filed in April of

19    2018, so it's a -- a year and two months old.  So why don't

20    you get her a copy of all records in your possession

21    involving Ms. Ryan, and if you need to redact or else

22    withhold for privilege, then that's just a normal course of

23    our business and you create a privilege log and tell her the

24    documents that you're not providing.  Okay?

25          MS. COLONY:  Okay.

12

1          MS. RYAN:  So to the issue of containment, Your

2     Honor, I guess what the problem for me is, is that I will

3     deal directly with the Colorado Department of Corrections.

4     They were dismissed, they're not a party.  While State AG

5     office is their standard, blanket litigator, Ms. Colony is

6     not entered in this case as their representation, and right

7     now I have been trying to get a subpoena duces tecum for the

8     documents that I need from the Colorado Department of

9     Corrections since February 3rd.

10          THE COURT:  Well --

11          MS. RYAN:  On the 29th, you and I discussed it and

12     you asked me to do a different format, submit it to the Clerk

13     --

14          THE COURT:  Right.

15          MS. RYAN:  -- which I did, and Mr. Caldwell had an

16     issue with it being -- didn't have the text boxes drawn in

17     and exactly like his pages, so I corrected that and I sent it

18     in.  And I told Ms. James, when I did, if you would please --

19     this is -- I don't know where else to go and neither does the

20     pro se clinic.

21          THE COURT:  Well, we -- we in Chambers can't help

22     you directly --

23          MS. RYAN:  Okay.

24          THE COURT:  -- because --

25          MS. RYAN:  That's --

1          THE COURT:  -- we're under an obligation of -- of

2    neutrality.  So we don't help parties privately --

3          MS. RYAN:  Right.

4          THE COURT:  -- and no -- neither of you are

5    entitled to contact our Chambers without the other being

6    present, otherwise it would be an ex parte communication.

7    You wouldn't want me talking with them one on one --

8          MS. RYAN:  No.

9          THE COURT:  -- and you don't want me -- and so they

10   don't want you talking with me one on one.  So all

11   communications would have to go through the Clerk's office or

12   be copied to counsel, so --

13         MS. RYAN:  To clarify, I did copy all of --

14         THE COURT:  Okay, that's fine.

15         MS. RYAN:  So we did have all that as proffered.

16         THE COURT:  But how do you know that all the

17   records you want are not already in Ms. Colony's possession

18   and that you'll be getting a copy of those in two weeks?

19         MS. RYAN:  I have a -- I think that the reaction of

20   Ms. Colony in the emails that she has sent me on the extent

21   of what I am asking for from the Colorado Department of

22   Corrections, I am asking for every medical and medical

23   administrative record that I have.

24         THE COURT:  Well, what about containment on your

25   side?  So you're asking her to be contained --

14

1           MS. RYAN:  Right.

2           THE COURT:  -- as -- as far as what the claims are

3  in this case, why would you be entitled to anything broader?

4           MS. RYAN:  The only reason is that the Colorado

5  Department of Corrections owns the paper.  If it is anything

6  at all that's related to my medical records, anything,

7  whether it's in an administrative or paper mar, anything, I

8  solely own the information.

9           THE COURT:  But you can't use this Court as a means

10  to get it in a lawsuit.  You could --

11           MS. RYAN:  They are relevant --

12           THE COURT:  -- do a Freedom of Records Act or

13  whatever --

14           MS. RYAN:  Yes.

15           THE COURT:  -- open Records Act requests all day

16  long, but if you're going to utilize the power of a federal

17  court, you can only obtain information through lawful means

18  and --

19           MS. RYAN:  Relevant --

20           THE COURT:  -- since DOC's not a party, it would

21  have to be a third subpoena, and only within the scope of

22  your claims.

23           MS. RYAN:  Exactly.

24           THE COURT:  You could get your records in total

25  some other means, but not through this lawsuit.  Does that

1    make sense?

2        MS. RYAN:  It does, and the reason that I need the

3    records is because Ms. Colony and Defendant Victorhoff and

4    Defendant Sommerschield are not the only defendants.  Those

5    -- everything -- I have given unlimited release to Hall &

6    Evans, Mr. Kennedy and Mr. Ringel, because everything

7    directly pertains to Dr. -- what -- the claim against Dr.

8    Mix.

9        THE COURT:  But everything that Hall & Evans or

10   anybody else obtains pursuant to those releases, they have to

11   provide you copies of.

12       MS. RYAN:  And the -- as --

13       THE COURT:  So why not let them do the work for

14   you?

15       MR. KENNEDY:  And, Your Honor, we have provided

16   those to Ms. Colony as well.  That becomes a product -- she's

17   trying to limit -- she wants us to get more discovery than

18   Ms. Colony and I have trouble with that.  I don't know about

19   the Court --

20       THE COURT:  Well --

21       MR. KENNEDY:  I know that anything I get I have to

22   turn over --

23       THE COURT:  Anything that any three of you get, you

24   have to turn it over, because you've got to know what's in

25   each other's possession other than privileged material.

1          MR. KENNEDY:  And that becomes a problem.

2          MS. RYAN:  Exactly.  I do understand.  I clearly do

3     understand the process.  The bottom line at the end of the

4     day is that I started off in this when the counsels entered

5     their appearance and did their answers and fully trusted that

6     we would be following the process, and I haven't gotten that

7     from Ms. Colony's case handling.

8          THE COURT:  Haven't got what?

9          MS. RYAN:  The ability to trust that I'm getting

10    everything.  I am at the point where I would rather handle

11    getting my own discovery.  If we are going to wait another

12    two weeks, another factor for me is I do not have much

13    sympathy for any delays or obstructions, given the state of

14    my health and the fact that we only have four months.

15         THE COURT:  Well, these are not delays.  Have you

16    ever sat at a copy machine and fed in records -- paper

17    records in order to scan them?

18         MS. RYAN:  Six boxes.

19         THE COURT:  It is time intensive.  It takes time.

20         MS. RYAN:  It's very laborious.  I have six boxes

21    filled with the medical records from everyone outside.

22         THE COURT:  Right.  Sometimes pieces of paper are 4

23    inches wide --

24         MS. RYAN:  Tens of thousands.

25         THE COURT:  -- 8 inches long.

1           MS. RYAN:  Exactly.

2           THE COURT:  You know, and you've got to tear

3    staples apart or paperclips, so I mean two weeks is blazing

4    fast.  It's a burden on them, I'm positive.

5           MS. RYAN:  Well, then, why -- what's the objection

6    to me just getting them on my own?  Am I not allowed to

7    subpoena duces tecum the Colorado Department of Corrections?

8           THE COURT:  You are, but what do you mean by

9    getting them on your own?  You can't take them out, because

10   if they're in their possession, custody or control, they're

11   entitled to remain there.

12          MS. RYAN:  Exactly.

13          THE COURT:  You can come in and mark things for

14   copying, which then they're obligated to copy for you.

15          MS. RYAN:  Correct.

16          THE COURT:  But we never allow parties, unless it's

17   by agreement, to just yank the documents away, take them

18   away, because you just told me you don't trust her.  She

19   maybe doesn't trust you to be able to keep the records in the

20   order that they're in and it's very essential for orderliness

21   of government that records be kept straight, right?

22          MS. RYAN:  Yes.

23          THE COURT:  You would appreciate that, because

24   someday you may want to go through your files and if they're

25   shuffled like a deck of cards, that's going to be very

18

1    frustrating.  So we have to do this in an orderly way, but

2    rarely does it come up that parties aren't agreeable to just

3    making copies, you know.  So I'm not sure what -- I'm not

4    sure what it is that you're suspicious of, but when I order

5    the -- Ms. Colony or Mr. Kennedy to do something, they always

6    have done it, never not done it.  They have to.

7            MS. RYAN:  I'm glad to know that going forward.  As

8    it stands right now, I have -- I've already spoken with Major

9    Rio (ph), Assistant Warden at DW, she was my litigation

10   coordinator.  Her -- and written her a letter.  Her exact

11   words were that they would deal in whatever way they needed

12   to with a subpoena that's issued by the Court or any Court

13   order.

14           THE COURT:  Right.

15           MS. RYAN:  I have no problem whatsoever -- I did it

16   every -- for 30 minutes every -- once a month for six years

17   in going into the medical records department and evaluating

18   my medical records.  When they pull those, they will call me

19   and they will tell me what I need to do, and I will go in,

20   wherever they tell me to go, and handle it that way.

21           THE COURT:  Okay.

22           MS. RYAN:  I also have -- one of the questions that

23   I raised for you that -- that -- you said the rules of

24   evidence would take care of down the road.  I don't wish to

25   make an allegation that is just based on a sense impression,

1   but it's a very strong sense impression.

2           So I mentioned to you that I was concerned that by

3   having these records in the possession of Hall & Evans and

4   Ms. Colony, I am assuming that Hall & Evans have seen them.

5   If they haven't, I apologize.  Then it would be the very

6   first time that Dr. Mix -- highly likely the very first time

7   that Dr. Mix ever even looked at my medical records.  That is

8   not something that CHP does when approvals and denials for

9   care are sent over to them.  They look at one little caption,

10  one little paragraph written by the provider and those are in

11  my DOC records.

12          So one of the things I need to prove, because the

13  burden is on me, I am alleging that Dr. Mix denied me the

14  life essential second phase standard procedure for a total of

15  five years and that is what caused the damages by having too

16  much chemotherapy.

17          THE COURT:  Okay.

18          MS. RYAN:  So it's a very big issue if she gets the

19  inside track now to say, Oh, that's what it was, it was

20  multiple myeloma and all these other things.  I have no way

21  of knowing that until I get her clear to trial, get her on

22  the stand and --

23          THE COURT:  No, you can take her deposition before

24  trial.

25          MS. RYAN:  I can, and I have been -- I went for

1   another session with pro se clinic.  Mr. Kilmer (ph) gave me

2   very sound advice.

3           THE COURT:  Well, as you probably know, I'm just

4   telling you what the Federal Rules say.  You can call her at

5   deposition, have the notary public with you, have the notary

6   public confirm that it's who she is.  Turn on a tape recorder

7   and take her deposition.  It will cost nothing.

8           MS. RYAN:  That's exactly what I intend to do.

9           THE COURT:  All right.

10          MS. RYAN:  One of the things that I need to put to

11  record today is that it was stated at the May 29th hearing

12  that the scheduling order would be contained to five

13  depositions.  I have 8 to 12 that I'm going to be taking.  So

14  when the counselors do put that together, I'll get it done

15  within the four months of discovery.

16          But back to this other --

17          THE COURT:  Well, hold on a second.  Did -- I'm

18  sorry.  I handle hundreds of cases.  So did we issue a

19  scheduling order in this case?

20          MS. RYAN:  You issued an order on the 29th for Mr.

21  Kennedy and Ms. Colony to do a scheduling order and a

22  protective order and submit those to the Court.

23          THE COURT:  All right.  So the last thing that I

24  have is a -- oh, you -- you submitted a proposed scheduling

25  order on May 9th --

1          MS. RYAN:  Just for the conference -- we were --

2     originally --

3          THE COURT:  Okay.

4          MS. RYAN:  -- set for the May 29th hearing was to

5     define my medical condition status, and I was asking you to

6     please open it up to other things because we can get some

7     work done.  I'm not in the hospital yet.

8          THE COURT:  So do we need to set a scheduling

9     conference?  We haven't done that yet?

10          MR. KENNEDY:  I mean, at the -- at the May 29th

11     conference --

12          THE COURT:  Right.

13          MR. KENNEDY:  -- you kind of set a preliminary

14     about getting it finished in four months and then you asked

15     us to put together a protective order and a schedule order,

16     which we ran into problems because -- for example, the

17     protective order, I'm -- I will file -- I wanted to talk to

18     the Court today about that anyway.  I want to put -- you

19     know, file a motion for a protective order and the proposed

20     protective order of this Court that's a pretty standard

21     protective order.

22          Ms. Ryan seemed to really be caught on she wanted

23     specific things related to the May 29th hearing, that her

24     interpretation of things, and I thought it was going to make

25     the protective order way too -- you know, I would like to

22

1   file with the Court a protective order.  It's a standard one

2   I've filed 100 times, I'm sure that the Court's filed --

3   signed more than hundreds of those.

4            THE COURT:  Well, I mean, obviously if you guys

5   can't reach an agreement, you can file a motion.

6            MR. KENNEDY:  And that's -- and I will.

7            THE COURT:  I mean, if it's in the same form that

8   we always approve, I'll probably grant it.

9            MS. RYAN:  I only object to really two words.

10           THE COURT:  Go ahead and tell me what you're

11   objecting.

12           MS. RYAN:  I objected to, on the first page, they

13   can leave the heading to make it sound like it was jointly

14   stipulated and that, you know, I -- I really don't care, but

15   the wording of -- Mr. Kennedy's wording was on Number 3:  Or

16   otherwise contain non-public personal, personnel, employment,

17   private, medical or other information implicating privacy

18   interests, propriety interests -- that's a phrase that I

19   disagree with -- for either the plaintiff, defendants or a

20   non-party.  I looked everywhere for the entry of an attorney

21   for an entity called non-party.

22           I think that what is trying to be kept away here is

23   I've made it very clear, when I filed my amendment, and in

24   talking with the -- via counselors, that the relationship

25   between CDOC and CHP, DOC has been released from liability.

23

1   They have immunity from liability.  They're discharged and

2   gone out of this case.  If CHP is brought in, then it will --

3   my concern will encompass them as well.

4          Right now, Dr. Mix is carrying the burden of her

5   employer, because I need to find out, did somebody order her

6   to avoid the Inmate Catastrophic Medicaid Provision that I'm

7   challenging of the Affordable Healthcare Act.  What was her

8   training in not pre-authorizing that?

9          THE COURT:  No, but how does that relate to the

10  protective order?  You --

11         MS. RYAN:  Right here.  Propriety interests --

12         THE COURT:  Proprietary, probably.

13         MS. RYAN:  Proprietary interests is something that

14  a contract between DOC and CHP would fall under, and then

15  they spell it out by adding in:  Or a non-party.

16         THE COURT:  Right.

17         MS. RYAN:  So one of the things that -- it's -- I

18  don't feel -- I can't find the law or a rule, but I don't

19  feel that it's my job to lay out a case for them.  It's my

20  job to prove my burden.

21         THE COURT:  Correct.

22         MS. RYAN:  One of the things that will come out is

23  that of all of my administrative processes that I went

24  through for nearly six years, in the spring of 2018, we had a

25  Chief Medical Officer by the name of Bob Frost, and he is one

1    of the people that will be deposed and brought in.

2          I was visited in my cell by Captain Fowler and he

3    said, Ryan, what in the heck is going on?  And I said, Cap,

4    you forgot to change your contract with CHP when the Federal

5    Government handed you the boon of the Inmate Medicaid Clause.

6    And when someone is faced with an indefensible thing, there's

7    -- what can they say?

8          THE COURT:  Well, tell me --

9          MS. RYAN:  Mr. Frost walked off --

10         THE COURT:  I'm not understanding what you're

11   saying.

12         MS. RYAN:  So I mean --

13         THE COURT:  You're talking about a non-party.  What

14   are you worried about?  Tell me what you're worried about.

15         MS. RYAN:  I am worried that they are -- by the

16   wording as it is, without it being changed, there are things

17   in here that do need to be protected, but it's one little

18   paragraph.  I do not want them to have the ability to

19   withhold from me, claiming it's a proprietary interest --

20         THE COURT:  No, no, no, no, no.

21         MS. RYAN:  -- or anything.

22         THE COURT:  You're misunderstanding a protective

23   order.  A protective order has nothing to do with holding

24   documents from you.  It has to deal with withholding

25   documents from the public.  So if either of you designate a

1    document as confidential, it can't be filed in the public

2    record unless it's under restriction so that only you and

3    they have access to it.  But nothing in that order has

4    anything to do with whether they have to turn records over to

5    you or not.  It only has to deal with what can be thrown into

6    the public record.  We want your private information or maybe

7    a corporation's proprietary information, like how they do

8    business --

9              MS. RYAN:  Right.

10             THE COURT:  -- and if they disclose that because

11   they found a unique way to do it the best way ever, and if

12   somebody could copy that, then it would hurt their business,

13   so they designate things as confidential.  You still get it,

14   you just can't release it to the public.

15             MS. RYAN:  Do I?  I -- I still get it?

16             THE COURT:  Yes.

17             MS. RYAN:  Because the issue at hand for me, this

18   case of mine and the research, solid research, legal research

19   behind it bares many similarities to the Kenneth McGill (ph)

20   case in 2015.

21             THE COURT:  See, I don't know what that is, but

22   anyway --

23             MS. RYAN:  It was an evaluation of the contract and

24   the way that CHP -- between CHP and Jefferson County Jail,

25   and it really looked at how they trained their personnel -- I

1    don't think it was Dr. Mix that was involved, but there were

2    a few others, on how they train their personnel and how they

3    can approve or deny medical care to an inmate.  That is what

4    I need to deeply probe.  If I can still have access --

5              THE COURT:  You will.

6              MS. RYAN:  -- and this is just to keep it out of

7    the public eye --

8              THE COURT:  It is.

9              MS. RYAN:  -- then the only thing that I need

10   changed in Mr. -- or I would like to have inserted in Mr.

11   Kennedy's thing is -- proposed protective order, is -- he

12   states that, all throughout -- and I'm sure it's just a

13   template -- that all attorneys actively working on this case,

14   if he could insert pro se, in case I -- Mr. -- can't find --

15             THE COURT:  Yeah.

16             MS. RYAN:  -- can't find --

17             THE COURT:  Whenever it says attorneys, it would

18   also say pro se litigants.

19             MS. RYAN:  Other than that, then if -- if it's --

20   now that we have it on record that I get access to these

21   things --

22             THE COURT:  Okay.

23             MS. RYAN:  -- then I'm fine.

24             THE COURT:  So I'll submit that revised.

25             MR. KENNEDY:  I will do that, Your Honor.

1          THE COURT:  And it will be granted on the spot.

2          MS. RYAN:  Okay.

3          THE COURT:  Okay?

4          MS. RYAN:  And other than that, I guess I'm --

5          THE COURT:  Well, what I think ought to happen --

6    I'm going to rush your case as much as I can, because we have

7    an obligation under federal law to get this done

8    expeditiously anyway, and these two lawyers will tell you,

9    I'm very keen on that and I don't stall.

10          So what I'd like you to do is take a look at those

11   records that you get from Ms. Colony.  If you think you're

12   missing something, then you ask for another status conference

13   or you can start issuing subpoenas.

14          Now, when you issue subpoenas, we'll help you do

15   that downstairs, but the party to whom you issue one can

16   always file a motion to quash too.  You know, that's -- they

17   have a right to do that.

18          MS. RYAN:  I do.

19          THE COURT:  So I'm not going to bar you from

20   issuing subpoenas to non-parties, but I would encourage you

21   to at least see what you don't have so you can be educated

22   and have pinpoint requests so you don't duplicate because

23   sometimes people charge you to make copies and it can be

24   expensive.

25          MS. RYAN:  Exactly.

1            THE COURT:  So.

2            MS. RYAN:  What is done, then?  When I look through

3    -- you've ordered Ms. Colony to give everything that she's

4    got --

5            THE COURT:  About you.

6            MS. RYAN:  About me.

7            THE COURT:  Right.

8            MS. RYAN:  And am I clear that the security -- I'm

9    assuming that if there's security or inmate records in there

10   that they must pertain to me, then she is redacting.  If it's

11   something --

12           THE COURT:  Well, so she'll have to make the

13   decision based on consultation with the law and her client --

14           MS. RYAN:  Okay.

15           THE COURT:  -- what she's claiming privilege to,

16   and it could be legitimate penological interests that

17   prohibit disclosure because it may be procedures of how

18   inmates are transferred, how they're classified as far as

19   security risk, all kinds of things that the law would say

20   can't be produced.  It could be staff, correctional officer

21   home addresses, all kinds of things --

22           MS. RYAN:  Yes.

23           THE COURT:  -- that she might have to redact.  So

24   if she withholds it, then she puts it on a list and she

25   describes the document with sufficient particularity --

1          MS. RYAN:  Okay.

2          THE COURT:  -- that you understand what kind of a

3    document it is --

4          MS. RYAN:  Right.

5          THE COURT:  -- and she gives you the reason why

6    she's withholding it.

7          MS. RYAN:  Okay.

8          THE COURT:  If she doesn't have to withhold a whole

9    document, she blacks out portions of it.  You've probably

10   seen redacted documents, and she puts beside it the rule

11   under which she's claiming privilege.  Okay?

12         MS. RYAN:  So when we are done with that process

13   and I have reviewed all of that from Ms. Colony, going back

14   to the motion to quash that I filed, is it when -- and some

15   -- an entity is dismissed, like DOC, and State AG is

16   obviously their blanket representation for everything, if I

17   pull in -- that's what Ms. Colony is telling me.

18         THE COURT:  Well, that's only because --

19         MS. RYAN:  Yes.

20         THE COURT:  It's because the Attorney General is --

21   is required by law --

22         MS. RYAN:  Exactly.

23         THE COURT:  -- to represent the DOC.

24         MS. RYAN:  Exactly.

25         THE COURT:  Right.

1          MS. RYAN:  So when I pull in my 8 to 12 people, of

2     which probably three-fourths of them are DOC individuals --

3          THE COURT:  Right.

4          MS. RYAN:  -- for depositions, then I'm assuming

5     that they can choose to have Ms. Colony present or whatever

6     the case may be.

7          THE COURT:  Well, so --

8          MS. RYAN:  It's confusing --

9          THE COURT:  Now, the rule is at any deposition, all

10    parties should be represented, so the plaintiff will be

11    represented by your presence, these two people or associates

12    of theirs have to be present.  Not that they should be or can

13    --

14         MS. RYAN:  Right.

15         THE COURT:  -- choose not to be, they have to be

16    present because we're all present for all proceedings.  So

17    they'll be entitled to ask questions also.  They may not, but

18    they might and -- and then at the end of all that, you have

19    to provide a copy of that tape back to them.

20         MS. RYAN:  Exactly.

21         THE COURT:  Right.

22         MS. RYAN:  That's the way that I read the rules and

23    the law.

24         THE COURT:  Right.

25         MS. RYAN:  So setting aside depositions, it -- I am

1   absolutely certain that there will be some objections from

2   CDOC on the medical records, the detail of them that I have

3   asked for.  Inmates just don't get that detailed.  And after

4   sitting every single day in the clinic and watching how they

5   -- they operate, I know where the -- I guess the only word I

6   can use is the meat, the heart of my -- the matter that I

7   need to prove in what happened to me --

8           THE COURT:  Well, you're not an inmate, number one.

9           MS. RYAN:  I'm not, and so --

10          THE COURT:  Number two, can you imagine -- is there

11  any reason why you could withhold a medical record from her

12  at this point?

13          MS. COLONY:  I can't think of anything.

14          THE COURT:  They can't withhold medical records.

15          MS. RYAN:  Right.

16          THE COURT:  Now, they can withhold security or

17  other kind of privileged information about them, about their

18  ways they do business, about personal information of their

19  employees, but if it pertains to you, it's going to be

20  produced, so you don't have to worry about that.

21          MS. RYAN:  Thank you.  That's what I needed to have

22  on record because a realistic expectation based on all of my

23  previous experiences with DOC when trying to get through

24  these things to get to a transplant, this isn't the first

25  time that legal information and staffings and internal

1   administrative procedures -- we have been down some many long

2   roads, the DOC and I.

3           THE COURT:  When you were an inmate?

4           MS. RYAN:  When I was an inmate, and so now --

5           THE COURT:  But that's a whole different ballgame

6   --

7           MS. RYAN:  Was -- yes.

8           THE COURT:  -- because inmates, in my experience,

9   are very good at taking some kinds of information and

10  blackmailing people, potentially.

11          MS. RYAN:  Exactly.

12          THE COURT:  So there's a good reason to withhold.

13          MS. RYAN:  And so as large as this problem is, I

14  was a $5,000,000 in cost -- medical cost inmate by the time I

15  walked out the door.  And during the spring of 2018, when

16  this all came up and they realized that I had been telling

17  the truth, the bottom line is, is that now there is that

18  whole trail from all of those years where I tracked

19  everything and they are in those places that most inmates

20  don't even know that those places exist.  For example, a

21  paper mar.  Those are the little tiny notes that go back and

22  forth between individuals privately and they don't get put on

23  your actual medical record, but they have my medical

24  information on them.

25          So I feel that the best interests of time,

33

1    resources, now that I can see what Ms. Colony has, to be

2    allowed to deal directly with CDOC, I would greatly

3    appreciate it if Ms. Colony would just, please, take her

4    hands off of my duces tecums that she is wanting to be

5    involved in and I will deal directly with the Colorado

6    Department of Corrections.

7            THE COURT:  Well, I mean, you can always -- you

8    have -- you have a legal right as a citizen to deal with a

9    public agency outside of a lawsuit.

10           MS. RYAN:  Yes.

11           THE COURT:  So there are laws that govern that.  If

12   you're using the power of the Court, again, to obtain

13   information from the government, then Ms. Colony, as a lawyer

14   in this case, always has the legal right to file an objection

15   of some kind.  She can't interfere with the process in a way

16   that's outside the jurisdiction of the Court, but she can

17   invoke the jurisdiction of the Court and the power of the

18   Court to try to stop the process if she thinks it's not legal

19   and it's her job to do so.  We'll just have to see.

20           MS. RYAN:  Yes.  Let me rephrase, Your Honor.  If

21   Ms. Colony would please just allow me to continue on as

22   today, with the order that you have given her and her

23   knowledge that I am dealing directly with the Department of

24   Corrections, and if and when anything arises out of that,

25   then she is entitled to file her objection and we could go

1   from there.

2            THE COURT:  But she might also --

3            MS. RYAN:  Just --

4            THE COURT:  She might have the independent position

5   as not just representing a party or two in this case, but

6   also representing the DOC, who's not in this case.  That's

7   her client.  So you may not have -- be able to avoid dealing

8   with Ms. Colony.

9            MS. RYAN:  It's not that I'm trying to avoid -- I

10  guess that my question is:  How in the world can I -- no

11  matter how powerful of a government entity are that have the

12  immunity can be dismissed from my ability and still dip their

13  toe into a case whenever they don't like something?

14           THE COURT:  Well, they can't.

15           MS. RYAN:  They can't.

16           THE COURT:  Right.

17           MS. RYAN:  And so, I guess --

18           THE COURT:  The way you phrased it, they can't.

19           MS. RYAN:  No, right.  They can do it in all kinds

20  of other ways.

21           So I guess in a brutally honest statement, if we're

22  going to continue -- my bone marrow biopsy is next week,

23  actually, in a couple of days, and we'll have an answer on

24  when I go in for transplant.  I have to hold discovery to

25  four months and this needs to be smoking hot and gone

1   through.

2          Her client's claims are so easy, we could be in ADR

3   within a month.  It's such a simple allegation between --

4   over both of them.  Or if Ms. Colony would like to continue

5   this back and forth, then I would ask that she please waive

6   the immunity of DOC and bring them back into the case and

7   we'll all go at it.

8          THE COURT:  Well, an individual lawyer has no

9   authority to waive immunities --

10         MS. RYAN:  Exactly.

11         THE COURT:  -- that are created by federal -- by

12  state law --

13         MS. RYAN:  So --

14         THE COURT:  -- or the Constitution.

15         MS. RYAN:  Yeah.

16         THE COURT:  Their immunity is Eleventh Amendment

17  immunity, which is under the U.S. Constitution.  No lawyer --

18  I think you're thankful that no one person in our country can

19  waive the constitution.

20         MS. RYAN:  I am --

21         THE COURT:  That's for your protection.

22         MS. RYAN:  For the record, I would not object, but

23  she --

24         THE COURT:  Okay, so you -- well, you don't want a

25  government lawyer --

1            MS. RYAN:  -- can't do that and nobody can.

2            THE COURT:  -- to be able to disregard the

3    Constitution, so --

4            MS. RYAN:  Exactly.

5            THE COURT:  Anyway, she would be acting illegally

6    if she waived immunity.

7            MS. RYAN:  Exactly.  So I'd like to just get to

8    work, and I'm fine with dealing with DOC, I know how to do

9    that, and I'd like to be able just to go from there.  How

10   easy it was to resolve the protective order, it -- you know,

11   it just needs to proceed.

12           THE COURT:  So I guess I entered a discovery

13   period, but I did ask you to prepare a scheduling order and

14   present it to her.

15           MR. KENNEDY:  Right.

16           THE COURT:  And has that been difficult, would you

17   say, or not?

18           MR. KENNEDY:  It hasn't been easy, Your Honor.

19           THE COURT:  Okay.

20           MR. KENNEDY:  I understand Ms. Ryan's skepticism of

21   the whole judicial process.

22           THE COURT:  You've dealt with it your whole life.

23           MR. KENNEDY:  I get it.

24           THE COURT:  Yeah.

25           MR. KENNEDY:  You know, and just for the record, I

1  think the Court knows, but I'll say for the record, I -- I

2  have not taken any -- I have not seen any of her medical

3  records, outside of things that were my client's.  We have

4  not -- I will not get any information from Ms. Colony until

5  the protective order is in.

6         THE COURT:  Right.

7         MR. KENNEDY:  I mean, that's -- that's the obvious

8  way we do it.  I understand the Court understands that, but I

9  want Ms. Ryan to understand that I -- I can't turn every --

10  every little thing we do turns into hours of e-mails back and

11  forth about stuff that just isn't, in my opinion, relevant.

12  And I have other cases and I -- I will try my best to get

13  this done, but as this Court has seen today, it's a lot of

14  skepticism on the other side that's slowing this down, in my

15  opinion.

16         THE COURT:  Right.

17         MR. KENNEDY:  That's my opinion of what's slowing

18  this down.  It's not anything we're doing here.  I'm trying

19  to get a protective order in, I'm trying to get a scheduling

20  order in.  I believe those to be fairly simple,

21  straightforward --

22         THE COURT:  Well, yeah, we already got the

23  scheduling order -- or the protective order dealt with.  The

24  scheduling order is actually just --

25         MS. COLONY:  Very simple.

38

```
 1              THE COURT:  -- perfunctory.  It's like you state

 2    the claims you have, they state the defenses, you state your

 3    damages.  I doubt if you're going to have any undisputed

 4    facts.  You give me a time period to complete discovery,

 5    dispositive motions.  It sounds like there might be a

 6    disagreement as to limits on depositions.  Do you guys have a

 7    position on that right now?

 8              MR. KENNEDY:  I have no problem with 8 depositions.

 9              THE COURT:  Well, she wants 12, it sounds like.

10              MS. RYAN:  8 to 12.  I -- I have --

11              MS. COLONY:  I have a problem with 12.  I think

12    that's excessive.

13              THE COURT:  All right.  We're going to -- we're

14    going to have 10.  Ten is the limit in our district, so try

15    to fit it within 10, okay?  And then it's a standard 25

16    interrogatories, request for production, request for

17    admissions.  All the standard stuff.  And if you will -- if

18    you could do that, maybe by the end of the week, submit to me

19    a scheduling order, we'll get that entered.

20              MR. KENNEDY:  And she's already provided discovery

21    which would -- we'll all be doing, Your Honor, we understand

22    that discovery has started with or without the scheduling

23    order.

24              THE COURT:  Sure, of course.

25              MR. KENNEDY:  So we're doing that.
```

1            THE COURT:  Yep.

2            MR. KENNEDY:  So it's not -- I don't believe that's

3    slowing down anything, but we need to get the dates.  I

4    understand the Court --

5            THE COURT:  Okay.  Let's see, June, July, August,

6    September, October.  So put November 1st as the discovery

7    deadline, okay?

8            MS. RYAN:  Mr. Kennedy, thank you for letting me

9    know that Hall & Evans has not been a part of any of the

10   boxes --

11           MR. KENNEDY:  No.  And I understand --

12           MS. RYAN:  -- or any of the things that already out

13   there.

14           MR. KENNEDY:  I understand your skepticism, but --

15           MS. RYAN:  And that really helps me a lot.

16           MS. COLONY:  Your Honor, could I address the issue

17   of who I represent?

18           THE COURT:  Yeah.

19           MS. COLONY:  I think we need to get this clear

20   right now, and Ms. Ryan needs to understand that I do

21   represent CDOC in this case, regardless of the fact that they

22   have been dismissed out by Judge Babcock --

23           THE COURT:  Sure.

24           MS. COLONY:  -- as a defendant, and I -- there is

25   no her dealing directly with the CDOC.  That's not how this

1    works.  I represent CDOC -- I mean, my clients have been sued

2    in their capacity, of their employment at CDOC, so if she

3    needs records the CDOC has custody of, I'm the one who

4    provides them.  There's no one at CDOC that's going to review

5    her records, pursuant to a direct request from her, and then

6    turn them over directly to her.

7            THE COURT:  No, that I understand.

8            MS. COLONY:  That's going to be my job and I -- she

9    just doesn't understand it --

10           THE COURT:  Well, so you don't deny that just

11   because she has a lawsuit doesn't bar her from publicly

12   available access?

13           MS. COLONY:  Well, at -- if she made some sort of

14   CORA request --

15           THE COURT:  Right.

16           MS. COLONY:  -- I might seek a protective order.

17           THE COURT:  You might.

18           MS. COLONY:  We've done that before because --

19           THE COURT:  Sure.

20           MS. COLONY:  -- it -- it's going outside --

21           THE COURT:  I understand.

22           MS. COLONY:  -- the rules of discovery and

23   litigation, which she has chosen this forum, she has chosen

24   to subject herself to those rules, and it's our position in

25   our office that a CORA request would be improper and --

 1            THE COURT:  Okay.  So here's the thing, Mrs. Ryan

 2   -- Ms. Ryan:  I've never encountered a problem like this.  I

 3   mean, I understand you've been at the sharp end of the point

 4   in the justice system, and especially in CDOC, but it -- I

 5   have had nothing but good experiences with the AG's office,

 6   who actually bend over backwards -- any case like this, when

 7   CDOC is not a party, only individuals are, and as you can

 8   probably imagine, the individuals themselves don't own those

 9   records, so they would have no authority to turn over CDOC

10   records to you.  Just like any government -- you wouldn't

11   want the ability of some government bureaucrat to walk into

12   an office and just whip out documents and hand them to

13   somebody in the public.  There are procedures for that.

14            So I have never had a problem with the AG's office

15   working cooperatively with a pro se plaintiff to get

16   documents from CDOC, even when CDOC is not a party.  So I

17   think you ought to take advantage of Ms. Colony rather than

18   distrust her.

19            MS. RYAN:  Then how about if we do this:  Let's see

20   if we can -- because there is a compromise here.  Ms. Colony

21   is representing the paper of those records, the disks, the

22   computers, the fax machines, the pagers, the audio tapes,

23   whatever there may be, the images, but she is not

24   representing, and neither does the Colorado Department of

25   Corrections have any control, whatsoever, over the medical

42

1   information that has -- and privacy protected information

2   that is on those records.  It's very clearly stated in their

3   administrative regulation 950-02, very specifically, they own

4   the copies.  They do not own the information.  I am entitled,

5   at any point in time to access that information and that is

6   what I am doing with the subpoena duces tecum.

7           THE COURT:  But what -- we just need to do it in a

8   more --

9           MS. RYAN:  Exactly.

10          THE COURT:  -- efficient and proper manner.

11          MS. RYAN:  Well, then here goes the subpoena --

12          MS. COLONY:  If I could speak to that, Your Honor.

13          THE COURT:  Yeah, go ahead.

14          MS. COLONY:  There really is no need for the

15  subpoenas and I explained -- I thought I explained this at

16  the last status conference.

17          THE COURT:  Right.

18          MS. COLONY:  There's no need for the subpoenas.  If

19  she submits a discovery request, then I access the CDOC

20  records to respond to --

21          THE COURT:  Right, right.

22          MS. COLONY:  -- what she's asking for in the

23  discovery request.  And I have no problem with giving her

24  every medical record piece of paper that I have, whether --

25  that I have, whether it's related to the multiple myeloma or

1    not.  I'm -- that's -- that's fine to release those, but --

2    we -- we do have custody of those records and she needs to

3    understand that.

4            THE COURT:  Yeah, but this is not hard.  You're

5    making it harder than it needs to be.  So a document request

6    is simply a subpoena duces tecum, except in the context of a

7    lawsuit.  So all you have to do is call it Plaintiff's First

8    Request for Production of Documents, write out the request

9    you would otherwise put in a subpoena, 1, 2, 3, 4, 5 and

10   submit it to Ms. Colony.

11           MS. RYAN:  I understand, Your Honor, and that is

12   what I have done for the other defendants, but for the

13   non-party of the Colorado Department of Corrections, for many

14   reasons, I feel much more -- I feel comfortable -- more

15   comfortable having it formally in the subpoena duces tecum.

16           What I didn't get to finish saying is let that be

17   served.  It is my right to file it and I wish to proceed that

18   way.  And from that point forward, what I hear Ms. Colony

19   wanting to say -- or saying that she will be involved in what

20   I can have and what I can't have, but if --

21           THE COURT:  Well, she will be because she's

22   representing them.

23           MS. RYAN:  Exactly.

24           THE COURT:  And I'm not going to fault her for

25   that, but I promise you, you're going to make this case

1   longer and more complicated and more expensive by doing it

2   the way you feel comfortable rather than the way that's most

3   efficient, so I'm not going to stop you.  I'm not going to

4   order you ahead of time not to file a subpoena, but if they

5   file a motion to quash and I find it's -- it's meritorious,

6   then we're going to be back to square one and you're going to

7   waste months doing that.  So that's your call.

8          MS. RYAN:  Then we're right back to where we are

9   with her saying that she already has all of that or I can

10  file --

11         THE COURT:  I think you out to take her up on her

12  offer, that you submit document requests.

13         MS. RYAN:  Yeah.

14         THE COURT:  If, at any time, you feel she is not

15  being forthcoming or giving you the documents you think that

16  exist, you can call this kind of a conference again and we'll

17  do this.

18         MS. RYAN:  I understand.

19         THE COURT:  Okay.

20         MS. RYAN:  And it's not really the State AG --

21  especially with the State AG's office that we have now.  It

22  is, like I said, a realistic expectation based on all of my

23  experiences with DOC.

24         THE COURT:  I understand, but it's a whole new

25  brave world, so maybe let's let --

1           MS. RYAN:  So --

2           THE COURT:  -- good people do their job.

3           MS. RYAN:  Well, I'd like to, today, make, so that

4    we could get moving here, the subpoena duces tecum that I

5    have, you know, on present, waiting for the Clerk's signature

6    and the electronic filing.  I wish for that to proceed

7    forward and, at the same time, simultaneously, Ms. Colony

8    obeying the order that the Court just gave her and we'll go

9    from there.

10          THE COURT:  Right, but -- but I'll tell you -- I'll

11   give you a preview.  If she comes back and says the --

12   represents to me that the subpoena is moot because she's

13   already producing the documents, than it's all -- in all

14   likelihood, I'll quash the subpoena, because we don't need to

15   engage in duplicative, expensive process when you're already

16   going to have the records.  And lawyers are -- have an

17   obligation of candor to the Court.  They have to tell me the

18   truth.  If they don't, they could lose their license --

19          MS. RYAN:  Yes.

20          THE COURT:  -- and be held in contempt of Court.

21   So that just is not going to happen.  All right?

22          MS. RYAN:  I'm fine with that.

23          THE COURT:  Okay.

24          MS. RYAN:  If -- if -- it sounds like a very

25   simple, fast procedure, but at least at that point in time, I

46

1    will know where my paper mars are and all of the other

2    individual things that I'm not sure Ms. Colony even knew

3    existed in the Colorado Department of Corrections Medical

4    Department.

5             THE COURT:  Okay.  So what else can we do today,

6    Ms. Ryan?

7             MS. RYAN:  For me, that was it.  I need to get the

8    protective order on the scheduling conference.  I don't -- no

9    objections other than my changes to the protective order --

10            THE COURT:  Okay.

11            MS. RYAN:  -- have been brought to me by Mr. Ringel

12   or Mr. Kennedy.  It has all been objections from Ms. Colony.

13   So if everybody's happy, I guess today I've heard that

14   November 1st --

15            THE COURT:  Will be the close of discovery.

16            MS. RYAN:  -- is the -- will be the close of

17   discovery?  Okay.  And the scheduling conference order is --

18   scheduling order is --

19            THE COURT:  Just get me in by Monday or so.

20            MS. RYAN:  You know, sometime within a week or so.

21            THE COURT:  Yeah.

22            MS. RYAN:  And --

23            THE COURT:  Hold on, Mr. Kennedy.

24            MS. RYAN:  The other thing that -- one last thing.

25   I did have one more question, and I submitted a copy of what

1    I gave them to the Court.  I had an obligation, my

2    understanding, to submit within 14 days a list of where any

3    discoverable information relevant would be --

4            THE COURT:  That's a Rule 26(a)(1) disclosure.

5            MS. RYAN:  Yes.

6            THE COURT:  Yeah.

7            MS. RYAN:  And I have already done that.  And so is

8    there anything else at all that you all need from me at this

9    point in time?

10           THE COURT:  Well, so --

11           MR. KENNEDY:  That's what discovery is for and --

12           THE COURT:  I'll address that.  So a Rule 26(a)(1)

13   disclosure lists witnesses you think support your case,

14   documents you think support your case, experts you've already

15   identified who are going to support your case, and insurance,

16   which is not relevant here.  So did you -- did I address Rule

17   26(a)(1) disclosures before?

18           MS. COLONY:  I had brought it up at the last

19   conference on the subject of subpoenas that -- indicating

20   that I thought I could obviate the need for her subpoenas

21   because I was going to be doing disclosures --

22           THE COURT:  Okay.

23           MS. COLONY:  -- and the medical records would be

24   part of my disclosures.

25           THE COURT:  Understood.  Did you just -- did you do

48

1    disclosures yet?

2             MS. COLONY:  I haven't yet.  I haven't --

3             THE COURT:  Okay.

4             MS. COLONY:  Had this dispute over my access to the

5    records, and they've just been sitting in my office.

6             THE COURT:  Understood.  So when do you want to

7    submit at 26(a)(1)?  Two weeks again?

8             MS. COLONY:  Probably around the same time --

9             THE COURT:  All right.

10            MS. COLONY:  -- because it's going to be the same

11   project.

12            THE COURT:  It'll be fine.  So just do your initial

13   disclosures, then.

14            MR. KENNEDY:  And same here, Your Honor.  I've

15   received probably a thousand pages from client --

16            THE COURT:  Okay.

17            MR. KENNEDY:  -- that I need to go over, but, yeah,

18   two weeks or so, I should be able to disclose all that.

19            THE COURT:  That will be fine.  We'll make that a

20   --

21            MS. RYAN:  Okay.

22            THE COURT:  -- the first, 8th -- July 8th, okay?

23            MS. RYAN:  So there's nothing else that I need to

24   do for you, for either one of you, at this point in time?

25   I've given you --

1          THE COURT:  Well, so -- also, as -- as -- if you

2    would generate -- if new information gets generated, like

3    somebody else comes to your mind or another document, then

4    what you do is supplement.  So --

5          MS. RYAN:  Right.

6          THE COURT:  -- parties are under a continuing

7    obligation to supplement their initial disclosures as the

8    case goes on.

9          MS. RYAN:  Yeah.

10          THE COURT:  Okay?  So anyway, I will -- I will --

11    I'll declare that until and unless they ask for more

12    information, you're safe.  Okay?

13          MS. RYAN:  Yeah.

14          THE COURT:  All right.  Anything else from you

15    guys?

16          MR. KENNEDY:  Just one -- just to make clear

17    because I feel this might be an issue.  Since she's going

18    with my client for emotional distress, those records --

19          THE COURT:  I thought she waived it for everybody,

20    didn't she?

21          MS. RYAN:  As far as Dr. Mix goes, I am not going

22    for emotional loss --

23          MR. KENNEDY:  Okay.

24          MS. RYAN:  -- and suffering with Dr. Mix.  That's

25    where it gets a little complicated, Mr. Kennedy.  If you read

1   what the claim is right now in the third amended, the

2   complaint that we're actually working with, it will change

3   when and if I am granted my amendment.

4           MR. KENNEDY:  Right.

5           MS. RYAN:  But right now the claim against Dr. Mix

6   is that this was the diagnoses on this day in 2013 and 2014

7   -- early 2014.  From that point forward, every time I was

8   denied the second phase of treatment, more chemo drugs poured

9   into my body and the resulting damage.  They're compensatory

10  for the ongoing -- like, for example, my heart:  I used to

11  have just a basic heart murmur, congenital heart murmur, and

12  now I have -- my heart -- I have a heart that's just pretty

13  much blown up and that's from -- directly caused from the

14  chemo drugs.  That's my burden to prove.  So compensatory, it

15  takes a little over a million dollars a year in medical

16  coverage just to take care of all of the effects.

17          THE COURT:  But those are economic damages.

18  Compensatory is only emotional.  The actual dollar cost of

19  what it's going to take in the past --

20          MS. RYAN:  Right.

21          THE COURT:  -- present or future, you're not

22  waiving that.  All you've done is waive emotional damages --

23          MS. RYAN:  That's right.

24          THE COURT:  -- which she did on the record.  Okay?

25          MR. KENNEDY:  Okay.

51

1          MS. RYAN:  But if CHP comes in and I am granted my

2    amendment, then emotional loss and suffering comes in.

3          MR. KENNEDY:  See, and that's what I'm afraid of,

4    Your Honor.

5          MS. RYAN:  (Inaudible)

6          THE COURT:  Well, but then --

7          MS. RYAN:  And so we'll see.

8          THE COURT:  -- discovery is available about your

9    entire emotional state, regardless of what caused it.  So

10   that's up to --

11         MS. RYAN:  So, bottom --

12         MR. KENNEDY:  But if that's her plan, Your Honor,

13   again I don't want to go through coming back here in four

14   months and arguing about I need additional discovery because

15   she has changed something.

16         THE COURT:  Well, but there's going to be a good

17   cause requirement too, Mr. Kennedy.

18         MR. KENNEDY:  Okay.

19         THE COURT:  And so as the case gets on later, the

20   good cause becomes far more difficult to achieve.

21   Understood?  Okay.

22         MS. RYAN:  And so we're waiting on the Court, and

23   it would be helpful to have the answer of whether or not I am

24   granted my amendment.  Then we can start moving quickly with

25   everything.  If it is granted, it does change Dr. Mix's

52

 1   position as a defendant, but right now it does not.

 2        THE COURT:  Well, you're not waiting on me yet

 3   because their time for responding hasn't even come and you

 4   get the chance for a reply.

 5        MS. RYAN:  And I think -- I'm not sure if you did

 6   --

 7        MS. COLONY:  She hasn't filed the amended complaint

 8   itself yet, as you had instructed at the last hearing.

 9   Basically kind of all we got was just another motion.

10        THE COURT:  Let's see --

11        MS. RYAN:  Actually, I attached it as was proposed,

12   as I was ordered, and I highlighted -- the entire thing is

13   there.

14        THE COURT:  She did -- she did --

15        MS. RYAN:  I was ordered to file a leave to --

16        THE COURT:  She filed a yellow highlighted copy of

17   changes as Exhibit 1 -- as Attachment 1 to the motion for

18   leave to file a proposed amendment.

19        MS. RYAN:  It's --

20        MS. COLONY:  Okay.

21        MS. RYAN:  -- ECF --

22        MR. KENNEDY:  We call it ECF 1-11 (ph), Your Honor.

23        THE COURT:  Yeah, that's --

24        MS. RYAN:  It's 1-11.

25        MR. KENNEDY:  Okay.  I knew that.

1           MS. COLONY:  It was my understanding, and I guess

2     from the last status conference, that you already said you

3     would allow her to file a --

4           MR. KENNEDY:  That's what -- I wasn't going to

5     respond --

6           MS. COLONY:  But so yeah, I wasn't going to

7     respond.

8           THE COURT:  Oh, so are you objecting or not

9     objecting?  That -- I already said -- I already gave her

10    permission?

11          MS. COLONY:  You already gave her permission.

12          THE COURT:  Okay.  Then 1-11 is granted.

13          MS. RYAN:  So it's no longer -- so that I'm clear

14    here, I was ordered to put the words "proposed amendment."

15    It's no longer proposed and the supplement amendment of 1-11

16    has been granted?

17          THE COURT:  We'll -- we'll be accepting it.

18          MS. RYAN:  Okay.

19          MR. KENNEDY:  And we'll -- we'll file an answer to

20    that in ten days.

21          THE COURT:  Ten days.

22          MS. RYAN:  Okay.  All right.

23          THE COURT:  Okay?

24          MS. RYAN:  So then, yes, Mr. -- Mr. Kennedy.

25          MR. KENNEDY:  But that -- but that's the -- so now

1    emotional distress is in, so I just don't want to come back

2    here fighting about --

3            MS. RYAN:  Exactly.

4            THE COURT:  No, that's -- that's -- okay, so what

5    do you believe the fight would be, Mr. Kennedy?

6            MR. KENNEDY:  Well, I just believe that obviously

7    my client's entitled to discovery related to her mental and

8    emotional.

9            THE COURT:  Correct.

10           MR. KENNEDY:  But I also believe that anything I

11   get, Ms. Colony has a right to, and I believe Ms. Ryan's not

12   going to be happy about that, but I can't keep things back.

13           THE COURT:  You'll just have to mark it

14   confidential, but parties have to share records with one

15   another.

16           MR. KENNEDY:  Of course, of course.  Right, and I

17   just want you to know --

18           MS. RYAN:  Correct.

19           MR. KENNEDY:  -- that get does get it.  Okay, I

20   just want to make sure that doesn't become an issue about --

21           THE COURT:  Yep.

22           MR. KENNEDY:  -- about me providing --

23           THE COURT:  It won't.

24           MR. KENNEDY:  -- emotional.

25           MS. RYAN:  I do understand how the protective order

1   works.

2           MR. KENNEDY:  Thank you.

3           THE COURT:  Okay.  Very good, guys.

4           MS. RYAN:  Okay.

5           MR. KENNEDY:  Thank you, Your Honor.

6           THE COURT:  Thank you, guys.

7           MS. RYAN:  All right, thank you.

8           THE COURT:  Take care.

9           (Whereupon, the within hearing was then in

10   conclusion at 3:34 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

56

1               TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                    July 24, 2019

8    Signature of Transcriber          Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25