IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.    18 – cv – 00956 – MSK-MEH

SHAWNEE RYAN, Plaintiff

V.

**Defendants:**
**CORRECTIONAL HEALTH PARTNERS (dba Correctional Health Partners, Inc.; Correctional Health Companies, Inc.; Correctional Corporation of America; Physician Health Partners; CHP Companies, Inc.; Correctional Healthcare Physicians, P.C.) (CHP et al)**
**DR. JENNIFER MIX, M.D.  (personal and professional capacity)**
**HILARY VICTOROFF N.P.  (personal and professional capacity)**
**LAURA SOMMERSCHIELD N.P. (personal and professional capacity**)

**PLAINTIFF MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT TO ASSERT A CLAIM FOR PUNITIVE DAMAGES AGAINST DEFENDANTS CHP (et al) and DR. JENNIFER MIX**

Plaintiff Shawnee Ryan (Ryan) comes now, **pursuant to the parties Scheduling Order (ECF 132 page 28 (9)(a))**, requesting leave to file the attached amended complaint that asserts a claim for punitive damages against Defendant Group CHP (et al) and Dr. Jennifer Mix.

**Plaintiff certifies that the following disclosure of fact is accurate and truthful:**

- As required, the exchange of initial disclosures between the parties under Rule 26 FRCP has occurred.

- That the parties have conferred, for an extensive period of time, and that Plaintiff believes there is no further positive productivity to the Court or any party to confer further.  Attached as **Exhibit 'A'** is the last communication between the parties and it not only verifies the differences of opinion; it also reveals that even an attempt by Plaintiff to modify the Scheduling Order to allow more time for more well-rounded documentation through pending discovery, that in "fairness" (Plaintiff

referral to "fairness' in the attached is a reference toward fairness to the Defendants as it is their clients (and) one deposition from a non-party that impacts the Defendants) may or may not assist in eventual resolutions: is not of interest to opposing counsels[1].

- The Court, moved the deadline to amend to add punitive damages to August 26, 2019 which is a direct conflict with the Scheduling Order's deadline date of September 16, 2019, which leaves no ability to wait for the pending discovery that may or may not provide a more well-rounded view of punitive damage abilities for either side.  Plaintiff Ryan is complying with the Court's order with this Leave to File motion.

- Plaintiff Ryan states that she has two, at the moment, pending discoveries of significance to the question(s) of punitive damage strengths in this case. They are: first set of interrogatories on Defendant CHP owner, registered agent, President and CEO Geoffrey Archambeau, and a pending deposition of Deputy Executive Director of the Colorado Department of Corrections Kelly Wasco.  In part, the information sought from each, are the specifics on how each company accepted, incorporated and supervised/managed the handling, since 2014 through to Plaintiff Ryan's parole discharge date of October 4, 2018 of one of the grounds of jurisdiction in this case and new/untested Federal and State laws of the Affordable HealthCare Act's Inmate Catastrophic Medicaid Provision and the State of Colorado's adaptions into HCPF 14-006.

- Plaintiff Ryan points also to the fact within ECF 119 (Fourth Amended Complaint) that she has made her intent to pursue punitive damages in this case against Defendant Group CHP from the beginning.  Filing Leave to File now that she has viewed the further affirming grounds of merit that she has viewed, within fact-based discovery already in; she now files and attests, for a prima facie view to further aid the Court now: the attached evidence Exhibits SKR000001 through SKR000015, which **have either already been viewed (or) given full and complete access to view <u>at their</u>**

---

[1] [1] Plaintiff makes a to record notation that per Federal Rules of Evidence, Ms. Colony and State AG have no involvement, on any level of punitive damages discovery and litigating. Only compensatory damages are being sought against State defendants. Attached proposed Amendment, Exhibit "B" also clarifies the fact of no punitive damages against Defendants Victoroff and Sommerschield are being asked.

*__own volition__ at beginning of discovery; by opposing counsels.* To the best of a Pro Se litigant's ability, Ryan has noted the relevance of each Exhibit throughout the following motion.

**Grounds:**

- Plaintiff believes she has provided a plausible basis for exemplary and punitive damages liability when her version of the facts is held alongside the cumulative medical fact evidence within the exhibits below. (*See Sutton v Utah State Sch for the Deaf & Blind, 173 F. 3d 1226, 1236 (10th Cir. 1999).*

- *(Also see: "In order to establish prima facie proof of a triable issue, a plaintiff must articulate [a] reasonable likelihood that the issue [of whether a defendant's conduct was willful and wanton will ultimately be submitted to the jury for resolution.'"  Arapahoe County Water & Wastewater Pub. Improvement Dist.v. HRD Eng'g, Inc., No. 08-cv-01788-WYD-KMT, 2009 WL 3158160, at \*6 (D. Colo. Sept.25, 2009) (unreported decision) (quoting Leidholt v. Dist. Court, 619 P.2d 768, 771 (Colo.1980)).*

- *(Also see: "To establish prima facie proof of a triable issue, the plaintiff is not required to show that the evidence is sufficient to survive a defendant's motion for summary judgment on the issue of exemplary damages.  E&S Liquors, Inc., 2009 WL 837656, at \*2 (differentiating the standard for granting leave to amend from evaluation of whether evidence is sufficient to defeat summary judgment)).*

**DISCOVERY ATTACHMENTS AND EXHIBIT(S) THAT ARE FILED PER PROTECTION ORDER AS RESTRICTED LEVEL 1.  FILED IN A SEPARATE BUT TIED FILING AS RESTRICTED DOCUMENTS.  15 protected exhibits in all filed in sequential CMECF next filing behind this one.  Description of each, to assist in clarity of describing further *prima facie of triable issues* grounds in this case is given below:[2]:**

---

[2] Opposing counsels have either viewed the following (or) had the ability opened and authorized to view the following of their own volition.

- **(SKR 000001)** Shawnee Ryan's current primary diagnoses list (discloses information regarding outside medical providers from onsets in 2013 to present day)
- **(SKR 000002)** Hematologists Dr. Richard Nash and Dr. Daniel Sherbenou (partial) certifications and verifications evidence of bone marrow health/progression of disease due to extended chemotherapy drugs over an extended period of time (ECF119).
- **(SKR 000003)** 2015 assessment of Dr. Richard Nash and bone marrow biopsy #1 dated 3/17/2014 (first of aprx 7 BMB's tracking health done from onset to present day) and 2017 notes of Dr. Nash which also include insight into final CBCI reason 2015 auto transplant was delayed. (ECF1 ("Medical Facts Relevant…") and ECF119))
- **(SKR 000004)** Progressive notes (done at each visit as running log since appt. #1 in 2014) of Oncologist Dr. John Burke dated 12/13/2018, which are in concert with SKR000005/bone marrow biopsy results, taken after release to parole in order to determine causes of the chronic neutropenia and pancyptopenia present in outside labs results since late Spring 2018. Reveals onset of gene mutations.
- **(SKR 000005)** Dr. John Burke (see SKR000004 above)
- **(SKR 000006)** Dr. John Burke (most recent BMB dated July 9, 2019.  Chosen as being the closest to the date of punitive damages motion filing. Verifying unchanged and progressive status of mutations existing.
- **(SKR 000007)** Dr. June Scott and Aurora South Hospital right kidney biopsy results dated Nov. 12, 2013 which marked the first diagnosis of Light Chain Deposition Disease and the Bence Jones Lambda. Left kidney, in 2013, reveals on internal CDOC/Dr. June Scott ultrasound in-house as normal at the time (2013 CDOC).
- **(SKR 000008)** Dr. Dimitri Sychev both kidneys ultrasound dated Jan. 2, 2019 showing increasing decreases of size/atrophy to right kidney (and) decreased size of left kidney showing now impacted as well.
- **(SKR 000009)** Dr. Richard Nash/Presbyterian St. Lukes 2015 cardio workup showing health of heart in 2015.
- **(SKR 000010)** Dr. Vijayaraghavan/Dr. 'ViJay' post-DTPACE workup dated May 12, 2017, showing deterioration of heart.
- **(SKR 000011**) Dr. David Schuchman, South Denver Cardiology and Littleton Adventist cardio diagnostics dated January 18, 2019, showing continually increasing deterioration of heart.

- **(SKR 000012)** Dr. Lacey (Elizabeth) Echalier, retina specialist Dr. Marisa Lau and Denver Health Hospital, diagnostic and resulting same day laser surgery of torn retina in left eye, dated March 20, 2018.
- **(SKR 000013)** Specialized Eye Surgeon Dr. Paula Pecen and Sally Rodgers Eye Center at UCHealth, dated Nov. 19, 2018, verifying vitreous (both eyes) and retina detachment (left eye) and surgical plans to repair.
- **(SKR 000014)** Internal Medicine health and Dr. Joel Levine (Denver Health) dated Nov. 29, 2017 based on referral from Dr. Burke that pended for approvals from CHP and CDOC for over 2 years. Marked page "300", "Plan" sec 2 marked as "MRCP" (an intern in *required real time collections of specimens where some took 4 days to collec*t) partially verifies Levine's intent and order for Ryan's admittance to DH for no less than the 4 days required to gather all specimens in real time.
- **(SKR 000015)** UCHealth and Dr.'s Frank Scott, Matthew Francis and Dr. Sable dated from July 3, 2019 through July 10, 2019 verifying deterioration of gastro-intestinal health.

**THE MOTION FOR LEAVE TO FILE**
Plaintiff Shawnee Ryan comes now and moves this Court for leave to file an amended complaint to assert a clam for punitive damages, and in support thereof states:

1. The grounds for this motion are that the proposed amendment is necessary to determine completely and protect completely the rights of the parties in this action, to determine the scope of remaining discovery, and to afford the Plaintiff Shawnee Ryan complete relief for her injuries.  A copy of the *proposed amended complaint, complete with Court preferred highlighting of altered sections* is attached hereto as Plaintiffs' Exhibit "B.

    2.  Plaintiff states that such amendment is, at minimum, proper pursuant to:  "The Court has discretion to grant a party leave to amend its pleadings.  Foman v. Davis, 371 U.S. 178, 182 (1962); see Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

"In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant…undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment…the leave sought should, as the rules require, be 'freely given.'" Id. (quoting Fed. R. Civ. P. 15(a)(2))". **Plaintiff Ryan has obeyed FRCP in discovering what she has within the initial disclosures now complete (and) other discovery to become disclosed to the Court through future dispositive motions.  Plaintiff Ryan believes the showing within Exhibits #1 through #15, which is a very partial showing of physical damages she has suffered, that will continue to come forward to and through trial; provides a *prima facie* showing of undeniable medical and scientific facts, outside of Ryan's own declarations and words to date, that it is in the interests of justice for a jury to decide all damages she has suffered as an alleged victim of the Defendant's actions, or lack of. Leave to File is given not to delay, nor in bad faith nor as a dilatory move. It is filed as a natural progression of factual truths in this case.**

 "Under Colorado law, an award of exemplary damages is permissible when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." Colo. Rev. Stat. § 13-21-102(1)(a).  **"Willful** and wanton conduct" is conduct "purposefully committed **which the actor *must have realized* was dangerous, done *heedlessly and recklessly*, without regard to consequences or to the rights and safety of others, particularly the plaintiff."** Id. § 13-21-102(1)(b).  **Plaintiff Ryan states, with the question of beginning to define the multi-facets of "willful", that there is one *prima facie* fact that is blatantly obvious:   Shawnee Ryan was incarcerated, as a state prisoner, during the entire time of the claims within this case (she was in full health going in (per CDOC 2012) and fell to these diseases while incarcerated (per CDOC 2013). Prisoners, have no choices of their own regarding medical care if faced with life-threats and have any desire to stay alive until release (which Ryan did and does) (and) are literally, in her type of situation, at the complete and total mercy of the contracts and the people done business with, of her Guardians: the Colorado Department of Corrections.  Secondly, the Defendants CHP (et al), as proven by their own listed contracts (those in so far); their public**

**declarations and advertising from inception of their corporation (in place verifiably (Secretary of State public records) for over a decade (and) their public advertising of their client base (so far revealing client CDOC for Ryan's entire incarceration) were the <u>only</u> approvals and denials of external need inmate care in Ryan's case.** *<u>In defining "willful', in part,</u> Ryan argues that the only "willfulness" from anyone, of whether or not she was given the outside life-essential medical care she needed to stay alive was the "will" of approval and denial decision maker Defendants:  CHP (et al) and Dr. Jennifer Mix M.D.*

"Where the *defendant is conscious of his conduct* and *the existing conditions* and *knew or should have known* that injury would **result,** the statutory requirements are met". "Coors v. Sec. Life of Denver Ins. Co., 112 P.3d 59, 66 (Colo. 2005) (citations omitted); see also U.S. Fire Ins. Co. v. Sonitrol Mgmt. Corp.,192 P.3d 543, 549 (Colo. App. 2008) (describing willful and wanton conduct as conduct that "'exhibits an intent consciously to disregard the safety of others [and] *extends beyond mere unreasonableness*'" (quoting Forman v. Brown, 944 P.2d 559, 564 (Colo. App. 1996)). Miller v. Solaglass Cal., Inc., 870 P.2d 559, 568 (Colo. 1993) (Willful and wanton conduct is conduct that "creates a substantial risk of harm to another and is purposefully performed with an awareness of the risk in disregard of the consequences.").  **Plaintiff Ryan states that initial discovery disclosure from Dr. Mix verifies minimal to no accessing of Ryan's in-depth records was done at time of denials of care.**  Dr. Jennifer Mix is a licensed medical doctor, condoned and advertised as such by her employer (CHP et al) who not only is assumed to know as much as, or more than, the physicians she is denying orders of, and should be medically competent enough when faced with a diagnosis such as Ryan's, to at minimum make more than a superficial and cursory effort to check all medical records available and open to her. Further, as also CMO for Defendant, Dr. Mix is the final word in a dispute/appeal for care. At minimum, Defendant Group CHP represents as medically knowledgeable and competent. At first sight of Ryan's complex diagnoses in 2013 and early 2014; with weight lent against her long sentence of two 6-year consecutive (*knowledge that the problem of keeping her alive falls on Defendants <u>and their client CDOC</u>*); showed an utterly complete lack of "reasonableness", at minimum, in <u>*not following the highly specialized*</u>

*professionals (Exhibit SKR000001) giving the medical orders necessary for Ryan to stay alive.*  **Plaintiff Ryan further attests at this time, that *so far in discovery*; Defendant Group CHP cannot and have not explained 'why', when seeing what was in front of them from the first showing of rarity and complexity in diagnosis (Exhibit SKR000007 and Exhibit SKR 000003 (BMB 3/17/14)) did they not, make the simplest efforts, to pick up a phone to Ryan's Guardians and give a 'heads up' that not just catastrophic, but extreme catastrophic inmate need was going to go on for her entire incarceration (and as of 2014) that Medicaid was made available to assist in paying for her extreme needs of second phased care.**

3. Initially, a defendant may be held liable for punitive damages where the defendant engaged in gross negligence.  Gross negligence in turn is partially defined as conduct so reckless or wanting in care that it constituted conscious disregard or indifference to the life, safety or rights of persons exposed to such conduct.  **Further defined** as medical personnel who undertake to treat or be responsible to treat specialized problems are therein held to the standard of care applicable to those specialties even if they do not claim specialized experience. **Further defined** (*Restatement (Second) of Torts 328 (D) (1)* as "Res ip'sa lo'quitur" (The Thing speaks for Itself)) doctrine in negligence law **when the event does not occur in the absence of negligence.**

4. Ryan alleging constitutional grounds of suffering a constitutional violation denying her adequate medical care (and) a second violation claim that she suffered also from the alleged cruelty of Defendant Group CHP (et al) (***Claim Two of Fourth Amended Complaint ECF 119 Pages 24-25***) she must also establish foundation and prove within that foundation a "Pattern of Practice" so reckless, willful, knowing, wanton and/or recalcitrant that it directly impacted her as cruel, unusual and/or resulting in denials of adequate medical care necessary to life. Ryan states the foundation of discovery investigation so far, that is giving her a preliminarily strong avenue to attach to the patterns within her own case, are the reveals of how readily, how plain and practiced (especially to an alone Pro Se Prisoner case litigant) that the Defendants and their counsels are at *not* revealing plain *or even straight answering at all*; the requests for discovery. Leaving

Ryan with the physical time, to research their public record patterns of behaviour in their corporate and professional worlds. So far, she has located four currently active multi-state cases against these same Defendants that bear strong similarities in medical handling to this case. Some, within the 10th Circuit. Public court records of closed cases against these Defendants, spanning multi-states, with some in 10th Circuit also; reveal very similar patterns of practice as being shown in this case. It is through the pending answers from Mr. Archambeau and what those answers lead to, in becoming more questions and answers. It is through the pending deposition of Kelly Wasco; which Plaintiff Ryan does intend as necessary in order to compel it will be done through subpoena of Ms. Wasco; that answers to what went on here, in this case and spanning years, with the pattern of administrative and professional handling; that Ryan believes will show the full pattern of practice of the Defendant Group CHP (et al).

5.   Regarding a corporate defendant, punitive damages may only be imposed for the conduct of an employee or agent if the employer or agent themselves participated in such conduct, or knowingly condoned by action conduct that constituted gross negligence either by their hands-on awareness *(or) their apathy in letting the practices they knew to be present to continue on in order to personally benefit or personally profit, and do so while claimant was being injured from the collective and cumulative practices of the corporation and its employees*. Discovery continues to enlarge Dr. Jennifer Mix as an employee of CHP (et al) (and) Geoffrey Archambeau as the Person of Most Knowledge on behalf of the corporation in his publicly advertised capacity as Owner, Registered Agent, CEO and President.  His first set of Interrogatories pends.

   **PLAINTIFF SHAWNEE RYAN PLEADS THE COURT,** to accept in the interests of justice in this case, the attached as **"EXHIBIT B"** proposed amendment adding defined punitive damages to this case.   She believes she has, to the best of her ability, shown *prima facie evidence* that  the actions she claimed harmed her were knowing, they were willful and they were executed over a very long period of time which lends to a callous disregard for known authority and law on the part of the Defendants CHP (et al) and Dr. Jennifer Mix M.D.

Respectfully submitted,

S/Shawnee Ryan
11309 West Exposition Drive
Lakewood, Colorado 80226
720-431-8319
shawneeryan216@gmail.com

**CERTIFICATE OF SERVICE**

I have served, through the CMECF SYSTEM, this **PLAINTIFF MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT TO ASSERT A CLAIM FOR PUNITIVE DAMAGES AGAINST DEFENDANTS CHP (et al) and DR. JENNIFER MIX** to the parties below on this 13th day of August 2019.

S/Shawnee Ryan
11309 West Exposition Drive
Lakewood, Colorado 80225
720-431-8319
shawneeryan216@gmail.com

Clerk of Court:  cod_cmecf@cod.uscourts.gov
Andrew David Ringel:  ringela@hallevans.com
Edmund Martin Kennedy:  kennedye@hallevans.com
Amy Colony:  acolony@coag.gov