# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No.        **18 – cv – 00956 – MSK-MEH**
(*To be supplied by the Court*)


**SHAWNEE RYAN, Plaintiff**

**V.**

**Defendants:**
**CORRECTIONAL HEALTH PARTNERS (dba Correctional Health Partners, Inc.; Correctional Health Companies, Inc.; Correctional Corporation of America; Physician Health Partners; CHP Companies, Inc.; Correctional Healthcare Physicians, P.C.) (CHP et al)**

**DR. JENNIFER MIX, M.D.  (personal and professional capacity)**

**HILARY VICTOROFF N.P.  (personal and professional capacity)**

**LAURA SOMMERSCHIELD N.P. (personal and professional capacity**)
*(List each named defendant on a separate line.  If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names of defendants listed in the above caption must be identical to those contained in Section B.  Do not include addresses here.)*

**==Exhibit "B" Proposed with Highlighted Changes==:   PRISONER COMPLAINT (FIFTH AMENDED)**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain:  an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may only include only:  the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

**A.  PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where cross-related papers may be served by filing a notice of change of address. Failure to keep a current address*
*on file with the court may result in dismissal of your case.*

Shawnee Ryan.  #159496.  <mark>11309 West Exposition Drive Lakewood, Colorado 80226</mark>  Cell Phone:  720-431-8319.  E-Mail:  shawneeryan216@gmail.com

Shawnee Hyatt-Ryan. Shawnee Hyatt. Shawnee Casad.
(*Other names by which you have been known*)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

Pretrial detainee

Civilly committed detainee

Immigration detainee

Convicted and sentenced state prisoner

Convicted and sentenced federal prisoner

X  Other (*Please explain*):   I am not a detained, convicted and sentenced state prisoner.   I was paroled on October 4, 2018.

**B. DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the Complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B: DEFENDANT(S) INFORMATION."*

**Defendant 1: (Name, Job title, and complete mailing address)**

**CORRECTIONAL HEALTH PARTNERS (dba Correctional Health Partners, Inc.; Correctional Health Companies, Inc.; Correctional Corporation of America; Physician Health Partners (CHP et al)**
1125 17th Street Suite 100, Denver, Colorado 80202.  866-932-7185.

**At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?** X Yes    No (*check one).* **Briefly explain**:

1.      Under 42 U.S.C. 1983 for their deliberately indifferent policies, practices, habits, customs, procedures, training and supervision of staff with respect to the provision of medical care and treatment for inmates with serious medical needs.

2. CHP properly sued under municipal liability as they are private corporations, not entitled to any immunity under the Colorado Governmental Immunity Act.

3. CHP sued directly and indirectly for negligence, negligent supervision, negligent training of their staff for failing to ensure the medically necessary to life and appropriate medical care needed by Shawnee Ryan; and for the acts and omission of their employees, staff, agents and affiliates; all while acting within the scope of their employment.

**Defendant 1 is being sued in his/her      individual and/or X official capacity.**

3

**Defendant 2: (Name, Job title, and complete mailing address)**

**DR. JENNIFER MIX, M.D.  Job Title:**  Supervising M.D. and CMO for Defendant 1.

1125 17th Street Suite 100, Denver, Colorado 80202.  866-932-7185.

**At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?**  X Yes         No (*check one).*  **Briefly explain**:

**Defendant 2 is being sued in his/her    X individual and/or     official capacity.**

1. Defendant 2 is employed by Defendant 1.
2. Defendant 2, in her status as CMO, is the only final signature and final approving authority M.D. of record, for all medical care in question on behalf of Shawnee Ryan.
3. Defendant 2 is a fully licensed general practice medical doctor, under state law, who fully represented herself and acted as an equal or greater than medical authority over all referring care specialists when she denied medical care in this case.
4. Defendant 2 is sued in her licensed medical professional capacity for Deliberate Indifference to life essential need for medical care.

**Defendant 3: (Name, Job title, and complete mailing address)**

**HILARY VICTOROFF N.P.  Job Title:**  Currently employed Nurse Practitioner, CDOC (Service address) 1250 Academy Park Loop.  Colorado Springs, Colorado 80910.

**At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?**  X Yes         No (*check one).*  **Briefly explain**:

1. At the time of claim, there were standard operating procedures in place within clinical services that Defendant 3 did not obey.  At time of claim, the discharge instructions from the hospital clearly have written recommendations and preferences from Dr. John Burke on them and were not obeyed.  At time of claim, my state of health and illness have very clear protocol for care that was not obeyed.  At time of claim, Defendant 3 fully represented herself in an equal or greater capacity of medical ability and knowledge in order to override her employer's protocol, standard protocol for my health state, an entire team

4

of medical specialists at the hospital including specific written wording of care by Dr. Burke; doing so as a state licensed registered nurse practitioner.

2. Defendant 3 is being individually sued under C.R.S. 12-38-117 (Falsification of Medical Records or Information) for withholding (misleading) to the court what is relevant, serious and substantial medical information from the known by Defendant 3 medical history of Shawnee Ryan.

3. Defendant 3 is further being individually sued on (5) individual events of violating the HIPPA Privacy Rule and Personal Health Information of Shawnee Ryan (*Title 45, subtitle A, subtitle C, part 160*), between the dates of February 1, 2019 through May 29th, 2019. Those events are: 1. Directly and/or guiding the assistance of others, to access and release the entirety of parolee Shawnee Ryan's CDOC medical history both verbally (and) literally, without a written or verbal release from Shawnee Ryan (CDOC Form 950-02A)**;** 2. Directly and/or guiding the assistance of others to physically locate, gather, copy and physically handle those inactive and stored CDOC medical records of Shawnee Ryan**;** 3. Directly and/or guiding the assistance of others to physically remove from the CDOC the resulting two boxes of Shawnee Ryan's medical records**;** 4. Directly and/or guiding the assistance of others to physically hand over the boxes of medical records to another party who also did not have a written (or verbal) release to access from Shawnee Ryan 5. Directly violating, with regard to former inmate and current parolee Shawnee Ryan, her CDOC sworn employee affidavit (CDOC Form 950-02B) to protect inmate medical privacy.

**Defendant 3 is being sued in his/her    X individual and/or      official capacity.**

**Defendant 4: (Name, Job title, and complete mailing address)**

**LAURA SOMMERSCHIELD N.P.   Job title: Unknown. Is a previous employee of the Colorado Department of Corrections and is registered with the State as a**

**Nurse Practitioner**

Address unknown but is filed, by the court, from US Marshal's previous service as a Level 3 Restricted Document.

**At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?**   X Yes        No (*check one).*  **Briefly explain**:

At time of claim, Defendant 4 was fully aware that multiple choices had initially been given her for scheduling of eye surgery, by Denver Health, who is the network hospital provider for Defendant 1. Defendant 4, with direct tie to computer base, access to surgeons and specialists, was fully aware of all orders for urgency. Defendant 4 at time of claim, was fully aware of her employer's standards of protocol for adequate medical care to be given and also fully aware of Shawnee Ryan's high-risk medical (M5) status.  An assigned status given by her employer to Shawnee Ryan's inmate classification. Defendant 4 was a state employee of CDOC at the time and entrusted by Defendant 1 to provide and give adequate medical care according to all protocols. At time of claim, Defendant 4 fully represented herself in an equal or greater capacity of medical ability and knowledge in order to override referring specialists and surgeon orders. Doing so as a state licensed registered nurse practitioner.

**Defendant 4 is being sued in his/her   X   individual        official capacity.**


**C. JURISDICTION**
*Identify the federal legal basis for your claim(s): (check all that apply)*

| X | 42 U.S.C. 1983 (state, county, and municipal defendants) |

| | *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,403 U.S. 388 (1971) (*federal defendants) |

| x | Other: (please identify): |

A) Jurisdiction: Article III, Sec 1 of the United States Constitution and 42 U.S.C. 1988. Jurisdiction pursuant to 28 U.S.C. 1331, 1343, 1201. Pendent jurisdiction based on 28 U.S.C. 1367 as violations are substantial, have sequential commonality spanning extensive records and time.

6

B) Federal question pursuant to 28 U.S.C. 1331 (claims arising under the Constitution, laws or treaties of the United States): Specific to: 42:1983 Civil Rights Act in violation of Eighth Amendment to US Constitution & 42 USCS (201), Title 42 Public Health and Welfare, Chapter 6A; specificity to AHCA Inmate Catastrophic Medicaid Provision incorporated into Colorado State law as HCPF 14-006.

**D.    STATEMENT OF CLAIM(S):**

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the dates on which the incident occurred, the name(s) of the specific person(s), involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space*
*Is needed to describe the claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D.  STATEMENT OF CLAIM(S)."*

**CLAIM ONE: NEGLIGENCE against CORRECTIONAL HEALTH PARTNERS (dba Correctional Health Partners, Inc.; Correctional Health Companies, Inc.; Correctional Corporation of America; Physician Health Partners (CHP et al)**

**Supporting Facts:**
- Plaintiff incorporates all of the statements made within Claim One and Claim Two as relevant to proving the charge of Negligence.
- On CDOC entry **(Nov 2012)** Ryan was screened in excellent health, fully immunized.
- On or around **March 23, 2012**, Ryan fell ill at LaVista Correctional Facility (LVCF); could not fully recover; a specific blood lab revealed kidney dysfunction; resulting in Ryan's EAO (Executive Authorization Order), progressive return to DWCF in **May 2013**; where she was placed on medical hold in **November 2013**.  Ryan remained on medical hold until her release to parole on **October 4, 2018**.
- From **September 2013 through April 2014,** various diagnostics confirmed (2) fatal diseases:  Multiple Myeloma (blood cancer) and Light Chain Deposition/Cast Nephropathy aka 'Myeloma Kidney' aka Bence Jones

7

Proteins (blood autoimmune) aka Monocolonal gammopathy of unknown significance. All definitions of both diagnoses as fast moving, aggressive, uncommon and complex three phase treatment as standards of care required. Three phases are:  1) Intensive and varied chemo therapy. Purpose as only palliative and symptomatic to reduce disease levels low enough to be able to give life-extending second phase treatment of bone marrow transplant. 2) Bone marrow transplant.  Either autologous stem cell (or) allogenic donor.   3)  Post-transplant recovery spanning two years with a rebuild of immune system.  Maintenance drug (anti-cloning, anti-embryonic Class 5 DEA contractually controlled/regulated and monitored by federal regulators) taken daily for remainder of life.  Both diagnoses are terminal and non-curable.  All treatments are symptomatic and palliative in nature and all result in lifelong extreme medical costs of care.

- At full diagnoses **(April 2014)** Ryan had advanced, since **March 2013**, to Stage III Multiple Myeloma and Stage IV Light Chain Cast.  Resulting in a then 30% atrophy of right kidney, endangered immune and Myeloma lesions (bone fractures).

  - In **January 2014,** the federal law of the **Affordable Health Care Act** was enacted into law and subsequently adapted into **Colorado state law (HCPF 14-006).**  Included in the Act was and remains the **Inmate Catastrophic Medicaid Provision.**

  - CHP (et al) is and fully represents themselves publicly as a private owned, for profit corporate entity that provides insurance and staffing services to various contracted correctional entities within the State of Colorado and nationwide.

  - CHP (et al) is not a government entity.

  - In Ryan's case, from onset of diagnoses in **September 2013 through to release October 4, 2018**; CHP (et al) conflicted their contract with CDOC, by actively denying catastrophic care that met the requirements of the new federal and state insurance laws and instead, only allowing, in Ryan's case, their own network of providers.

  - CDOC remained as the administrative and clerical control of the new government Medicaid coverage.

  - Ryan's CDOC clinical nurse case manager, who was assigned at Ryan's time of catastrophic diagnosing (and) a cardiac event in **November 2014** was the oversight and payer of any Medicaid covered procedures and treatments directly billed to her by outside medical caregivers.

- Unequivocally, Ryan was among the first, if not the first inmate, in the State of Colorado, to encounter not only catastrophic but extreme and extended catastrophic medical care need at or around the same time as the CDOC was incorporating the new federal provision into administrative capacities. Ryan's need was final diagnosed in **March and April 2014** and the new law enacted in **January 2014** with the State adaption enacting **in or around June 2014.**
- Ryan's medical need, Ryan, all of her outside assigned specialists, clinics and hospitals and at times three CDOC employed licensed medical doctors went on, from diagnoses beginnings in **November 2013 through to June 2017**; applying to CHP (et al) for second phase treatment of transplant.
- Five times, spanning those years, CHP (et al) denied all orders and appeals for transplant.
- During same time span, never once informing Ryan (or) to Ryan's knowledge CDOC; that Medicaid was available and that Ryan fully qualified for transplant in second phase standard of care.
- Medicaid has, for more than a decade, approved and covered the type of phased care for Ryan's diagnoses.
- Medicaid has no networks nor discriminates against Ryan in her status as an inmate.
- CDOC then went on, in or around **May 2017**, after Ryan's near death **in February 2017**, and under direct pressure from Ryan to provide under Medicaid; to grant Ryan an autologous stem cell transplant in **June 2017**.
- Authorized and fully covered under the same AHCA Inmate Medicaid Provision, available in **August 2014** when transplant was first applied for.
- Direct billings by qualifying and involved entities verifiably then went through Ryan's clinical nurse case manager (internal) at CDOC.
- Transplant successfully completed, Ryan's body then went on, to affect the third phase recovery process.
- CHP (et al) continued negligent actions as they remained in place to continue to approve and deny all ongoing medical care for Ryan, including post-transplant vital medical care, requested, at times, by specialists to be hospitalized. Requests that were also fully covered under the Inmate Medicaid Provision.
- The medically documented damages, to Ryan, resulting from the years of CHP (et al) using its authority in denying Ryan full treatment and exposing her to prolonged and intensive high doses of chemotherapy drugs is as

9

follows:  severely dilated left atrium of heart, tricuspid regurgitation; aortic valve regurgitation; pulmonary hypertension; chronic renal insufficiency and anemia with atrophy of both kidneys; detached retina in left eye; detached vitreous in both eyes; vision loss; hypogammaglobulinemia; chronic neutropenia and chronic pancyptopenia; multidysplasia/'CHIP' syndrome;  hyperlipidemia;  acute pancreatitis; chronic orthothesis; Deep Vein Thrombosis; severe neuropathy in hands and feet.

**CLAIM TWO:  EIGHTH AMENDMENT PROHIBITING AGAINST CRUEL AND UNUSUAL PUNISHMENT against CORRECTIONAL HEALTH PARTNERS (dba Correctional Health Partners, Inc.; Correctional Health Companies, Inc.; Correctional Corporation of America; Physician Health Partners (CHP et al)**

Supporting Facts:

- Plaintiff incorporates all statements made within Claim One as additional foundation showing the Defendants and the combined effect of their policies, procedures, habits and privately contracted means of business, with their prolonged denials of adequate care; were tortious and cruel in the effect result of damages and injuries to Ryan.
- From **September 2013 through November 2013,** Defendants became aware of the first diagnosis of Light Chain Deposition Cast aka monocolonal gammopathy aka Bence Jones aka Myeloma Kidney; through a CDOC Nephrologist performed in-house ultrasound biopsy of Ryan's kidneys.  At the time, Ryan's right kidney showed 30% atrophy.  Her left kidney appeared normal.
- The diagnosis either should have been as Defendants represent themselves as medical professionals (or) was as simple as an internet search away, known to Defendants as a rare, uncommon condition requiring a very specific and well established standard of care in order for the patient to prolong life.  Also, that the diagnosis is fatal and terminal.
- That standard of care is described above within Claim One.
- In **March 2014,** the second diagnosis of Multiple Myeloma was made known to Defendants through specialized oncologists and hematologists in the outside medical community.
- The diagnosis either should have been as Defendants represent themselves as medical professionals or was as simple as an internet search away;

known by Defendants to require the same exact standard of care, lifelong, as the Light Chain diagnosis.

- The standard of care is described above within Claim One.
- In **August of 2014**, Ryan's specialized oncology and hematology put the first order for second phase treatment of transplant, in for approval.
- Appeal was put in and was denied by Defendants as being no medical necessity and Ryan doing 'fine' on chemotherapy.
- At the time, Ryan had only endured aprx. 8 rounds of chemotherapy drugs.
- In **November of 2014**, Ryan's first cardiac event happened.
- The nature of these diseases is that the Light Chain Cast first attacks kidneys, then either heart or liver. Leaving whichever organ not chosen as the final organ to attack and fill to atrophy, which then leads to system complete failure and death.
- From August of 2014 through to June 2017, five different orders by various CDOC licensed M.D.'s, a CDOC licensed Nephrologist M.D., multiple oncologists and hematologists were put in and subsequently denied by Defendants.  Appeals that were put in were also denied.
- As these denials continued, at no time, did Defendants relieve Ryan by informing her or any of her internal or external providers or CDOC that Ryan fully met the qualifications for transplant through the AHCA and Inmate Catastrophic Medicaid Provision.
- A range, but not limited to, of excuses to not approve ranged from: "inappropriate requests", "offender on chemo"; "no medical necessity" and "provider not within our network".  Medicaid has fully approved and paid for all phases of Ryan's needed standard of care for more than a decade. Medicaid does not have a "network" nor does Medicaid discriminate against Ryan as an incarcerated individual which is shown by the AHCA provision and provision adapted into Colorado law.
- Throughout all **six years** of incarceration, no one or any other entity other than Medicaid when allowed to use; had equal power as Defendants to approve or deny medical care to Ryan.  That also means, that Defendants had to deal with all the medical care during those years that resulted from the damages to Ryan that were being caused by chemotherapy drugs and treatment.
- The autologous stem cell transplant granted to Ryan by CDOC in **2017** was

highly successful and the transplant itself, along with many of the diagnostics were billed directly to and fully covered by Ryan's Medicaid.

- The toll of physical damage and injury to Ryan caused by prolonged chemotherapy is: severely dilated left atrium of heart, tricuspid regurgitation; aortic valve regurgitation; pulmonary hypertension; chronic renal insufficiency and anemia with atrophy of both kidneys; detached retina in left eye; detached vitreous in both eyes; vision loss; hypogammaglobulinemia; chronic neutropenia and chronic pancyptopenia; myelodysplasia/'CHIP' syndrome;  hyperlipidemia;  acute pancreatitis; chronic orthothesis; Deep Vein Thrombosis; severe neuropathy in hands and feet.

**CLAIM THREE: DELIBERATE INDIFFERENCE TO LIFE ESSENTIAL NEED OF MEDICAL CARE against CHP (et al) employee Jennifer Mix M.D.**

Supporting Facts:
- At all times of Ryan's incarceration and onset of diagnoses **(November 2013 through October 4, 2018**), Defendant Mix was the sole final authority over what medical care Ryan received or was denied.
- Defendant Mix is not governmental immunized and is a private society employee of the private, for profit corporate entity of CHP (et al).
- Defendant Mix is a general practice licensed medical doctor without the equal or higher qualifications of all of Ryan's CDOC assigned specialists, surgeons and professionals.
- At all times, from **March 2014 through October 4, 2018**, Defendant Mix was aware, through the administration of CDOC, the contact she had with internal assigned CDOC physicians and practitioners, all administrative processes and Ryan's outside specialists, surgeons and professional caregivers themselves; of all of Ryan's diagnoses and medical needs.
- Over the periods of time in question, Defendant Mix personally denied life essential transplant and appeals five times.
  - In **May 2017**, Defendant Mix was made aware by CDOC administration that her previous denials were over-ridden and transplant would be provided under Medicaid.

- From **on or around October 2014,** with the hiring of former Chief Medical Officer Tiona; Defendant Mix engaged directly with Tiona, in the denials of transplant and life essential care to Ryan.  A specific incident **in o**r **around January 2016** of an email between the parties, was so offensive to Ryan's then CDOC physician, Dr. Ariola-Tirella, that he showed and read Ryan the email itself.  Due process will reveal, in part, that the firm contention of both was that no transplant would ever be given to Ryan.  At the time, both Defendants Mix and Tiona were aware of the written order from CDOC in **Fall 2015** that if denied special needs parole; Ryan would be given a transplant and treatment under Medicaid.
- By holding herself in as equal or above the highly specialized outside providers, Defendant Mix violated her licensing and legal parameters as a general practice M.D. and is held accountable in equal capacity.
- At no time, can Defendant Mix or her employer achieve a claim that they were unaware of the availability to Ryan and CDOC of Medicaid coverage adequate to meet Ryan's medical needs. By denying life essential medical care to Ryan, Defendant Mix willfully, knowingly and wantonly caused physical harm to Ryan's person.  The results are stated within Claim One of this filing. Defendant Mix, in her full personal, professional capacity, has her signatures, statements and/or fully documented by outside and internal care givers statements denying all transplant requests spanning the years they were requested.  At no time, can Defendant Mix achieve a claim that she had government immunity nor was not involved in the denial of life essential medical care for Ryan.

**CLAIM FOUR:  DELIBERATE INDIFFERENCE RESULTING IN GROSS NEGLIGENCE against Hilary Victoroff N.P.**

- N.P. Hilary Victoroff was the CDOC assigned internal provider to Ryan at the time of this incident.
- **End January 2017**, Ryan was direct admitted to Aurora South Hospital under the medical power of her CDOC assigned oncologist and hematologist for aggressive DTPCE chemo therapy.  Direct admitted from the Rocky Mountain Cancer Clinic/Aurora and not returned to facility custody.
- At discharge on **Feb. 3, 2017**; Defendant Victoroff ordered Ryan's return,

13

under the strong objections of Ryan's CDOC security detail and transport questioning 'why' the standard policy of hospitalized inmates returned for exam to DRDC Infirmary was being overridden.

- Ryan was delivered, on this Friday date, at aprx. 3:00 p.m. and directly into the hands of Defendant Victoroff.

- Victoroff was clearly instructed, by the written discharge orders and by Ryan that Dr. Burke (Ryan's oncologist) wanted Ryan in the infirmary and had verbally instructed Ryan that his orders for neutropenic fever are "30 minutes or less to Aurora South emergency room if temp reaches 100.3 or higher.  Victoroff had in hand, on Ryan's return, the written discharge orders and also was clearly and directly told by Ryan of Burke's verbal order. To which Defendant Victoroff clearly replied and was overheard by clinic staff as "I believe you."

- Victoroff then left, for her regular Saturday, Sunday and Monday days off (and) left  no orders for vitals monitoring or care for Ryan until her return on Tuesday.

- Which, per CDOC Clinical *and* Security policies; left Ryan with no ability  to access medical care unless Ryan could get a staff person (non-medical staff) to verify need and allow Ryan to access the clinic and medical staff.

- Ryan, by Saturday, knew she had a temp.

- Asserted herself, at personal risk with security staff, into the clinic where an R.N. who knows Ryan well consented to monitor her temperature and vitals.

- Ryan registered just under the 100.3 benchmark and could not have and did not receive care because no orders from Defendant Victoroff had been left.

- The next day, Ryan was found unresponsive in her cell by security staff, removed to clinic, where she spent the entire day in and out of coherency, loss of kidney and bladder functions and increasing fever.

- By the time the staff received an order from a provider for a routine CBC (which proved deep neutropenia) and made the on-site call to send Ryan to the DRDC infirmary; Ryan's temp was 103.8.

- Ryan preserves the ability to move for *res gestae* evidence, specific to Hilary Victoroff.

- The diagnoses of:  critical neutropenic fever, Influenza A, a spider bite to a finger on Ryan's right hand that had occurred while unresponsive in dense population cell and that had rapidly turned into a staph infection that then

14

rose to MIRSA in location of the bite were made by Dr. Burke and his team at Aurora South.

- Hilary Victoroff is a mid-level general scope of practice registered nurse practitioner.
- Ryan lived.
- Discharged aprx 10 days later.  Returned to facility at DRDC and recovered at DRDC Infirmary.
- At no time, during this event, did Hilary Victoroff act within the standard operating procedures of CDOC nor did she act within her licensing and medical capabilities in her decision making. Defendant Victoroff willfully, knowingly and wantonly held herself to an equal or greater standard of ability and medical authority as Ryan's outside attending specialists; assigned to Ryan by her employer CDOC. As such, Defendant Victoroff is accountable to be held to the same standards as those specialists and hospital.

**CLAIM FIVE:  VIOLATION OF C.R.S. 12-38-117 against Defendant Hilary Victoroff N.P.**

Supporting facts:

C.R.S. 12-38-117:  (1)  "Grounds for discipline as used in this article, means any action by any person who:… (e)  Has violated any provision of this article or has aided or knowingly permitted any person to violate any provision of this article; … (h)  Has falsified or in a negligent manner made incorrect entries or failed to make essential entries on patient records.."

1. Defendant Victoroff, from May 31, 2013 through on or about March 20th, 2017, was intermittently and sporadically rotated as the general care provider for Shawnee Ryan, within CDOC Clinical Services at DWCF.
2. Defendant Victoroff, from May 31, 2013 through to Ryan's release to parole on October 4, 2018 also had access and continued participation with other medical staff regarding Shawnee Ryan's medical care.
3. Defendant Victoroff, from May 31, 2013 through to Ryan's release to parole on October 4th, 2018 was fully and completely aware of Shawnee Ryan's diagnoses of record and Ryan's specialized needs and care being provided by the outside medical community aprx. 90% of the time, which included multiple weekly trips outside of the facility in order for Ryan to have access

to same specialists, hospitals, clinics, diagnostics and specialized treatments.

4. Defendant Victoroff, at all times from onset of Ryan's diagnoses through to current day, knew and knows that Ryan's medical needs were simultaneously life essential and life threatening if not followed per governing standard of care as ordered by the specialized providers, hospitals, clinics, diagnostics and specialized treatments.

5. Defendant Victoroff, at all times from onset of Ryan's diagnoses through to current day, knew and knows that Ryan's diagnoses are fatal, terminal and will be with Ryan lifelong.

6. Defendant Victoroff, as all rotating providers within CDOC do, had and remains having unbridled access to Ryan's medical records and knew, spanning years, of any outside community orders for care being issued on behalf of Ryan.

7. Defendant Victoroff, despite her inherent knowledge gained from years of access to Ryan's medical information; did, from February 1, 2019 through to May 29th, 2019 knowingly and directly mislead her counsel in this lawsuit into unawareness that any relevant medical records, other than generated from internal CDOC exist.

8. Defendant Victoroff, as a result, allowed her Answer to Complaint to be filed with that false information as the foundation for beliefs by her counsel which also, in turn, misleads the processes of the court, the Plaintiff and any other counsels and parties present in the case.

   **9.**      Defendant Victoroff, despite the span of time at hand, did not correct herself.  Correction occurred only when Plaintiff confronted Defendant Victoroff's counsel.

**CLAIM SIX**:  FIVE COUNTS OF VIOLATION(S) OF HIPPA against Defendant Hilary Victoroff N.P.

Supporting Facts:

1. Claim Five paragraphs are incorporated into Claim Six as statements of fact supporting this charge.

2. From **February 1, 2019 through to May 29th, 2019**, Defendant Victoroff was being required to Answer the charge within Claim Four of this Complaint.

And do so, through her counsel of record which is State AG and Ms. Amy Colony.

3. From **March 21, 2019 through May 29th, 2019**, Ryan was in direct contact with Defendant Victoroff's counsel and no disclosure was given to Ryan that Defendant Victoroff's counsel had received "two boxes" of Ryan's medical records either directly from (or) through assistance of Defendant Victoroff. Ryan only found out, due to what she believes was an inadvertent statement made to record by Ms. Colony at **May 29, 2019** hearing of having two boxes of Ryan's CDOC records already in her office.

4. Defendant Victoroff is a party within this Complaint and her employer CDOC, is not.

5. **Count One:** Defendant Victoroff, within the same span of time, either directly (or) guiding the assistance of others, accessed and released, from the CDOC, the entirety of parolee Shawnee Ryan's CDOC medical history and records both verbally (and) literally, without a written or verbal release from Shawnee Ryan (CDOC Form 950-02A).

6. **Count Two**: Defendant Victoroff, within the same span of time, directly or by guiding the assistance of others, physically located, gathered, copied and handled those inactive and stored CDOC medical records of Shawnee Ryan.

7. **Count Three**: Defendant Victoroff, within the same span of time, directly or by guiding the assistance of others, physically removed, from the care and custody of CDOC, the resulting two boxes of Shawnee Ryan's medical records.

8. **Count Four**: Defendant Victoroff, within the same span of time, either directly or by guiding the assistance of others, physically handed over the boxes of medical records to another party who also did not have written, verbal or waived release from Shawnee Ryan.

9. **Count Five**: Defendant Hilary Victoroff, within the same span of time, directly violated her sworn affidavit to her employer to protect inmate medical privacy, which is contained, by administrative regulation and ACA standards, within Ryan's inmate care and custody (CDOC 950-02B).

**CLAIM SEVEN: Charge of Deliberate Indifference resulting in Reckless Disregard against Laura Sommerschield N.P.**

Supporting Facts:

- Ryan preserves the ability to move for *res gestae* evidence, specific to Laura Sommerschield.
- Ophthalmologist surgeons; assigned to Ryan by CDOC on referral by CDOC assigned oncology specialist Dr. John Burke; verified in mid-October 2017 that the prolonged by years and extended use of the chemotherapy drug Dexamethasone caused aggressive growing cataracts in Ryan's eyes. Cataract's so thick they could not see into Ryan's eyes at examination.
- Cataract vision loss began in **July 2017**.  Ryan reported to CDOC.
- Ryan reported to Burke, in **August 2017**. Burke referred to specialist care.
- Defendant Sommerschield, through CHP, scheduled an *optometrist* exam consult in mid-**October 2017**.  CHP approved for optometry.
- The Optometrist, when unable to see into Ryan's eyes, brought in on that day, an Ophthalmologist surgeon to examine.
- Orders for "immediate next" surgery to the left eye were entered by surgeon.
- **October 25, 2017**, in DRDC, Ryan then developed an additional, in right eye, two obvious to the eye hematomas.  Sommerschield placed a telephone call to the *optometrist* and then told Ryan, when Ryan later began to question 'why' it was taking so to fulfill the "immediate next" orders of surgeon, that the *optometrist* had "told her" that a second opinion, if needed, was being "asked".
- In reality, on later investigation through specific questioning from Ryan to Denver Health; the optometrist had stated to Sommerschield that he felt the hematomas could wait for surgeon's second opinion on the hematomas because according to his computer screen at the time, Ryan was ordered for "immediate next" surgery.
- As more time and rapid vision loss went by; Ryan asked Burke to intervene. He did and directly to Denver Health surgeons.  Ryan was then near immediately scheduled for pre-op on **November 20, 2017.**
- Surgeon then scheduled for "Urgent" surgery.
- Surgeon, verifiably, direct called Sommerschield and then reported not only directly to Ryan but also directly to her administrators at Denver Health; the specifics of that call.  Surgeon showed Ryan, when Ryan expressed fear

18

that Sommerschield would not obey "Urgent"; her written personal cell phone number on the print copy of Ryan's transfer and medical papers, given so that she could be reached directly (and) then had Ryan watch her hand those same papers to Ryan's security detail for direct return to facility.

- Even still, Sommerschield left her orders, with CHP verifying, for "**April 2018**" surgery to begin.  Repeatedly through administrative processes and direct contact(s) to claim "no fault" as (quote) "DH sets all schedules" (end quote). Unknowing to Sommerschield until now, that Ryan's surgeon had reported Sommerschield and Ryan's case to Denver Health administrative review.  The end result being that Denver Health has always offered choice to CDOC in scheduling and now gives three options (given every time, for every inmate) of scheduler's offered dates to CDOC providers with those and subsequent CDOC provider choices now internally verified against Denver Health recommendations and orders. Actions direct resulting from Ryan's surgeon acting.
- Also unknown to Sommerschield until now, Ryan was disclosed, by surgeons and staff, all actions and orders, while they still followed security guidelines, by Denver Health Eye Clinic for Ryan's medical needs.
  - The date of **"April 2018"** had been a personally chosen date by Sommerschield and was the farthest out, at the time, that Sommerschield could get.
  - Ryan was still not on schedule for urgent surgery and again went to Burke for intervention.
  - Ryan had surgery on her left eye on **December 18, 2017**.  On prep, the charge nurse commented how wonderful it was that at the age of 60 years Ryan had "only" minor kidney insufficiency.  Denver Health computers are directly tied to CDOC computers.  Startled, Ryan asked the charge nurse to verify Ryan's inmate number and date of birth.  Then, in order to proceed safely to surgery, Ryan listed her extensive history.  Which surgeons then determined to need their cataract specialist to have perform and special provisions in the minimal OR setting they had available.  Ryan was then bumped to end of day in order for cataract specialist to come in and prep to occur.
  - At next day post op, surgeon delivered news of surgery failure due to extent of growth and having waited too long for surgery. That lenses must be corrected and the left eye surgery redone.

- Sommerschield was (according to surgeon) tested to see which of three offered by schedulers dates she would choose:  **January 2, 2018; January 9, 2018 and latter January 2018.**
- Sommerschield chose latter **January 2018**.
- Denver Health intervened and Ryan's second surgery on left eye was executed on **January 2, 2018**.  No allowance to Sommerschield, to choose right eye surgery was given and Denver Health schedulers executed right eye surgery date of **January 11, 2018**.
- A University Hospital specialist surgeon was brought in for the second surgery on Left eye.  Both remaining surgeries were done in the large and adequate for Ryan's high risks O.R.  As Denver Health now had, from the inmate (Ryan) and not CDOC; full medical history.
- Laura Sommerschield is a mid-level general scope of practice nurse practitioner.
- At no time, during this period of time, did Laura Sommerschield act within her licensing and medical capabilities in her decision making. Defendant Sommerschield holds indirect and direct personal capacity liability as she willfully, knowingly and wantonly held herself to an equal or greater standard of ability and medical authority as Ryan's eye surgeon(s).  As such, Defendant Sommerschield does not have immunity and is accountable to be held to the same standards as those specialists and hospital.

## E.  PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?         Yes     X   No (*Check one).*

*If your answer is "Yes," complete this section of the form.  If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit.  Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):

_____

Docket number and court:

_____

Claims raised:

_____

Disposition: (is the case still pending?
Has it been dismissed?  Was relief granted?)

_____

Reasons for dismissal, if dismissed:

_____

Result on appeal, if appealed:

_____

**F.  ADMINISTRATIVE REMEDIES**

*WARNING:  Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions.  See 42 U.S.C. 1997 e (a).  Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

  X   Yes       No *(check one)*

Did you exhaust administrative remedies?

  X  Yes       No *(check one)*

**G:  REQUEST FOR RELIEFS**
*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

**RELIEF CLAIM ONE:  Economic Damages:** Jury determined judgment, compensatory and punitive economic damages. CHP Defendants were willful participants in the joint activities cited within this claim. The acts and/or omissions described intentionally deprived Shawnee Ryan of her constitutional right to adequate medical care essential to the standard of

care for her diagnoses while incarcerated. The consequential and direct damages to her vital organs and her body have left Shawnee Ryan with extreme catastrophic medical cost needs that are lifelong and many unable to be cured (or) vital organs to fully recover.  Defendants were solely in control, by means of their policies, procedures, habits, patterns of practice, privately contracted means of conducting business and internal conspiracy of silence to not inform Ryan and her guardians that there were means and need to provide all needed care of Shawnee Ryan when they first learned of her diagnoses in late 2013 and early 2014. Plaintiff's knowingly stood by, spanning over 5 years, and literally watched through the billings of the superficial and inadequate care that they did approve; each and every developing damage to Shawnee Ryan from the over-extension and prolonged use of chemotherapy drugs while they denied the bone marrow transplant phase needed for her life-essential care.  Defendants, by the use of their employee actions, their policies, procedures, habits, patterns of practice, privately contracted means of conducting business and their internal conspiracy of silence to not fully disclose to the patient (or) her guardians; were the moving forces and substantially significant contributing proximate cause of Shawnee Ryan's physical damages and injuries.  As a direct result, Shawnee Ryan has suffered the damages described within her Complaint, her Exhibits throughout this case and through evidence presented that she will greatly and lifelong suffer and require ongoing medical care in order to stay alive.  Shawnee Ryan, as a result of the negligent and deliberately indifferent actions of the Defendants, is entitled to compensatory and special punitive economic damages estimated as equivalent to cover her care and needs (and) to be determined at trial. **Trial by Jury to determine the amount of punitive economic damages to be awarded.**

**RELIEF CLAIM TWO:  Punitive and Exemplary damages:**
**CHP Defendants** were willful participants in the joint choices and actions cited within this claim. The acts and/or omissions described, intentionally deprived Shawnee Ryan of her constitutional right to be protected and free from cruel and unusual punishment while incarcerated. Shawnee Ryan was in full health upon entry into CDOC in November 2012.  In March 2013 the first sign of illness was detected with the evidence showing by March 2014 her being diagnosed with one fatal blood cancer and a second diagnosis

fatal cast autoimmune disease. The evidence of the length of her sentence verifying that if she wished to stay alive to release, facing uncommon and highly complex needed care, monitoring and treatments in a setting of correctional medicine; she must 'fight' within the confines of her environment to get it.  When the January 1, 2014 blessing of the Affordable Health Care Act's Inmate Catastrophic Medicaid Provision was enacted into Federal law (and) directly following it was the State of Colorado adaption HCPF 14-006; Shawnee Ryan began to find hope that she would stay alive because she could get the tiered level of protocol care standard for her diagnoses that she needed. Problem being that Shawnee Ryan was not told by either the Defendants (or) her Guardians of the existence of these new laws to assist her. It was not until Fall 2016, after more than 2 years of denials by Defendants and mounting damages to her body becoming life-threatening; that a fellow inmate sitting in the medical clinic of the Denver Womens Correctional Facility, where Ryan was waiting to be seen, handed her an article that she had seen and thought of Ryan's needs, **of an interview given to media in 2014** by former Executive Director Rick Raemisch touting what a benefit and boon it was to Colorado inmates that federal and state Medicaid had risen to meet not only their major medical needs but also their abilities to have Medicaid when released to things like Community Corrections.  **For over two years, suffering in all the ways that she shows with evidence given and gathered; the Defendants CHP (et al) and Dr. Jennifer Mix M.D. not only denied life-essential care, they withheld the information from Shawnee Ryan and her Guardians in CDOC that the care was necessary, the damages were growing *and all along there had been Medicaid to assist in paying for it.*** The cruelty of the Defendants in not only doing such a vile act but watching, for years, while the consequential reality to Shawnee Ryan was extreme physical suffering and great fear of dying before ever regaining her freedom; is absolutely and unequivocally unconscionable for a human being to inflict upon another let alone medical caregivers and providers of medical care that Defendants are.  These actions and choices of the Defendants rise to the levels of cruel punishment with factual evidence showing further that Shawnee Ryan's right to adequate care to meet her proven medical needs was denied to her.   **Trial by Jury to determine the amount of punitive and exemplary damages to be awarded.**

23

CLAIM THREE:  **Jury determined judgment, compensatory and punitive** damages against Defendant Jennifer Mix M.D. in her personal and professional capacity, as the official CHP (et al) final approval in her capacity as CMO, on all approvals and denials of medical care in Ryan's case, including care fully covered and governed by Medicaid that she should have had the medical knowledge and personal conscience to alert CDOC to; from September 2013 to October 2018. Defendant Mix is a private, general qualified physician, working in corporate capacity with no governmental status nor immunity; who repeatedly held herself above her licensing and abilities in overriding the repeated, spanning years, orders for life essential and urgent care for Ryan by specialists, surgeons and professionals. The actions of Defendant Mix in choosing to speak up or choosing to conspire to stay silent, held a control over when and if government Medicaid could be used in inmate Ryan's case.  Dr. Mix acted far outside her generalized professional abilities and licensing and did create, by all her choices made, the environment spanning years that caused permanent and debilitating physical damage to Ryan's vital organs and body, that are and will continue to be life-threatening and will require lifelong intensive medical care. Defendant Mix's callous disregard, repeatedly given each and every time she believed herself to be of same or higher caliber of medical knowledge and training that the specialists ordering second phase care are; is grossly negligent and humanly shocking when one looks at the extent of damage to Ryan she set the framework for.  In every way, Dr. Jennifer Mix's choices and actions, or lack of in this case, are deserving of punitive damage award.  **Jury determinations of the amounts of compensatory, exemplary and punitive damage awards.**

CLAIM FOUR:  **Jury determined judgment and compensatory damages** against Defendant Hilary Victoroff N.P. for her personal and professional acts on February 3, 2017 that placed Ryan in a life-threatening event from which Ryan could only survive by intensive and specialized hospital care.  Defendant Victoroff is a general scope of practice nurse practitioner who held herself at the same standard of professional ability and authority over Ryan's highly specialized oncologist and his team of highly specialized physicians at Aurora South Hospital in making the medical decisions that placed Ryan in that life-threatening event. Defendant Victoroff acted both willfully and wantonly, out of her sole discretion, and outside of the standards of her license, her abilities and her employer.

24

**Compensatory damages, in an amount to be determined through reviews at ADR and/or by a jury at trial; are being sought.**

CLAIM FIVE: **Jury determination of guilt in this Civil Criminal claim. The grounds and damages are set forth in C.R.S. 12-38-117.**

CLAIM SIX: **Jury determination of guilt in the Civil Criminal counts. Mandatory fines and other punishments are set forth as reliefs in *Title 45, subtitle A, subtitle C, part 160*).**

CLAIM SEVEN: **Jury determined judgment and compensatory damages** against Defendant Laura Sommerschield N.P. for her personal and professional acts from mid-October 2017 through January 11, 2018, that resulted in permanent vision damage and loss to Ryan.  Defendant Sommerschield is a general scope of practice nurse practitioner who held herself at the same standard of professional oncology specialists and surgeons at Denver Health in making the medical decisions that did end costing Ryan ability for permanent vision correction(s) and leaving Ryan with permanent detached retina damage. Defendant Sommerschield acted both willfully and wantonly, out of her sole discretion, and outside of the standards of her license and her abilities. **Plaintiff seeks compensatory damages for coverage of the subsequent eye surgery(ies) she must now have in order to be able to clearly see. Amounts determined after reviews at ADR (or) Jury review at trial.**

**Plaintiff further pleads all costs and fees and to be granted such other relief as it may appear the Plaintiff is entitled.**

**PLAINTIFF'S SIGNATURE:**  I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  *See* 28. U.S.C. 1746; 18 U.S.C. 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify that to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous agreement for extending or modifying existing law; (3) the

factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*S/Shawnee Ryan*

_____

Shawnee Ryan
11309 West Exposition Drive
Lakewood, Colorado  80226
720-431-8319
shawneeryan216@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2019 I electronically filed exact copies of the Proposed Amended Fifth Prisoner Complaint, designated as "Exhibit B" to the parties listed below.

*S/Shawnee Ryan*

_____

Shawnee Ryan
11309 West Exposition Drive
Lakewood, Colorado 80226
720-431-8319
shawneeryan216@gmail.com

Clerk of Court:  cod_cmecf@cod.uscourts.gov
Andrew David Ringel:  ringela@hallevans.com
Edmund Martin Kennedy: kennedye@hallevans.com
Amy Colony:  acolony@coag.gov