1

1             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
   Case No. 18-cv-00956-MSK-MEH
3  _____

4  SHAWNEE RYAN,

5       Plaintiff,

6  vs.

7  JENNIFER MIX, in her individual capacity, HILARY VICTOROFF,
   NP, in her individual capacity, and LAURA SOMMERSCHIELD, NP,
8  in her individual capacity,

9       Defendants.
   _____

10

11            Proceedings before MICHAEL E. HEGARTY, United

12 States Magistrate Judge, United States District Court for the

13 District of Colorado, commencing at 11 a.m., July 31, 2019,

14 in the United States Courthouse, Denver, Colorado.

15 _____

16            WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17 ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

18 _____

19                       APPEARANCES

20            SHAWNEE RYAN, appearing Pro Se.

21            EDMUND KENNEDY and AMY COLONY, Attorneys at Law,

22 appearing for the Defendants.

23 _____

24            TELEPHONIC DISCOVERY HEARING

25

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com

```
 1                  P R O C E E D I N G S
 2            (Whereupon, the within electronically recorded
 3      proceedings are herein transcribed, pursuant to order of
 4      counsel.)
 5            DEPUTY:  Good morning.  Who do I have on the line,
 6      please.
 7            MR. KENNEDY:  Ed Kennedy for defendants Corrections
 8      -- CHP and Dr. Mix.
 9            MS. COLONY:  Amy Colony for defendants Hilary
10      Victoroff and Laura Sommerschield.
11            MS. RYAN:  And Shawnee Ryan.  I am the plaintiff.
12            THE COURT:  Okay.  Case Number 18-cv-00956, Shawnee
13      Ryan v. Jennifer Mix, Hilary Victoroff and Laura
14      Sommerschield.  We're set for a discovery conference and I
15      think -- it looks like it might have been requested by Ms.
16      Ryan.  So Ms. Ryan, why don't you go ahead and proceed.
17            MS. RYAN:  Your Honor, there's three basic issues
18      that still are unresolved.  This is now the third time that
19      we're in front of you for at least two of them.  The first is
20      containment of scope for Ms. Colony and the difference
21      between her containment of scope and CHP.  CHP is entitled to
22      everything.  I am going for punitive loss and suffering.
23      They are the mainstay of the case.
24            DOC also was, but they have been dismissed.  They
25      are now a non-party.  Defendants Victorhoff and Sommerschield
```

1    have exceptionally limited scope and we just seem to keep

2    running into the same problem that Ms. Colony cannot stay

3    away from trying to get their discovery for everything when

4    it doesn't have relevancy to what is being charged against

5    their clients.  That's number one.

6            the result of that issue has been that, number

7    one, on May 29th, she admitted to having two boxes of paper

8    fills of records, and on the discovery hearing of June 24th,

9    the Court, after a dispute -- great deal of discussion, the

10   Court directed her and she agreed to do an inventory list of

11   what she had, submit it to the parties so that a decision can

12   be made on what's there, what was gathered properly, what is

13   to be protected by the protection order and be able to at

14   least move forward.

15           Since that time, one of the things that I think

16   that the Court hasn't been completely comfortable with is the

17   -- the requirement to confer.  I assure you that we have had

18   months of -- of great deal of conversation between all

19   counsels and myself over these issues, over the case itself,

20   the direction that we're headed, we have definitely

21   conferred.  Mr. Kennedy and Mr. Ringel have not touched the

22   documents, that's what they have told all of us, that she has

23   in two boxes.  And I don't think that they even know what's

24   in there.

25           The bottom line, at the end of the day, is that the

1    order for inventory, the order to produce, has not been

2    followed by Ms. Colony.

3           That problem is now compounded by the third issue,

4    which is the issuance of my subpoena duces tecum that I

5    started on February 1st and was granted by the Court to -- on

6    June 24th, even though the Court would rather not use the

7    subpoena duces tecum, I made it very clear that I believe

8    that it's the only way that this case is going to stay on

9    track and progress smoothly, efficiently and within all of

10   the rules for both -- all sides and I asked the Court to

11   issue that duces tecum.

12          I was told to put a different format on it, which I

13   did.  I followed the court clerk's desires, they approved, it

14   came to Your Honor, and you still -- you did not issue it for

15   service because you felt that we have not conferred enough.

16          So Ms. Colony, while all this was going on, and

17   despite -- it's actually in the transcript that she ordered

18   and is also in front of you -- during the June 24th hearing I

19   made it very clear that I represent myself.  Ms. Colony is

20   not my counsel, I do not want her interjection into my

21   relationship with DOC.  I don't need her to grease the wheel.

22   Instead, she still did that and I've been in e-mails and

23   conferred about it even further.

24          So the bottom line is, is that we now have a second

25   set of DOC discovery that is about not quite 60 percent

1   complete to what I was asking for in the subpoena duces

2   tecum.  Everything I was asking for in the duces tecum is

3   medical related and must be given or handled at some point in

4   time by defendant group CHP.

5           It is not that I am trying to get records without

6   paying for them, it is not any of those things that Your

7   Honor expressed concern over.

8           I have two very different sets of counsel during

9   this case.  CHP pretty much has unlimited access.  The

10  problem now is that Ms. Colony gathered these things up,

11  apparently did so on disc, which is confusing because I

12  happen to know that all of my records have been on disc since

13  I left for parole, so in a moment I'm also going to ask a

14  question on why does she have two boxes of paper instead of a

15  CD.

16          So now that we are at this point, Ms. Colony

17  blanket released two CDs that she did mark as medical records

18  from DOC that she was (inaudible) I guess is the word that I

19  would use, and she did mark those confidential.  She mailed

20  them out.  So CHP group and myself have those.

21          Within that set -- there's a second set that she

22  did not mark as confidential, she did nothing with within the

23  protective order, and sent them out via e-mail.  They consist

24  of everything about my life, which I am not trying to hide,

25  but I do have the right to put it within the guidelines of

1   the protective order, which has many layers.  There are

2   things in there that should be in camera.  There are things

3   that should be filed as restricted.  They are not to be sent

4   -- if I had gathered them through my subpoena, I would have

5   issued them with the proper designations on them.

6           Instead, they've now been in the hands of everybody

7   for a few weeks now, and so I'm going to have to, I guess, go

8   back over and designate all of them in the proper scope that

9   they should have been in, not hiding anything, but just do it

10  within the rules.

11          As far as the medical records go that she got when

12  she was doing her facilitating, everything under the sun is

13  in there.  Your Honor has expressed -- you were discussing

14  this on May 29th and June 24th, it's in both transcripts --

15  you were discussing, Well, what if there's gynecological

16  records in there?  What if there are other things that don't

17  pertain to her diagnoses now and Mr. Kennedy replied, Well I

18  don't need those.  I agree.  Everything that is on those

19  discs is supposed to be the entirety of my medical records.

20  There are many things on there that have absolutely nothing

21  to do with this case, nothing to do with the health ailments

22  that I have.

23          And the final problem with this facilitation that

24  she did as a volunteer, because I certainly didn't ask for

25  it, is everything that she gathered, DOC did exactly what I

1  anticipated that they would do.  I've dealt with them for six

2  years.  It is not common for an inmate to know that the true

3  medical orders between outside providers and internal

4  providers are on something called MAR, M-A-R, orders.

5       My MAR orders alone are in the hundreds of pages

6  and they are not present.  She did not gather those.  Those

7  are not my full and complete medical records.  When I asked,

8  through my subpoena, what it specifically states is for

9  Medical Administrative Records.  My -- Ms. Colony came back

10  and said that I was wrong, that my records aren't held in

11  various places.  Yes, they are.

12       We are missing the Chief Medical Officer's records,

13  we are missing the DRDC Nephrology Clinic records, we are

14  missing all of the MAR orders.  There's about 60 percent of

15  my medical records and Ms. Colony claimed to have been done.

16       The way that I -- I feel personally about this is

17  that it feels like that by going in the back door, she has

18  set it up to where she will issue what she thinks DOC should

19  give me.  If I'm wrong on that, I apologize, but it's a

20  strong sense impression based on all of the history that we

21  have so far in trying to get the discovery issue worked out

22  with DOC records.

23       If that is not the case, then the Colorado

24  Department of Corrections has so many different fingers and

25  departments, the chances of this being simply that whoever

8

1    took her call to gather these records up doesn't have any

2    idea the extent of -- of my case.  The only person who would

3    even come close, and we're missing her records as well, is my

4    clinical nurse case manager down at headquarters.

5          I know that this is also a problem now for CHP

6    because I've also been served my first set of discovery

7    requests and interrogatories from CHP.  The questions that

8    they are asking -- unfortunately, there's only two medical

9    questions and I will deal directly -- if Mr. Kennedy and Mr.

10   Ringel, we do need to have some conversation, but they too

11   need -- they sent over releases for the DOC records, and

12   wouldn't they have ordered them?  They're not going to get

13   what they want or what they need because they simply don't

14   know that all of these different places and realms of my

15   records exist within the Department of Corrections.

16         So my filing a subpoena duces tecum was a realistic

17   expectation based on all of my experiences with them, that it

18   has to be specifically spelled out, it has to follow a

19   certain regimented order before they can respond effectively.

20   We are now months into discovery and now have two full sets

21   of what pretty much, I feel, are tainted at this point.

22         My motion to quash was dismissed without prejudice.

23   I do not feel that I want to quash anything away from CHP,

24   but I do strongly feel that it is -- I'm representing myself.

25   This is my discovery.  They're my medical records.  They do

1    have privileges, they do have protection and they should all

2    be categorized accordingly and they should be sufficient to

3    have given them everything that they need on one day, but

4    they can't do that.  They may have a third-party facilitator

5    of an attorney in Ms. Colony, who is representing a group of

6    defendants, and it pretty much seems like she's trying to

7    represent the plaintiff.

8            So I need the subpoena at this point to be served

9    so that I can finish getting discovery.  If DOC does not like

10   what's on there, then they need to follow the rules.  They

11   need to file and show cause, they need to object and they do

12   those things through Ms. Colony, but we don't do it

13   informally, not -- not anymore.  It -- it just cannot be

14   done.

15           So those are the issues.  I'm not sure exactly what

16   to do.  I think personally the -- the DOC records have

17   absolutely nothing -- nothing to do with Hilary Victorhoff

18   and Laura Sommerschield.  They have a few pages -- a few

19   entries for each one of them, but the meat of the matter for

20   Sommerschield are the Denver Health Surgical Records which

21   are pretty close to 1000 pages.

22           I gave Ms. Colony access to that in April.  She

23   still hasn't availed it.  Instead of discovery that she sent

24   over to me for initial disclosures, it doesn't sound like she

25   has any intention to.  That's fine, but there's nothing in

1  DOC that she needs.  She's limited in her scope to the charge

2  against her client.

3          As far as Hilary Victorhoff, the Aurora South

4  records and the Rocky Mountain Cancer records for those four

5  days period of time are exactly what she needs.  It could

6  expand to the hospitalization prior to it, it could expand to

7  the intensive care that I was put in when they sent me to the

8  hospital with a fever.  But again, those would be very

9  limited scopes that would fall under giving a release of

10  information.

11          I also know now, because it's been confirmed by Mr.

12  Kennedy and Mr. Ringel, that the proper way for medical

13  records to be obtained is for them to issue a release to me

14  and I sign the release or modify the release or object to the

15  release and send it back to them and then everybody is

16  covered, but no medical provider is going to release anything

17  without that.

18          Ms. Colony has never sent me a thing, even though I

19  have sent her releases that pertain to her scope.  I just at

20  this point feel that it needs to be the Court's clear

21  directive.  Those are my issues.

22          THE COURT:  Okay.  Well, that's too broad for me to

23  deal with and I -- I'm only going to deal with one issue at a

24  time.  So -- and then what I want you to do is say what kind

25  of relief you want on an issue and then I'll let the

1   defendants respond.  So first of all, what's your first

2   request for relief?

3            MS. RYAN:  My first request for relief is for Ms.

4   Colony to provide a line-item inventory list of what she has

5   within the two boxes.  She now also would have to probably do

6   the same thing for any facilitation that she did, any things

7   that she obtained from DOC.

8            At that point, I think that a decision needs to be

9   made by me on what should be quashed away from her and what

10  shouldn't be and I -- I would assume that I'd have to

11  reinstate my motion to quash.  I'm leaning towards quashing,

12  but not quashing away from CHP, just the State.

13           THE COURT:  Okay.  Ms. Colony?

14           MS. COLONY:  Thank you, Your Honor.

15           I don't know how many times I can say this and,

16  quite frankly, I'm becoming very weary of the case, and this

17  case -- Ms. Ryan is significantly slowing things down with

18  this fixation that she seems to have on the fact that I

19  obtained records that were actually in my client's custody;

20  that is, CDOC.  I know she doesn't like the fact that I also

21  represent CDOC, but I do, and when inmates bring lawsuits

22  against CDOC employees, the records that are in the custody

23  of the DOC, the Attorney General's Office obtains those.

24           We have now -- and it's been two or three weeks now

25  since we've sent discs to Ms. Ryan, and also to Mr. Kennedy,

1   of everything I've got.  So everything I have, Ms. Ryan now

2   has, it's all on those discs.  The materials in the boxes are

3   just a printout of what is on the disc.  So there's nothing

4   in those boxes that isn't on those discs.  I have given her

5   everything.

6           To date, CDOC has not been served with any

7   subpoena.  However, in the interest of efficiency and

8   cooperation, I have been trying to obtain the materials that

9   Ms. Ryan lists in the subpoena and that she's also listed in

10  a couple requests for production.  I have been working on

11  obtaining those materials and providing them to her.

12          That would include the DOC/CHP contract.  We've

13  managed to get that to her.  She wanted my client's resumes

14  and CV.  We have produced those materials and some licensing,

15  nursing licensing certification materials, and I'm working on

16  a few other things that -- that she has requested relative to

17  ACA audits and clinical standards.  I'm still working on

18  that.

19          I'm trying to get her everything she's asking for.

20  I -- I do not have anything in my possession that she doesn't

21  also have at this point.

22          THE COURT:  Okay.  Stop there.  Just stop there.

23  So that's their response.  Ms. Ryan, you have everything.  Do

24  you have anything else to add?

25          MS. RYAN:  I do, Your Honor.

1           I do not -- I may have everything that she says

2    that she has, but I do not have what I'm asking for and what

3    is needed in discovery.  The subpoena -- Ms. Colony's being

4    involved in the subpoena duces tecum is not a normal kind of

5    procedure.  I can't find anything anywhere that says that

6    someone should step in and facilitate for the -- for a

7    plaintiff.  Maybe if I was incarcerated.  I am not.

8           There has been no channel, no procedure properly

9    followed by Ms. Colony and that is -- is my contention.  It

10   is not that I am unhappy about anything.  I really don't

11   care.  I am unhappy about the pace that we have to now have

12   drug for so long over these very similar issues.

13          The bottom line is that -- it also is holding up

14   Hall & Evans.  They have not touched the records.  I don't

15   know if they have touched what was sent over by e-mail which,

16   I'm sorry, but it is just simply not accurate.  It was --

17   maybe it was her clerk's fault that lists that these are the

18   things that I requested from DOC.  That is very specifically

19   spelled out.  It does not say that this is -- these are the

20   items that were in the boxes.  It says nothing of the kind.

21          So at this point, it sounds like I'm going to have

22   to take her word, and if that's the case, then I believe that

23   Ms. Colony needs to relieve herself from assisting me any

24   further.  If she's representing DOC, she can follow the

25   proper channels.  If she -- and I need my subpoena, sir, so

14

1   that I can obtain the rest of the information that is

2   necessary, all of the records that are needed.

3         And as far as quashing, I do feel that anything

4   with DOC that does not pertain to her two clients and the

5   charges against them needs to be quashed away from the State.

6   It just simply feels grossly uncomfortable for her to

7   continue to be in places where the rules of evidence wouldn't

8   even allow her to go as relevant.

9         THE COURT:  Okay.  So let me -- let me address some

10   things first.

11         To the extent you seek production of all that Ms.

12   Colony has, based on her representation that you already have

13   it, that request is denied as moot.  She is not -- her job is

14   not to help you.  Her job is, as an officer of the court, to

15   engage in good faith actions that will facilitate discovery.

16         So I think I already explained this once, but we

17   often have pro se litigants who sue individual Department of

18   Corrections employees.  The Department of Corrections, in

19   those cases, is not a party and so documents cannot be

20   obtained from the DOC simply by asking the individual

21   employees of the DOC since those employees do not have

22   possession, custody or control of documents.  However, what

23   always happens is that, at the request of the Court, in order

24   to make things efficient, the Assistant Attorney General will

25   work with DOC to obtain documents, even though legally they

1    don't have to unless there's a subpoena.

2          So what Ms. Colony is doing is traditional in our

3    court, simply assisting and facilitating production of

4    documents.  Not as a means of assisting you, but as a means

5    of assisting the discovery process in a federal case.  So

6    nothing you have said indicates to me that she has done

7    anything improper.

8          Now, when discovery materials are produced from one

9    party to another, no matter how many parties there are in the

10   lawsuit and no matter whether those documents pertain to a

11   particular party or not, discovery is given to all parties.

12   All parties are entitled to know what one another has

13   received in discovery, even if it doesn't pertain to them.

14         So the fact that Ms. Colony may have documents that

15   don't pertain to her clients, but that are being produced in

16   discovery is a function of what the requirements are in a

17   federal lawsuit in discovery, because no party is supposed to

18   be surprised by anything.  Those documents may be marked as

19   exhibits in an eventual trial and every single party is

20   entitled to the entire reservoir of discovery documents to

21   tap into as needed.

22         So there will be no quashing.  I don't know exactly

23   what you're referring to, but Ms. Colony, as representing a

24   party in this lawsuit, is entitled to documents produced by

25   any party to any party.  That's just the way it's going to

1   be.  So to the extent you're seeking to prevent her from

2   having access to certain discovery documents, that's denied.

3            What else can I do?

4            MS. RYAN:  Issue my subpoena, please --

5            THE COURT:  Okay.

6            MS. RYAN:  -- so that I can -- it can move forward.

7            THE COURT:  That's fine.  So do you have a --

8            MS. RYAN:  Please --

9            THE COURT:  Where is that subpoena right now?

10            MS. RYAN:  It is actually in your court clerk's

11   hands.  It's passed every process except for your signature

12   and the service.

13            THE COURT:  Okay.  So it looks like my staff is

14   telling me it's attached to Docket 125 and I'll take a look

15   at that.  So you want -- you want the document that's dated

16   June 28th, 2019 to be served.  Is that correct?

17            MS. RYAN:  There was a cover sheet and then there

18   is the subpoena that's attached to it.  That's how Mr.

19   Caldwell (ph) and I determined that we would do this, because

20   I'm not incarcerated.

21            THE COURT:  Okay.

22            MS. RYAN:  So if that's -- if that June 28th is the

23   cover letter, there's a subpoena that's attached to that.

24            THE COURT:  Okay.  So we'll -- we'll have that

25   subpoena served, but there is no problem with Ms. Colony, in

1  advance of that being served, trying to accommodate and

2  facilitate production of the documents it requests.

3        So, in fact, their response may be, We have already

4  produced everything, and if that's their response, that's

5  fine.  If they have additional documents to produce, that's

6  fine.  If they have objections to any particular element of

7  the subpoena, a party is entitled to seek a protective order.

8  So, Ms. Colony, I'm not dictating what your response is going

9  to be, but I'll go ahead and authorize the service of that

10  subpoena.

11        What else, Ms. Ryan?

12        MS. RYAN:  I do understand, Your Honor -- I want

13  the record to show that I do understand the process of -- if

14  they do object or if they don't want to release something, I

15  understand the processes that are involved.  They file, Ms.

16  Colony represents them, I file a response and we just

17  continue onward.

18        THE COURT:  Right.  Well --

19        MS. RYAN:  Thank you.  And is there going to be any

20  -- any further -- I don't anticipate -- I do anticipate that

21  there will be additional subpoenas against DOC.  I don't

22  think that they are going to release -- I think that the

23  reason that they didn't release what they know that they have

24  is because they don't -- that's where the meat of the matter

25  is.  That is something that will be dealt with through the

1   proper channels, then I get the contents in my hand.

2          As far as CHP goes, there are some things that CHP

3   has objected to.  There are some things that I'm objecting

4   to, and I believe that Mr. Kennedy and Mr. Ringel and I can

5   have a conversation, confer, hopefully we can resolve it

6   then, but if I do have to put forward another subpoena duces

7   tecum, am I going to be allowed to do that without all of

8   this delay?

9          THE COURT:  Well, I -- you know, it's not my

10  intention to delay anything.  It's my job to make sure that

11  cases are brought to trial or some ultimate conclusion in a

12  timely manner.  No one is delaying anything as far as I am

13  concerned, and if you have additional subpoenas, we'll just

14  deal with them according to the law.  That's all I can say.

15  Okay?

16          MS. RYAN:  All right.  How -- is there anything

17  that I can do to help you, showing you that I have conferred,

18  met your requirement on the (inaudible)?  Do you wish for me

19  to file that in a certain format, like a certificate of

20  concern or anything else so that the Court has a -- a

21  smoother pace from me?

22          THE COURT:  All that's required is this:  If a

23  party wants some kind of relief on a discovery issue, they

24  have to first informally confer with me, but also prior to

25  that even, the parties have had to try to negotiate it and

19

1    then they confer with me, and if I think I can't resolve

2    sitting here on the bench, then I say, You now have

3    permission to file your motion.

4           In that motion, all you have to do is say, Pursuant

5    to DC Colorado Local Civil Rule 7.1(a), I have attempted to

6    confer with the opposing party concerning this discovery

7    dispute and have not resolved it pursuant to those

8    negotiations.  So that's all that needs to happen.

9           So the steps are, number one, try to work it out

10   among yourselves.  If you can't, number two, set an informal

11   conference with me and, number three, if I say, you know,

12   this is something that just has to be briefed, then you file

13   a motion.

14          Okay?

15          MS. RYAN:  Okay.  And the last question I have

16   would be for Mr. Kennedy.

17          Now that this is -- is done, today, regarding Ms.

18   Colony's involvement, how we're doing the releasing of

19   documents, what she says she's already released and moving

20   forward, does Hall & Evans have the ability now to -- both of

21   them have said that they would not touch what she has.  Do

22   both of them have it made clear in front of them now so that

23   they can move forward accordingly?

24          That would be a question for Mr. Kennedy.

25          MR. KENNEDY:  Are you asking me if I'm going to

1   review those documents that have been produced now, that

2   everything has been settled, that this is fine?  Is that what

3   you're asking?

4           MS. RYAN:  Yes, I am.  Mr. Ringel's wording was

5   that he was not expecting anything until the Court resolves

6   the issue.  It sounds like we've resolved the issue.

7           MR. KENNEDY:  Okay., , Then we'll start looking at

8   stuff.  But, yeah, I have not looked at -- Mr. Ringel and I

9   have not looked -- and nobody in my office has -- we've

10  downloaded it onto our server, but no one's reviewed any of

11  your documents yet.

12          So yeah, we'll -- and we're still trying to get

13  together the information that my client has.  And just so the

14  Court understands and, Ms. Ryan, I don't think we get to

15  subpoena to CHP.  They are a defendant in this case right

16  now.

17          THE COURT:  Right, it would be --

18          MS. RYAN:  Pardon me?

19          MR. KENNEDY:  Well, they --

20          THE COURT:  It would be improper to -- to subpoena

21  a party. All you have to do is do a document request under

22  --

23          MS. RYAN:  But --

24          THE COURT:  -- the rules for a party.

25          MS. RYAN:  Exactly, I do understand that.

1           THE COURT:  Okay, good.

2           MR. KENNEDY:  Okay.  I just wanted to make sure

3    that --

4           MS. RYAN:  I -- I just -- at this point, there will

5    be, as I've already pointed out in -- to both -- to all

6    parties over the last week or so, I have to go through now

7    everything that Ms. Colony just blanket released to you all

8    and sort it out as to what layer of the protective order it

9    falls under.  I would hope that, since it prematurely went

10   out like that without being defined, that everyone would give

11   me the opportunity to get that done.

12          Anything from this point forward that goes -- comes

13   to me from DOC will be labeled and titled underneath the

14   protective order that we already have as properly done and

15   released to you.  I won't be having to backtrack.  There is

16   quite a bit of it that I believe these to be in restricted

17   access, some of it in camera, but it's not a question of

18   removing anything from you, it's a question of simply

19   following the rules.

20          THE COURT:  Correct.

21          MS. RYAN:  And I'm going to leave defendants to get

22   that done.  It's a lot of information.

23          THE COURT:  Okay, so I'll -- I'll ask all the

24   parties --

25          MR. KENNEDY:  (Inaudible).

1              THE COURT:  -- not to submit any attachments to

2       anything filed with the court until Ms. Ryan has a chance to

3       designate whatever confidential documents she wants to.

4       Okay?

5              MR. KENNEDY:  Yes, Your Honor.

6              MS. RYAN:  Thank you.  Thank you, Your Honor.

7              THE COURT:  Sure.

8              MS. RYAN:  So at this point the subpoena

9       (inaudible).  That will be a normal channel that I will

10      follow through on and, Ms. Colony, if she's asked by DOC,

11      will do whatever she does in the background, but I do wish to

12      make a final statement to, please, stop assisting me.  I will

13      handle it on my own.

14             THE COURT:  Well, I'm not going to tell her to do

15      anything other than follow the local rules, the Federal Rules

16      of Civil Procedure, the Federal Rules of Evidence and the

17      orders of this Court, so.  And she knows what those are --

18             MS. RYAN:  Yes.

19             THE COURT:  -- and she's experienced.  Okay?

20      Anything else, Ms. Ryan?

21             MS. RYAN:  No.  Not -- not on my list, Your Honor.

22             THE COURT:  Okay.  Anything else from Mr. Kennedy?

23             MR. KENNEDY:  No, Your Honor.

24             THE COURT:  How about Ms. Colony?

25             MS. COLONY:  I just want to make a few things clear

1   or have a few things clarified, Your Honor, because I -- I

2   still think we're going to have some problems with my

3   involvement of facilitating the production of the documents

4   and the materials that the plaintiff is seeking and she's --

5   just a few moments ago, she's still saying that I need --

6   basically, I need to get out of the way and she'll deal with

7   DOC directly.

8          Once the subpoena is served, I will be the person

9   working with DOC to gather those materials and we will be

10  Bates-stamping them and to the extent they're confidential

11  materials, we'll be marking them Confidential.  I am still

12  going to be very much involved in that process, whether she

13  serves the subpoena or she serves a written discovery

14  request, and I don't want anymore pushback on that.  It's

15  taking up an incredible amount of time and having to explain

16  the same thing over and over again, that this is my job, this

17  is what I do.  The documents will run through me and I will

18  be working with DOC.

19         And I also want to make it clear that at no time

20  has this Court ordered my office to produce an inventory of

21  each and every document.  Ms. Ryan now has all the same

22  materials we do.  She's certainly free to inventory them

23  herself and -- and I wanted to clarify something.  The

24  materials that we have turned over to her, including all of

25  the medical records, have been stamped Confidential pursuant

1   to the protective order.  I don't know what more she wants

2   done to them or what additional designations that she needs,

3   but we have marked those Confidential.

4          And, finally, I know she mentioned a little bit ago

5   about medical records that she thinks are missing, maybe some

6   nephrology-related materials and these MAR orders, which I am

7   not familiar with.  To the extent that she thinks there's

8   anything that's not in the medical records that should be

9   there, she's going to need to be very specific in her

10  correspondence with me so that I can -- so we can get her

11  what she -- she needs.  I need her to be very specific and I

12  certainly have no problems, you know, working with her

13  clinical case manager, who's been one of the people, you

14  know, working on getting these records all along.

15         I can communicate that Ms. Padai (ph) and, you

16  know, we can try to track down if she thinks that anything is

17  -- is missing, but she does need to be really specific, but I

18  think that's all I have

19         THE COURT:  Okay.  I understood everything you said

20  and I don't have a problem with it.  Anything else from

21  anybody?

22         MS. RYAN:  Just a very brief and hopefully succinct

23  response to that.  Again, I think that that is the -- if that

24  remains the approach, it's going to continue to make this so

25  convoluted.  The bottom line, at the end of the day, is that

1    the reason that Ms. Colony does not know and is not familiar

2    is because she does not know my case.  Ms. Padai is not

3    anywhere near my clinical, in this case, manager.

4         DOC does have the right to have a facilitator.  If

5    that's Ms. Colony, I have never once asked her to be

6    personally removed.  I am trying to get her to stay on track

7    and focused.  The proof that the Court asked her for an

8    inventory is on page 34 of the June 24th transcript, which

9    you ordered, but we just continue to keep regurgitating these

10   -- these same things.

11        Where we are right now, a subpoena is going to

12   issue.  It is very specific.  It is explicitly detailed and

13   worded.  Everything, if it is followed, by the Department of

14   Corrections, is everything that I need and that I'm entitled

15   to.  It also shows the ability for them to redact for

16   security and whatever that they feel that they need to.  All

17   of those things are already in place within the subpoena,

18        So let me try to reword this just a little bit.  If

19   Ms. Colony is going to follow the subpoena to the exact

20   detail that it already states, she will have everything that

21   she needs.

22        If the Colorado Department of Corrections has any

23   objections, any issues at all, then please follow the rules

24   of the Court and put them into some kind of file format, call

25   a conference, do something, but please do not delay any

26

1    further with what really is untruthful.  I am not delaying

2    anybody or anything.  I've just simply needing to get this

3    focused and on track.  Hopefully, now we can.

4              THE COURT:  Okay, thank you, guys.  Everybody take

5    care.

6              (Whereupon, the hearing concluded at 11:40 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                    August 30, 2019

8    Signature of Transcriber               Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25