SKR-BC 000006

| ADMINISTRATIVE REGULATION | REGULATION NUMBER | PAGE NUMBER |
|---|---|---|
| COLORADO DEPARTMENT OF CORRECTIONS | 950-02 | 1 OF 16 |
| | CHAPTER: Offender Records | |
| | SUBJECT: Health Records/Confidentiality/Access | |
| RELATED STANDARDS: ACA Standards – 2-CO-4E-01, 4-4396, and 4-4415 | EFFECTIVE DATE: May 15, 2016 | |
| | SUPERSESSION: 09/15/15 | |
| OPR: OCS REVIEW MONTH: JULY | Rick Raemisch, Executive Director | |

I. **POLICY**

The policy of the Colorado Department of Corrections (DOC) is to comply with the disclosure requirements of the Health Insurance Portability and Accountability Act (HIPAA) of 1996 and the Health Information Technology for Economic and Clinical Health Act, enacted as part of the American Recovery and Reinvestment Act of 2009.

II. **PURPOSE**

The purpose of this administrative regulation (AR) is to advise DOC employees and contract workers of the need to keep the protected health information (PHI) of offenders confidential and to detail the procedures by which an offender's PHI is recorded, maintained, and disclosed.

III. **DEFINITIONS**

A. **Authorization**: a document signed by an offender or designated representative which allows the release of protected health information (PHI) of the offender to a designated third party.

B. **Business Associate**: A person or entity (other than a DOC employee or contract worker) that receives protected health information (PHI) and performs, or assists with, a function or activity, on behalf of DOC, involving the use or disclosure of that PHI.

C. **Contract Worker**: A person other than a DOC employee who provides services to the DOC under contract, special assignment, or informal agreement (e.g. purchase order). A contract worker includes self-employed persons, sole proprietors, and persons employed by an employer in the private sector, another public entity, or by another agency of the state of Colorado.

D. **Correctional Institution**: any penal or correctional facility, jail, reformatory, detention center, work farm, halfway house, or residential community program center operated by, or under contract to, the United States, a State, a territory, a political subdivision of a State or territory, or an Indian tribe, for the confinement or rehabilitation of persons charged with or convicted of a criminal offense or other persons held in lawful custody. Other persons held in lawful custody includes juvenile offenders adjudicated delinquent, aliens detained awaiting deportation, persons committed to mental institutions through the criminal justice system, witnesses, or others awaiting charges or trial.

E. **Covered Entity**: (1) a health plan; (2) a health clearinghouse; (3) a health care provider who transmits any health information in electronic form in connection with a transaction. (45 CFR 160.103)

| CHAPTER | SUBJECT | AR # | Page 2 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

F. Designated Representative: A person so authorized in writing or by court order to act on behalf of the offender. In the case of a deceased offender, the personal representative, or, if none has been appointed, heirs will be deemed to be the designated representative of the offender.

G. Designated Record Set: Any item, collection, or grouping of information that includes protected health information (PHI) and is maintained, collected, used, or disseminated by or for a covered entity.

H. DOC Employee: Someone who occupies a classified, full or part-time position in the State Personnel System (including management and non-classified positions) in which the Department has effect over pay, tenure, and status.

I. Health Record Custodian: Person responsible for medical record functions at the facility level.

J. Health Insurance Portability and Accountability Act (HIPAA): A federal law (public law 104-191) passed by Congress in 1996, which addresses developing standards for protecting the privacy of individually identifiable health information. The act requires the Department of Health and Human Services (HHS) to adopt national standards for electronic health care transactions, and mandated the adoption of federal privacy protections for individually identifiable health information.

K. Health Insurance Portability and Accountability Act (HIPAA) Privacy Liaison: A person designated to be responsible for the development and implementation of Health Insurance Portability and Accountability Act (HIPAA) related policies and procedures and oversee compliance; whether oral or recorded in any form or medium.

L. Hybrid Entity: A single legal entity that is a covered entity and whose covered functions are not its primary functions.

M. Individually Identifiable Health Information: Information that is a subset of health information, including demographic information collected from an offender, and:

1. Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and

2. Relates to the past, present, or future physical, mental health or condition of an offender; the provision of health care to an offender; or the past, present, or future payment for the provision of health care to an offender; and

   a. Identifies the offender; or

   b. There exists a reasonable basis to believe the information can be used to identify the offender.

N. Licensed Health Care Professional: DOC employee or contract worker who performs clinical duties, e.g., health care practitioners, nurses, social workers, in accordance with each health care professional's scope of training and applicable licensing, certification, and regulatory requirements.

O. Minimum Necessary: The least amount of protected health information (PHI) used or disclosed to accomplish the intended purpose of the use.

P. Offender: Any individual under the supervision of the Colorado Department of Corrections (DOC) to include inmates, parolees, community correction clients (ISP-i), interstate compact individuals, and individuals sentenced to the Youthful Offender System.

Q. Protected Health Information (PHI): Information that (i) is created or received by a health care provider, health plan, employer or health care clearinghouse; (ii) relates to the past, present, or future physical or mental health condition of an individual; the provision of health care to an individual, or the past, present or future payment for the provision of health

| CHAPTER | SUBJECT | AR # | Page 3 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

care to an individual; and (iii) identifies the individual, (or for which there is a reasonable basis for believing that the information can be used to identify the individual). PHI does not include employment records maintained by the Department's personnel files in its role as an employer.

R. Reasonable Safeguards: Appropriate administrative, physical, and technical safeguards that protect against uses and disclosures not permitted by the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule, as well as that incidental uses or disclosures.

IV. PROCEDURES

A. General Compliance with Privacy Laws, Rules and Regulations:

1. Under the privacy laws, rules and regulations, the DOC is considered to be a hybrid entity that provides health care to the offender population. The health care information collected by healthcare professionals in the performance of their official duties is the protected health information (PHI) of an offender. As a hybrid entity, the DOC is required to keep an offender's PHI confidential and to prevent the unwanted, unauthorized and unnecessary disclosure of an offender's PHI.

2. For the purposes of this provision, an individual is no longer an offender when released on parole, probation, supervised release, or otherwise is no longer in lawful custody. (45 CFR 164.512(5)(iii)).

3. The Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule does not require a correctional institution that is a covered entity to develop and provide a notice of their privacy practices.

4. All DOC employees, contract workers and volunteers must sign the electronic Staff Confidentiality Statement located on DOCNET. If for any reason the DOC employee and contract worker does not have access to DOCNET, the paper form must be signed (See Attachment B). This record will be kept and monitored by the Corrections Training Academy and the HIPAA privacy liaison. Violations of the confidentiality agreement will be subject to corrective or disciplinary action, including termination.

5. If individually identifiable health information is "de-identified," it is no longer treated as PHI.

6. The HIPAA Privacy Rule permits disclosure of PHI only for treatment, payment, and health care operations or when regulatory exceptions apply (e.g. public health reporting).

7. DOC will ensure contracts dealing with treatment, payment, or healthcare operations between DOC and its business associates complies with HIPAA regulations. The business associate agreement defines how the DOC may disclose PHI to a business associate and may allow a business associate to receive and use PHI.

8. Offenders may submit grievances, as detailed in AR 850-04 *Grievance Procedure*, for issues related to medical and/or mental health concerns. The offender's signature on the grievance form will be evidence that the offender grants permission and is waiving confidentiality to DOC employees and contract workers to inquire into the necessary records to address the grievance. The DOC may use or disclose protected health information for grievances as a part of its health care operations, however, the DOC will make reasonable efforts to limit such uses and disclosers to the minimum necessary to accomplish the intended purpose.

B. Ownership of Health Records PHI:

1. An offender's health record belongs to the DOC while the health information contained within belongs to the offender (C.R.S. 25-1-801).

| CHAPTER | SUBJECT | AR # | Page 4 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

    2. By law, *the recorded document itself must be maintained by the facility clinic [4-4396]*.

    3. The information contained in the health record documents the confidential relationship between health care professionals and the offender, which the health care professional is legally and ethically bound to protect.

    4. The Clinical Services support services manager is the official health records custodian for the DOC. *The health services administrator (HSA) or designee, is responsible for releasing health care information in accordance with current regulations, statutes, and laws. [4-4415 4-4396]*

    5. HSAs will take due care and diligence to protect the offender's and health care professional's interests in the health record, and the information contained within. Due care includes restricting inspection and removal of health records, as well as complying with other applicable legal requirements.

C. DOC Employee and Contract Worker HIPAA Training

    1. All new DOC employees and contract workers will receive training regarding HIPAA rules and regulations within 60 days of the first day of work and yearly thereafter.

    2. When changes to HIPAA policies and procedures occur, training will be provided to all DOC employees and contract workers whose functions are affected by such change within 60 days.

    3. The HIPAA privacy liaison will coordinate and monitor all HIPAA training for compliance.

    4. The HIPAA privacy liaison will develop and distribute periodic privacy security reminders.

    5. Training documentation for DOC employees and contract workers will be retained for at least six years from the date of its creation or the date when it last was in effect, whichever is later.

D. HIPAA Compliance Violation Reporting

    1. DOC employees and contract workers who have knowledge of a violation, risk of non-compliance, or complaint of any policy contained herein, must report those directly to the HIPAA privacy liaison either verbally or in writing.

    2. Offenders who have knowledge of a HIPAA violation or risk of non-compliance must report it directly to the facility HSA via the kite system with details concerning the violation, risk of non-compliance, or complaint.

    3. All incidents will be documented on the HIPAA complaints and violations tracking form by the HIPAA privacy liaison.

    4. The HIPAA privacy liaison will immediately contact the director of Clinical and Correctional Services or designee of all confirmed violations.

    5. The director of Clinical and Correctional Services or designee will notify the US Department of Health and Human Services, Office of Civil Rights of violations in accordance with HIPAA rules and regulations.

E. HIPAA Compliance Violation and Sanctions

    1. The Health Insurance Portability and Accountability Act of 1996 assesses penalties for misuse or misappropriation of PHI or Personally Identifiable Information (PII) including civil penalties or fines and/or imprisonment.

| CHAPTER | SUBJECT | AR # | Page 5 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

    2. To ensure fair consistent response and implementation of appropriate sanctions, the HIPAA Incident Risk Assessment form will be completed by the HIPAA privacy liaison within 30 days of reporting and forwarded to the appropriate appointing authority for action.

    3. DOC employees and contract workers will work collaboratively and cooperatively regarding the investigation of HIPAA compliance violations with the HIPAA privacy liaison.

    4. The HIPAA privacy liaison will ensure all documentation related to all reported incidents will be retained for a period of at least six years from the date of creation.

F. Mitigation

    1. DOC will utilize the following process to mitigate the effect of an unauthorized use or disclosure of PHI.

        a. Based on the risk assessment, the director of Clinical and Correctional Services or designee will notify the offender or the offender's representative of the unauthorized use or disclosure.

        b. The HIPAA privacy liaison will attempt to retrieve the PHI or request that it be destroyed.

        c. The HIPAA privacy liaison will document the attempt to retrieve the PHI or the verification of destruction.

    2. In the event of an unauthorized use or disclosure of PHI by a contractor or business associate, the HIPAA privacy liaison will determine if appropriate corrective action steps were taken to prevent future occurrences.

G. Security Standards:

    1. The security standards are divided into categories of administrative, physical and technical safeguards. Regulatory definitions of the safeguards can be found on the Security Rule at 45 CFR 164.304. The Security Rule also contains several standards and implementation specifications that address organizational requirements, as well as policies and procedures and documentation requirements. For any questions or concerns regarding security questions or concerns you can contact the HIPAA privacy liaison or the State of Colorado chief information security officer.

        a. Administrative safeguards: these are the administrative functions that will be implemented to meet the security standards. These include assignment or delegation of security responsibility to an individual and security training requirements.

        b. Physical safeguards: these are the mechanisms required to protect electronic systems, equipment and the date they hold, for threats, environmental hazards and unauthorized intrusions. They include restricting access to electronic protected health information and retaining off site computer backups.

        c. Technical safeguards: these are the automated processes used to protect data and control access to data. They include using authentication controls to verify that the person signing onto a computer is authorized to access electronic protected health information, or encrypting and de-encrypting data as it is being stored and/or transmitted.

H. Rights of Offenders Related to Their PHI:

    1. Disclosure of PHI must be authorized with a HIPAA valid authorization signed by the offender or legal representative to protect the offender's right to privacy, except as permitted by law or regulation. If an authorization form is incorrect or incomplete, it will be returned to the requestor for correction and/or completion before being

| CHAPTER | SUBJECT | AR # | Page 6 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

honored

2. The Authorization for Use and Disclosure of Health Information (Attachment A) form is used to document any request made by the offender to inspect, receive or request copies from DOC or other health care facilities of his/her health record. The original or copy of the completed form is filed in the health record, in section five.

3. A faxed authorization is acceptable as an original document.

4. If an authorization is received for an offender that is no longer housed at the facility, the facility HSA or designee at the receiving facility will forward the request to appropriate facility.

5. If the offender is deemed mentally incompetent to sign a valid authorization, the personal representative is so authorized. A copy of the court appointment papers must be obtained prior to the disclosure of any PHI.

6. In order to maintain facility security, the DOC does not allow an offender to review or have copies of another offender's health record under any circumstances.

7. In the case of blood-borne or bodily fluid exposure, offender PHI will not be given to the DOC employee. State law allows disclosure of an offender's infectious disease status to a treating workers compensation physician from the medical authority at the site of injury. Information regarding exposure incidents will be reported directly to the worker's compensation provider per risk management's specialist instructions. (Refer to AR 700-08, Bloodborne Pathogen Exposure Reduction).

8. X-ray films are not available for offender inspection or for image interpretation. X-ray film is considered contraband and copies will be mailed outside of the DOC in accordance with the offender's request.

9. Verification for the release of PHI by DOC employees or contract workers who authorize the disclosure of PHI will take reasonable steps to verify the identity and legal authority of persons requesting disclosure of PHI.

   a. Prior to any disclosure, DOC will verify the identity of any person requesting PHI and the authority of any such person to have access to PHI.

   b. For a face-to-face request, the DOC employee or contract worker will request one acceptable form of identification. Acceptable forms of identification are as follows:

      1) State-issued driver's license
      2) State or federal-issued identification card with photograph
      3) U.S. military card or draft card
      4) U.S. passport

   c. For telephone requests, DOC employees or contract workers will verify the offender's social security number or the offender's DOC identification number and date of birth prior to releasing PHI via the telephone. This includes requests received by insurance companies requesting billing and payment information.

I. Revocation of an Authorization

1. Offenders have the right to revoke an authorization at any time, provided that the revocation is in writing, except to the extent that:

   a. DOC has already taken action in regards to the authorization.

| CHAPTER | SUBJECT | AR # | Page 7 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

      b. The authorization was obtained as a condition of obtaining insurance coverage.

2. HSA or designee:

    a. Receives a request in writing from an offender or personal representative to revoke an authorization:

    b. If the request is someone other than the offender, verify that the individual has the authority to make the request;

        1) If the individual has the authority to make the request (offender or personal representative), forward the request to the official health records custodian at Headquarters or designee for processing;

        2) If the individual does not have the authority to make the request, notify the offender or personal representative of the denial request and document the notification on the Authorization for Use and Disclosure of Health Information form.

3. Health record custodian:

    a. Determines if the authorization can be revoked.

        1) If the authorization cannot be revoked, sends a memorandum to the offender or personal representative stating why;

        2) If the authorization can be revoked; documents the request and notifies the HSA or designee. The revocation of an authorization is filed in the health record

K. <u>Minimum Necessary Uses and Disclosures:</u>

1. *Non-clinical, DOC employees or contract workers will have access to the minimum amount of PHI necessary to accomplish their duties and responsibilities. [4-4396]*

2. *At the discretion of the HSA or designee, verbal or written reports may be provided to facility administrative heads, regarding general health issues that may impact medical or behavioral health management, security, ability to participate in programs, transportation, and the status and/or prognosis of hospitalized offenders. [4-4396]*

3. PHI disclosed per this section will be released on a need to know basis and the minimum amount of PHI necessary to carry out their duties.

4. DOC employees or contract workers will follow proper procedures to ensure that only the minimum amount of PHI necessary used or disclosed.

5. DOC employees and contract workers will not use, request, or disclose to others, any PHI that is more than the minimum necessary to accomplish the purpose of the use, request, or disclosure.

6. This policy does not apply to the following uses or disclosures:

    a. Disclosure to or requests by a provider for treatment

    b. Uses or disclosures made to the offender who is the subject of the information or his/her personal representative

    c. Uses or disclosures pursuant to an authorization by the offender

| CHAPTER | SUBJECT | AR # | Page 8 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

      d. Disclosures made to the Department of Health and Human Services

      e. Uses or disclosures required by law; and

      f. Uses or disclosures required for compliance with applicable laws and regulations.

7. DOC employees or contract workers will be given levels of access to PHI basis to appropriately accomplish their duties and responsibilities.

M. General Access to PHI Records Within the Department:

1. *Access to health records is controlled by the health authority. [4-4396]* The right to inspect, review, and receive a copy of health records will be limited to those individuals designated by the health authority or designee based on a legitimate need for access. Original health records will not be taken from the Clinical Services area or copied without authorization from the health authority, support services manager at Headquarters, or designee.

2. The DOC will provide offenders or their designated representative the right to inspect, review and/or receive a copy their PHI.

3. An offender's request to inspect, review and receive a copy of the health record(s) will be referred to the HSA or designee to initiate the process and will be in writing by the offender submitting a Request for Sick Call (via the kite system).

4. Only the records pertaining to the time period requested will be inspected.

5. Inspection and review of the health record(s) by the offender requires at least one Clinical Service DOC employee or contract worker to be present at all times during the review.

6. The facility will make the health records available for inspection and review within a reasonable time from the date of the signed request, normally not to exceed ten days, excluding weekends and holidays. If the designated employee is unavailable to acknowledge the request, the facility will inform the offender and provide the inspection and review as soon as possible.

7. Multiple kites regarding a request to inspect and review an offender's health care record may be combined into a single visit or visits at the facility's discretion, excluding weekends and holidays.

8. By appointment, when requested, interpretation of the health record will be provided in terms which will be understandable to the offender. Appropriate interpreter services will be provided for persons whose primary language is not English or whose disability requires special communication services. These services will be provided by a qualified interpreter.

9. All requests by offenders for inspection and review of their health records will be noted with the time and date of the offender's request and the time and date of inspection noted by the health care practitioner or designated representative. The offender shall acknowledge the fact of his/her inspection by dating and signing the Authorization for Use and Disclosure Form.

10. A fee will not be charged for the inspection of health records.

11. The facility health record custodian or designee must keep a computerized log of all written requests received for access to PHI of offenders. The log will include the offender name, number and the date of disclosure; the name of

the entity or person who received the PHI; if known, the address of such entity or person; a brief description of the PHI disclosed; and a brief statement of the purpose of the disclosure that reasonably informs the individual of the basis for the disclosure.

12. There is no limit to reviewing records.

N. **Faxing or emailing PHI:**

1. PHI will be hand delivered or mailed whenever possible. Faxing or emailing PHI internally to authorized DOC employees or contract workers is allowable at any time to facilitate treatment, payment or health care operations, provided the guidelines outlined in this policy are adhered to.

2. Faxing and emailing of PHI outside of the DOC is allowable in situations when health information is needed for offender care purposes, continuing care placement, payment or when mail or courier delivery will not meet a necessary timeframe. Only the minimum necessary PHI will be faxed or emailed. DOC employees or contract workers will take reasonable steps to verify the identity of the PHI recipient and to ensure that proper authorizations are obtained by the offender.

3. Each facility clinic must designate which FAX machine in the clinic area will be utilized to send and/or receive PHI. These FAX machines must not be accessible to the public and will only be accessible to DOC employees and contract workers directly involved in offender healthcare or those authorized to handle faxed information.

4. The faxed information must be accompanied by special FAX cover sheet specifically designated for faxing of PHI. Each page of intended FAX will be stamped or marked "confidential". In the event of a misdirected FAX, the recipient will be directed to immediately destroy the fax. The cover sheet must contain the following information:

"The information accompanying this cover sheet is strictly confidential. It is intended only for the person named above. If you receive this information in error, please contact the person whose name is shown above. No responsibility can be accepted by DOC if this information is made available to anyone except the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution of taking of any action in reliance on the contents of this information is strictly prohibited."

5. DOC employees and contract workers authorized to FAX PHI must take reasonable steps to confirm the accuracy of the FAX numbers and security of recipient machines.

6. When expecting the arrival of a FAX containing PHI, schedule with the sender whenever possible to ensure that the faxed documents can be promptly removed from the FAX machine.

7. DOC employees and contract workers responsible for routing PHI to the recipient of the FAX must be sure they leave it in a secure/confidential location.

8. When transmitting PHI by email inside or outside of DOC, the word "encrypt" will be included within the subject line to protect the privacy of the individual identifiable PHI.

O. **Copying and Safeguards of Health Records:**

1. The offender and/or designated representative may have copies, upon written request, of any portion of his/her health record to which he/she has the right to access.

2. Request for copies will be in writing.

| CHAPTER | SUBJECT | AR # | Page 10 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

3. Mental health information that is filed in a manila envelope within the file is not considered part of the designated record set and therefore will not be copied and/or released without an order from the court.

4. Only the records pertaining to the time period requested will be copied.

5. Requests for PHI, not generated by the DOC, which has been made part of the health record, must be specified on the authorization or will not be copied.

6. Only Clinical Services DOC employees, approved reproduction contracts or contracted correctional facilities per contract, may make copies of health records. Reproduction of PHI to facilitate treatment, payment or health care operations is allowable provided the guidelines in this policy are followed:

   a. DOC employees and contract workers responsible for reproducing PHI will assure that the PHI is not accessible to the public and will only be accessible to DOC employees and contract workers directly involved in offender care or those authorized to handle the reproduction of the PHI.

   b. DOC employee and contract worker are not allowed to leave PHI unattended on reproduction equipment. DOC employees and contract workers must pick up printed documents containing offender PHI in a timely manner.

   c. DOC employees and contract workers that transport original health records off facility grounds must transport using a confidential carrier.

   d. When possible, the original health record will not be removed from facility grounds.

7. All health information mailed will be stamped with a confidential stamp on the envelope.

P. Charges for Copying Health Records:

1. The charge for incarcerated offenders is twenty-five cents per standard page. Offenders must have funds available at the time of the request.

2. Offenders who are released to parole, community corrections, probation, supervised release, or are otherwise no longer in lawful custody will be charged twenty-five cents per standard page:

   a) Actual postage or shipping costs also may be charged.

   b) Copies made by the contracted copying company can not be waived or reduced.

3. Copies which cannot be made at DOC (i.e., x-rays) will be charged at the actual cost of such reproduction elsewhere; image interpretation is not included as part of the film reproduction. If reproduction is on disc, the charge is $5.00 per disc.

4. There will be no charge to the Attorney General's Office or county coroners. Requests from other entities will be charged in accordance with the fee schedule set forth in item 2 above.

5. When distributing eyeglasses, the offender may have the copy of the eyeglass prescription attached to the eyeglass case free of charge. The prescription is documented in the health record; therefore, the extra copies of the prescription are not filed in the health record. If the prescription is copied at a later date, the offender will be charged for copies

6. A fee will not be charged to offenders for a copy of the tuberculosis lab test result needed for community placement.

| CHAPTER | SUBJECT | AR # | Page 11 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

The Authorization for Use and Disclosure of Health Information form is required to be completed by the offender or the designated representative prior to disclosing the information. The completed form is filed in the medical file, in section five.

7. Copies will not be mailed until payment is received excluding, the public defender's office. Payment will be in the form of a money order, cashier's check, or offender transfer of funds, payable to the Department of Corrections. Cash and credit cards are not accepted. Payments received are forwarded to Colorado Territorial Correctional Facility accounts receivable for proper processing. Fees may be waived by the deputy executive director or designee or the health records custodian on a case by case basis.

8. For continued offender care, health care providers will not be charged for copies.

Q. **Inspection of Behavioral Health Files by Incarcerated Offenders:**

1. The right to inspect behavioral health files does not always include inspection of all records pertaining to mental health problems.

2. Monitoring inspection of behavioral health files will be done by the behavioral health DOC employee or contract worker.

3. The offender's inspection of PHI cannot be limited unless there is sufficient evidence, that any portion of the mental health sections of the file would have a significant negative impact upon the offender. Offenders do not have the right to inspect or obtain copies of those documents in their mental health file where inspection or release of those documents would countermine facility security or public safety. This information will be filed inside the mental health file in a manila envelope. All documentation filed within the manila envelope is not releasable without an order from the court. Prior to permitting inspection of the behavioral health portion of the health record, if the attending health care professional feels that any portion of the health record pertaining to psychiatric or psychological problems or any doctor's notes would have a significant negative psychological impact upon the offender, the attending health care provider will notify the chief of behavioral health services or designee.

    a. The chief of behavioral health services or designee will review the recommendations of the mental health professional and determine if there is sufficient evidence to pursue denial of inspection.

    b. If the chief of behavioral health services or designee finds that there is sufficient evidence to pursue denial of inspection, the chief of behavioral health services will contact the Colorado Department of Public Health and Environment to request that they identify an independent third-party psychiatrist to review the record and render a final decision.

    c. The attending health care provider or designated representative will so inform the offender or representative, as to the reason of the denial within five business days of the date of the request.

    d. If the record or a portion thereof pertaining to psychiatric or psychological problems or doctor's note having a significant negative psychological impact is withheld from the offender, a summary of records pertaining to an offender's mental health problems may, upon written request and a valid authorization, be made available to the offender or the offender's designated representative following termination of the treatment program.

    e. The independent third-party psychiatrist's decision to release information will be documented in the mental health file.

    f. Mental health DOC employees, or contract workers will permit inspection of the remaining portions of the mental health file. The portion of the health record pertaining to psychiatric or psychological problems or

| CHAPTER | SUBJECT | AR # | Page 12 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

doctor's notes may then be withheld from the offender or representative until completion of the treatment program, if in the opinion of an independent third party who is a licensed physician practicing psychiatry, the portion of the mental health file would have a significant negative psychological impact upon the offender.

R. **Inspection of Health Records by Discharged Offenders from DOC:**

   1. Discharged offenders from the DOC or their designated representative who wish to inspect and review their health record will be referred to the HSA or designee at the Denver Reception and Diagnostic Center (DRDC).

   2. The request must be in writing and an Authorization for Use and Disclosure of Health Information form will be provided to the requestor.

   3. The HSA or designee will make an appointment for the discharged offender or designated representative to inspect the health record at a mutually convenient time.

   4. The inspection of health records is reviewed in the training room of the Denver Women's Correctional Facility.

   5. Confidentiality of PHI will be maintained at all times during inspection of health records.

S. **Release of Protected Health Information for Deceased Offenders:**

   1. Health Record confidentiality remains in effect after the death of offender. The Colorado rules for disclosure of a decedent's health records are consistent with the HIPAA Privacy Regulations Confidentiality, and by law, survive the death of an offender.

   2. In the case of a deceased offender, state regulations provide that the personal representative appointed by the court to administer the deceased offender's estate is the offender's designated representative may properly inspect, review, or request copies of the deceased offender's records upon receipt of written authorization.

   3. In situations where no personal representative has been appointed, the heirs of the deceased offender are deemed to be the persons who may properly inspect the records and request copies. The heirs of a deceased offender are generally considered to be the offender's next-of-kin and may include in the following order: surviving spouse, adult child, grandchild, parent, sibling, niece, nephew, grandparent, uncle, aunt or cousin.

   4. The procedures employed in disclosing PHI to a personal representative, or heir of a deceased offender will be virtually the same as those utilized for releasing information to a discharged offender. The personal representative or heir will submit a written authorization for records, dated and signed by the personal representative or heir.

   5. The death of the offender does significantly modify the applicable procedure. For the offender who is living, an attending physician may limit or deny access to certain information in the record which might have an adverse psychological impact on the offender. An attending physician or a facility will not deny a personal representative or heir access to information concerning a deceased offender based on psychological impact.

T. **Uses and Disclosures of PHI without Offender Authorization as Required by Law:**

   1. Pursuant to the privacy laws, rules and regulations, the DOC may disclose PHI of an offender without a valid release of information form in these circumstances:

      a. To protect the public health and safety by releasing information to another entity for the purposes of reporting or controlling disease or injury; vital events such as birth or death; public health investigations and interventions, and to report adverse effects of medications or medical devices (45 CFR 164.512(a)).

| CHAPTER | SUBJECT | AR # | Page 13 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

  b. To release information for audits, inspections, or other activities necessary for appropriate oversight of the health care system for which health care information is necessary for determining compliance with program standards. (45 CFR 164.512(d)

  c. To report to appropriate law enforcement authorities incidents of child neglect and abuse and to report incidents of domestic violence (45 CFR 164.512(c).

  d. To release information pursuant to an order of a court or administrative tribunal and in response to a subpoena, discovery request or other lawful process that is not accompanied by an order of a court or an administrative tribunal (45 CFR 164.512(e).

  e. To release minimum necessary information to a law enforcement agency for the purposes of identifying or locating a suspect, fugitive, material witness or missing person. (45 CFR 164.512(f).

  f. To release information to medical examiners, coroners and funeral directors for those persons to perform the official duties of their job. (45 CFR 164.512(g).

  g. To release information to tissue, eye, organ donor and cadaveric organizations for the purposes of facilitating eye, tissue, and organ donation and transplantation (45 CFR 164.512( h).

  h. To release information for the purposes of research in compliance with the Common Rule and review by an Institutional Review Board and/or privacy board (45 CFR 164.512(i).

  i. To release information to avert a serious threat to the health or safety of a person or a public entity (45 CFR 164.512(j).

  j. To release information to military organizations or other federal law enforcement agencies for the purposes of maintaining national security interests (45 CFR. 164.512(k).

  k. Public Health (45 CFR 164.512(b).

 2. All disclosures of PHI as required by law, and included in this policy must be recorded and be retained in the offenders health file in section five.

U. Health Records from other Hospitals/Health Care Facilities and Licensed Providers:

 1 The law governing offender access to medical records draws no distinction between records generated in-house and those created elsewhere. The statute requires "every" record in the "custody" of a licensed or certified health facility to be made available to a requesting offender or designated representative upon the conditions outlined in the statute. C.R.S § 25-1-801. This comports with the notion that an offender has a legitimate interest in and right to inspect and receive copies of all of his/her health records, wherever created, in the custody of the DOC.

 2. The DOC will disclose health information if the authorization form clearly delineates the records being sought and the hospital or health care facility where the care was rendered is different than the clinic receiving the request. This avoids needless duplication of records in which the offender or designated representative is not interested.

V. Requests for Health Records in Lawsuits Filed by Offenders:

 1. The DOC receives discovery requests and subpoenas for offender health records. DOC employees who receive a subpoena or must respond to discovery for a request to produce the record containing PHI of an offender must send

| CHAPTER | SUBJECT | AR # | Page 14 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

      a copy of the subpoena to the support services manager at Headquarters, the facility health record custodian or designee and to the Office of Legal Services.

   2. The support services manager at Headquarters will coordinate the production of the record with the facility health record custodian or designee. Should a dispute arise regarding the production of the PHI, the support services manager at Headquarters will be responsible for responding to the subpoena or discovery request.

   3. The health records of offenders who have filed litigation against the DOC or offenders who have filed a complaint against a licensed health care professional with the Department of Regulatory Agencies will be kept in the facility health clinic. Copies of offender health records needed by DOC employees and contract workers to respond to lawsuits and licensure complaints will be kept in a locked cabinet in the workspace of the DOC employees, or contract worker. Copies of offender health records whose litigation presents a high legal liability will be kept in a locked cabinet in the office of Quality Management at Headquarters.

   4. If an offender puts their own PHI at issue in litigation, they waive their right to confidentiality and that information is no longer confidential or protected by HIPAA.

W. Retention and Destruction of Health Records and PHI:

   1. Health records will be initiated for all new arrivals into the DOC and maintained in a secure and confidential manner throughout the offender's stay. The management of the record will be supervised by the HSA or designee.

   2. The DOC controls the location of health records at all times to ensure the records will be safeguarded from loss, destruction, tampering, and unauthorized access or use.

   5. Health records will be preserved on every offender after release from the DOC and are available to meet the needs of legal requirements, research, education, continued offender care, and other legitimate uses. With the offender's release from the DOC, the health record will be transferred to the DRDC inactive files for storage and safekeeping. *Inactive health records are retained for ten years following offender release from the DOC. [4-4415]*

   6. A complete health record will be maintained on every offender from admission to discharge. The content of the health record will depend on the services provided.

   5. Health records will be stored in such a manner to provide protection from loss, damage and unauthorized use and preserve the confidentiality of health information.

X. Retention of Health Records of Offenders Who Have Been Recently Released from the Department:

   1. *Inactive health records will be preserved as outlined in DOC record retention requirements. [4-4379]*

   2. With the offender's release from the DOC, the health record must be documented in the chart locator and forwarded to inactive files at DRDC

      a.. Inactive health records are filed in numerical order by offender number, in the records original form.

      b. Health records that have been stored for greater than five years after the offender discharged will be scanned and located on the DOC's web-extender for storage, viewing and easy retrieval.

   3. Health records of deceased offenders must be forwarded to the Quality Management Office at Headquarters and the record transfer must be documented by the facility health care record custodian in the chart locator kept at the facility health care clinic.

| CHAPTER | SUBJECT | AR # | Page 15 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

Y. Proper Disposal of Health Records and Other PHI:

1. Health records that have been stored for greater than five years after the offender discharged will be scanned and located on the DOC's web-extender for storage, viewing and easy retrieval.

2. All printed material (e.g., faxes, printed emails, or medication blister cards etc.) containing PHI must not be discarded in trash bins, unsecured recycle bins or other publicly accessible locations. Instead this information must be placed in secured receptacle bins or shredded. The DOC may elect to use either shredding, secure recycle bins, or other options for the destruction of these documents, as long as the destruction is in accordance with this policy. It is the DOC employee's and contract worker's responsibility to ensure that the document has been secured or destroyed.

3. After health records have reached their retention period, all PHI will securely destroyed using the procedures listed below:

    a. Prior to destruction, a public notice will be posted in the major newspapers in the state of Colorado. This publication serves as notification to offenders whose records are to be destroyed. Offenders will contact the DRDC health care records custodian if the offender wants a copy of the health record prior to destruction.

    b. The following information will be maintained by the DRDC medical records supervisor regarding destroyed health records:

        1) Offender names and DOC number
        2) Health record date range
        3) Name of destroying organization
        4) Date of destruction
        5) Method of destruction

    c. The offender profile is retained permanently.

    d. Offender health records whether original or copied, whether in the designated record set or not, will not be destroyed without permission from the DOC's legal counsel.

    e. Original documents from the designated record set will not be destroyed without prior authorization from the Colorado Division of Archives.

V. RESPONSIBILITY

  A. The HSA is responsible for:

    1. Program implementation and compliance with this AR.

    2. The security, confidentiality, access, and the transport of health records for use by all Clinical Services DOC employees or contract workers.

VI. AUTHORITY

  A. C.R.S 18-4-412. Theft of medical records or medical information - penalty.

| CHAPTER | SUBJECT | AR # | Page 16 |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | EFFECTIVE 05/15/16 |

    B. C.R.S 24-72-203. Public records open to inspection.
    C. C.R.S 24-72-301. Legislative declaration.
    D. 42 C.F.R. Parts 160 and 164 – Breach Notification for Unsecured Protected Health Information.
    E. 6 CCR 1011, Chapters II, IV, and V. Colorado Board of Health Rules and Regulations,
    F. C.R.S 12-36-101; 12-43-101; 12-32-101 Doctors, nurses, mental health, dental.
    G. C.R.S 25-1-801. Offender records in custody of health care facility

VII. HISTORY

September 15, 2015
November 1, 2014
May 15, 2012
January 1, 2011
December 1, 2009
December 1, 2008
December 1, 2007
December 1, 2006
December 1, 2005
December 1, 2004

ATTACHMENTS:

    A. AR Form 950-02A,   Authorization for Use and Disclosure of Health Information Form
    B. AR Form 950-02B,   Confidentiality Statement
    C. AR Form 100-01C,   Administrative Regulation Implementation/Adjustment

ADMINISTRATIVE REGULATION
IMPLEMENTATION/ADJUSTMENTS

AR Form 100-01A (04/15/08)

| CHAPTER | SUBJECT | AR # | EFFECTIVE |
|---|---|---|---|
| Offender Records | Health Records/Confidentiality/Access | 950-02 | 05/15/16 |

(FACILITY/WORK UNIT NAME) _____
WILL ACCEPT AND IMPLEMENT THE PROVISIONS OF THE ABOVE ADMINISTRATIVE REGULATION:

[ ] AS WRITTEN   [ ] NOT APPLICABLE   [ ] WITH THE FOLLOWING PROCEDURES TO ACCOMPLISH THE INTENT OF THE AR

(SIGNED) _____ (DATE) _____
            Administrative Head

Attachment C
Page 1 of 1