IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.    18 – cv – 00956 – MSK-MEH

**SHAWNEE RYAN, Plaintiff**

V.

**Defendants:**
**CORRECTIONAL HEALTH PARTNERS (dba Correctional Health Partners, Inc.;**
**Correctional Health Companies, Inc.; Correctional Corporation of America;**
**Physician Health Partners; CHP Companies, Inc.; Correctional Healthcare**
**Physicians, P.C.) (CHP et al)**

**DR. JENNIFER MIX, M.D.  (personal and professional capacity)**
**HILARY VICTOROFF N.P.  (personal and professional capacity)**
**LAURA SOMMERSCHIELD N.P. (personal and professional capacity)**

**PLAINTIFF FULLFILMENT OF OFFERED ADDITIONAL DISCOVERY TO STATE (Attachment 4) (and) DUAL CLARIFYING SUMMARIES OF CHARGES WITHIN COMPLAINT (and) FOUNDATIONS OF LAW AND EVIDENCE SAME ARE BASED UPON (at time of Court's case drawing)**

As no existing within law (both state and federal) (or) within rules or obligations upon Plaintiff, exist for her to disclose *anything* to defense parties, other than fact-based evidence, witnesses, experts and the locations of all discoverable evidence:

**Plaintiff Shawnee Ryan comes now,** with the grace of leniency to defense counsels who are approaching less than two weeks to the end of discovery (November 1, 2019) and find themselves, as of October 7th  court orders to State, cut adrift from the posture they have tenaciously held on to for 7 months in this case.

Plaintiff provides the following recap of what is already housed and disclosed within this case.  With that said:

1

35  The demands made by Attorney Colony, of Plaintiff, at October 19th deposition of
36  Plaintiff, are demands that cross over the line of any legal requirement Plaintiff
37  has and were, in Plaintiff view, grossly unreasonable and mischaracterizing of
38  Plaintiff (and) everything to date in this case.
39
40  In no way should this filed disclosure be construed by anyone within this case as
41  response by Plaintiff to Ms. Colony's demands.  The only demand of Ms. Colony,
42  that Plaintiff will meet, is Attachment #3 today. Ms. Colony is aware that record is
43  now preserved that should she persist in her demands, she is free to file to the
44  court and Plaintiff will rise to the challenge.
45
46  With that said:
47
48  This filing today is a dual clarification that this case's movement obviously needs
49  in assistance at this late date of discovery (and) is also strategically given at this
50  time to ensure the potential of defense counsels attempting to lay to record
51  groundwork for future appeals for their clients being contained.
52
53  This case was drawn 9 months ago.  State has been a defense party since.  CHP
54  has been a party since.
55
56  **For the sake of the case, sake of the court, sake of upcoming ADR, for the sake**
57  **of what is going to be placed eventually in front of a jury and in deterrence of**
58  **potential future appeals:   "The assistance of Plaintiff to Defense Counsel's**
59  **clarity is given today.  Plaintiff DOES repeat:  the finding of defense, less than a**
60  **few weeks from the end of discovery, that they MUST switch gears and veer**
61  **away from what they have clung to for over 7 months:  is NOT the issue of the**
62  **Plaintiff or the Court."**
63
64  (EVERY STATEMENT BELOW HAS BEEN PREVIOUSLY DISCLOSED AND RELEASED TO
65  ALL PARTIES BY THE PLAINTIFF AND DONE SO, WITHIN ALL CONFINES OF ECF132
66  SCHEDULING ORDER, ALL FILINGS TO DATE (AND) ALL RULES AND REQUIREMENTS
67  OF FRCP AND FRE.)
68
69
70
71

2

**SUMMARY OF CLAIMS:**

**CORRECTIONAL HEALTH PARTNERS DEFENDANT GROUP:**

**CHP (et al)** is NOT charged with 'blame', in any way, for the Plaintiff's fatal diagnoses of Multiple Myeloma (and) Light Chain (Bence Jones) cast.

**CHP (et al)** is NOT being held to punitive damages with regard to the expenses of *lifelong provisions of treatment for Multiple Myeloma (and) Light Chain (Bence Jones) cast.*

**CHP (et al)** IS being held to the lifelong economic loss to Plaintiff for her to care for all the resulting damages caused by years of prolonged chemotherapy drug exposure (and) to the lifelong physical pain and suffering Plaintiff must now endure. (see attachment one)

**CHP (et al) is claimed** with responsibility of violating the federal and state regulations surrounding the AHCA that went into effect on January 1, 2014 and cast into Colorado law in June 2014 as HCPF 14-006. Their contractual obligations to the CDOC, the duty to the inmate as claimed medical professionals and as both advertised and declared publicly; allegedly and spanning nearly 4 years ARE claimed by Plaintiff to have held an obligation to provide authorization recommendations to the CDOC for the ONLY 3 phase treatment(s) that exist for the diagnoses. INCLUDING bringing forth CHP (et al) responsibility to obey legislation that they were aware of AND Pre-Authorizations within their power to give. At minimum that would have encompassed advising the Guardians of Plaintiff of the validity of Plaintiff's medical needs and advising that Medicaid existed to pre-authorize and cover the costs.

**CHP (et al) is claimed** with deliberate indifference to meeting the adequate approvals for medical needs, as required by contract, their own business structures, and regulatory licensing obligations to not exceed their personal capacities of medical knowledge and certifications.

**Further** claimed with negligence in simultaneously approving the same nearly 4 years of aggressive and intensive chemo therapy which DID cause

3

the damages to Plaintiff's permanent health needs (See attachment one) while simultaneously NOT approving the standard of care treatment of transplant that would have removed the need for the chemo drugs. WHILE ALSO simultaneously approving and watching, over same span of time the development of each of the damages the resulting nearly 5 million dollars in medical care needed to keep Plaintiff alive.

- **With regard to Dr. Jennifer Mix M.D.:** Court held, when drawing, to existence of triable issues regarding personal professional responsibility:

**See** attachments 2 and 3.

**Reference** (as the bare minimum of legal foundation allegedly in support of ALL claims against CHP (et al) and Dr. Mix):

"Restatement (Second) of Torts 328 (D) (1) doctrine in negligence law where "The thing speaks for itself"…when the event does not occur in the absence of negligence…..(c)…the indicated negligence is within the scope of defendant's duty to the Plaintiff…".

FRCP Rule 9(b) (in pleading special matters): The particularity requirement of Rule 9(b) cannot be avoided through general averment that defendant knew earlier about matters that later turned out badly; rather, complaint must set forth specific facts that make it reasonable to believe that defendant knew that statement or action was materially false or misleading.." Shaw v Digital Equip Corp (1st Cir Mass May 7, 1996) 82F3d1194, 35 Fed R Serv 3d (Callaghan) 55, Fed Sec L Rep (CCH) P99217.

Negligence, partially defined: "…causes injury by failing to have and use the knowledge, skill and care ordinarily possessed and employed by members of the profession in good standing…to avoid malpractice…the doctor must utilize ordinary knowledge, skill and care in both diagnosis and treatment. Medical personnel who undertake to diagnose and treat specialized problems are held to the standard of care applicable to those specialties even if they do not claim specialized expertise…"

4

146
147    **WITH REGARD TO STATE DEFENDANTS VICTOROFF AND SOMMERSCHIELD:**
148
149    **Hilary Victoroff (CLAIM #4)** IS claimed for a single action of allegedly disobeying
150    the discharge instructions of the physician team at Aurora South Hospital and Dr.
151    John Burke, in part, by not leaving ANY orders, prior to leaving for 3 days off; for
152    at minimum, clinic care access and vitals monitoring of Plaintiff after she had
153    undergone one of the most aggressive chemotherapy treatments known:
154    DTPACE.  Spanning 4 days (Feb. 3, 2017 through Feb. 7, 2017) the alleged failure
155    to provide adherence to the instructions she was given resulted in the near death
156    of Plaintiff due to the rapid development over same time frame of neutropenic
157    fever, Influenza A, drop of WBC to 0.0 count, drops of other vital levels of blood
158    counts (resulting in need for multiple bags of whole blood transfusion and
159    multiple bags of platelet infusion) and an infection developing on a finger of
160    Plaintiff's right hand that went from a likely insect bite to sepsis to MIRSA within
161    same 4 days.
162
163    **Hilary Victoroff's** (claim #4) has NOTHING to do, with ANY other aspect of
164    Plaintiff's health and IS solely based on that single action of Defendant Victoroff
165    that set in-motion and locked into NO ABILITY to receive the care Plaintiff needed,
166    for the 4 days at issue.
167
168    **Hilary Victoroff** (Claim 4) is NOT charged with punitive damage claims and IS
169    charged with compensatory damage claims.
170
171    **IN PART:** the alleged foundation of law supporting Plaintiff's allegations in Claim
172    #4 are:
173
174    The wealth and depth of fact-based evidence that exists.
175
176    "Restatement (Second) of Torts 328 (D) (1) doctrine in negligence law where "The
177    thing speaks for itself"…when the event does not occur in the absence of
178    negligence…..(c)…the indicated negligence is within the scope of defendant's duty
179    to the Plaintiff…".
180
181    FRCP Rule 9(b) (in pleading special matters):  The particularity requirement of
182    Rule 9(b) cannot be avoided through general averment that defendant knew

5

Case 1:18-cv-00956-MSK-MEH Document 162-2 filed 10/23/19 USDC Colorado pg 6 of 8

183  earlier about matters that later turned out badly; rather, complaint must set forth
184  specific facts that make it reasonable to believe that defendant knew that
185  statement or action was materially false or misleading..” Shaw v Digital Equip
186  Corp (1st Cir Mass May 7, 1996) 82F3d1194, 35 Fed R Serv 3d (Callaghan) 55, Fed
187  Sec L Rep (CCH) P99217.
188
189  Negligence, partially defined: "…causes injury by failing to have and use the
190  knowledge, skill and care ordinarily possessed and employed by members of the
191  profession in good standing…to avoid malpractice…the doctor must utilize
192  ordinary knowledge, skill and care in both diagnosis and treatment.  Medical
193  personnel who undertake to diagnose and treat specialized problems are held to
194  the standard of care applicable to those specialties even if they do not claim
195  specialized expertise
196
197  **Hilary Victoroff (Claims #5 and 6**) IS charged with alleged civil criminal violations
198  that are specifically spelled out in ECF119 and pending ECF 142, 143, 144 (and)
199  ECF148.  Plaintiff has NOTHING to do with the fate of the two claims as they are
200  alleged violations of law that have mandatory sentencing and disciplines that only
201  law enforcement and the court can uphold.  Plaintiff IS responsible and has
202  grossly adequately met the requirements to provide the court and law
203  enforcement with ALL evidence she has.  Plaintiff HAS further grossly adequately
204  met her responsibility to the court and law enforcement ANY AND ALL removals
205  of obstructive paths from others by filing all status in these claims as she has.
206  Plaintiff CANNOT act further or do anything more until movement from
207  authorities is in place.
208
209  **WHEN AUTHORITIES ARE COMPLETE** within Claims #5 and #6 and IF Plaintiff is
210  called upon at that time to make ANY determinations for potential relief, if any;
211  Plaintiff will obey, thoroughly review the findings at that time and do so
212  MEANWHILE:  the Plaintiff nor any other party has ANY controls over the the
213  allegedly tainted discovery in question being able to be used by ANY party.  THAT
214  INCLUDES, ANY AND ALL continued additions to that cache of evidence made by
215  Hilary Victoroff OR her counsel.  Every related issue IS in the hands of the court.
216
217  **Laura Sommerschield in Claim #7:**  IS claimed with the multiple yet singular acts
218  she allegedly directly committed, each time they occurred of failure and/or
219  refusal to obey the changing transportation for eye surgery orders that would

6

Case 1:18-cv-00956-MSK-MEH Document 162-2 filed 10/20/19 USDC Colorado pg 7 of 8

220  have, IF they had been followed, gotten the Plaintiff to eye surgeons for initial
221  workup earlier, gotten the Plaintiff into the subsequently ordered latter surgery of
222  "immediate next", which finally escalated to "Urgent" for surgery orders due to
223  surgeon ordered care.  Delay(s) into surgery DID result in Plaintiff enduring two
224  surgeries rather than one on her left eye which DID result in a torn retina that
225  subsequently needed laser surgery repair AND that Plaintiff must lifelong endure
226  specialized retina monitoring with potential of future repairs.  And DID result, due
227  to the repeated invasive surgery on left eye cause extreme vitreous and 'floater'
228  detachment that now requires vitrectomy surgery to restore Plaintiff to normal
229  ability to see clearly.
230
231  **Laura Sommerschield** (Claim #7) IS NOT being claimed for punitive damages of
232  any kind.
233
234  **Laura Sommerschield** IS being claimed for compensatory damages to Plaintiff's
235  left eye.
236
237  **Laura Sommerschield** (Claim #7) IS NOT claimed against for any other aspect of
238  Plaintiff's health nor any other alleged actions there may or may not be against
239  her.
240
241  **In Part, Laura Sommerschield** (Claim #7) IS claimed upon the partial foundation of
242  law within:
243
244  The wealth and depth of fact-based evidence that exists against her.
245
246  "Restatement (Second) of Torts 328 (D) (1) doctrine in negligence law where "The
247  thing speaks for itself"…when the event does not occur in the absence of
248  negligence…..(c)…the indicated negligence is within the scope of defendant's duty
249  to the Plaintiff…".
250
251  Negligence, partially defined: "…causes injury by failing to have and use the
252  knowledge, skill and care ordinarily possessed and employed by members of the
253  profession in good standing…to avoid malpractice…the doctor must utilize
254  ordinary knowledge, skill and care in both diagnosis and treatment.  Medical
255  personnel who undertake to diagnose and treat specialized problems are held to

the standard of care applicable to those specialties even if they do not claim specialized expertise.

**ATTACHMENTS:**

Exhibit One: SKR-000001

Exhibit Two: 2-CHP-RYAN 001; CHP-RYAN 015; CHP-RYAN 016; CHP-RYAN 017

Exhibit Three: A courtesy to Attorney Colony, by Plaintiff, of going online, conducting a google search of the statutory and regulatory descriptions of Claims #5 and #6 against Hilary Victoroff

Formally submitted this 20th day of October 2019.

S/Shawnee Ryan
11309 West Exposition Drive
Lakewood, Colorado 80226
720-431-8319
shawneeryan216@gmail.com


**CERTIFICATE OF SERVICE**
I have served, a complete and full copy of the foregoing via CMECF system, to the parties below on this 20th day of October 2019.


S/Shawnee Ryan
11309 West Exposition Drive
Lakewood, Colorado 80226
720-431-8319
shawneeryan216@gmail.com

Clerk of Court: cod_cmecf@cod.uscourts.gov
Andrew David Ringel: ringela@hallevans.com
Edmund Martin Kennedy: kennedye@hallevans.com
Amy Colony: acolony@coag.gov

8