IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-00956-MSK-MEH

SHAWNEE RYAN,

    Plaintiff,

v.

CORRECTIONAL HEALTH PARTNERS,
JENNIFER MIX, M.D.,
HILARY VICTOROFF N.P., and
LAURA SOMMERSCHIELD N.P.,

    Defendants.
_____

**OPINION AND ORDER GRANTING IN PART MOTION TO AMEND TO ADD CLAIM
FOR PUNITIVE DAMAGES; DENYING MOTION TO BIFURCATE CLAIMS;
DENYING MOTION TO AMEND COMPLAINT TO ADD NEGLIGENCE CLAIMS**
_____

**THIS MATTER** comes before the Court pursuant to several motions brought by Plaintiff Shawnee Ryan's ("Ms. Ryan"). The first is her Motion for Leave to File an Amended Complaint to Assert a Claim for Punitive Damages Against Defendants Correctional Health Partners ("CHP") and Dr. Jennifer Mix **(#142)**[1], CHP and Dr. Mix's Response **(# 160),** to which no reply was filed. The second is Ms. Ryan's Motion to Bifurcate Claims #5 and #6 Against Defendant Hilary Victoroff **(# 147)**[2], Nurse Victoroff and Nurse Sommerschield's response **(#161)**, and CHP and Dr. Mix's Response **(# 160)**, to which no reply was filed. The third is Ms.

---

[1]     Ms. Ryan also filed several supplements to this motion **(# 143 and # 155)**, which the Court has reviewed.
[2]     Ms. Ryan also filed several supplements to this motion **(# 148 and # 153)**, which the Court has reviewed.

1

Ryan's Motion to Join Negligence Claims Against CHP Defendants and Defendants Victoroff and Sommerschield **(# 133)**, CHP and Dr. Mix's Response **(# 160)**, to which no reply was filed.

## FACTS

On the date she commenced this suit, Ms. Ryan was a prisoner in the custody of the Colorado Department of Corrections ("CDOC") and housed at the Denver Women's Correctional Facility ("DWCF"). **(# 1)**. On October 4, 2018, Ms. Ryan was eventually released from DOC custody on parole and proceeds in this matter *pro se*.[3] **(# 119 at 9)**.

According to Ms. Ryan's Fourth Amended Complaint **(# 119)**, which is the current operative pleading, in November 2012, she entered the CDOC in "excellent health." **(# 119 at 8)**. By the following spring, however, Ms. Ryan became ill and "could not fully recover." **(#119 at 8)**. Over the next year, she was diagnosed with two fatal diseases: Multiple Myeloma (a blood cancer) and Light Chain Deposition/Cast Nephropathy. **(# 119 at 8)**. Mr. Ryan asserts that these diseases require the following complex three-phase treatment: (i) intensive chemotherapy; (ii) a bone marrow transplant; and (iii) a post-transplant recovery period of two years to rebuild the immune system. **(# 119 at 8)**. By April 2014, Ms. Ryan's condition had worsened and progressed to an advanced stage of Multiple Myeloma, causing 30% atrophy of her right kidney, a compromised immune system, and bone fractures. **(# 119 at 8)**.

Ms. Ryan contends that prison officials denied her adequate medical care from September 2013 until her release in October 2018. More specifically, she claims that despite the passing of the Affordable Health Care Act and the Inmate Catastrophic Medicaid Provision, Defendant CHP only allowed Ms. Ryan access to its own network of providers and repeatedly

---

[3] Mindful of Ms. Ryan's *pro se* status, the Court construes her pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

denied her requests for a bone marrow transplant.  (**# 119 at 9-10**).  She alleges that CHP never informed her that Medicaid was available and that she "fully qualified for [a] transplant."  (**# 119 at 10**).  During this time, Dr. Jennifer Mix was the "sole final authority over what medical care Ryan received or was denied."  (**# 119 at 13**).  Dr. Mix was aware of Ms. Ryan's medical diagnoses but "personally denied [the] life essential transplant and appeals five times."  (**# 119 at 13**).

At all relevant times, Nurse Practitioner Hilary Victoroff was Ms. Ryan's CDOC assigned provider.  (**# 119 at 14-15**).   In late January 2017, Ms. Ryan was admitted to the Aurora South Hospital to undergo chemotherapy treatment.  Upon completion of this treatment, Ms. Ryan was taken back to the prison where Nurse Victoroff allegedly failed to monitor her condition.  The following day, Ms. Ryan fell unconscious and was found unresponsive in her cell.  (**# 119 at 15-16**).  Ms. Ryan spent the next 10 days in the hospital with neutropenic fever and a staph infection.  (**# 119 at 16**).

In June 2017, Ms. Ryan underwent a stem cell transplant, completing the second phase of the treatment plan.  (**# 119 at 10-11**).  However, CHP continued to deny Mr. Ryan "all ongoing medical care" including post-transplant treatment and hospitalizations.  (**# 119 at 10**).

Then, in July 2017, Ms. Ryan began to experience vision loss due to cataracts.  (**# 119 at 19**).  In October 2017, Nurse Practitioner Laura Sommerschield scheduled an optometry exam for Ms. Ryan.  Ms. Ryan asserts that the optometrist consulted with a surgeon who recommended "immediate next" eye surgery.  (**# 119 at 19-20**).  However, Ms. Ryan alleges that Nurse Sommerschield did not order the eye surgery until April 2018.  Apparently, providers at Denver Health intervened on Ms. Ryan's behalf, and on December 17, 2018, Ms. Ryan underwent surgery on her left eye.  Unfortunately, that surgery was unsuccessful, and another surgery was

3

recommended. Again, Nurse Sommerschield scheduled the surgery for the latest possible date in January 2018. **(# 119 at 21)**. Ms. Ryan then underwent two eye surgeries on both January 2, 2018 and January 11, 2018.

As a result of the various Defendants' denial of care for several years and Ms. Ryan's prolonged exposure to high doses of chemotherapy, Ms. Ryan suffered severe physical complications including: (i) heart damage; (ii) pulmonary hypertension; (iii) chronic renal insufficiency and anemia with atrophy of both kidneys; (iv) eye damage including vision loss; (v) acute pancreatitis; (vi) deep vein thrombosis; and (vii) severe neuropathy. **(# 119 at 10)**.

Construed liberally in Ms. Ryan's favor, her Fourth Amended Complaint asserts seven claims, four of which are brought under 42 U.S.C. § 1983: (i) a claim that CHP violated Ms. Ryan's Eighth Amendment right to be free from cruel and unusual punishment by denying her essential medical care; (ii) a claim that Dr. Mix was deliberately indifferent to her serious medical needs in violation of the Eight Amendment; (iii) a claim that Nurse Victoroff was deliberately indifferent to her serious medical needs in violation of the Eight Amendment; and (iv) a claim that Nurse Sommerschield was deliberately indifferent to her serious medical needs in violation of the Eight Amendment. Ms. Ryan also asserts a claim of negligence, presumably under state law, against CHP. Finally, Ms. Ryan asserts two additional claims against Nurse Victoroff for the alleged mishandling of Ms. Ryan's medical records in violation of state law ("Claims Five and Six"). **(# 119)**.

Ms. Ryan is a prolific filer of motions, and she has repeatedly requested to amend her pleadings, two of which requests are pending before the Court **(#133 and #142)**. Additionally, Ms. Ryan has filed a number of pleadings related to her belief that defense counsel, as part of the discovery process, has improperly obtained her medical records from the CDOC **(# 147**

**(motion), # 148 and # 153 (supplements to motion))** (requesting the Court bifurcate and stay the two claims asserted against Nurse Victoroff related to her medical records pending the outcome of a separate "investigation"). The Court addresses each of the pending motions in turn.

## MOTIONS

### A. Motions to Amend

Fed. R. Civ. P. 15(a) (2) provides that leave to amend a pleading should be "freely give[n] when justice so requires." Rule 15(d) permits the Court, "on just terms," to allow a party to file a supplemental pleading that "set[s] out any transaction, occurrence or event that happened after the date of the pleading to be supplemented." Although leave under Rule 15 should be freely granted, the Court may deny such requests where the proposed amendment or supplementation is the result of undue delay, bad faith, a dilatory motive, where it would cause prejudice to the opposing party if granted, or where previous efforts to amend failed to cure deficiencies. *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018). Moreover, motions to amend are also governed by D.C. Colo. L. Civ. R. 15.1(b), which requires that any motion seeking lead to amend shall attach a copy of the proposed amended pleading. Although Ms. Ryan proceeds *pro se*, she is obligated to follow the rules of the Court to the same extent as any represented litigant. *U.S. v. Griffith*, 928 F.3d 855, 864 n. 1 (10th Cir. 2019).

Ms. Ryan's motions seeking to amend or supplement her pleadings are set forth and disposed of as follows:

**Docket # 133**: A motion requesting leave to file an amended complaint, purportedly to add or "join" additional claims arising under Colorado law "governing negligence" against CHP,

5

Dr. Mix, Nurse Victoroff, and Nurse Sommerschield. No proposed document is attached. This motion is denied for failure to comply with Local Rule 15.1.

**Docket # 142**: In this motion, Ms. Ryan seeks leave to file an amended complaint to assert a claim for punitive damages against both CHP and Dr. Mix. The proposed pleading entitled Prisoner Complaint (Fifth Amended) proposes: (i) changing Ms. Ryan's address to her (presumably) current mailing address; (ii) adding that Dr. Mix "in her status as CMO, is the only final signature and final approving authority M.D. of record, for all medical care in question on behalf of Shawnee Ryan; and (iii) adding the request for punitive damages to Claims One (state law negligence claim asserted against CHP), Two (federal claim of cruel and unusual punishment in violation of the Eighth Amendment asserted against CHP), and Three (federal claim of deliberate indifference in violation of the Eighth Amendment asserted against Dr. Mix) along with clarifying the other categories of damages sought for the remaining claims. (**# 142-2**). In response, the Defendants argue that the limited discovery does not provide a basis for asserting a punitive damages claim.

The Court grants Ms. Ryan's motion to amend, in part. The proposed amended pleading does not add new parties or new factual allegations; it merely updates Ms. Ryan's address and Dr. Mix's description as a Defendant and clarifies the categories of damages sought for each claim. At this point in the litigation, there will be little prejudice to the parties or the efficient functioning of the judicial system to allow Ms. Ryan to include these updates, however as to these changes, there little need for extensive time for the Defendants to respond.

As to Ms. Ryan's claims brought under 42 U.S.C. § 1983, the Court notes that punitive damages are available when the "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of

others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Thus, because Ms. Ryan may properly seek punitive damages in her Complaint as to any of her claims brought under 42 U.S.C. § 1983, there would be no prejudice or undue delay in allowing this amendment to her Complaint.[4]

The Court now turns to Ms. Ryan's request to add a claim for punitive or exemplary damages to her state law negligence claim asserted against CHP. Colorado law anticipates that the discovery process, not the initial Complaint, will reveal the required *prima facie* evidence to support a claim for exemplary damages. Colo. Rev. Stat. § 13–21–102(1.5)(a). The statute prohibits the pleading of any claim for exemplary damages in "any initial claim for relief." § 13–21–102(1.5)(a). Rather, following the exchange of Rule 26 initial disclosures, a plaintiff may seek to amend her Complaint to add a claim for exemplary damages by proffering evidence that shows "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Stamp. v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007). Thus, here, Ms. Ryan must set forth *prima facie* proof that CHP acted with "malice or willful and wanton conduct." § 13–21–102(1)(a). Willful and wanton conduct is defined as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others." § 13-21-102(1)(b).

In support of her motion, Ms. Ryan states that she is awaiting responses to interrogatories from CHP with respect to how it handled medical decisions related to her care that she believes will support her exemplary damages claim. **(# 142 at 2)**. She further attaches to her motion voluminous medical records that purportedly show the physical damages she suffered as a result of CHP's willful decisions to deny her medical treatment. Without expert opinion, the medical

---

[4] The Court emphasizes that this Opinion does not evaluate or address the merits of awarding punitive damages in this case, but is limited to the recognition that the issue of punitive damages may be properly included in the pleadings at this point.

records offer little that is pertinent to knowledge and intent, and Ms. Ryan's otherwise offers only her speculation about what future discovery might reveal. This is not sufficient to show that CHP acted willfully and wantonly.

Thus, the Court denies Ms. Ryan's motion without prejudice with leave to refile should she obtain evidence during discovery that would support her claim for exemplary damages by setting forth *prima facie* proof that CHP acted willfully or wantonly. Accordingly, the Court grants Ms. Ryan's motion to amend and treats Docket # 142-2 as the operative Fifth Amended Complaint, but dismisses that portion of that pleading that asserts a punitive or exemplary damages claim as to Claim One asserted against Defendant CHP.

### B. Motion to Bifurcate Claims Five and Six (# 147)

Ms. Ryan moves the Court to bifurcate Claims Five and Six in order to "end the disruption" to her other asserted claims. She also requests that the Court stay any resolution related to Claims Five and Six "pending an investigation of the evidence associated with both Claims." **(# 147 and #148)**. The Defendants oppose this request, arguing that it would cause unnecessary multiplication of proceedings and is just a frivolous exercise designed to keep CHP's and CDOC's counsel from accessing Ms. Ryan's medical records.

As best the Court can understand, Ms. Ryan believes that she should be permitted to access her medical records directly from the CDOC and not through its counsel. Ms. Ryan appears to take issue with the fact that CDOC's counsel obtained "two boxes" of her medical records from the CDOC rather than have Ms. Ryan subpoena those CDOC records directly. Further, it appears that Ms. Ryan believes those records are either incomplete or contain erroneous information. It is not clear whether Ms. Ryan is claiming Nurse Victoroff mishandled those records or that they were obtained in some other improper manner. Given the lack of

8

clarity in the factual allegations pertinent to Claims Five and Six[5], the Court denies the motion to bifurcate without prejudice. It is unclear what claim(s) or defenses will ultimately be tried (if any), what evidence supports them, or what remedies are being sought. Should the case move through the dispositive motions phase, upon completion of a detailed Pretrial Order and a Pretrial Conference, the Court may be in a better position to consider Ms. Ryan's motion to bifurcate or to otherwise determine how trial in this matter shall proceed.[6]

## CONCLUSION

For the foregoing reasons, Ms. Ryan's motions at Docket # 133 and #147 are **DENIED**. Ms. Ryan's Motion to Amend **(# 142)** is **GRANTED IN PART** and **DENIED IN PART**, insofar as the Court deems Docket # 142-2 to be the operative Fifth Amended Complaint in this matter, although the claim for punitive or exemplary damages asserted against Defendant CHP as to Claim One in that pleading is **DISMISSED**. The Defendants shall have 14 days to file any new responsive pleading. The Clerk of the Court shall modify Ms. Ryan's address of record as set forth on page 2 of Docket # 142-2.

Dated this 12th day of November, 2019.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge

---

[5] The Court expresses no opinion as to whether Claims Five and Six are colorable.
[6] Should Ms. Ryan need assistance litigating this case, she is invited to access the Federal Pro Se Clinic located in the Alfred A. Arraj United States Courthouse.