IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.   18 – cv – 00956 – MSK-MEH

**SHAWNEE RYAN, Plaintiff**

V.

**Defendants:**
**CORRECTIONAL HEALTH PARTNERS (et al) (dba Correctional Health Partners, Inc.; Physician Health Partners, Inc.)**

**DR. JENNIFER MIX, M.D.  (personal and professional capacity)**
**HILARY VICTOROFF N.P.  (personal and professional capacity)**

---

**PLAINTIFF'S REPLY TO STATE RESPONSE TO MOTION FOR SUMMARY JUDGEMENT (with) DUAL MOTION TO BIFURCATE THE REMAINING STATE CLIENT (VICTOROFF) AND SET CLAIM 4 FOR TRIAL**

---

**Plaintiff Shawnee Ryan submits the following reply to Defendant Victotroff's Response to Motion for Summary Judgement at ECF211.**

**Plaintiff simultaneously dual files the following:  She advises the** Court that her Oncology regimen changes after the first of the year for either a return to chemotherapy in prep for transplant (and/or) transplant dates being set.  **With the simultaneous release from parole that currently pends CDOC processing;** Plaintiff will be making the determination on whether or not to have transplant done at University of Washington Seattle (Fred Hutchinson Cancer Center) or here in Colorado.

**Regardless, the Court is already aware** of how long the transplant process is and that Plaintiff will be medically indisposed for 5 to 6 months including recovery. It will take at least another 60 days (or longer) before procedure set.  Which gives enough time, if the Court needs more information regarding the State's allegations; for a one day trial, to stand alone, and set as immediate as docket possible for Defendant Victoroff.  Leaving only CHP Defendant Group remaining; for what will be no less than 10 day trial set (*ECF132 has two weeks set aside, but that was with State defendants included*).  It will take at least another 6 months to

1

clear a docket for trial (and) prepare for the larger trial and CHP Group. Which should accommodate transplant and/or prep chemo needs.

**With this advisement of health change, Plaintiff respectfully** requests that the Court review her reply today **and should the Court believe Attorney Colony and Defendant Victoroff that there is relevant need**. **That there is anything at all that could possibly discredit the evidence already given by Plaintiff and her percipient physicians and entities already given; then please bifurcate and set for forthwith trial**.

<u>Attorney Colony has disclosed no expert reports to rebut</u> and has only brought forward what amounts to a witness list. Fact-based is closed and over now since November 1, 2019. *State's "summary judgement" pleadings <u>are already given at length in their response;</u> setting aside the ongoing efforts to turn Claim 4 into the same level of defense need as the CHP Group; there is simply zero ability to turn the Claim into anything more than what it is*. It is a long stretch to believe there could be anything further added to this very simplistic claim.

**Additionally, the Magistrate Court has firmly stood on *not* enforcing** its State containment orders of October 7th nor its orders/directives (*most recent being State's ECF178, and the uphold at ECF182, and no response to objections ECF166*).

Which combined with the dismissal of Defendant Laura Sommerschield (Claim #7) and the removing of the civil liability aspects of Claims 5 and 6 (Victoroff) created the logistical effect of permanently ending **the case struggles** over Attorney Colony's gathering of CDOC records. All that remains of that struggle is to now either prevent/bar from use any improperly gained physical evidence previously claimed as 'non-existent' by Attorney Colony (ECF 178) that has apparently, if we are to believe the State now, magically appeared for the sole use of Defendant Victoroff (or) allow the exceptionally unlevel field the AG has effectively created by her path of CDOC discovery to date to end up in judgement against Plaintiff.

<u>Plaintiff Pleads:</u>  **The only ability to resolve to level field and fairness is trial by jury; which both Plaintiff and State have on record. Plaintiff reinstates her respectful demand for jury trial should there be any doubt in the Senior Court's mind that Plaintiff's summary and claim is not triable and/or is as false as Attorney Colony and her client profess it to be.**

**PLAINTIFF REPLIES NOW, AS FOLLOWS:**

The following statements of information and fact are given and meant to be reviewed as overall response.

**RELEVANT STATEMENTS OF INFORMATION AND FACT**

1. **The claim against Defendant Victoroff is a total of <u>4 days</u>.  From February 3, 2017 through February 7, 2017.  It is a progressive event.** It becomes, in light of the progressive timeline; ultimately utterly irrelevant that Plaintiff was ordered to not be monitored; ultimately utterly irrelevant that was not sent to infirmary; ultimately utterly irrelevant 'where' she contracted Influenza A; ultimately irrelevant as to "who" said what; "why" it took 4 days.   <u>**We are trying the fact** that the Plaintiff **did contract**, as rapidly as within 4 days, all of the above.  **We are trying the fact** that hard fact evidence verifies that she came very close to death.  **We are trying the fact** that every moment of actual care help to her was done by a licensed MD at the DRDC Infirmary and by staff in a hospital once readmitted for emergency care.</u>

2. *<u>**The undeniable fact remains**</u> that Plaintiff has, and will lifelong have, an extremely fragile immune system and health that requires complex support care (or) when an everyday occurrence (such as a 'bite' to a finger by a 'spider' or a 'dragon' or an 'inmate attack' or any other implied fabrication by defense) happens: her body will react with very rapid declines and do so much more rapidly than a normal health person's body would.  **<u>We are trying the fact that Hilary Victoroff knew that prior to February 3, 2017.</u>**  That undeniable fact has been verified by medical provided evidence from source other than Plaintiff; and combines with undeniable medical fact evidence that Plaintiff <u>was released in stable condition</u> on February 3, 2017 <u>into the hands of a Defendant who should have known, **since she accepted that responsibility**,</u> that rapid crisis was highly likely after the seriousness of DTPACE.  The issue is that by the night of February 7th, 2017 <u>**the patient that Defendant had accepted responsibility for**</u> had to be readmitted with Sepsis of the blood (not a simple "staph" infection), Influenza A, deep and critical levels of neutropenia and pancyptopenia. She had to be given multiple bags of whole blood and platelets in order to get to the bare*

110     *minimum of stability in order to be treated.  She was listed in progressive,*
111     *tenuous care.*

113   3. **The only two remaining as <u>foundation facts</u> of Claim #4 are:** 1.  That Defendant Hilary Victoroff was entrusted by the releasing entities (medical records given, already verified doubling up by those entities and physically calling in the discharge instructions to DWCF Clinic prior to releasing Plaintiff on February 3, 2017) to provide adequate care to their patient prior to releasing her.   2: That by the night of February 7, 2017 that patient had become critically ill. *("Adequate medical care defined (in DeCologero)") Fernandez v US, 941 F2d 1488, 1493 (11th Cir 1991); accord, US v DeCologero), 821 F. 2d 39, 43 (1st Cir 1987); Tillery v Owens, 719 F. Supp. 1256, 1305 (W.D. Pa 1989), aff'd, 907 F. 2d 418 (3rd Cir 1990); Howard v City of Columbus, 239 Ga. App.399, 405-06, 521 S.E. 2d 51 (1999); Barret v Coplan, 292 F. Supp. 2d 281, 285 (D.N.. 2003): "…requires treatment by <u>qualified medical personnel</u> who provide services that are of a <u>quality acceptable when measured by prudent professional standard in the community</u>, tailored to an inmate's particular needs, and <u>that are based on medical considerations</u>…"*

130   4. **Dr. John Burke M.D. (and) all other physicians including Dr. Yegappan/DRDC Infirmary on the night of the 7th of February** have their relevant facts and statements **already listed** in the medical evidence provided by Plaintiff.   Attorney Colony's alleged expert[1] in formerly discharged CMO Susan Tiona, who was not employed at the time of the event, now attempted to being brought in to discuss her involvement years ago and prior to her discharge; in crafting "Clinical Standards and Practices",[2] when combined with the State's attempt to imply need to validate medical records by bringing forward Dr. Burke and all other physicians to state in person what they already have stated to record in written orders; is unnecessary delay, is disruptive to process and resources and utterly self-serving with nothing within that bears any relevance whatsoever to the limited scope in front of the Court in Claim 4.  These

---

[1] State has produced nothing more than an intended witness list and not even percipient witnesses at that. State has not provided any expert reports to examine or rebut nor has State deposed anyone other than the Plaintiff.

[2] Which is evidence refused by Attorney Colony to be gathered within Plaintiff's SDT and repeatedly stated as 'non-existent'. (ECF178). Which Plaintiff will remain challenging as even being able to be referenced due to the procedural taint recorded to record regarding all of Plaintiff's CDOC records.

4

individuals are highly reputable members of the outside medical community who gave solid and credible orders that they expected to be followed (and) did so in credible format of medical records from Aurora South Hospital.  The Victoroff lab of February 6, 2017 is analyzed by the highly reputable blood lab of LabCorp. To haul these people in, for a one day trial, to answer <u>relevant to the claim</u> questions and **<u>give their strong opinions as to the merits of Defendant's decision making process is nothing more from Attorney Colony other than grandstanding and an attempt to delay.</u>**

5.   Attorney Colony has long expressed in this case that she is determined to bring forward the Plaintiff's Multiple Myeloma diagnosis as the "cause" of Plaintiff becoming ill during these 4 days.  Her intent to "extensively" examine Dr. Burke as to that theory <u>and combine that examination to include his entire treatment, spanning over six years of Plaintiff</u>.  To which, Plaintiff has repeatedly held down as utterly lacking in relevancy to the State's scope in Claim 4 and only being relevant to the CHP Group. **<u>We are trying</u> Influenza A, Sepsis of the blood, deep and critical pancyptopenia and neutropenia.  <u>We are not trying</u> Multiple Myeloma or any other aspect of the Plaintiff's health.  <u>We are trying</u> the question of whether or not Hilary Victoroff made competent, adequate care decisions in her capacity from February 3, 2017 through February 7, 2017 *<u>as she represented herself to be to all physicians she was entrusted by.</u>*** ("Medical personnel who undertake to treat specialized problems are held to the standard of care applicable to those specialties even if they do not claim specialized expertise" (and) "obliged to exercise the same standard of care while working in a prison as a hospital…" *(District of Colorado v Mitchell* 533 A.2.d 629, 648 (D.C. 1957); *Moss v Miller* 254 III App 3.d 174.) AND (Discussing risk of inherent harm): *Farmer v Brennan* 511 US 825, 836 114 S. Ct 1970(1994**) (and)** *Helling v McKinney* 509 US 25, 33, 113 S. Ct 2475 (1993): "…a remedy need not await a tragic event…" **(AND)** (Discussing under the Eighth Amendment; a prison official may not act with deliberate indifference to a substantial risk of serious harm to an inmate): *McGill v Correctional Healthcare Companies 13cv01080-RBJ-BNB (10TH Cir)..*"Two conditions must be met in order to show deliberate indifference:

first the deprivation must be "sufficiently serious" under an objective standard; second, the prison official must have had subjective knowledge of the risk of harm."  *See Howard v Waide, 534 F.3.d 1227, 1236 (10th Cir. 2008) (citing Farmer, 511 US at 834* **(AND) "Where the Court does not have to accept…staff's statements that "they did not know" a serious need if there is evidence either direct or indirect to the contrary…"** *Vaughn v*

6.   **Every single time Attorney Colony cites Plaintiff 'not having proof', "lay-person interpreting", with regard to "not having proof" of:** policies and practices of the CDOC, *complete* narratives from CDOC staff, duty logs, security and transport logs:  **Attorney Colony is solely responsible, rather than the Plaintiff, for any and all lack of CDOC records.**  Plaintiff exhausted every means to obtain her CDOC records in complete form and was/remains obstructed at every turn.  Any bringing in now, by the State, of 'previously missing' CDOC records will remain being challenged by Plaintiff as being in violation of the rules and ethics of discovery.

7.   **Where Defendant Victoroff's decision making does come into relevance,** with regard to not following discharge instructions and alleged as "suggestions" from far superior trained specialists and licensed medical physicians *is in the progression of timeline of this claim from the moment Defendant Victoroff left for time off on February 3, 2017 through (according to the provided timecard) her all day on February 7th, 2017 waiting to act on a critical blood lab drawn over 28 hours earlier.*  Those decisions were the decisions of a <u>registered nurse</u> who <u>assumed</u> the same caliber of training, posture and competency as every physician who had ordered otherwise and who had provided adequate orders that were meant to be followed; not overridden.  As proven by the immediate spring into action by Dr. Yegappan at the DRDC Infirmary on the night of February 7th, 2017.  **We are trying what happened as the <u>end result</u>.  To get there, all the decisions in-between are the stepping stones to the Truth rather than a defense to be relied upon. <u>At any time during these four days, Hilary Victoroff could have stopped herself and acted on a safe mechanism.</u>**  (C.R.S. 12-38-11.5 (6) "…shall practice in accordance with standards… have and use a safe mechanism for consultation or collaboration with a physician…") to remove her patient from the zone of danger.  She did not.

6

8. **And in fact, Plaintiff was never once physically examined during this time by Defendant.**

9. There is no doubt whatsoever, according to medical evidence provided already, that Plaintiff was put into serious risk. Plaintiff has not speculated, nor created theory. Plaintiff has provided factual data and timeline, based on solid medical fact records.

10. **As to the level of suffering on both levels (mental/emotional during the span and physical pain suffered) Plaintiff leaves the facts as she has stated; which were/are specific only to this event.** This event is now going on three years since being inflicted upon Plaintiff. Distress remains palpable in reliving it. Especially in light of the path of Hilary Victoroff to date in this case.[3] Should the State continue to discredit suffering during and in recovery from Claim 4 ; it is for a jury to decide at a trial as to whether they believe Plaintiff endured specific to this event distress and physical suffering.

11. **There is no genuine issue being raised by the State hat detracts from Plaintiff being granted summary judgement now.** influenza A screen, scientific blood labs, transfusions, classifications of hospital care are the triable foundations of what happened as a result of Defendant's care for four days. Or the lack of. It was Dr. Yegappan who made the medical decision to call for specialized aid; Hilary Victoroff did not call a single soul. It was the security duty roster in Unit 3 A Pod who made the call as Plaintiff not responding and needing clinic removal. It was C.O. transporter Tafoya and Master Control who stood up and asked relevant **questions concerning**

---

[3] Plaintiff is allowed under non-economic compensatory damages within deliberate indifference/negligence/medical malpractice albeit with a CAP of amount not to exceed $300,000 for non-ongoing; emotional distress and physical pain. It may very well be a jury will need to determine whether we fall into indifference, malpractice, negligence. To establish prima facie and represent she has a triable issue; Plaintiff must only bring forward to the extent she has. It is up to the Senior Court to decide whether to allow resources to go forward to trial (or) resolve now; it is not up to Attorney Colony and the State AG. The State is inaccurate in attempting to put same remedy into a "punitive" damages light. Further, this case and Plaintiff have a long trail on file that reveals strong deficiencies in Plaintiff being able to access her CDOC life for six years. Whether liked by anyone or not; that reality drives many factors in this case and the State should not be allowed by the Court to hold against the Plaintiff her inability specifically refer to records that she has first-hand knowledge as existing. Additionally, the Court holds power, should it see extremity, albeit rarely given, to impose monetary punishment as compensatory within a structure such as Plaintiff is stating in Claim #4.

Hilary Victoroff's order.  It is Dr. John Burke who had been the standing on-call for literally years prior to this event *who was not called by Hilary Victoroff.*  The evidence and the law is clear that Hilary Victoroff is a registered nurse who placed herself into the position of acting in the same capacity as the highly trained physicians and specialists above her **and who were assigned and selected (for many years prior) by the CDOC** as the primary authorities for Plaintiff's specialized health needs.

12. Pursuant to Rule 56 C FRCP, the Court has discretion to grant summary judgement based upon the pleadings, the evidence and admissions within that show "there is no genuine issue" to *not* grant.  Contrary to Attorney Colony's posturing in her response, there are no "vague and confusing" "references to attached medical records".  These are records of hard, scientific, medical fact given by highly reputable and credible sources.  There are no "lay-person" interpretations nor were they crafted by Plaintiff.  Example:  exactly…how does one interpret whole blood and platelet transfusions, positive drawn out of a human body, Sepsis/MRSA positive screens, pancyptopenia and neutropenia….as a "lay-person" and in any other way other than what the hospital has stated?? Exactly, 'what' is the "different story" Defendant Victoroff has with regard to actual evidence?  These records (attached again)[4] are unequivocal fact for an event that has no ability within it to interpret other than for what the diagnoses and treatment ended up being.  **Evidence sufficient to defeat a motion for summary judgement must be based on more than mere speculation, conjecture or surmise.  There is no ability whatsoever to pace a "different interpretation" on the medical fact records and the steady timeline revealed within those records that all this occurred within the four days Hilary Victoroff was in charge.**

---

[4] Also re-attaching "pages 34 and 35" which are State Bates coded as being the surrounding documents to the "buried" Feb 6, 2017 lab copy provided by the State in "the boxes". And again providing the direct from LabCorp pulled clear copy of the same lab for the ease of the court and/or jury in reviewing it.

8

**In summary:**

**Plaintiff pleads that the Court grant Motion for Summary Judgement as pled and subsequently reinforced.**

**Should the Court determine there is viable worth to bring forward testifying percipient witnesses of the Plaintiff; Plaintiff asks that the Court forthwith bifurcate the State and set forthwith for one-day trial.**

**Respectfully submitted this 31st day of December, 2019.**


S/Shawnee Ryan
11309 West Exposition Drive
Lakewood, Colorado 80226
720-431-8319
shawneeryan216@gmail.com

**CERTIFICATE OF SERVICE**
I have served a complete and full copy of the foregoing via CMECF to the parties below on this 31st day of December 2019.


S/Shawnee Ryan
11309 West Exposition Drive
Lakewood, Colorado 80226
720-431-8319
shawneeryan216@gmail.com

Clerk of Court:  cod_cmecf@cod.uscourts.gov


Andrew David Ringel:  ringela@hallevans.com
Edmund Martin Kennedy:  kennedye@hallevans.com
cmecf@hallevans.com
WalkerR@hallevans.com


Amy Colony:  acolony@coag.gov
latasha.carter@coag.gov
denise.munger@coag.gov