IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00956-MSK-MEH

SHAWNEE RYAN,

     Plaintiff,

v.

CORRECTIONAL HEALTH PARTNERS
DR. JENNIFER MIX, M.D. (personal and professional capacity),
HILARY VICTOROFF N.P. (personal and professional capacity), and
LAURA SOMMERSCHIELD N.P. (personal and professional capacity);

     Defendants.

_____

## MOTION FOR SUMMARY JUDGMENT
## FROM CHP DEFENDANTS
_____

     Defendant Correctional Health Partners ("CHP") and Dr. Jennifer Mix, ("Dr. Mix"),

by and through their counsel, Andrew D. Ringel, Esq., and Edmund M. Kennedy, Esq., of

Hall & Evans, L.L.C., hereby respectfully submit this Motion for Summary Judgment, as

follows:

## INTRODUCTION

     Plaintiff Shawnee Ryan attempts a single claim against Dr. Mix for alleged

deliberate indifference to her serious medical needs in violation of the Eighth Amendment

pursuant to 42 U.S.C. § 1983. [*See* ECF No. 184 at 12-13] and two claims against

Correctional Health Partners ("CHP") for (1) negligence and (2) cruel and unusual

Punishment in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983. [*Id.* at 7-12].

Dr. Mix works for CHP, who contracts with the Colorado Department of Corrections ("CDOC") to review and approve or reject requests made by CDOC healthcare providers for outside medical care for CDOC inmates. CHP is an administrator and does not provide any direct medical care for any CDOC inmates including Plaintiff. Here, Plaintiff challenges a decision made by Dr. Mix, as a Medical Director of CHP, to deny a request for a stem cell transplant in relation to her cancer treatment. Based on Dr. Mix's extremely limited role, she cannot be held liable for any violation of Plaintiff's Eighth Amendment rights as a matter of law based on the undisputed facts contained in the summary judgment record before this Court.

Dr. Mix is entitled to summary judgment on Plaintiff's claim for two reasons. First, Plaintiff's claim against her is insufficient because Plaintiff cannot establish any action or omission of Dr. Mix caused Plaintiff's claimed violation of her constitutional rights related to the medical treatment provided. Second, even if the requisite causal link could be shown, Plaintiff also cannot advance evidence of any subjective intent by Dr. Mix for any cognizable Eighth Amendment claim against her.

Similarly, CHP is entitled to summary judgment on Plaintiff's Eighth Amendment and negligence claims for four reasons. First, as with Dr. Mix, Plaintiff's constitutional claim against CHP is insufficient because Plaintiff cannot establish any action or omission of CHP caused Plaintiff's claimed violation of her constitutional rights related to the medical treatment provided. Second, also similar to Dr. Mix, even if the requisite causal link could be shown, Plaintiff also cannot advance evidence of any subjective intent by

anyone associated with CHP necessary for any cognizable claim against CHP.  Third, the decisions made by a CHP Medical Director do not constitute a custom, policy or practice of CHP, which is needed to establish entity liability on the part of CHP for any constitutional claim.  Fourth, based on the evidence in the summary judgment record, Plaintiff's state tort claim for negligence fails as a matter of law based on the corporate practice of medicine doctrine, the lack of any evidence to establish negligence, and Plaintiff's failure to present any expert to opine about the applicable standard of care and its violation or that any alleged negligence caused Plaintiff any injury.  Finally, Plaintiff's assertion that Medicaid should have somehow been involved in the decision whether to authorize her stem cell transplant treatment is inapposite and fails to provide any basis for any cognizable claim.

## ARGUMENT

Initially, for purposes of summary judgment CHP and Dr. Mix assume *arguendo* Plaintiff's medical condition and treatment satisfied the objective component of Plaintiff's Eighth Amendment claim against them.

## A.   PLAINTIFF CANNOT ESTABLISH ANY ACTION OR OMISSION OF DR. MIX CAUSED HER ANY CONSTITUTIONAL INJURY (CLAIMS 2 AND 3)

1.   <u>Burden of proof and elements:</u>  Plaintiff bears the burden of proof at trial by a preponderance of the evidence on her 42 U.S.C. § 1983 claim.  ***Mares v. ConAgra Poultry Co., Inc.***, 971 F.2d 492, 494 (10th Cir. 1992).  Plaintiff's constitutional claim against Dr. Mix, and CHP, is insufficient on summary judgment because Plaintiff cannot establish any action or omission by Dr. Mix caused Plaintiff's claimed constitutional violation.

The plain wording of 42 U.S.C. § 1983 contains a causation requirement.  Thus, "a defendant may not be held liable unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation."  *McDonald v. Wise,* 769 F.3d 1202, 1215 (10th Cir. 2014) (quoting *Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 518 (10th Cir. 1998)).  "Like a tort plaintiff, a § 1983 plaintiff must establish both causation in fact and proximate causation." *James v. Chavez,* 511 F. App'x 742, 750 (10th Cir. 2013) (quoting *Lamont v. New Jersey,* 637 F.3d 177, 185 (3d Cir. 2011)).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988).  Proximate cause does not exist if another act intervened and superseded between a defendant's act or omission and the plaintiff's injury.  *Bliss v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 2006).

In the context of Eighth Amendment deliberate indifference claim, an inmate must establish legal causation by showing the particular defendant at issue (1) knew the inmate faced a substantial risk of harm, and (2) disregarded that risk by failing to take reasonable measures to abate it.  *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009).  The Tenth Circuit rejected the argument deliberate indifference does not require any connection between the subjective disregard of a risk of serious harm and the objective harm actually claimed.  *See id.* at 1089 n.8; *Daniels v. Gilbreath*, 668 F.2d 477, 488-89 (10th Cir. 1982).  Even an obvious risk cannot establish an inference the defendant knew subjectively of the substantial risk of harm, because the defendant can show the obviousness escaped him or her.  *Martinez*, 563 F.3d at 1089. In the end, "large leap or

4

short hop," a plaintiff must prove legal causation. *Beers v. Ballard*, 248 F. App'x 988, 991 (10th Cir. 2007).

    2.    <u>Element that cannot be proven by Plaintiff:</u>

Here, the evidence in the summary judgment record simply does not establish the requisite legal causation to allow Plaintiff's claim against Dr. Mix, and CHP to survive. The CHP Provider Manual governing the process of obtaining medical referrals dictates the following: (1) Medical Directors (claims adjudicators) in Dr. Mix's position make the initial determination as to whether a requested medical treatment was approved or denied; (2) if the provider disagreed, the provider had to submit any additional and pertinent clinical information for a Level 1 Appeal, which would be reviewed by a different Medical Director to ensure independence; and (3) if that appeal was denied, the provider was entitled to a Level 2 Appeal to CDOC Chief Medical Officer, who makes the final and binding decision after reviewing all information pertinent to the Level 2 Appeal.

Despite the provision of multiple layers of review and internal controls to providers treating CDOC inmates like Plaintiff, there is no evidence Plaintiff's health care providers with CDOC utilized either the Level 2 Appeal or even the Level 1 Appeal processes. Dr. Mix merely made an interim decision that was fully appealable by Plaintiff's treating healthcare providers. Accordingly, the failure of Plaintiff's medical providers to appeal the initial denial is, at least, an intervening cause, if not a superseding cause, either of which are sufficient to sever the causal chain, meaning the requisite causal link is entirely absent from the evidence and no reasonable jury could find otherwise as a matter of law.

3.     Relevant Facts:

A.     CHP contracts with CDOC to review and provide prior authorization for medical care to be provided to CDOC inmates outside of the internal CDOC medical system. [*See* Declaration of Kellie Wasko, ¶ 4, **Exh. A-1**; *see also* CHP's CDOC Provider Manual, at CHP 0413. 445-456, attached hereto as **Exh. A-4**].

B.     CHP is a medical services organization, not a healthcare provider.  For CDOC, CHP does not provide any healthcare services.  Instead, CHP's responsibility pursuant to its contract with CDOC is to evaluate information sent to CHP to determine whether there is a medical necessity for a variety of requested referrals.  CHP reviews the specific medical information provided to CHP by CDOC treating physicians and other treating health care providers through a utilization review to determine the medical necessity and propriety of specific treatment requested by that treating physician or treating health care provider for a particular CDOC inmate.  [*See* Wasko Declaration, ¶¶ 4 & 5, **Exh. A-1**].

C.     In other words, CHP does not treat any CDOC inmates and does not make any medical diagnoses.  CHP's role is to respond to specific requests made by CDOC healthcare providers and make adjudications of those specific requests based on the clinical guidelines established by CDOC, the information provided by the treating physician or treating health care provider, and the knowledge and experience of CHP's reviewing medical professionals.  [*Id.* ¶ 5].

D.     Plaintiff had no encounters, interactions or communications with any employee of CHP. [*See* Deposition of Shawnee Ryan, p. 226, *ll.* 10-22; p. 229, *ll.* 9-16

(acknowledging no CHP employee, including Dr. Mix, ever treated her), **Exh. A-2**; *see also* Wasko Declaration, ¶ 5 (CHP does not treat any CDOC inmates), **Exh. A-1**].

E.      Plaintiff understands the CHP appeals process.  [*See* Ryan Dep. p. 201, *ll.* 21-25; p. 202, *ll.* 1-15; p. 203, *ll.* 1-8, 14-19; p. 204, *ll.* 7-11, **Exh. A-2**].

F.      Plaintiff further understands that CDOC is the final decision-maker for any request for an outside consult.  [*Id.* p. 203, *ll.* 1-8, 14-19; p. 204, *ll.* 7-11 ["CDOC is the ultimate authority"); *see also* Provider Manual, at CHP 0445-0456 (discussing appeals process), attached hereto as **Exh. A-4**].

G.      Plaintiff admits her medical providers never appealed the initial denial of any request, including the September 2016 request for stem cell transplant.  [*See* Ryan Dep. p. 221, *ll.* 9-25; p. 222, *ll.* 1-21; p. 223, *ll.* 8-18; p. 224, *ll.* 8-11; p. 225, *ll.* 11-25; p.226, *ll.* 1-9, **Exh. A-2** (discussing the fact that her treating providers discussed the denial with her and decided to try to achieve lower remissions prior to the transplant surgery, i.e. admitting her treating providers agreed with the denial)].

H.      As part of Dr. Mix's review of the requests for outside consult, based on the complex issues of Plaintiff's medical treatment, Dr. Mix consulted with Plaintiff's treating medical providers prior to denying the stem cell transplant requests.  [*See* Jennifer Mix, DO, Declaration, ¶ 5, **Exh. A-3**].

I.      It was agreed upon by all to try to achieve better remission prior to the transplant being conducted, as better remission provides for a greater chance the transplant would be a success.  [*Id.*].

J.      CHP's CDOC Provider Manual states if a provider does not agree with the decision rendered in CHP's process, the provider may utilize the appeal process as

described in the provider manual. [*See* Wasko Declaration; ¶ 8, **Exh. A-1;** *see also* Provider Manual, at CHP 0445-0456 (discussing appeals process), attached hereto as **Exh. A-4**].

K.      Any appeal should include any additional information the requesting provider believes would be pertinent to reviewing the denial. [*See* Wasko Declaration   ¶¶ 7 and 9, **Exh. A-1**].

L.      The first step in the CDOC medical necessity appeal process is for an inmate's provider, upon receipt of a denial, to submit additional and pertinent clinical information to CHP for a Level 1 Appeal. [*See id.*, ¶ 9].

M.      At this stage, a different CHP Medical Director than the Medical Director who was involved in the original denial would consider the appeal. [*See id.*, ¶ 10].

N.      This second Medical Director would review all additional and pertinent clinical information and render a final decision for CHP, and the provider would be notified the determination on the Level 1 Appeal. [*See id.*, ¶ 11].

O.      In the event the Level 1 Appeal is denied, the provider can file a Level 2 Appeal. [*See Id.*, ¶ 12].

P.      At that point, the Level 2 appeal is referred to CDOC's Chief Medical Officer, who makes the final and binding determination after reviewing all information pertinent to the Level 2 Appeal, including all materials previously submitted and any additional documentation from the Level 1 appeal. [*See id.*, ¶ 13].

Q.      CDOC retains all authority to make final and binding decisions regarding any and all interpretations of, or modifications to, Covered Services. [*See id.*, ¶ 14].

**B.    PLAINTIFF ALSO CANNOT ESTABLISH THE SUBJECTIVE COMPONENT FOR HIS EIGHTH AMENDMENT CLAIM AGAISNT DR. MIX AND CHP (CLAIMS 2 AND 3)**

1.    <u>Burden of proof and elements:</u>  Plaintiff bears the burden of proof at trial by a preponderance of the evidence on her 42 U.S.C. § 1983 claim.  *Mares*, 971 F.2d at 494. Accordingly, even if the requisite causal link could be shown, Plaintiff also cannot advance evidence of Dr. Mix's subjective intent sufficient to survive summary judgment.

Prison officials must ensure inmates receive the basic necessity of adequate medical care and must not be deliberately indifferent to an inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014). Generally, to prevail on a claim of constitutionally inadequate medical care, Plaintiff must satisfy a two-prong test: (1) objectively, the prisoner's medical condition must have been "sufficiently serious" to be cognizable under the Cruel and Unusual Punishment Clause; and (2) subjectively, the official or entity must have known of and disregarded an excessive risk to the inmate's health or safety. *Al-Turki*, 762 F.3d at 1192.   At bottom, the Eighth Amendment "does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   The Constitution does not mandate comfortable prisons — only deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to violate the Eighth Amendment.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

The Tenth Circuit recognizes three types of potential deliberate indifference in a prison medical case: (1) a medical professional failing to treat a serious medical condition; (2) a prison official preventing an inmate from receiving medical treatment; or (3) a prison

official denying a prisoner access to medical personnel capable of evaluating the inmate's condition.  *See **Sealock v. Colorado***, 218 F.3d 1205, 1211 (10th Cir. 2000).  Plaintiff's claim against Dr. Mix invokes the second type of conduct, so-called "gatekeeper" liability.

However, mere negligence can never be "deliberate indifference" under the subjective component of the Eighth Amendment, as deliberate indifference is equivalent to criminal recklessness in this context. ***Smith v. Cummings***, 445 F.3d 1254, 1258 (10th Cir. 2006); ***Hood v. Prisoner Health Servs.***, 180 F. App'x 21, 25 (10th Cir. 2006). Indeed, negligent treatment of a medical condition (or negligent prevention of treatment) is not a cognizable wrong under the Eighth Amendment, as alleged medical malpractice is not a constitutional violation just because the victim is a prisoner.  *See **Duffield v. Jackson***, 545 F.3d 1234, 1238 (10th Cir. 2008); ***Fitzgerald v. Corr. Corp. of Am.***, 403 F.3d 1134, 1143 (10th Cir. 2005); ***Tigert v. Higgins,*** 290 Fed. Appx. 93, 102 (10th Cir. 2008) ("To satisfy the subjective component, the prisoner must demonstrate that the prison official knew of and disregarded an excessive risk to inmate health and safety.  Deliberate indifference is a stringent standard of fault, requiring proof that an actor disregarded a known or obvious consequence of his or her action.  Mere negligence or inadvertence is insufficient to support a violation of the Eighth Amendment.  In this regard, an official's failure to alleviate a significant risk he or she should have perceived but did not, while no cause for commendation, cannot be condemned as infliction of punishment, as actual knowledge is required.").  *See also **Farmer***, 511 U.S. at 838; ***Barney v. Pulsipher***, 143 F.3d 1299, 1310 (10th Cir. 1998) ("It is not enough to establish that the official should have known of the risk of harm."). Finally, an Eighth Amendment claim relating to denial of medical care is actionable "only in cases where the need for additional treatment or

referral to a medical specialist is obvious." ***Self v. Crum***, 439 F.3d 1227, 1232 (10th Cir. 2006).

      2.   <u>Element that cannot be proven by Plaintiff:</u>

There simply is no evidence Dr. Mix knowingly disregarded risks to Plaintiff's health. Dr. Mix reviewed the information provided by Plaintiff's treating healthcare providers and, then, after the review, consulted with Plaintiff's treating medical provider to fully understand the circumstances surrounding the request.  Based on the consultation with Plaintiff's treating healthcare provider, it was determined Plaintiff should try to achieve better remission prior to conducting a transplant surgery.  Dr. Mix, based on the documentation and the consultation with Plaintiff's treating medical providers, denied the request based on the fact all treating providers agreed achieving better remission would improve the chance of success with the transplant.

Additionally, as set forth above, the entity with ultimate interpretive and approval authority over the claims management system by which Dr. Mix adjudicated requests for treatment was CDOC and not CHP.  Dr. Mix did not engage in the direct treatment of Plaintiff, but, rather, relied exclusively on the information and consultation provided to her by Plaintiff's CDOC healthcare providers to determine whether the request was medically necessary.  Plaintiff can point to no evidence on summary judgment indicating Dr. Mix's denial of her requested care was anything but the product of the sincere opinion, based on the documentation and consultation of Plaintiff's treating providers. ***Denison v. Corr. Health Ptrs.***, 2015 U.S. Dist. LEXIS 113874, at *9-10 (D. Colo. Aug. 26, 2015).[1]

---

[1] Pursuant to D.C.Colo.LCiv.R. 7.1(e), copies of all unpublished decisions are attached as **Exh. A-5** and provided to Plaintiff.

No evidence exists in the summary judgment record to establish Dr. Mix ignored the opinions of Plaintiff's treating providers in denying the transplant surgery.  On the basis of the information with which Dr. Mix was actually presented, Dr. Mix concluded the potential for success with the transplant surgery was greater if Plaintiff achieved better remission.  Additionally, as discussed above, the ultimate determination was for CDOC's Chief Medical Officer had Plaintiff's medical providers followed the process for appeals.

Finally, at best, Plaintiff has established a difference of medical opinion between herself and Dr. Mix as to whether moving forward with the surgery prior to achieving better remission was appropriate.  Unfortunately, the law is well-established that a difference of opinion as to the appropriate course of treatment is insufficient to support any conclusion Dr. Mix was deliberately indifferent.  *See, e.g., **Phillips v. Tiona,*** 508 Fed. Appx. 737, 746 (10th Cir. 2013) ("A mere difference of opinion between a prisoner and the prison's medical staff with respect to a diagnosis or a plan of treatment, or a mere medical difference of opinion, is not actionable under the Eighth Amendment."); ***Wells v. Krebs,*** 10-cv-00023-LTB-KMT, 2010 U.S. Dist. LEXIS 98132 at *27-28 (D. Colo. Sept. 1, 2010) ("Plaintiff bases his claim on a difference of medical opinion between Defendant Krebs and Defendant Stock as to the necessity of the ultrasound.  As held by the Tenth Circuit, an exercise of medical judgment as to the course of treatment, without a showing of deliberate refusal to provide medical attention, does not represent cruel and unusual punishment and is not actionable under the Eighth Amendment."); ***Rivera v. Dowis,*** 08-cv-02715-CMA-CBS, 2010 U.S. Dist. LEXIS 16489 at *34-36 (D. Colo. Jan. 29, 2010) (same and cataloguing cases).

3.      Relevant Facts**:**

A.      Plaintiff had no encounters, interactions or communications with any employee of CHP.  [*See* Ryan Dep., p. 226, *ll.* 10-22; p. 229, *ll.* 9-16 (acknowledging no CHP employee, including Dr. Mix, ever treated her), **Exh. A-2**; *see also* Wasko Declaration, ¶ 5 (CHP does not treat any CDOC inmates), **Exh. A-1**].

B.      Plaintiff's claims are based on the denial of a stem cell transplant in September 2016.  [Ryan Deposition, p. 195, *ll.* 14-25; p. 196-197; p. 198, *ll.* 106; p. 215, *ll.* 17-23 (discussing the claims against CHP and Dr. Mix), **Exh. A-2**].

C.      A transplant Plaintiff eventually received in June 2017.  [***Id.***].

D.      Plaintiff admits her medical providers never appealed the initial denial of any request, including the September 2016 request for stem cell transplant.  [***Id.*** p. 221, *ll.* 9-25; p. 222, *ll.* 1-21; p. 223, *ll.* 8-18; p. 224, *ll.* 8-11; p. 225, *ll.* 11-25; p.226, *ll.* 1-9 (discussing the fact that her treating providers discussed the denial with her and decided to try to achieve lower remissions prior to the transplant surgery, i.e. admitting her treating providers agreed with the denial)].

E.      As part of her review of the requests for outside consult, based on the complex issues of Plaintiff's medical treatment, Dr. Mix consulted with Plaintiff's treating medical providers prior to denying the stem cell transplant requests.  [*See* Mix Declaration, ¶ 5, **Exh. A-3**].

F.      It was agreed upon by all to try to achieve better remission prior to the transplant being conducted, as better remission provides for a greater chance the transplant would be a success.  [***Id.***].

G.      Plaintiff disagreed with every denial Dr. Mix made.  [*See* Ryan Dep., at , p. 209, *ll.* 11-25; p. 210, *ll.* 15-25; p. 211, *ll.* 1, 13-24; p. 220, *ll.* 4-21; p. 228, *ll.* 19-23, **Exh. A-2**].

**C.      PLAINTIFF CANNOT ESTABLISH ENTITY LIABILITY FOR HER EIGHTH AMENDMENT CLAIM AGAISNT CHP (CLAIM 2)**

1.      <u>Burden of proof and elements:</u>  Plaintiff bears the burden of proof at trial by a preponderance of the evidence on her 42 U.S.C. § 1983 claim.  ***Mares***, 971 F.2d at 494. To the extent Plaintiff sues CHP under the Eighth Amendment, the established facts fail to demonstrate am entity liability claim.  *See**, e.g.**, **Jantzen v. Hawkins***, 188 F.3d 1247, 1259 (10th Cir. 1999) (suits against individual in his official capacity is equivalent to suit filed against municipality so long as official possesses final policymaking authority to establish municipal policy with respect to the acts in question); ***Myers v. Oklahoma County Board of Commissioner***, 151 F.3d 1313, 1316, n. 2 (10th Cir. 1998) (a § 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same).   A municipality, county or corporate entity can be held accountable for a constitutional violation resulting from an employee's acts only if the harmful acts resulted from a policy or custom adopted or maintained with objective deliberate indifference to an individual's constitutional rights. *Cf.* ***Monell v. Department of Social Servs.***, 436 U.S. 658, 690-91, 694 (1978) (discussing municipal liability in the context of a pretrial detainee's due process rights).   The proper analysis for municipal or corporate entity liability requires a court to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a

constitutional violation, and (2) if so, whether the municipality is responsible for that violation. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

      2. <u>Elements that cannot be proven</u>:

As discussed above, Plaintiff has failed to establish Dr. Mix's conduct violated her constitutional rights which must result in the dismissal of all claims against CHP as well *See, e.g., Estate of Ronquillo v. City & Cty. of Denver,* 720 Fed. Appx. 434, 441 (10th Cir. 2017); *Trigalet v. City of Tulsa,* 239 F.3d 1150, 1156 (10th Cir. 2001).

However, even assuming a constitutional violation could be established against Dr. Mix, to impose liability on CHP, Plaintiffs must identify a policy or custom that caused Plaintiff's injury.  *See Bd. of County Commissioners of Brian County, Oklahoma v. Brown*, 520 U.S. 397, 403-404 (1997); *Trigalet*, 239 F.3d at 1150.  In *Starrett v. Wadley*, 876 F.2d 808 (10th Cir. 1989), the Court described municipal policy as a policy statement, ordinance, regulation, or decision officially adopted and promulgated by a municipality's officers. *Id.* at 818.  The Court further described a custom as persistent and widespread practices of officials.  *Id.*  It is not enough, therefore, that a plaintiff "identified conduct properly attributable to the municipality," but must demonstrate that the municipality was the "moving force" behind the alleged injury.  *See Trigalet*, 239 F.3d at 1152.  This inquiry requires a direct causal link between the municipal action and the deprivation of federal rights.  *Id.*  Plaintiff complains of actions taken by Dr. Mix.  Plaintiff fails to provide any evidence to establish such actions were directly attributable to a custom, policy, or practice of CHP.  As such, any claim for entity liability should be dismissed as a matter of law.

**D.    PLAINTIFF CANNOT ESTABLISH A CLAIM OF NEGLIGENCE AGAINST CHP (CLAIM 1)**

1.    <u>Burden of proof and elements:</u>  Plaintiff bears the burden of proof at trial by a preponderance of the evidence on her claim of negligence.  C.R.S. § 13-25-127(1); ***Gerner v. Sullivan***, 768 P.2d 701, 702-03 (Colo. 1989).  To establish a prima facie case of negligence which includes the following elements: (1) a legal duty of care by defendant; (2) breach of that duty; (3) injury to the plaintiff; (4) causation, i.e. that the defendant's breached caused the plaintiff's injury.  ***Greenberg v. Perkins***, 845 P.2d 530, 533 (Colo. 1993); ***Observatory Corp. v. Daly***, 780 P.2d 462, 465 (Colo. 1989).

2.    <u>Elements that cannot be proven:</u>

<u>Element 1</u>:    Plaintiff cannot demonstrate CHP owed her any legal duty for the alleged medical negligence of Dr. Mix based on the corporate practice of medicine doctrine.

Colorado follows the corporate practice of medicine doctrine.  Under the corporate practice of medicine doctrine, a corporation, including CHP, cannot be held vicariously liable for the alleged negligent acts of a physician. The doctrine holds that because the corporation cannot interfere with the physician's independent judgment it cannot be vicariously liable.  *See generally*, ***Estate of Harper v. Denver Health & Hosp. Auth.***, 140 P.3d 273, 275-76 (Colo. App. 2006); ***Daly v. Aspen Center for Women's Health, Inc.***, 134 P.3d 450, 452-53 (Colo. App. 2005); ***Moon v. Mercy Hosp.***, 373 P.2d 944, 945-46 (Colo. 1962).

Plaintiff's negligence theory appears to be based on the alleged negligence of Dr. Mix and perhaps other Medical Directors working for CHP.  First, no evidence exists that

Dr. Mix or any other Medical Director acted negligently.  However, to the extent Plaintiff attempts to rely on the alleged negligence of Dr. Mix and other Medical Directors to support this claim, the corporate practice of medicine doctrine precludes her from doing so as a matter of law.

Element 2:  Plaintiff cannot demonstrate any breach of any duty owed by CHP to Plaintiff to provide her with appropriate medical care because Plaintiff has not endorsed any expert witness to testify on this essential element of his claim.

Under Colorado law, the standard of care upon which the physician's conduct will be measured is whether a reasonably careful physician or other health care provider would have acted in the same manner as did the health care provider in treating and caring for the patient.  *Greenberg*, 845 P.2d at 534; *Melville v. Southwest*, 791 P.2d 383, 387 (Colo. 1990).  A plaintiff must establish deviation from the applicable standard of care through the use of expert testimony.  "The reason for the requirement of expert testimony in most medical malpractice cases is obvious:  matters relating to medical diagnosis and treatment ordinarily involve a level of technical knowledge and skill beyond the realm of law knowledge and experience.  Without expert testimony in such cases, the trier of fact would be left with no standard at all against which to evaluate the defendant's conduct."  *Melville*, 791 P.2d at 387; *Trattler v. Citron*, 182 P.3d 674, 677 (Colo. 2008); *Shelton v. Penrose/St. Francis Healthcare System, Inc.*, 984 P.2d 623, 627 (Colo. 1999).  The requirement for expert testimony also applies to claims brought against an entity that employs professionals charged with negligence.  *See*, *e.g.*, *State of Colorado v. Nieto*, 993 P.2d 493, 500-5 (Colo. 2000) (requiring certificate of review pursuant to C.R.S. § 13-20-602 for claim based on professional negligence of nurses employed by

the Colorado Department of Corrections); ***Wood v. Rowland***, 592 P.2d 1332, 1334-35 (Colo. App. 1978) (nursing expert called to testify about negligence of nurses in a claim against the hospital); ***Grassi v. Corr. Corp. of Am.,*** 07-cv-00944-MSK-KMT, 2008 U.S. Dist. LEXIS 102746 at *25-31 (D. Colo. Dec. 9, 2008) (discussing requirement for experts for professional medical negligence claims under Colorado law), *aff'd,* 354 Fed. Appx. 329 (10th Cir. Nov. 27, 2009).

Plaintiff has not endorsed any experts in this case and her deadline to do so established by this Court has long passed.  Plaintiff's failure to endorse any expert witness to opine about the standard of care and the alleged breach of the standard of care by either Dr. Mix or any of the other licensed health care provider who provided treatment to Plaintiff precludes her negligence claim as a matter of law.  *Compare **Esposito v. United States of America***, 165 Fed. Appx. 671, 673 (10th Cir. Feb. 7, 2006) (affirming grant of summary judgment based on failure to endorse experts in medical malpractice case).

Element 3:    Plaintiff cannot demonstrate any injury caused by any alleged negligence of any CHP employee because she has not endorsed any expert to testify on this essential element of her medical negligence claim.

Plaintiff's negligence claim alleges CHP personnel were negligent in failing to approve requests for outside consults.  To demonstrate she suffered any injury as a result of this alleged negligence, Plaintiff must present expert testimony to opine about the likely medical outcome had Plaintiff received either different medical care or earlier intervention. In the absence of expert medical testimony, Plaintiff cannot establish the injury element of her negligence theory because she cannot prove that absent the inactions of CHP personnel her medical outcome would have been both different and better.    *See*, *e.g.*,

*Quintana v. United States of America*, 2008 U.S. Dist. LEXIS 20698 at *20 (D.Colo. Mar. 17, 2008) ("For the plaintiff's claim of negligence against Nurse Jara to survive summary judgment, there must be evidence in the form of expert testimony that Nurse Jara breached the applicable standard of care and that such breach was a proximate cause of the plaintiff's injuries.").

Element 4:    Plaintiff cannot demonstrate any causation between any action or omission by CHP and any injury she suffered in the absence of expert testimony.

Similarly, Plaintiff cannot establish the causation element of her negligence claim in the absence of expert testimony.  Unless Plaintiff has an expert to opine that "but for" the actions or omission of CHP her medical outcome would have been different she cannot establish causation for her negligence claim.  Because Plaintiff has not endorsed any experts she cannot prove this element of her claim.  *See*, *e.g.*, *Kaiser Foundation Health Plan of Colorado v. Sharp.*, 741 P.2d 714 (Colo. 1987) (describing use of expert to prove causation in medical malpractice case); *Farmers Truck Exchange v. Magnetek Inc.*, 2002 U.S. Dist. LEXIS 27262 at * 8 (D.Colo. Dec. 20, 2002) ("When causation is not apparent to the average layperson from common knowledge and experience, expert testimony is required to prove causation.").

Based on the lack of (1) negligent conduct on the part of any CHP personal, including Dr. Mix; (2) expert opinion; and (3) causation, Plaintiff's negligence claim fails as a matter of law.

**E.      PLAINTIFF'S ASSERTIONS REGARDING MEDICAID ARE WITHOUT MERIT**

1.      <u>Burden of proof and elements:</u>  Plaintiff bears the burden of proof at trial by a preponderance of the evidence on her claim that Medicaid should have somehow been involved in the authorization process.

2.      <u>Elements that cannot be proven</u>:

During the course of litigation, Plaintiff has made some unclear assertions concerning the role of Medicaid in her treatment and appears to allege the failure to get Medicaid involved in the pre-approval stage somehow establishes a constitutional violation on the part of CHP and Dr. Mix.  Medicaid is only involved in any pre-approval or authorization process when it is the primary insurer of the patient.  Here, CDOC is the primary insurer for all Colorado inmates, including Plaintiff.  When not the primary insurer of the patient, Medicaid only gets involved after the treatment has been provided to a patient and reimburses any expenses that fall within its authority, such as inmates whose treatment would require an overnight stay at a hospital. As such, Medicaid was not involved in any treatment decisions for Plaintiff because CDOC was Plaintiff's primary insurer.

3.      <u>Relevant Facts</u>:

A.      Medicaid is only involved in any pre-approval process when it is the primary insurer of the patient.  [*See* Wasko Declaration, ¶¶ 15 and 16, **Exh. A-1**].

B.      CDOC is the primary insurer for all Colorado inmates.  [*See **id.***]

C.      When not the primary insurer of the patient, Medicaid only gets involved after the treatment has been provided to a patient and reimburses any expenses that fall

within its authority, such as inmates whose treatment would require an overnight stay at a hospital. [*See id.*]

  D. As such, Medicaid was not involved in any treatment decisions for Plaintiff because CDOC was Plaintiff's primary insurer.  [*See id.*]

**<u>CONCLUSION</u>**

  In conclusion, for all the foregoing reasons, Defendants Correctional Health Partners  and Jennifer Mix, D.O., respectfully request this Court grant them summary judgment on Plaintiff's claims against them, dismiss all of Plaintiff's claims against them with prejudice in their entirety, and for all other and further relief as this Court deems just and appropriate.

  Dated this 17th day of January 2020.

        Respectfully submitted,


        <u>*s/ Edmund M. Kennedy*</u>
        Edmund M. Kennedy, Esq.
        Andrew D. Ringel, Esq.
        of Hall & Evans, L.L.C.
        1001 17th Street, Suite 300
        Denver, CO 80202
        Phone:  303-628-3453
        Fax: 303-628-3368
        ringela@hallevans.com
        kennedye@hallevans.com

        **ATTORNEY FOR DEFENDANTS CHP AND JENNIFER MIX**

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on this 17th day of January 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Amy C. Colony, Esq.
amy.colony@coag.gov

Shawnee Ryan
Shawneeryan216@gmail.com

*s/ Nicole Marion, Legal Assistant to:*
Andrew D. Ringel, Esq.
Edmund M. Kennedy, Esq.
of Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, CO 80202
Phone:   303-628-3453
Fax:       303-628-3368
ringela@hallevans.com
kennedye@hallevans.com

**ATTORNEYS FOR DEFENDANTS CHP AND JENNIFER MIX**