IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00956-MSK-MEH

SHAWNEE RYAN,

      Plaintiff,

v.

CORRECTIONAL HEALTH PARTNERS,
JENNIFER MIX,
HILARY VICTOROFF, N.P., and
LAURA SOMMERSCHIELD, N.P.,

      Defendants.

---

## DEFENDANT HILARY VICTOROFF'S MOTION FOR SUMMARY JUDGMENT: CLAIM FOUR (DOC. 184)

---

Defendant, Hilary Victoroff, N.P. (Victoroff), by and through her counsel,

Senior Assistant Attorney General Amy Colony, submits this Motion for Summary

Judgment: Claim Four (Doc. 184):[1]

### PRELIMINARY STATEMENT

Plaintiff Shawnee Ryan is a former inmate at Denver Women's Correctional

Facility, released in October 2018 and currently on parole. Ryan brings suit

pursuant to 42 U.S.C. § 1983, asserting numerous claims for relief under the Eighth

---

[1] This motion is based upon Claim Four as stated in Plaintiff's Fifth Amendment
Complaint accepted by this Court on November 12, 2019. (Doc. 183 and 184).

Amendment for deliberate indifference to medical needs.[2] Plaintiff claims that upon return on February 3, 2017, to the Denver Women's Correctional Facility after an inpatient hospitalization for chemotherapy, Defendant Victoroff wrongfully denied her admission to the infirmary located in the Denver Reception and Diagnostic Center. On February 6, 2017, Victoroff admitted Plaintiff to the infirmary for "neutropenic precautions" based on the result of labs drawn on the same date and upon the advice of Plaintiff's oncologist. Plaintiff was ultimately transferred back to the hospital pursuant to her oncologist's orders, where she was diagnosed with neutropenic fever, Influenza A, and a staph infection on her finger that Plaintiff claims was due to a "spider bite." Plaintiff was discharged from the hospital ten days later and recovered fully from these conditions.

The undisputed facts demonstrate that Victoroff provided adequate care to Plaintiff based on the facts known at the time of her return to CDOC on February 3, 2017. It is also undisputed that Victoroff provided additional care to Plaintiff when she returned to work on February 6 and admitted Plaintiff to the infirmary upon receiving abnormal lab results. As a result, Plaintiff fails to state a claim for deliberate indifference in violation of the Eighth Amendment. For the same reasons,

---

[2] Plaintiff voluntarily dismissed her remaining claims against the individual Department defendants on November 14, 2019 (Doc. 186 – Claims Five and Six Against Hilary Victoroff), and on December 11, 2019 (Doc. 204 – Claim Against Laura Sommerschield). This Court granted Plaintiff's motions on November 19, 2019 (Doc. 193) and December 12, 2019 (Doc. 206). The only remaining claim against a CDOC Defendant is Claim Four against Defendant Hilary Victoroff, which is the subject of this motion.

Victoroff is entitled to qualified immunity as to Claim Four of Plaintiff's Fifth Amended Complaint.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party does not have to negate the nonmovant's claims in order to obtain summary judgment. *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir.1997). Rather, the moving party is merely required to show "'that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the movant carries its initial burden, the plaintiff must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir.2000)).

A material fact is one that "might affect the outcome of the suit."  *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Evidence sufficient to defeat a motion for summary judgment "must be based on more than mere speculation, conjecture, or surmise." *Self,* 439 F.3d at 1230 (10th Cir. 2006) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir.2004)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 n. 3 (10th Cir.1992); *accord Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir.2004) (noting that "unsupported conclusory allegations ... do not create a genuine issue of fact").

A pro se party's materials may be afforded a liberal construction, but the court does "not act as his advocate." *Campbell v. Jones*, 684 Fed. Appx. 750, 753 (10th Cir. 2017). Rather, "[t]he court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

**A.     Defendant is entitled to Summary Judgment on Claim 4: Deliberate Indifference to Medical Need.**

### 1. Burden of Proof and Elements

Plaintiff bears the burden of proof at trial by a preponderance of the evidence on her 42 U.S.C. § 1983 claim. *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 294 (10th Cir. 1992). Plaintiff's constitutional claim against Victoroff fails because she cannot establish any action or omission by Victoroff that violated Plaintiff's constitutional rights.[3]

The Supreme Court has interpreted "cruel and unusual punishments" to include "the unnecessary and wanton infliction of pain" caused by "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

Plaintiff's claim of deliberate indifference to a medical need in violation of the Eighth Amendment requires her to establish, by a preponderance of the evidence that: (1) the alleged deprivation was "sufficiently serious" under an objective standard that requires Plaintiff to show she suffers from a medical need that has been diagnosed by a medical provider as requiring treatment or one which even a lay person would easily recognize as requiring medical attention; (2) that Victoroff must have had subjective knowledge of the risk of harm; or (3) that Plaintiff

---

[3] Plaintiff has only stated *one* claim against Defendant Victoroff for deliberate indifference in violation of the Eighth Amendment. She has not stated a separate claim for any other tort. In addition, Plaintiff informed this Court at two separate hearings that she was not seeking any damages related to "emotional distress" with respect to her claims against the CDOC Defendants. (Doc. 116, p. 13; Doc. 139, p. 3). Plaintiff did attempt to add "negligence claims" against Defendant Victoroff via a "Joinder" motion on July 15, 2019 (Doc. 133) (rather than file a proper motion to amend the complaint), that this Court denied on November 12. (Doc. 183).

sustained a permanent injury or long-term harm as a result of the alleged delay. *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir. 2000); *Garrett v. Stratman,* 254 F.2d 946, 950 (10th Cir. 2001); *see Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980), *cert. denied,* 450 U.S. 1041 (1981) (deliberate indifference to serious medical needs may be shown by proving there are such gross deficiencies in staffing, facilities, equipment, or procedures that the inmate is effectively denied access to adequate medical care).

A claim of inadequate medical care alone is not sufficient to sustain a claim under § 1983. *Coppinger v. Townsend,* 398 F.2d 392, 394 (10th Cir. 1968). "The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires," and disagreements between an inmate and a medical care provider about care do not constitute deliberate indifference. *Id.*; *Free v. Unknown Officers of the Bur. of Prisons,* 103 Fed. App'x 334, 337 (10th Cir. 2004) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." (quoting *Perkins v. Kansas Dep't of Corrections,* 165 F.3d 803, 811 (10th Cir.1999)). And where prison officials recognize and provide treatment for a serious medical condition, a disagreement about the course of treatment will not support a claim for deliberate indifference. *Perkins,* 165 F.3d at 811.

## 2. <u>Elements that cannot be proven by the Plaintiff</u>

<u>Element 1:</u> Plaintiff cannot demonstrate a triable issue of fact as to whether she suffered an alleged deprivation that was "sufficiently serious" under an objective standard. In short, Plaintiff's preference for admission to the infirmary as opposed to the Women's facility, upon discharge from the hospital, is insufficient to support the elements of her claim for deliberate indifference to a medical need. Plaintiff presented in stable condition upon discharge and as a result, the then-Chief Medical Officer directed Victoroff to deny admission to the infirmary. *See Sealock*, 218 F.3d at 1209.

<u>Relevant Facts:</u>

A.     While incarcerated, Plaintiff was diagnosed with Lambda light chain deposition, a kidney related ailment, in November of 2013, and multiple myeloma, a blood cancer, in April of 2014. *See* Def. Exh. D, Ryan Depo., pp. 53-56. Plaintiff had an autologous stem cell implant in June 2017 to treat this condition. *Id.* at p. 58: 12-20.

B.     Plaintiff was admitted to Aurora Regional Medical Center for chemotherapy on January 26, 2017, Defendant's Exhibit E, Medical Center of Aurora (CDOC/MedCtrAur006504-006507), and discharged on February 3, 2017, in stable condition. Defendant's Exhibit A, Affidavit of Hilary Victoroff, ¶¶ 8-10; Defendant's Exhibit B, Health Services Encounter (CDOC001137); Defendant's Exhibit C, Affidavit of Dr. Susan Tiona, ¶¶ 12-15; Def. Exh. E (CDOC/MedCtrAur006508-006511); *see also,* Doc. 180, p. 11, "Plaintiff was released

on February 3, 2017 . . . in stable condition with up-trending blood levels post-DTPACE.").[4] Plaintiff was not neutropenic and her temperature was normal. Def. Exh.t A, ¶¶ 8-10; Def. Exh. B, (CDOC001137); Def. Exh. D, Ryan Depo., p. 68: 1-7; Def. Exh. E (CDOC/MedCtrAur006508-006511). Plaintiff arrived at the Department alert, ambulatory and afrebrile. Def. Exh. A, ¶ 14.

  C. Defendant Victoroff, a licensed nurse practitioner employed by the Department for over nineteen years, reviewed the discharge summary and orders and consulted with the Department's then-Chief Medical Officer, Dr. Susan Tiona as to whether infirmary admission was indicated. Def. Exh. A, ¶¶ 10-14. Dr. Tiona denied Plaintiff admission to the infirmary based on the conclusion that she did not rise to the level of requiring infirmary care because she arrived at CDOC in stable condition and was alert, ambulatory and afebrile. Def. Exh. A, ¶14; Def. Exh. C, ¶¶ 11-16.

  D. Based on her review of Plaintiff's medical records and her years of experience as a practitioner, former Chief Medical Officer Dr. Tiona concludes that Plaintiff's medical condition at the time she returned to CDOC on February 3, 2017, following hospitalization for chemotherapy, did not rise to the level of needing infirmary care. Def. Exh. C, Aff. Tiona, ¶¶ 11-16.

---

[4] The references in Victoroff's and Dr. Tiona's affidavits are to medical records Plaintiff attached as exhibits to her motion for summary judgment (Doc. 180; Doc. 180-1; Doc; 180-2; Doc. 185-2). Document No. 180-2 consists, in part, of the records from the Medical Center of Aurora contained in Defendant's Exhibit E.

E.      Defendant Victoroff contacted Dr. Burke to confirm his orders, medication changes, follow up appointments and labs. Def. Exh. A, ¶ 15. Victoroff informed Dr. Burke that Plaintiff would be monitored by Denver Women's and not at the infirmary. *Id.* Dr. Burke did not voice any objections. *Id.*

F.      Prior to leaving for her scheduled days off for the weekend, Defendant Victoroff emphasized to the nurses scheduled to be on duty, that per Dr. Burke's orders, if Plaintiff developed a fever of 100.3°F or above, she was to be transported back to the hospital. Defendant's Exhibit F, Victoroff February 2017 Timecard (CDOC006257-006258); Def. Exh. A, ¶¶ 16-17.

G.      Plaintiff testified at her deposition that she demanded her temperature be taken on Saturday, February 4, 2017, because she believed she was developing a fever. Def. Exh. D, Ryan Depo., pp. 71-72. Plaintiff testified that when clinical staff took her temperature, it was "99.3, 99.7, something like that." *Id.* at 71: 24-25. Plaintiff was sent back to her Unit. *Id.* at 75: 2-10. Plaintiff admits her temperature did not reach the level at which her oncologist had ordered her to be returned to the hospital. *Id.* at pp. 71-72; Def. Exh. A, ¶¶ 16-17.

H.      Early in the morning of February 6, 2017, DWCF clinical staff came to Plaintiff's cell and transported her to the clinic in a wheelchair. Def. Exh. A, Aff. Victoroff, ¶ 21; Def. Exh. B, Health Services Encounter (CDOC001135-

CDOC001136); Def. Exh. D, Ryan Depo., p. 77: 6-8.[5] Plaintiff arrived alert,
oriented, breathing easily and afebrile. Def. Exh. A, ¶ 21; Def. Exh. B
(CDOC001135-CDOC001136). Her temperature was 98.1°F and she was seen by
the provider on duty. *Id.* Her labs were taken per Dr. Burke's orders. *Id.* While
waiting for her labs, Plaintiff was able to walk on her own, unassisted back to her
cell. *Id.*

I.      Plaintiff's labs were abnormal with white blood cells, hemoglobin,
hematocrits, platelets and absolute neutrophil counts being low, which is typical for
immune-compromised cancer patients who are receiving chemotherapy. Def. Exh.
A, Aff. Victoroff, ¶¶ 24-25; Def. Exh. B (CDOC001132); Defendant's Exhibit G,
LabCorp Feb. 6, 2017.[6] These labs caused Victoroff to contact the oncologist, Dr.
Burke, who recommended admission to the infirmary with neutropenic precautions.
Def. Exh. A, ¶¶ 24-26.

J.      Victoroff admitted Plaintiff to the infirmary and wrote orders for
immediate transport to the hospital if Plaintiff's temperature exceeded 100.3°F.
Def. Exh. A, Aff. Victoroff, ¶¶ 27-28; Def. Exh. B, Health Services Encounter

---

[5] Contrary to her allegations and her own exhibit (Doc. 180-1, pp.8-9) attached to
her summary judgment motion (Doc. 180), Victoroff was not scheduled off-duty for
three consecutive days. Rather, Victoroff reported to work on Monday, February 6,
2017, at approximately 7:30-7:45 a.m. Def. Exh. F, Victoroff Timecard; Def. Exh. A,
Aff. Victoroff, ¶ 20.

[6] Defendant's Exhibit G is identical to Plaintiff's summary judgment Exhibit 2, Doc.
185-2.

(CDOC001131-CDOC001132). Plaintiff did not develop a neutropenic fever of 100.7°F until the morning of February 7, 2017, which caused the provider on duty to order her transported back to the hospital in a non-emergent van. Def. Exh. A, ¶¶ 29-30; Def. Exh. B, (CDOC001129-CDOC001130).

Element 2: Plaintiff bears the burden of proof at trial by a preponderance of the evidence on her 42 U.S.C. § 1983 claim. *Mares,* 971 F.2d at 494. Plaintiff cannot demonstrate a triable issue of fact as to whether Victoroff had subjective knowledge of any risk of harm to the Plaintiff caused by the failure to admit her to the infirmary or failure to "leave orders" before her scheduled days off. *Sealock,* 218 F.3 at 1209.

The deliberate indifference standard has been described as a "stringent standard of fault." *Bd. of Cty. Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). The subjective component "presents a high evidentiary hurdle to the plaintiffs: a prison official must know about and disregard a substantial risk of serious harm." *Self,* 439 F.3d at 1232 (citing *Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir.2005)). An "excessive risk" is one "sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). "Deliberate indifference" is characterized by "obduracy and wantonness" and "criminal recklessness," not negligence. *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Considering Plaintiff admits that she was returned by Aurora Regional to the Department in stable condition (Doc. 180, p. 4, ". . . the stable levels Plaintiff was discharged with on February 3, 2017), there was no reason for Defendant Victoroff to conclude that denying Plaintiff admission to the infirmary was "sure or very likely to cause serious illness and needless suffering." *Helling*, 509 U.S. at 33. Plaintiff was discharged with information and instructions from Aurora Regional and her oncologist which she cannot demonstrate were inaccessible to any clinical staff on duty over the weekend when Defendant was off-duty. Victoroff communicated the most critical information, that is, that if Plaintiff's temperature reached 100.3°F or above, she was to be transported immediately back to the hospital. Victoroff placed Plaintiff in the infirmary on neutropenic precautions after obtaining abnormal labs for Plaintiff on February 6. She was subsequently ordered to be transported back to the hospital, pursuant to the instructions of another provider, when she became neutropenic.

Relevant Facts:

A.     Plaintiff was discharged from the hospital on February 3, 2017, in stable condition. Def. Exh. A, Aff. of Victoroff, ¶¶ 8-10; Def. Exh. C, Aff. of Dr. Susan Tiona, ¶¶ 12-15; Def. Exh. E, Med. Ctr. Aurora (CDOCMedCtrAur006508-006511). Plaintiff was not neutropenic and her temperature was normal. Def. Exh. A, ¶¶ 8-10; Def. Exh. B, Health Services Encounter (CDOC001137); Def. Exh. D,

Ryan Depo., p. 68: 1-7. Plaintiff arrived at the Department alert, ambulatory and afebrile. Def. Exh. A, ¶ 14.

B.      Defendant Victoroff reviewed the discharge summary and orders and consulted with CDOC's then-Chief Medical Officer, Dr. Tiona, as to whether infirmary admission was indicated. Def. Exh. A, Aff. Victoroff, ¶¶ 10-14; Def. Exh. C, ¶¶ 11-16. Dr. Tiona denied Plaintiff admission to the infirmary based on the fact that she arrived at CDOC in stable condition and was alert, ambulatory and afebrile. *Id.*

C.      Based on her review of Plaintiff's medical records and her years of experience as a practitioner, former Chief Medical Officer Dr. Tiona concludes that Plaintiff's medical condition at the time she returned to CDOC on February 3, 2017, following hospitalization for chemotherapy, did not rise to the level of needing infirmary care. Def. Exh. C, Aff. Tiona, ¶¶ 11-16.

D.      Prior to leaving for her scheduled days off for the weekend, Defendant Victoroff emphasized to the nurses scheduled to be on duty, that per the oncologist's orders, if Plaintiff developed a fever of 100.3°F or above, she was to be transported back to the hospital. Def. Exh. A, Aff. Victoroff, ¶¶ 16-17.

E.      On Monday, February 6, Plaintiff's labs were taken per Dr. Burke's orders. Def. Exh. A, Aff, Victoroff, ¶ 21; Def. Exh. B, Health Services Encounter (CDOC0011331-CDOC001135).

F.      Plaintiff's labs were abnormal but typical for immune-compromised cancer patients who are receiving chemotherapy. Def. Exh. A, Aff. Victoroff, ¶¶ 24-25; Def. Exh. B (CDOC001132); Defendant's Exhibit G, LabCorp Feb. 6, 2017.[7] These labs caused Victoroff to contact the oncologist, Dr. Burke, who recommended admission to the infirmary with neutropenic precautions. Def. Exh. A, ¶¶ 24-26.

G.      Defendant admitted Plaintiff to the infirmary and wrote orders for immediate transport to the hospital if Plaintiff's temperature exceeded 100.3°F. *Id.* at ¶¶ 27-28; Def. Exh. B, Health Services Encounter (CDOC001131-CDOC001132). Plaintiff did not develop a neutropenic fever of 100.7°F until the morning of February 7, 2017, at which time she was ordered to be transported back to Aurora Regional. Def. Exh. A, ¶ 29; Def. Exh. B (CDOC001129-CDOC001130).

Element 3: Plaintiff cannot demonstrate a triable issue of fact as to whether the delay in her admission to the infirmary and the failure to leave orders for monitoring her case caused her to become seriously ill, "nearly lo[se] her life," and endure "physical pain" of an unknown duration. (Doc. 180, pp. 5, 15). Plaintiff admits that after becoming ill over the weekend, she was readmitted to Aurora Regional where she was diagnosed with neutropenic fever and influenza A and returned to the Department on February 16, 2017. (Doc. 180-1). Plaintiff has not and cannot demonstrate that these conditions were not successfully treated at the

---

[7] Defendant's Exhibit G is identical to Plaintiff's summary judgment Exhibit 2, Doc. 185-2.

hospital or that she suffered any long-term damage. Significantly, Plaintiff cannot present evidence showing that any actions or omissions by Defendant, including the denial of admission to the infirmary, exposed her to these illnesses, let alone that she suffered any permanent damage from the same. There is simply no evidence to show that Plaintiff sustained a permanent injury or long-term harm as a result of the delay in her admission to the infirmary or the alleged lack of orders left by Defendant before she went off duty for the weekend. *Garrett,* 254 F.3d at 950.

      A.      On February 6, 2017, Defendant admitted Plaintiff to the infirmary and wrote orders for immediate transport to the hospital if Plaintiff's temperature exceeded 100.3°F. Def. Exh. A, Aff. Victoroff, at ¶¶ 27-28; Def. Exh. B, Health Services Encounter (CDOC001131-CDOC001132). Plaintiff did not develop a neutropenic fever of 100.7°F until the morning of February 7, 2017, at which time she was ordered to be transported back to Aurora Regional. Def. Exh. A, ¶ 29; Def. Exh. B (CDOC001129).

      B.      At Aurora Regional, Plaintiff was diagnosed with neutropenic fever. Def. Exh. A, Aff. Victoroff, ¶ 31; Defendants' Exhibit E, Medical Center of Aurora (CDOCMedCTrAuro006959-006963). A bump on Plaintiff's finger was identified as an abscess and was drained, cultured and diagnosed as a MRSA infection. *Id.* Plaintiff also tested positive for Influenza A for which the origin is unknown. *Id.*

C.     According to her Aurora Regional records, Plaintiff recovered from her

neutropenic fever and Influenza A, and, the abscess on her finger healed. Def. Exh.

A, Aff. Victoroff, ¶ 33; Def. Exh. B, Health Services Encounter (CDOC001127-

CDOC001129); Def. Exh. D, Ryan Depo., pp. 95-97.

**B.     Defendant is entitled to qualified immunity.**

**1.  <u>Burden of Proof and Elements:</u>**

Public employees acting in their individual capacities are presumed to be

immune from liability. *Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990).

Qualified immunity applies in "all but the most exceptional cases." *Tonkovich v.*

*Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998). Qualified immunity

protects "all but the plainly incompetent or those who knowingly violate the law."

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Once a defendant asserts qualified immunity, the burden shifts to the

plaintiff to show that qualified immunity is not appropriate. *Davis v. Scherer*, 468

U.S. 183, 197 (1984); *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001).

Plaintiff's burden is twofold. First, plaintiff must show that defendant violated a

constitutional right.  *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (citing *Saucier v.*

*Katz*, 533 U.S. 194, 201 (2001). Second, plaintiff must demonstrate that the right

was clearly established by showing that "it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted." *Id.* at 199 (quoting

*Saucier* at 533 U.S. 202). "If the plaintiff fails to satisfy either part of the two-part

inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "'[C]learly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citing *Ashcroft*, 563 U.S. at 742). "[T]he clearly established law must be 'particularized' to the facts of the case." *Id.* (citations omitted). "Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity…into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.*

As discussed in detail above, Plaintiff has failed to show that Victoroff's conduct or omissions violated a constitutional right. It is undisputed that Victoroff provided medical care to Plaintiff on February 3 and 6, 2017. Victoroff's review of Plaintiff's discharge records on February 3, her instructions to staff on duty for the weekend, and admission of Plaintiff to the infirmary for neutropenic precautions on February 6, are enough to establish that she was not deliberately indifferent to Plaintiff's medical needs. *Coppinger*, 398 F.2d at 394. Victoroff's decision not to admit Plaintiff to the infirmary on February 3, as informed by the directive of her

ultimate supervisor, then-Chief Medical Director Tiona, and Plaintiff's stable condition upon discharge, likewise does not represent cruel and unusual punishment. *Estelle*, 429 U.S. at 107. For that reason, Plaintiff's claim for deliberate indifference to medical needs is missing both the objective and subjective components. *Sealock*, 218 F.3d at 1209. Plaintiff fails to establish a constitutional violation, and Defendant Victoroff is thus entitled to qualified immunity and summary judgment as to Claim Four.

Plaintiff also cannot satisfy the second prong of the qualified immunity test. She has not and cannot cite to United States Supreme Court or Tenth Circuit authority that would have placed Victoroff on notice that her conduct violated Plaintiff's constitutional rights under the circumstances. Consequently, Defendant is also entitled to qualified immunity because any purported constitutional violation was not clearly established.

## CONCLUSION

Because Plaintiff cannot establish a constitutional violation by Defendant Victoroff, she both fails to state a claim, and fails to overcome Victoroff's assertion of qualified immunity. Defendant Victoroff is thus entitled to judgment in her favor.

Respectfully submitted this 24th day of January, 2020.

PHILIP J. WEISER
Attorney General

s/   *Amy C. Colony*

18

AMY C. COLONY, Reg. No. 36124*
Senior Assistant Attorney General
1300 Broadway, 10th Floor
Denver, CO 80203
Email:  acolony@coag.gov
Telephone: 720-508-6615
Attorney for Defendant Victoroff
*Counsel of Record

<u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing DEFENDANT HILARY VICTOROFF'S

MOTION FOR SUMMARY JUDGMENT: CLAIM FOUR (DOC. 184) upon all parties

herein by e-filing with the CM/ECF system maintained by the court or by depositing

copies of same in the United States mail, first-class postage prepaid, at Denver,

Colorado, this 24th day of January, 2020, addressed as follows:

Shawnee Ryan
12801 West Alameda Parkway
Box 218
Lakewood, CO  80225
*Plaintiff, pro se*

Andrew David Ringel, Esq.
Edmund Martin Kennedy, Esq.
Hall & Evans LLC
1001 17th Street, Suite 300
Denver, CO  80202
*Attorneys for Defendant Mix*

*s/ LaTasha Carter*