IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00956-MSK-MEH

SHAWNEE RYAN,

    Plaintiff,

v.

CORRECTIONAL HEALTH PARTNERS,
JENNIFER MIX,
HILARY VICTOROFF, N.P., and
LAURA SOMMERSCHIELD, N.P.,

    Defendants.

## AFFIDAVIT OF HILARY VICTOROFF, RN, FNP

I, Hilary Victoroff, declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

1.     I am a nurse practitioner licensed in the State of Colorado. I have been employed with the Colorado Department of State of Colorado Department of Corrections, as a Nurse Practitioner for 19 years. I work at the clinic located in the Denver Women's Correctional Facility (DWCF) in Denver, CO.

2.     This affidavit is made upon my personal and professional knowledge.

3.     As part of my assigned duties, I provide clinical assessments of adult females admitted to DOC as well as administer Outpatient care regarding a full range of acute and chronic conditions. Providing inpatient care of female adults with post-operative, acute, chronic and terminal conditions including but not limited to cancer is also included in my responsibilities. I provide orientation and mentoring to new Nurse Practitioners, Physician Assistants and Physicians and perform peer audits and death reviews.

Defendant's Exhibit A

4. I am familiar with the Plaintiff in this matter, Shawnee Ryan. I provided medical care to her while she was an inmate at Denver Women's Correctional Facility.

5. Plaintiff Ryan was diagnosed with multiple myeloma and light chain deposition/cast nephropathy in 2013 while incarcerated.

6. I have reviewed the medical records created relative to Ms. Ryan for the period beginning February 3, 2017, with her return to CDOC, through February 7, 2017, when she was transferred back to Aurora Regional Medical Center (ARMC). *See* Plaintiff's Exhibit 1 – Doc. 180-1; Plaintiff's Exhibit 2 – Doc. 180-2; Plaintiff's Exhibit – Doc.185-1; Plaintiff's Exhibit 2 – Doc. 185-2. Defendant's Exhibit B, CDOC001127-CDOC001137.

7. I can confirm that the following timeline of events occurred on or around the date stated.

8. Ms. Ryan returned to DWCF on February 3, 2017, following inpatient admission to ARMC. *See* Plaintiff's Exhibit 2 – Doc. 180-2; Defendant's Exhibit B, CDOC001136-CDOC001137.

9. Ms. Ryan arrived at the facility in stable condition, with trace edema to the lower extremities. Her blood pressure was 115/68, pulse-100, respirations- 16, 97.9F temperature, Oxygenation - 99%. Her vitals were normal, she was ambulatory, alert and afebrile. *See* Plaintiff's Exhibit 2 – Doc. 180-2; Defendant's Exhibit B, CDOC001136-CDOC001137.

10. I reviewed the discharge summary and orders from ARMC, and subsequently received a call from the hospital oncologist at ARMC about medication changes. The discharge summary showed labs: White Blood Cell count - 3.9, absolute neutrophil count - 3.6, hemoglobin/hematocrit- 10.2/ 29.4. Ms. Ryan was not neutropenic on discharge. *See* Plaintiff's Exhibit 2 – Doc. 180-2, p. 19; Defendant's Exhibit B, CDOC001136-CDOC001137.

11. Ms. Ryan expressed her desire to be admitted to the infirmary instead of returning to her cell in DWCF.

12. At the time, February 2017, CDOC was reevaluating the need for offenders returning from hospitalization to be admitted to the infirmary. Each proposed admission was decided on a case-by-case basis.

13. CDOC policies do not require clinical staff to follow all recommendations of outside providers if the circumstances do not warrant the

Defendant's Exhibit A

treatment or instructions provided, or, if doing so is not compatible with CDOC policies or the facility's current ability to accommodate the recommendation.

14. I contacted CDOC's then-Chief Medical Officer, Dr. Susan Tiona, to consult with her about the appropriateness of admission of Ms. Ryan to the Denver Reception and Diagnostic Center (DRDC) infirmary, as suggested by Dr. Burke in his discharge orders. Dr. Tiona denied admission of Ms. Ryan to the infirmary based on the fact that the she did not meet the criteria because she arrived at CDOC in stable condition and was alert, ambulatory and afebrile.

15. I spoke directly via telephone with Ms. Ryan's oncologist, Dr. John Burke, confirming orders, medication changes, follow up appointments, labs and the potential need for a transfusion in the upcoming week to be given in the infirmary. He was informed she would be monitored at DWCF, not the infirmary. Dr. Burke did not express any objections to placement of Ms. Ryan in DWCF as opposed to the DRDC infirmary.

16. I was scheduled to be off-duty the following Saturday and Sunday, February 4 and 5, 2017. *See* Plaintiff's Exhibit 1 – Doc. 180-1, p. 9 (CDOC006257).

17. Prior to my departure, I verbally emphasized to the nurses scheduled to be on duty over the weekend that per Dr. Burke's discharge orders, if Ms. Ryan developed a fever of 100.3 or higher and became neutropenic, that she was to be transferred back to ARMC immediately. *See* Defendant's Exhibit B, CDOC001136.

18. Dr. Burke's orders provided that Ms. Ryan was to have labs drawn on February 6, 2017 at the DRDC infirmary through her port. *See* Plaintiff's Exhibit 2 – Doc. 180-2, p. 12; Defendant's Exhibit B, CDOC001136-CDOC001137. Ms. Ryan refused peripheral blood draws by staff at DWCF.

19. Ms. Ryan's claims that she became ill on Saturday, February 4, 2017, and insisted on assessment and treatment by the DWCF clinical staff are undocumented.

20. Per my regular work schedule, I reported for duty at DWCF on Monday, February 6, 2017, at approximately 7:30-7:45 a.m. *See* Plaintiff's Exhibit 1 – Doc. 180-1, pp. 8-9 (CDOC006257).

21. Early in the morning of February 6, 2017, DWCF nurses came to Ms. Ryan's cell and brought her back to the clinic in a wheelchair. Ms. Ryan was not unconscious. *See* Defendant's Exhibit B, CDOC0011331-CDOC001135. Ms. Ryan arrived at the DWCF clinic alert, oriented, breathing easily. *Id.* She was afebrile and slightly tachycardic. *Id.* Her temperature was 98.1F, pulse-96, her blood pressure was -90/70. *Id.* Ms. Ryan was already scheduled for labs, per Dr. Burke's

3

Defendant's Exhibit A

orders, which were obtained and sent out STAT to Labcorp. Ms. Ryan did not complain of any bite or sore on her finger. Ms. Ryan was seen by the provider on duty.

22. While waiting for her labs, Ms. Ryan was able to walk on her own, unassisted, back to her cell.

23. Ms. Ryan's claim that she arrived at the DWCF with a temperature "just under 100.3" is undocumented as is her claim of being unresponsive. Unconscious offenders are not transported to the clinic in a wheel chair. There is also no documentation of a temperature of 103.8 anywhere in her records between February 3, 2017 and February 17, 2017.

24. Preliminary abnormal labs were called to the clinic by Labcorp around 12:59 p.m. In response, I immediately contacted Dr Burke's office and spoke with his nurse, Bonnie, before the complete report had been faxed to DWCF. *See* Plaintiff's Exhibit 2, Doc. 185-2; Defendant's Exhibit B, CDOC001132.

25. Ms. Ryan's White Blood Cell count, which was normal when she returned from the hospital, was now at 0.2 due to the recent chemotherapy. Her hemoglobin, hematocrits and platelets were all low. *See* Plaintiff's Exhibit 2, Doc. 185-2. These are typical for immune-compromised cancer patients who are receiving chemotherapy. Her absolute neutrophil count was low. *Id.* These routine labs were scheduled, per Dr. Burke's orders, because low counts are an anticipated side effect of chemotherapy.

26. I spoke with Dr Burke and asked if Ms. Ryan should go to hospital, but he recommended admission to the infirmary with neutropenic precautions. Defendant's Exhibit B, CDOC001132.

27. After my phone conversation with Dr. Burke, I admitted Ms. Ryan to the infirmary on February 6, 2017, at 15:21 hours. Ms. Ryan was admitted to the DRDC Infirmary with a clear indication for admission: Multiple Myeloma, statuspost chemotherapy with pancytopenia (across the board immunodeficiencies) requiring neutropenic precautions, and to start Levaquin, an anti-biotic. Defendant's Exhibit B, CDOC001131-CDOC001132.

28. I wrote orders to the DRDC staff that provided for immediate transport to ARMC if Ms. Ryan's temperature exceeded 100.3. I called the report to the on-call provider, Stephanie Feist, NP. Defendant's Exhibit B, CDOC001129-CDOC001131.

Defendant's Exhibit A

29. Ms. Ryan was admitted to the DRDC infirmary where she did not develop a neutropenic fever of 100.7F until the morning of February 7, 2017. Defendant's Exhibit B, CDOC001131-CDOC001132.

30. Dr. Muthulakshmi Yegappan ordered Ms. Ryan transported to ARMC via a non-emergent van for neutropenic fever and absolute neutrophil count of zero. Dr. Yegappan noted a bump on Ms. Ryan's finger at that time, and described it as a possible Osler's node. Defendant's Exhibit B, CDOC001130.

31. On admission to ARMC the bump on Ms. Ryan's finger was identified as an abscess that was drained, cultured, diagnosed as a MRSA infection and treated with antibiotics. Ms. Ryan further tested positive for Influenza A and was treated with Tamiflu. *See* Plaintiff's Exhibit 1, Doc. 185-1, p. 2.

32. There were no cases of influenza A or B reported at DWCF or DRDC during January and February 2017. The origins of Ms. Ryan's infection with the Influenza A are unknown. It is possible she was exposed at ARMC prior to discharge.

33. According to her medical records from her stay at ARMC, Ms. Ryan recovered fully from her neutropenic fever, Influenza A and the abscess on her finger. *See* Plaintiff's Exhibit 1, Doc. 185-1; Defendant's Exhibit B, CDOC001127-CDOC001129.

34. Ms. Ryan received an autologous stem cell transplant in May of 2017.

Hilary Victoroff    1/17/2020

Defendant's Exhibit A