IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00956-MSK-MEH

SHAWNEE RYAN,

    Plaintiff,

v.

CORRECTIONAL HEALTH PARTNERS,
JENNIFER MIX,
HILARY VICTOROFF, N.P., and
LAURA SOMMERSCHIELD, N.P.,

    Defendants.

## AFFIDAVIT OF DR. SUSAN TIONA, M.D.

    I, Susan Tiona, declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

    1.    I was the Chief Medical Officer ("CMO") at the Colorado Department of Corrections ("CDOC") from April 2015 to May 2017.

    2.    This affidavit is made upon my personal and professional knowledge.

    3.    I am familiar with the Plaintiff, Shawnee Ryan, and reviewed her medical chart many times when I worked for the CDOC. I understand her various diagnoses and have knowledge of the care she received both inside and outside of CDOC during her incarceration.

    4.    Plaintiff Ryan was diagnosed with multiple myeloma and light chain deposition/cast nephropathy in 2013 while incarcerated.

    5.    In July 2015, I issued a verbal mandate to all clinical staff that required staff to contact me prior to all transfers of inmates out of CDOC facilities into the DRDC infirmary, unless the condition was life-threatening. During the time I served as Chief Medical Officer, I was in the process of changing the guidelines for infirmary admission at DRDC.

6. In all cases, as Chief Medical Officer for the CDOC, I had the authority to override any internal or outside provider's orders or recommendations for infirmary admission for an inmate. I also maintained the authority to override any provision stated in a Clinical Standard utilized by CDOC.

7. Written or oral instructions from an outside provider are treated as recommendations. CDOC policies do not require clinical staff to follow all recommendations of outside providers if the circumstances do not warrant the treatment or instructions provided, or, if doing so is not compatible with CDOC policies or the facility's current ability to accommodate the recommendation.

8. It was a common practice during my time as Chief Medical Officer for clinical staff to contact me when an inmate was being discharged from the hospital to consult on the appropriateness of an admission to the infirmary.

9. The Clinical Standards in place at CDOC do not guarantee treatment to every inmate who seeks it. Rather, they set forth various criteria that are used to determine which inmates are eligible to receive treatment and which are not.

10. I do not recall the events that occurred between February 3, 2017 and February 7, 2017, concerning Ms. Ryan's care upon return from inpatient hospitalization for chemotherapy. However, I have carefully reviewed Plaintiff's discharge orders from the Aurora Regional Medical Center (Plaintiff's Exhibit 2 - Doc. 180-2), her records orders from her hospitalization at Aurora South Hospital that began on February 7, 2017 (Plaintiff's Exhibit 1 - Doc. 180-1), her lab results from February 6, 2017 (Plaintiff's Exhibit 2 - Doc. 185-2), and, the record of Health Services Encounters for Ms. Ryan between February 3, 2017, and February 7, 2017. Defendant MSU's Exhibit B, Health Services Encounters.

11. As a result of my review of these records, and based on my years of experience as a practitioner, I am able to provide the following assessments and opinions on Ms. Ryan's condition and care during the time period in question.

12. According to Ms. Ryan's discharge paperwork from the Aurora Regional Medical Center ("ARMC"), (Plaintiff's Exhibit 2, Doc. 180-2), Ms. Ryan was admitted on January 26, 2017, as an inpatient, for chemotherapy to treat her multiple myeloma. Ms. Ryan was discharged and returned to CDOC on February 3, 2017. *Id.*

13. Ms. Ryan was in stable condition and her vital signs and temperature were normal when she was discharged by ARMC. Plaintiff's Exhibit 2 - Doc. 180-2, p. 9. The discharge summary showed the following labs: White Blood Cell count - 3.9, absolute neutrophil count - 3.6, Hemoglobin/Hematocrit- 10.2/ 29.4. *Id.*

14.     Ms. Ryan arrived at CDOC in stable condition, with trace edema to the lower extremities. *See* Defendant's Exhibit B, CDOC01137. Her blood pressure was 115/68, pulse-100, respirations- 16, 97.9 temperature, Oxygenation - 99%. Her vitals were normal, she was ambulatory, alert and afebrile. She was able to ambulate unassisted. *Id.* In accordance with the suggestion from her oncologist, Dr. John Burke, at ARMC, Ms. Ryan was scheduled to have labs taken on February 6, 2017. *See* Def. Exh. B, CDOC001136; Plaintiff's Exhibit 2 - Doc. 180-2, p. 12.

15.     In Ms. Ryan's discharge paperwork, her oncologist, Dr. Burke, provides no explanation or rationale as to why he recommended that Ms. Ryan be admitted to the infirmary instead of returning her to DWCF. *See* Plaintiff's Exhibit 2, Doc. 180-2, p. 2.

16.     Based on my years of experience as a physician and the totality of the circumstances concerning Ms. Ryan's condition at the time she returned to CDOC on February 3, 2017, there was no reason for her to be admitted to the infirmary. In my medical opinion, Ms. Ryan's condition did not rise to the level of needing infirmary care.

17.     Ms. Ryan's claims that she became ill on Saturday, February 4, 2017, and insisted on assessment and treatment by the DWCF clinical staff, are undocumented.

18.     On February 6, 2017, Ms. Ryan presented to DWCF clinical staff with a low White Blood Cell count but she had a normal temperature and was afebrile. *See* Def. Exh. B, CDOC01133-1134. Ms. Ryan was ambulatory. *Id.* at CDOC01131. Labs were drawn per Dr. Burke's instructions. *Id.* at CDOC01135.

19.     Ms. Ryan was admitted to the infirmary and placed on neutropenic precautions per the recommendation of her oncologist, Dr. Burke. *See* Def. Exh. B, CDOC001133-CDOC1135.

20.     In my medical opinion, it was appropriate to admit Ms. Ryan to the infirmary at this time as a precautionary measure because she was neutropenic without fever.

21.     On February 7, 2017, Dr. Muthulakshmi Yegappan, per a consultation with Dr. Burke, sent Ms. Ryan back to Aurora South Emergency Room via a non-emergent state van due to neutropenic fever. *See* Def. Exh. B, CDOC001130.

22.     On admission to ARMC, a bump on Ms. Ryan's finger was identified as an abscess that was drained, cultured, diagnosed as a MRSA infection and treated with antibiotics. *See* Plaintiff's Exhibit 1 - Doc. 180-1, p. 4. Ms. Ryan further tested

positive for Influenza A. *See* Plaintiff's Exhibit 1 - Doc. 185-1. According to her records, Ms. Ryan recovered fully from these conditions.

23. In my medical opinion, Ms. Ryan's placement in DWCF on February 3, 2017, following her hospitalization, as opposed to infirmary placement, had no relation to the conditions she ultimately developed by February 7, 2017. Ms. Ryan would have become neutropenic no matter where she was placed in CDOC due to the effects of her ongoing chemotherapy treatments. In addition, the source of the Influenza A and the abscess on her finger have not and cannot be determined. Ms. Ryan could have contracted the virus and the infection in her finger while at ARMC.

24. Ms. Ryan returned to CDOC where she was admitted to the infirmary on February 16, 2017. *See* Def. Exh. B, CDOC001129.

25. Ms. Ryan received an autologous stem cell transplant in May of 2017.

Dated: January  23 , 2020.

*Susan M. Tiona, M.D.*
_____
Susan Tiona, M.D.