# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No.     18 – cv – 00956 – MSK-MEH

**SHAWNEE RYAN, Plaintiff**

**V.**

**Defendants:**
**CORRECTIONAL HEALTH PARTNERS (et al) (dba Correctional Health Partners,**
**Inc.; Physician Health Partners, Inc.)**

**DR. JENNIFER MIX, M.D.  (personal and professional capacity)**
**HILARY VICTOROFF N.P.  (personal and professional capacity)**
**LAURA SOMMERSCHIELD N.P. (personal and professional capacity**)

## PLAINTIFF'S REPLY TO CHP DEFENDANTS "ANSWER TO 5TH AMENDED COMPLAINT AND JURY DEMAND"

**Plaintiff Shawnee Ryan, comes now with reply to (ECF195) CHP Defendants:**

**CERTIFICATION OF COMPLIANCE:**
Plaintiff hereby certifies, under D.C. COLO.L.CIV.R 7.1 that she has, from March 23, 2019 to current day, conferred, repeatedly, with CHP Defendants over her statements made within this reply and done so in multiple formats of production of discovery, directly, audio, video and written. Also engaged in multiple discussions spanning five discovery hearings that have left behind clear record documentations of the entire path of discovery in this case to date.  Plaintiff has documented, from CHP Defendants over the past 60 days, a near complete ignoring of her further attempts to confer, produce discovery and gain any type of forward movement for this suit.  Therefore, until such time as the court sets the parties into formality hearings dispositive and pre-trial; Plaintiff certifies that she believes there will not be seen any other movement from CHP Defendants toward Plaintiff other than adversarial. She certifies under penalty of perjury that this statement is truthful and that she has fully documented her obligations to try.

1

## PRELIMINARY TRUTHFUL STATEMENTS OF INFORMATION AND STATEMENTS OF VERIFIED FACTS

**There has been a great deal of coloring of this case, from all parties, resulting from the nearly 8 months of issues attempting to achieve production of the entirety of Plaintiff's CDOC records spanning her six years of incarceration.**

**As the recent decisions and movements of Plaintiff**, to remove the core of the problem(s) above into other legal remedies, was granted by the Senior Court on November 14, 2019; what is left, is a compilation of 'lost sight' of the combined simplicity of the two primary questions of the suit that have always been present and that interface as federal and state questions of jurisdiction and law.

Also compounded by being the first known case, at least within the 10th US District, to also interface with new, untested federal law, signed into law by federal and state in 2014.

Another complexity facet of the case is that it is also a very rare Colorado prisoner suit that encompassed six years of medical care, an estimated 5 million dollars in taxpayer medical costs, a fact-based complex and uncommon fatal medical diagnosis that houses 95% of those 5 million dollars in voluminous medical and fact records <u>that are not held and controlled by the CDOC.</u>

Outside community specialists provided *all* hands-on healthcare, retain all physical records and upon Plaintiff's release to parole; she now holds controls of the physical records themselves; not just the information within the records.

Following its historically long-standing internal culture of employee behavior and practices, combined with their well-known standard of internal stream-lined standard of medical care; that internal culture of the CDOC rarely even bothered to gather over the six years any type of regular medical records from the outside community. Plaintiff was an intelligent, capable and well-behaved inmate that basic operations did not interface with very often. Often, what was gathered as copies, was also so far above CDOC staff's training ability to even read or understand what they were looking at, the records they did gather remained unusable to CDOC staff without the aid of outside specialists to decipher them.

Case No. 1:18-cv-00956-MSK-MEH   Document 197   Filed 11/22/19   USDC Colorado   Page 3 of 20
Case 1:18-cv-00956-MSK-MEH   Document 226-3   filed 01/31/20   USDC Colorado   pg 3 of 20

71  **Creating now, during legal court processes**, a "complexity" of a dilemma for
72  Defense: 'If' reliance is going to be solely on *what they can control*; they are then
73  left with nothing but very sparse and very limited medical, administrative and
74  physical facts.  **In order to defend**, **they must obtain and know** the complete
75  records and cannot simply rely on (quoted from all defense to record to date):
76  "but we have always done it this way."
77
78  **Plaintiff's records, which are *unprecedently*** outside the unilateral controls of the
79  CDOC and CHP Defendants, in that, the patient records themselves
80  (Plaintiff/felon/prisoner/parolee) (and) her long-standing outside in society
81  medical caregivers house and control <u>the only full trail of medical, administrative</u>
82  <u>and financial records in existence</u>.
83
84  To Plaintiff's knowledge, neither set of Defendants have ever faced their dilemma
85  now of 'not having' 'absolute control' over a "prisoner" concerning alleged
86  medical realities that are fact-based (vs) the correctional style of internal record
87  keeping that is *always* employed and commanded by the CDOC Clinical Services
88  department and culture it operates within.
89
90  **An issue now being further compounded** by both sets of Defendants themselves,
91  in that, <u>no defense counsels have discovery availed themselves of gathering those</u>
92  <u>voluminous records they were given access to.</u>
93
94  **Opting instead, to place their entire strategies of defense into running out the**
95  **clock, the patience of the Plaintiff and likely the near future patience of the**
96  **court for the: "one egg" in the basket strategy offered by their collusion with**
97  **State AG, her client and the AG's selected CDOC records.**
98
99  <u>**As of Nov. 19, 2019**</u>**; Plaintiff has <u>again</u> rechecked all of her outside records to**
100 **verify that still, not a single access has been made, by any defense, with the**
101 **exception of Aurora South Hospital by the State AG.**
102
103 Therefore, when Defense Counsels all swear to the Court, that "Plaintiff's medical
104 records" allegedly "…speak for themselves..." *they are referring only to what they*
105 *have chosen to discover, hold knowledge of, and view*.
106

3

107 Which consists in entirety, as the previously at-issue State AG gathered CDOC
108 records which Plaintiff has not been allowed by the State and the non-party CDOC
109 to touch or access on her own at any time within this suit.
110
111 **As a result, this suit, just on its face, has not seen a single area of defense**
112 **investigation to date into its core questions; let alone the depth just its sheer**
113 **size requires.**
114
115 All the 'words' of defense counsels will remain impotent until they learn the case
116 by accessing all discovery.
117
118 All parties are "where they are" now as clock runs out and nothing but trial
119 preparations remain.
120
121 **To Plaintiff's knowledge, information, belief and first-person experience with**
122 **the entities involved (spanning 6 years);** there has never been an inmate case of
123 receiving so much outside care, at such high taxpayer cost, *with so very little*
124 *actual medical care provided by internal staff of CDOC*.
125
126 Resulting now, in the legal environment of this suit as over 95% of all evidence
127 being outside the control of the CDOC/State AG and CHP Defendants (and) rather,
128 in "the control" of the patient/Plaintiff and outside medical community specialists
129 and specialized medical entities. All of which appear to be, being strategically
130 consciously ignored by defense counsels and the CDOC.
131
132 **Whether or not the new federal and State Medicaid laws remain intact**
133 **politically and herald in new eras of 'Prisoner lawsuit controls' is of no concern**
134 **or scope, nor a matter of law anywhere on any level; of the Plaintiff and this**
135 **case.**
136
137 - **That path of outside vs internal** is what was always the adversarial premise
138   of Plaintiff's six years of daily incarcerated medical life.
139
140 For anyone with any knowledge whatsoever regarding how correctional medical
141 care and operations actually operate on a daily basis; that fact presented a huge
142 complication of operational care spanning those six years.
143

4

144  With repeatedly, correctional care attempting to strip away Plaintiff's outside
145  care and 'conform' her unusual medical needs into solely their control. Only
146  being stopped, repeatedly, by *Plaintiff's enforcement of her criminal sentence* in
147  that she had *not* been given a sentence of death and would be releasing to
148  freedom. Without outside specialty care, she would for certain: not only die, but
149  quickly die.
150
151  **The extreme strengths and unilateral power and internal culture of the CDOC**,
152  would have prevailed in denying, stripping, obstructing *all* adequate care if not for
153  Plaintiff and her outside medical care support, with an extremely small minority
154  of internal CDOC M.D.'s; stopping that from happening.
155
156  **Only the Plaintiff held the power to enforce every inmate right and remedy she**
157  **had**, which, for an inmate, actually results in "near-hatred" of their person by the
158  majority of CDOC medical, security and administrative staff. An inmate who does
159  not just "go along" is treated with the lowest, sub-human regard and leads a life
160  of what could be described as 'living hell' and personal isolation.
161
162  Only the Plaintiff, if she wished to live through the circumstances she found
163  herself in; could find and eventually use as legal action every single means of
164  administrative process just to enforce the care she needed to stay alive long
165  enough to release. In some ways, the animosity being shown by the State Ag to
166  date in this case is a continuance of the same pattern of behaviors that the CDOC
167  uses daily over all inmates. The use of force and unilateral control through
168  power, treatment of a human being and their inherent rights may be a highly
169  effective means of breaking human strengths of will. But, for some human
170  beings, that type of choice then falls solely to them and sparks instead, a will to
171  live.
172
173  - **The "medical records" "that speak for themselves" of this human being,**
174    **are undeniably *all* of her CDOC records *and* her outside records that**
175    **expose that hard and very long path leading to this case today.**
176
177  **Outside medical community specialists provided, for 6 years, all of the near**
178  **daily and always weekly, hands-on care of Plaintiff.**
179

5

180  CDOC Clinical Services provided *minimal to often no assigned care* for diagnostics
181  and treatment during the same span of time; *which their records, whether*
182  *selectively chosen now or seen in entirety, do reveal.*
183
184  A fact, that which, as a dismissed from liability 'non-party' renders them now as
185  completely irrelevant to due process.  They are dismissed.  Period.  They are now,
186  *witnesses holding the most knowledge.*
187
188  The Clinical Services Department of the Colorado Department of Corrections,
189  once diagnosis was made in 2013, became and continued for six years, *as solely*
190  *support care under the direction of external care*. The choice the CDOC was always
191  forced back around to make; was to have the death of Plaintiff on their hands (or)
192  provide mandatory symptomatic and palliative care to keep her alive until
193  release.
194
195   The CDOC and all of its departments have no debate in this case nor does the
196  State AG represent that 'non-debate'. There was, at their dismissal for immunity
197  and prior to all the past 8 months of drama, a simplicity in those facts that was
198  'forgotten' until now.  Until Plaintiff's recent choices returned simplicity to the
199  proceedings of this case.
200
201  - *The increasing over the years, as now undeniable seen within medical*
202    *records reality,* of Plaintiff's care needs being so complex and so high risk
203    that *every* medical employee or internal contract medical employee within
204    the CDOC Clinical Services simply was far surpassed in ability of training,
205    skill and knowledge to even come close to handling; *is not a personal*
206    *condemnation of any individual*.  **It has always been, and remains; a cold,**
207    **hard statement of reality-based fact, that there were simply none skilled**
208    **enough to keep pace with the rapid rises and falls of Plaintiff's blood**
209    **levels, let alone able to keep her alive for six years.**
210
211  This suit brings forward only one defendant claim of a near-death experience
212  allegedly caused due to such alleged lack of skill, practice, personal will of the
213  employee and personal knowledge of the employee.
214
215  **In a *res gestae* reality**, Plaintiff endured four, as well documented, life
216  threatening and near-death events, from 2014 through to 2017, brought on

6

allegedly solely due to CDOC Clinical Services staff allegedly refusing to obey specific orders of necessary to life specialized care.  **That even in the selective portions of State released records now; both CDOC defendants and CHP defendants** *could view without seeing any further records* **from any source**. They are just so absorbed in the State's "one egg" in the basket strategy; **they lose sight of** *where to look within what they have in front of them while combining that refusal with no interest extended to the other side that they are up against. One damning blood lab, dated February 6, 2017 is not the only thing buried all along and deep within the records right in front of them.*

- **Complexity further compounds:  by the choice now of maintainting unilateral control that the Colorado Department of Corrections and its outside insurance and care approval vendor, in the CHP Defendants; claim to have over all inmate medical records (and) the questions of what can, and supposedly cannot, be seen of business conduct, policies, training, compliances to legislation, law and multiple levels of standards**.

**To date, this case has also encountered** what seems to be[1] an unprecedented discovery 'reluctance' from the CDOC to provide, through the State AG, full and complete records of not only all Plaintiff's six years that they do hold; but also all records of discovery concerning the workings of their relationship over same span of time with CHP Defendants. Which CHP Defendant's counsel naturally capitalize on as an affirmative defense.

**With the above stated, the questions within the suit itself are only being made to be complex.**

**In reality, Plaintiff, from (ECF 51) forward, learned to present the case as it is seen today and stands by it as being quite simplistic:**

- **"Was there, or was there not, a long-standing standard of symptomatic, palliative (and) necessary to life care recognized standard, for Plaintiff's diagnoses, that had been made very clear by external care providers and specialists as necessary for her to not only live but to have in order to not**

---

[1] Multiple statements referring to "we have never had this happen before"; "never seen this before"; made by defense counsels and the Magistrate Court to record.

7

251 **sustain further injuries and physical damages"? "Was she, or was she not,**
252 **provided that care as it was ordered and needed"?**
253
254 **As the answer to the questions above are:** "Yes, they were made clear as needs
255 and were ordered for survival" and "No, she was not provided the care"; the
256 resulting adversarial relations became so entrenched and long-standing (6 years)
257 between Plaintiff, CDOC, CHP and Clinical Services: they ended up, many times
258 over, having to be forced into compliance simply in order for Shawnee Ryan to
259 remain receiving care that only outside medical could provide.
260
261 That adversarial nature, it is arguable, should have ended upon her release to
262 parole. Which, it did. **Until she had the undeniable physical needs arising to**
263 **face that form the foundation of this need to sue**. *And continued to "have the*
264 *audacity"* to confront the Goliath of the Colorado Department of Corrections and
265 the CHP Defendants, out of that now contained necessity to be able to care for
266 her physical alleged damages.
267
268 - **The point, in this long-winded and winding statement of "simplicity":** is
269 that 'adversarial', 'blame' and allegedly long-standing corrections
270 dysfunctions have become the smokescreens of defense counsels in this
271 case. **Never once, at any time, has the simplicity of the primary state**
272 **question spoken above ever been changed within this lawsuit. Despite**
273 **five amendments; the questions of the suit have never changed or been**
274 **added to.**
275
276 Plaintiff removing, as of November 14, 2019, the smokescreens, drama, personal
277 feelings of the CDOC and CHP Defendants; there really is, only the very simple
278 point above left to answer.
279
280 That simplicity is what the Plaintiff now states again, hopefully clearly enough
281 now for the CHP Defendants to hear; is what she intends to continue to shake out
282 and proceed to a jury with, in order to answer the question of whether or not
283 liability exists.
284
285 - **The even more simplistic question of this case has been, and remains as**
286 **the federal question of law and jurisdiction:** "Was there, or was there not,
287 from January 1, 2014 (to still in effect current day) Medicaid catastrophic

8

inmate coverage under Title 42 Public Health and Welfare, Chapter 6A; specific to AHCA Inmate Catastrophic Medicaid Provision (incorporated into Colorado law) as HCPF14-006, that was available and that Plaintiff met all requirements for, that held approval and coverage of the bone marrow/stem cell transplant that she needed and was first ordered to have in August of 2014 as second phase necessary care?" "Was that coverage, despite verified fact as both CDOC and CHP Defendants[2] being fully aware of and in the power to provide; received by the Plaintiff"? "Did it or did it not, take over four years of repeated denials, solely by CHP Defendants working (or not working) with the CDOC over the government controlled Medicaid covered care, before that law was obeyed and Plaintiff finally was given an unobstructed and free path forward to second phase transplant care"? "When that transplant was finally given, was or was it not, the exact same Medicaid coverage used, that had been available since the law went into effect in 2014 (and prior to) four years delay and 43 rounds of intensive, aggressive chemotherapy drugs"?

**In Closing Statement Summary:**

**The time, for this case to return to those simple basic questions <u>that are the entirety of this lawsuit,</u> arrived on November 14th, 2019 with the Senior Court granting Plaintiff's movement against the State AG and her client (and) this suit's 5th Amended Complaint.**

**There is now, no further ability for refusals to produce or attempted theories of defense that are utterly and completely lacking in any relevance whatsoever, to the stated within this case (5th Amended ECF184) remaining scope of the Court and remaining Parties.**

**All there is left, is the simplicity and the benefits, of having nothing left to work from going forward now, other than cold, hard, factual medical and scientific discovery of facts (and) the simplistic wording of the legislation and jurisdiction Rule of Law within the Medicaid catastrophic inmate coverage, under Title 42 Public Health and Welfare, Chapter 6A; specific to AHCA Inmate Catastrophic Medicaid Provision incorporated into Colorado law as HCPF 14-006.**

---

[2] CDOC within Clinical Nurse Case Mgmt records of a hospitalized cardiac event Nov 2014 (and) CHP as a "CDOC Provider Manual" (in part) pg 5 and Appendices.

9

- **The only relevant human factor left, is the following blatantly obvious, yet still seeming to escape Defendant Counsels, singular unequivocal fact:**

*Shawnee Ryan was incarcerated* for the entirety of the raging 6 years of adversarial conflicts between the CDOC, the CDOC Clinical Department(s), the CHP Defendants, the outside care providers (and in fairness, as they will be heard from at trial) a small minority of medically competent board certified licensed MD's employed or contracted internally by the CDOC.

- *While allegedly the same, all learned, allegedly at her expense of need, "how" to work within the new federal and state laws that all legislators threw out as a huge financial boon to the entire nation, with nearly zero instructions of law to go along with, on 'how' to incorporate the law into federal and state correctional operations.*

Defendants are indefensible in the light of that one fact.

Shawnee Ryan did not, could not, 'walk' to, or 'set up' or 'provide her own' treatments and medications or 'leave' to take care of herself.

**At all times, she was the one person amongst all their in-fighting, who actually *had nothing to say about* the level of care she was told she 'needed in order to live' 'given' or 'received' or was 'approved for' or 'denied to have'; as she, at all times, was unilaterally subjected, complete with 24/7 CDOC and outside contracted guard in a MAX 5 secured complex, and then 18 solid months of isolation in an air-protected infirmary single cell, shackles, chains, handcuffs, fluorescent colored clothing, paraded through public displays of clinics and hospitals multiple times per week spanning 6 years, security transports, cells, mandatory schedules of operations and mandatory orders:    to the will, authorities and scopes of responsibilities of her district court ordered Guardian** and its mostly unsupervised individuals in control over her; the Colorado Department of Corrections. **And, its business relationship with the private, corporate, contractual, for profit scope of the CHP Defendants.**

The only thing "Shawnee Ryan" is "guilty of" and "carries the 'blame' for" was her personal desire to live until she could be released to personal freedom.  All she ever did was decide to stand up and then somehow manage to stay standing.

10

Case No. 1:18-cv-00956-MSK-MEH Document 226-3 filed 01/31/20 USDC Colorado pg 11
Case 1:18-cv-00956-MSK-MEH Document 197 Filed 11/22/19 USDC Colorado Page 11 of 20
of 20

**In a correctional health environment, after being told, less than one year into a 12 year sentence, in November 2013 of her fatal diagnoses; with the following exact words by a registered nurse holding only mid-level training and limited prescription writing ability named Hilary Victoroff[3]: "Ryan, you're dead in 6 months".**

**That accomplishment of survival was even more rare than what any prisoner facing extreme catastrophic medical needs in a correctional healthcare environment face.**

---

[3] November 2013, witnessed and verified through administrative processes, including the resulting Warden's emergency intervention through the grievance process in March 2014 that then removed Hilary Victoroff and assigned an internal MD by the name of Dr. Adelina Longoria. Contained within the multiple dozens of Administrative Processes still remaining to be produced by the non-party CDOC.

11

**PLAINTIFF REPLY TO CHP DEFENDANT'S ANSWER IS AS FOLLOWS:**

**PARTIES**

1. Plaintiff holds to her sworn statement that all of her personal and contact information given is truthful and that she is the Plaintiff within this lawsuit.

2. Plaintiff holds to her sworn statement at time of filing regarding her experiences involving the contractual and business relationship of the CHP Defendants to the Colorado Department of Corrections. She makes no changes or concessions otherwise.

3. Plaintiff holds to her sworn statement at time of filing regarding her experiences involving and regarding Dr. Jennifer Mix M.D., her knowledge of the relationship between Dr. Mix and her employer in Correctional Health Partners, Inc. and Physician Health Partners, Inc. She makes no changes or concessions otherwise.

4. Plaintiff holds to her sworn statement at time of filing regarding her knowledge and experiences regarding Registered Nurse Practitioner Hilary Victoroff. She makes no changes or concessions. Plaintiff does add that the CHP Defendants scope of litigation within this lawsuit, does not have, in any way, a connection or tie to the claims against Defendant Victoroff other than of their own imagining and making.

5. Plaintiff points to the following Court change regarding Claim #5, in that at the request of the Plaintiff (ECF 186) the claim is dismissed. Going forward, any further engaging or referencing to the issues and productions by the State within the claim, by CHP Defendants, is inappropriate and without legal ground.

6. Plaintiff points to the following Court change regarding Claim #6, in that at the request of the Plaintiff (ECF 186) the claim is dismissed. Going forward, any further engaging or referencing to the issues and production by the State within the claim, by CHP Defendants, is inappropriate and without legal ground.

12

7. Plaintiff holds to her sworn statement at time of filing regarding her knowledge and experiences regarding formerly employed by CDOC Registered Nurse Practitioner Laura Sommerschield. She makes no changes or concessions. Plaintiff does add that the CHP Defendants scope of litigation within this lawsuit, does not have, in any way, a connection or tie to the claims against Defendant Sommerschield other than of their own imagining or making.

## JURISDICTION AND VENUE

Plaintiff replies as to the Jurisdictions and Venues of this case being approved, with that approval holding, over the span of ten months of administrative review and another 9 months now of litigation. She has made no changes or concessions, other than attempt to joinder state negligence law to all parties. An attempt denied in part and granted in part by the Senior Court and that is currently pending a filing of information and objection reply by the Plaintiff.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
### Negligence

Plaintiff replies as to her claims within First Claim as being factual and truthful. At this time, while acknowledging she must answer her objection to denial directly to the Senior Court; she states that the clouding of the discovery in this case to date, at the time the Senior Court ruled within (ECF 183) appears to have separated some of the solid allegations that do hold offers of proof; such as first-hand witness Dr. Rishi Ariola-Tirella's encountering Dr. Mix, CHP and former CMO Tiona personally passing a personal email through the CDOC and CHP business channels, to multiple parties, strongly personal denigrating the Plaintiff and discussing at length how they would continue to deny transplant for Plaintiff and "never giving her one". CHP Defendants have been aware all along that this case to date holds Dr. Tirella's impressions and feelings over that event and that he is being subpoenaed to testify in person at trial. The foundation of state negligence law, in part, must show personal will and/or wanton and intentional behavior that physically could put the individual within a zone of danger and/or inflict physical harm. It is also, Plaintiff will raise, only necessary to provide enough

13

466 factual evidence (or) existence of factual evidence that a triable question is
467 present and not argue the negligence claim(s) on their face at the time of joinder.
468 At this time, Plaintiff only concedes that the First Claim for Relief, Negligence;
469 pends.
470
471 **SECOND CLAIM FOR RELIEF**
472 **Violation of the 8th Amendment**
473 **Deliberate Indifference to a Serious Medical Need**
474
475 Plaintiff holds to her sworn statement at time of filing. She makes no changes or
476 concessions otherwise.
477
478 **THIRD CLAIM FOR RELIEF**
479 **Violation of the 8th Amendment**
480 **Deliberate Indifference to a Serious Medical Need**
481
482 Plaintiff holds to her sworn statement at time of filing regarding her experiences
483 involving and regarding Dr. Jennifer Mix M.D., her relationship with her
484 contracted employers in Correctional Health Partners, Inc. and Physician Health
485 Partners, Inc.  She makes no changes or concessions otherwise.
486
487
488 **FOURTH CLAIM FOR RELIEF**
489 **Violation of the 8th Amendment**
490 **Deliberate Indifference to a Serious Medical Need**
491
492 Plaintiff holds to her sworn statement at time of filing regarding her knowledge
493 and experiences regarding Registered Nurse Practitioner Hilary Victoroff.  She
494 makes no changes or concessions.  Plaintiff does add that the CHP Defendants
495 scope of litigation within this lawsuit, does not have, in any way, a connection or
496 tie to the claims against Defendant Victoroff other than of their own imagining
497 and making.
498
499
500
501
502

14

Case 1:18-cv-00956-MSK-MEH   Document 226-3   filed 01/31/20   USDC Colorado   pg 15 of 20

## FIFTH CLAIM FOR RELIEF
## Violation of C.R.S. 12-38-117

Plaintiff points to the following Court change regarding Claim #5, in that at the request of the Plaintiff (ECF 186) the claim is dismissed.  Going forward, any further engaging or referencing to the issues within the claim, by CHP Defendants is inappropriate and without civil legal grounds.

## SIXTH CLAIM FOR RELIEF
## Violation of HIPPA

Plaintiff points to the following Court change regarding Claim #6, in that at the request of the Plaintiff (ECF 186) the claim is dismissed.  Going forward, any further engaging or referencing to the issues within the claim, by CHP Defendants is inappropriate and without civil legal grounds.

## SEVENTH CLAIM FOR RELIEF
## Violation of the 8th Amendment
## Deliberate Indifference to a Serious Medical Need

Plaintiff holds to her sworn statement at time of filing regarding her knowledge and experiences regarding formerly employed by CDOC Registered Nurse Practitioner Laura Sommerschield.  She makes no changes or concessions. Plaintiff does add that the CHP Defendants scope of litigation within this lawsuit, does not have, in any way, a connection or tie to the claims against Defendant Sommerschield other than of their own imagining or making.

## PREVIOUS LAWSUITS

Plaintiff holds as to her statements being truthful, forthcoming and fully accurate.  She makes no changes or concessions.

## ADMINISTRATIVE REMEDIES

Plaintiff holds as to her statements and disclosures regarding administrative remedies and their history within this case as being truthful and accurate.  She further continues to point to the vast (multiple dozens of administrative

15

processes and all coordinator's and administrative logs spanning two facilities and four different coordinators) being refused to be produced by the CDOC through State AG Amy Colony. Fact-based is now closed. The State's scope has rapidly been condensed down to closure and the CHP Defendants remain refusing to access their own CDOC records; Plaintiff assumes due to their lack of desire to be associated to State AG with regard to CDOC records now finalized. Plaintiff holds, with no concessions, in all areas of administrative remedies that she met all obligations.

## REQUEST FOR RELIEF

Plaintiff holds, with no changes or concessions to all of her requests for relief; with the exception of Claims #5 and #6 civil liability claims against Defendant Victoroff, which have been dismissed at request of the Plaintiff (ECF 186) in order to consolidate them elsewhere to alleged criminal liabilities.

## GENERAL DENIAL, DEFENSES AND AFFIRMATIVE DEFENSES

1. Plaintiff replies that her statement of claims upon which relief can be granted or awarded by jury are solid as triable.

2. Plaintiff replies that her statement of claims rise to levels of constitutional and statutory violations and are solid as triable pursuant to 42 U.S.C. 1983. She makes no changes or concessions.

3. Plaintiff replies that the breadth and extent to date, of CHP counsel's (documented) outright refusals to produce viable and valid as discovery documents and proofs; utterly and completely deface their statement now of "lack of personal participation". The only "lack of participation" has been done by what continues to be denied from view. Their further claims of having no association in any way with the standards, policies and processes of their clients: the Colorado Department of Corrections. Yet, claim "penological" purposes and ability when being sued is solidly a contradiction that strongly smacks of being disingenuous in nature. Cannot have all ways. Plaintiff therefore holds to her sworn statements at time of filing and makes no changes or concessions.

16

4. Plaintiff holds to all claims of injuries and damages she has made and all are fully contained within extensive medical fact records. All medical records. She makes no changes or concessions.

5. Plaintiff replies as to the obvious: she is claiming *ongoing* economic damages and the case timing is not yet arrived at ripe to mitigate. Plaintiff further replies that the extensive discovery that CHP Defendant counsels refuse to date to part with are going to be a significant deterrent to *the eventual ability* to mitigate and will require court intervention if the refusals to produce continue.

6. Plaintiff holds to her statements at time of filing as being fully disclosed and truthful. She makes no changes or concessions.

7. Plaintiff disagrees, holds and makes no changes or concessions. As to intent of CHP Defendants, that is why she remains requesting a Jury to determine intent, against all actions of the CHP Defendants; after hearing all of this case at trial.

8. Ten months of administrative review, through multiple judges, determined what was barred and what holds within the Prison Litigation Reform Act, 42 U.S.C. 1997 et seq. Plaintiff's claims remaining holding as triable.

9. Plaintiff disagrees that any of her claims are barred, limited or controlled by C.R.S. 13-17.5-102.3. In part, due to the straddling of multiple fences between corporate, private, for profit, correctional and healthcare compliances and statutory obligations that CHP Defendants and their one single owner, spanning multistate jurisdictions publicly engage in.

10. Plaintiff holds and makes no changes or concessions to the reliefs she is entitled to.

11. Plaintiff holds CHP Defendants, to full accountability and liability under all claims she has presented and makes no changes. She also, continues to not concede to what again arises now as Attorney Ringel's conspiracy theories of Plaintiff as a "convicted felon", her family and her friends as the loved ones of a "convicted felon".

17

12. Plaintiff continues to hold, to the fact that as of November 19th, 2019 the CHP Defendant counsels have not availed themselves of a single area of the voluminous wealth of medical, administrative and financial, to the tune of nearly 5 million dollars in cost incurred by taxpayers, records that are solely under the controls of a very long list of outside medical community providers and the Plaintiff. Which, CHP Defendant Counsels have had full and complete access to since early June 2019. Therefore, the statement made now by CHP Defendants is utterly and completely false as they "have no proof either seen or in hand" of what they just swore under oath to the court.

13. Plaintiff responds as, she is certain, that when this case finally arrives at mitigating levels; the damage amounts will be legally and rightfully determined by the standards of law, the court and eventually the jury.

14. In order to avoid a personal rise of emotion when thinking of any aspect of her direct personal experiences regarding the conduct of CHP Defendants; Plaintiff simply states that she disagrees. Makes no changes or concessions to her recitations of her experiences to date.

15. When dispositive determines, or, a trial by jury determines whether the entirety of the way the CHP Defendants conduct themselves personally, professionally and whether the theory of "penological" vs a single owner, private, for profit corporate entity spanning multistate jurisdictions; Plaintiff is certain all parties involved and the court are capable of determining whether or not CHP Defendants are entitled as claimed, to protections as claimed.

16. Plaintiff replies that a good deal of energy has already been devoted to date, to Attorney Ringel's "conspiracy theory" of a "convicted felon" attempting to "get rich" "off" "of CHP". **Again**, she soothes Attorney Ringel with the following fact: The "…surviving heirs and estate..." alongside of "Plaintiff" in the original header of (the utterly complete mess of ECF 1) ***is, was, and remains nothing more than a copied from a law library book at DWCF titled "Prisoners Litigation Manual".*** And, that Attorney Ringel can absolutely lay his mind to rest that the court has already avenged his indignation by simply reviewing Magistrate Gallagher's, <u>immediate right out of the gate pounce</u>

18

Case 1:18-cv-00956-MSK-MEH Document 197 Filed 11/22/19 USDC Colorado Page 19 of 20

upon Plaintiff as to her not having the faintest idea of what she was doing and there being no such ability for her to plead as written. One of his more colorful declarations, amongst numerous patience showing statements made to Plaintiff, spanning the ten months of their relationship.

17. Plaintiff replies that ten months of administrative review, through multiple judges, removed what passed limitations (and) what did not. She makes no changes or concessions.

18. Plaintiff replies that indeed, 'if' all CHP Defendants actions and corporate practices (once they finally become revealed) are above board, legitimate, within all statutory and constitutional law; they 'could' rely upon protections within law. The same as Plaintiff 'could' rely upon protections within law.

19. Plaintiff replies that she submitted for Leave to File punitive, with the Senior Court in this case and has been granted. She makes no changes or concessions and acknowledges all parties now move to the arena of trial in order to determine the validity of her claims (and) the validity of CHP defenses.

20. Plaintiff replies: as does she.

**Plaintiff Shawnee Ryan, finds nothing within the Answer to 5th Amended, from CHP Defendants now, nor within same's answers to previous amendments in the past, nor within same's path of filings to date during litigating to date, nor nothing within same'sr productions of discovery except for solid validations to Plaintiff's claims made; that sway her in any way to anything other than her demand remaining the same:**

**Plaintiff Shawnee Ryan remains respectfully demanding a full trial by jury, on all claims, and stands on her requests for reliefs as stated.**

Respectfully submitted this 22nd day of November 2019.
S/Shawnee Ryan
11309 West Exposition Drive
Lakewood, Colorado 80226
720-431-8319    shawneeryan216@gmail.com

19

**CERTIFICATE OF SERVICE**
I have served a complete and full copy of the foregoing via CMECF to the parties below on this 22nd day of November 2019.


S/Shawnee Ryan
11309 West Exposition Drive
Lakewood, Colorado 80226
720-431-8319
shawneeryan216@gmail.com



Clerk of Court:  cod_cmecf@cod.uscourts.gov


Andrew David Ringel:  ringela@hallevans.com
Edmund Martin Kennedy:  kennedye@hallevans.com
Amy Colony:  acolony@coag.gov

20