**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No.    18 – cv – 00956 – MSK-MEH

**SHAWNEE RYAN, Plaintiff**

**V.**

**Defendants:**
**CORRECTIONAL HEALTH PARTNERS (et al) (dba Correctional Health Partners, Inc.; Physician Health Partners, Inc.)**

**DR. JENNIFER MIX, M.D.  (personal and professional capacity)**
**HILARY VICTOROFF N.P.  (personal and professional capacity)**

---

**PLAINTIFF MOTION UNDER F.R.C.P. 37, FOR SANCTIONS on GROUNDS OF FAIL TO COOPERATE IN DISCOVERY against ATTORNEY ANDREW RINGEL AND ATTORNEY EDMUND KENNEDY**

---

Plaintiff Shawnee Ryan comes now and certifies as follows:

**\*\*\*Plaintiff certifies that any and all mentions of discovery related issues have been met with all compliance to confer by Plaintiff from the dates of May 29th through to January 16, 2020.  Further certifies compliance has been met to bring any difficulties to the Magistrate Court for attempts at resolution.  As to any reference to "Kellie Wasko" within this filing for sanctions; Plaintiff certifies hers is a truthful statement as to when and how she was told by Attorney Kennedy and Attorney Ringel regarding the discovery information supplied by Kellie Wasko was in their Exhibit A-1 on January 17, 2020.  And that Kellie Wasko is, since August 26, 2019, now a high position holder within the hierarchy of Correctional Health Partners et al.  Attorney Kennedy and Attorney Ringel sat, by their own admission in their filing at (ECF 217, 218, 219) (exhibit One attached) without disclosing her presence and ability to be examined. From, at minimum, the date of August 26th, 2019 (and) in full awareness since ECF132 filing date (at minimum) of the significance of Kellie Wasko to all issues surrounding CDOC discovery.**

Plaintiff Shawnee Ryan comes now and moves as follows under F.R.C.P. 37 (and) 403:

## Movement for Sanctions

**Authorities:**

- **F.R.C.P. 37:**  Failure to Make Disclosures or to Cooperate in Discovery
    1. (a) …Compelling Disclosure or Discovery: (3) (iii) a party fails to answer an interrogatory submitted under Rule 33.
    2. (4)  Evasive or incomplete disclosure, answer or response:  For purposes of this subdivision (a) an evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer, or respond.
    3. (b) failure to comply with a court order. (1) (A) For not obeying a discovery order:  If a party or a party's officer, director, or managing agent, or a witness designated under Rule 30(b) (6) or 31 (a)(4) fails to obey an order to provide or permit discovery, including an order under Rule 26 (f), 353, 0r 37 (a); the court where the action is pending may issue further orders.  They may include the following:  (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence…(vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
    4. ( c) Failure to Disclose or Supplement:  If a party fails to provide information or identify a witness as required by Rule 26 (a) or ( e), )supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless….

- **F.R.E. 403:** Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time or Other Reasons:
    - ➢ The Court may exclude relevant evidence of its probative value is substantially outweighed by a danger of one or more

2

              **of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay…**

**Grounds:**

A.  The CDOC was dismissed from this case, on grounds of holding governmental immunity on February 1, 2019 at (ECF52) (Attached Exhibit Two). Yet, there is existing, from the date of March 23, 2019, verified trail of the non-party placing themselves squarely into involvement in this case. With a disputed trail of involving themselves, beyond normal functions of releasing prisoner discovering to State AG, and now to present day with the statement of former Deputy Executive Director (the #2 position in the State) Kellie Wasko giving sworn testimony in this case.  Specifically involving themselves beyond the normal in this case of Shawnee Ryan.

B.  The record in this case, holds a very clear trail of documentation that reveals the Plaintiff providing solid disclosures that her CDOC discovery that was being allowed into play between the parties was grossly incomplete and contained both inaccurate and evasive information.  A problem, not of Attorney Kennedy and Attorney Ringel's making as the problem(s) fall solely upon the shoulders of the State AG's office.  Which is, currently, entering into a separate motion for sanctions on same grounds as this motion but with the addition of spoliation of discovery now that we have the awareness and testimony of Kellie Wasko on record.

C.  The CDOC discovery of the Plaintiff is especially critical to be complete and fully accurate in this case due to the unequivocal fact that over 95% of the Plaintiff's medical needs in question here, spanning 6 years of incarceration; were fully and completely handled by outside in the community, assigned by CDOC medical specialists.  Thus, there are two very distinct and very separate sets of medical and inmate and administrative records that all fall under the title of records and discovery.  The trail within court record now is crystal clear that Plaintiff has raised numerous issues, numerous times, with actual verified disinforming done by the State AG to record that specifically deny the truthful realities of how the CDOC operates.  And specifically, 'how' they operated in the case of Plaintiff Shawnee Ryan. Verifications that so far, could not be substantiated enough

110    to override the Magistrate Court's decision to remain loyal to the "word" of
111    the State AG and the CDOC over the "word" of the Plaintiff. Compounding
112    the problem of verification being that each and every time Plaintiff
113    attempted to set up deposing; she was halted by Attorney Kennedy,
114    Attorney Ringel and Attorney Colony as "not meeting the standards"
115    surrounding taking a deposition.  When, in fact, Plaintiff was simply
116    following her knowledge combined with the Magistrate Court's statement
117    when asking her if she knew how to take a deposition: "just get a room.
118    Get a tape recorder. Turn it on in middle of a table.  Get them sworn in.
119    And ask your questions." **Which in essence is exactly how it is done.**
120    **Unfortunately, the 10th District does not fund its Pro Se Clinic to have**
121    **enough space for a "room".  And being forced (their offering) into**
122    **Attorney Colony, Attorney Ringel and Attorney Kennedy's offices is not**
123    **conducive to impartiality of an environment. Problem of that due to**
124    **Attorney Colony interference in Plaintiff directly communicating with her**
125    **desired deponents who were related to CDOC employment. An issue**
126    **Attorney Colony was ordered to stop (October 7, 2019) but did not.**
127    **Plaintiff objections filed to record.  Plaintiff, could, in reality, choose a**
128    **table at a McDonalds if she wished.  There are no parameters for social**
129    **preference of location.  She must have an officer of court or law**
130    **enforcement, etc. swear the deponent in and she must record the**
131    **proceedings and provide a copy of the tape (or) written transcript (or) if**
132    **she chooses:  both.  Videos, Audios, lunch, snacks, coffee etc. are not a**
133    **requirement of taking a deposition.  Would Plaintiff have made her**
134    **deponent comfortable by using her home office with everyone present?**
135    **Absolutely.  No different than the dozens of professionals in this City that**
136    **renovate private homes into office space.  <u>Yet, in this case, the pressure</u>**
137    **<u>from the three attorneys was given in such denigrating, obnoxious and</u>**
138    **<u>condescending language and mannerisms; Plaintiff was literally mocked.</u>**
139    **<u>Attorney Colony going so far as to denigrate Plaintiff to another attorney</u>**
140    **<u>representing a desired deponent named Callee Redmond.   Plaintiff</u>**
141    **<u>reaching the conclusion, that even if she used the Magistrate Court's</u>**
142    **<u>room, she would still be forced by them to hire audio, video etc. and do</u>**
143    **<u>the whole nine yards rather than the simplicity she and the Magistrate</u>**
144    **<u>court believed were possible.</u>** Plaintiff is informa pauperis.  Sub-poverty
145    levels of income. She literally had to take out an interest-bearing loan for
146    the $75 to get the critical transcript of October 7th, 2019 timely in hand due

to the Magistrate Court denying informa pauperis obtaining on grounds the Senior Court had not given permission. **It was at the final point of being mocked and demanded to provide what they wished; that Plaintiff added the inabilities to fund depositions that met others demands, to the already established long trail of discrepancies with her CDOC discovery handling.** *She made the choice to not depose out of lack of ability to.* **Made the call to simply bring her desired deponents to the stand at trial and let the three attorneys deal with going in 'cold'. <u>Kellie Wasko fell into this category for the Plaintiff.</u>**

D.  **Kellie Wasko** falls into two very separate and very distinct scopes of relevancy in this case. In the case of State Ag's scope that State AG is contained to; intensive examination of Ms. Wasko will reveal the answers to such questions as **the DOC difference** of "unresponsive in cell" (which is what Plaintiff has always stated) rather than "unconscious in cell" which is the wordsmithing of Attorney Colony that unfortunately was picked up as 'fact' by the Senior Court in her language in her filings. Combined with State Ag refusal to produce relevant duty logs (that are easily redacted for anything not relevant to Shawnee Ryan) State AG is effective (**without Wasko verifying**) in painting Plaintiff as untruthful. The reality of a prison, is that "rounds" are done by unit staff (in this case Unit 3A, single cell ADA) every 30 minutes. It is absolutely mandatory that officer has to see movement or response from an inmate. Otherwise, they will demand a response or movement. "Unresponsive" is not "unconscious". Further, duty log would reveal that it is absolutely impossible for an inmate to bring medical clinic staff into the unit for alleged needs or get to the clinic without medical authorization. When the officer finds "unresponsive" they, and they alone, make the call to bring medical up from the clinic. Which is exactly what they did on the day in question for Defendant Victoroff. **There are, literally dozens of those kinds of very simple questions** needing to be examined of Kellie Wasko *with regard to State AG scope*. <u>**In the case of CHP Defendants:**</u> **their entirely different scope puts Kellie Wasko in the unique position of answering the questions, in detail, of exactly 'how', from January 1, 2014 forward did the CDOC order/contract CHP regarding their policies and practices concerning <u>all aspects of the Patient Protection and Affordable Care Act and HCPF14-006.</u>** Further, Kellie Wasko was not 'just' the 2nd in command CDOC. She

5

has extensively been a Warden in various facilities, extensive first-hand knowledge of medical issues, services, transports, outside assignments and exactly what is supposed to be being done BY CHP and internal CDOC medical staff.  In looking at her statement in A-1; she is clearly responding to what she has been led to believe this case is "about".  When in reality, Hall and Evans do not even have an understanding of the charges themselves. (See Plaintiff's Response to Motion for Summary Judgement). **It will fall incumbent upon the Plaintiff, to keep testimony of Kellie Wasko divided into the two very different scopes of this case (and) keep her from discriminating the case itself due to an utterly complete lack of factual awareness of 'what' she is representing on behalf of CHP Defendants.**

E. **The off-shoot problem arising with Kellie Wasko being kept from view of the Plaintiff** is that she very definitely ties the CDOC back into this case. She also has placed herself into a position of being a potential party in the CHP Defendant group by the height of her position as now the Vice President of this privately held corporation.  There is a strong line that is being not only blurred here, but likely crossed.  The CDOC only has governmental immunity.  If there is an individual that has acted in a way that is verifiably tied to the wrongdoing of another entity; it could be grounds to bring CDOC back in if that individual was acting on behalf of the CDOC and negligence or injury occurred.  The CDOC is not above the law. Immunity or no.  Plaintiff is somewhat shocked that Attorney Kennedy and Attorney Ringel placed her in this position now; but given their lack of focus on defending the right charges and case; it might be not so surprising that they just did not know. **Regardless, Kellie Wasko is now testifying voluntarily on behalf of the CHP Defendants and is wide open to being probed and scrutinized by Plaintiff. <u>That examination will primarily be about her CDOC knowledge.</u>  This Motion for Sanctions holds rules that are plain.  No evasive can occur.  No fail to disclose can occur.  No refusal to allow probing or production can occur.  Not without consequences. Kellie Wasko, as important of a witness in this case as she is, was clearly held back from view of all of us.  With possibly the exception of Attorney Colony.  AUGUST 26, 2019:  these attorneys have been through Plaintiff's deposition <u>since</u>, through two discovery hearings <u>since</u>, multiple interrogatories <u>since</u> AND fact-based discovery <u>did not close</u> (allegedly)**

6

**until November 1, 2019.  It is unconscionable that they have hidden this from viewing.**

**Returning back to discovery which is also under grounds of fail to produce:**

F.  **Attorney Kennedy and Attorney Ringel**, were so clear in that they saw as the skepticism and problems surrounding discovery; both are on records, multiple times, between the parties as **refusing to touch or review the discovery gathered by the State AG.** The last comment of record was from Attorney Kennedy was at hearing on October 7th, 2019 page 41 line 16 (Attached as Exhibit Four) in an allegation that the releases given by Plaintiff in June 2019 "were not working".  When in reality, Plaintiff keeps an ongoing communication with all of her providers (Exhibit Two) with specificity on whether or not they have even been contacted for release of information by the firm of Hall and Evans.  To today's date: their answer remains "No". To verify, Plaintiff has on numerous occasions questioned 'why' her discovery list was not being accessed. Moving to page 45 of same transcript beginning line 2; Attorney Kennedy asks for release for CDOC. And specifically states "We are not going to send those releases out."  Then to line 10, refers to his and Attorney Ringel refusal to touch the State AG productions of DOC with the statement of:  "With all the fighting going on, we want to make sure we're allowed to look at it before------(comment fades off to incompletely stated)."  Post-hearing, Plaintiff is clearly on record with the parties that she believes that the 'caution' she issued when the subject of a CDOC release came up, is the factual reason Attorney Kennedy and Attorney Ringel did not want to send CDOC a release to obtain full records.  By doing so, they would have to share in entirety with Plaintiff.  Which would clearly sink State Ag and allegedly her client Defendant Victoroff into the obvious guilt that the claims of Plaintiff regarding evasive discovery handling by the State were in fact accurate. Plaintiff has never received a response for Attorney Kennedy and Attorney Ringel.  Plaintiff felt so strongly about Attorney Kennedy's commentary, that she filed at (ECF 194) on November 11, 2019.  (Attached Exhibit Three)

G.  **A critical discovery hearing occurred on October 7th, 2020.  Full transcript is attached as (Exhibit Four).** One of the areas affecting Attorney Kennedy and Attorney Ringels actions was the Plaintiff bringing to the Magistrate

Court's attention that she had multiple Hall and Evans interrogatories out there that had not been answered.  Very late interrogatories.  They were ordered to answer and produce (and) the Plaintiff was ordered to revise her filing interrogatories against Geoffrey Archambeau because she identified him as the CEO.  She was instructed to reword and rewrite into context as if "CHP itself as a corporation was a person".  She was ordered to forthwith and present to Attorney Kennedy and Attorney Ringel for them to answer.  Plaintiff did so.  The Magistrate Court further ordered Attorney Kennedy and Attorney Ringel to submit their answers to the new interrogatory (and) the past due answers, in writing directly to him.  Instead, Attorney Ringel simply made a certification email to the Magistrate Court, did not attach his answers, which would have revealed that he did not answer the ordered rewrite of CHP itself.  Which is a critical interrogatory as his other answers that he did do remained evasive, non-producing and fail to disclose.  He did state in his court email that if asked, he would attach his answers as compliance.  Plaintiff responded via email to both the court and Attorney Ringel that he had already been ordered to produce, she desired the order to be met and asked for response.  Neither responded.  **To date, the CHP interrogatory still pends**. (Attached Exhibit 5 holds the CHP interrogatory still pending (and) the email verification.  Exhibit 4 of the October 7 transcript reveals the order at Page 33, Lines 10 through 16).

H. **As of present day:** the sole productions, despite very clear requesting (Attached Exhibit 6 (in 2 parts due to size)) have consisted of:

> ➢ Attorney Ringel pushing Plaintiff back to a State AG production within State AG DOC obtained discovery; of a 2010 contract between CDOC and CHP.  Literally under "Governor Bill Ritter", CEO and President "Steve Krebs" and former Governor Ritter's State Controller.  Attorney Ringel claiming that was "adequate".  Plaintiff had asked for copies of all contracts between November 2012 and October 8, 2018 as those are the dates pertaining to her case.

> ➢ Attorney Ringel providing one provider manual and there being no response whatsoever to Plaintiff's email request

8

afterward to provide the date of creation of that manual. One of the areas Kellie Wasko will be examined extensively on is the period of time at CDOC under former CMO Bill Frost. Bill Frost, literally walked off the job as the 'discovery' of "Ryan" claiming all along that she had a verifiable issue with how CHP had handled the ACA and HCPF 14-006 had just come to light as something they should have paid attention to all along (over 4 years). Kellie Wasko was front and center in her CDOC position, to the case of Shawnee Ryan. Shawnee Ryan extensively involved, including through emergency interventions under AR 850-04, the entire hierarchy and medical administration departments while trying to get her medical needs met. **WE DO NOT HAVE, DUE TO THE HANDLING METHODS OF STATE** AG: THE FULL AND COMPLETE EXTENT OF THOSE YEARS OF ADMINISTRATIVE PROCESSES. Not even ¼ were gathered by State AG and none of the files asked for in Subpoena Duces Tecum and Contempt Citation were brought forward. State AG claiming "did not exist". (See attached Exhibit 7 which is again the statement of Kellie Wasko but this time also holds copies of just two (of many between headquarters, offender services and Shawnee Ryan, spanning years) handwritten letter copies verifying "Wasco" (sic) in the "cc". Kellie Wasko, has literaly also been grieved by Plaintiff and never once responded.) **In the division of scopes she is to testify under, the question of administrative processes will fall under State AG scope as Ms. Wasko verifies that Plaintiff is telling the truth that the Denver Complex has an administrative coordinator and a medical coordinator. And that grievances are divided into departments accordingly. Verify that DWCF grievances are handled by DWCF coordinators and departments and DRDC grievances (where Plaintiff spent 18 months in the infirmary) are handled by DRDC. That there is an H S A in each facility. That there is a chronological computerized log kept by the coordinators that show the entire path of the grievance (prisoners cannot even go to the bathroom without a camera or documentation of 'where' and 'what' they are doing in the**

**Max-5 facilities both are. Ms. Wasko will be verifying these facts, which place the State AG sworn to record statement as false. With regard to CHP Defendants and the examination under their scope: Kellie Wasco cannot ever state that she was not aware of Shawnee Ryan's case nor that she never had the access to the complete information. All of which, is relevant to probing "how", "what", "when" the practices and policies of the CHP Defendants were put into place with their client in the Colorado Department of Corrections.**

- **Plaintiff did receive what she was told were her complete medical records on file with Dr. Mix and CHP.** Given the fact that nowhere in sight are the denied transplant requests of 2014; Plaintiff questions the production. **For purposes of this Sanction filing: she asks whether or not she truly has been given "all they have". The relevancy also goes to the personal suit against Dr. Mix as to whether or not she competently reviewed this Multiple Myeloma patient from the date of diagnosis in November 2013.**

- **Plaintiff did receive the resume, credentials and job duty list of Dr. Mix.** Despite statements of filing supplemental copies to his Motion for Summary Judgment, Attorney Kennedy still does not have a job description or change of title on file for Kellie Wasco. What has been obtained is from the internet.

- **Attorney Ringel in his answers made very clear statements that Geoffrey Archambeau "knows nothing" and that CHP is not tied to any other company or corporation. (See attached Exhibit 8):** which reveal State records of Physician Health Partners tied to Geoffrey Archambeau. Reveal Geoffrey Archambeau with also CHP. Includes a portion of Plaintiff's outside medical records which show Physician Health Partners as involved in her authorizations and payments. Plaintiff was also told by Attorney Ringel to get her requests for corporate disclosures off public record after Plaintiff pointed out on October 7th at hearing that she had not even received CHP's

10

Corporate Disclosures Statement which was due upon their entry into this case clear back in June 2019.  **All Plaintiff has received with regards to corporate disclosures and corporate insurance disclosures is as stated (and) a <u>supplemental insurance policy.</u>**  Plaintiff is skeptical that a corporation (especially two of them conjoined, though we do not know the matter of how conjoined due to lack of disclosure and ability to further probe that would bring) does not carry full insurance coverage.

### PLAINTIFF PLEADS AS FOLLOWS

**<u>Plaintiff HAS</u> brought the difficulties with CHP Group in producing to the Magistrate Court's view and has repeatedly been in front of the Magistrate Court with ALL of these co-mingled discovery issues.  There is no resolution at present date and now, with the appearance of the 2nd in command at CDOC being also a CHP Vice President of the entire corporation; the implications of entanglement for this case are now deep.**

We all just did not know "how" co-mingled, until this learning that the 2nd in command at CDOC; **who did not leave that post until August 26th** (*so she would have been involved in discovery for this case from February 1, 2019 until August 26th, AND behind scenes involvement when the Subpoena Duces Tecum and Citation for Contempt of Court (and) her direct name in the communications of letters to CDOC Director Williams was going on*).  Simplistically stated, we now know that the fence of both sides has been straddled by Ms. Wasco and all three defense attorneys likely knew about it.  State AG does not mention Ms. Wasko but is in lock step on record with both Attorney Kennedy and Attorney Ringel over all production, depositions, interrogatories and discovery issues to date.  **For certain, Attorney Kennedy and Attorney Ringel have been evasive and have not disclosed.**

**PLAINTIFF SEEKS RELIEF**

1. Plaintiff asks that she be allowed, despite fact based having closed on November 1, 2019; to go back through every request for production she has made of CHP Defendants, verify what was refused or not answered at all and resubmit for production with a copy to the Senior Court.  Further, that a very short and limited time schedule be set on it:  Done.  By the Close of Discovery set for February 18, 2020.  NO more extensions of time given to Attorney Kennedy and Attorney Ringel.  Plaintiff can have her list of production ready within 48 hours from date of order.  Should they once again refuse to produce, Plaintiff asks that they be held in Contempt of Court.

2. Plaintiff asks that the CHP Motion for Summary Judgement be, at minimum, defaulted as denied; due to the actions of Attorney Kennedy and Attorney Ringel.

3. Plaintiff asks that the Senior Court order there to be no further interference with the Plaintiff bringing forward Ms. Wasko for sworn testimony.

4. Plaintiff asks that the Senior Court order whatever other actions or disciplines that the Court sees fit.

Plaintiff respectfully reminds that the Motion for Sanctions and Discipline on Grounds of Fail to Cooperate in Discovery and Spoliation of Discovery against Senior Assistant Attorney General Amy Colony are forthcoming.

**Respectfully submitted this 30th day of January 2020.**

S/Shawnee Ryan
12081 West Alameda Parkway Box 218
Lakewood, Colorado 80228
720-431-8319
shawneeryan216@gmail.com

**CERTIFICATE OF SERVICE**

I have served a complete and full copy of the foregoing via CMECF to the parties below on this 30th day of January 2020.


S/Shawnee Ryan
12081 West Alameda Parkway Box 218
Lakewood, Colorado 80228
720-431-8319
shawneeryan216@gmail.com



Clerk of Court:  cod_cmecf@cod.uscourts.gov




Andrew David Ringel:  ringela@hallevans.com
Edmund Martin Kennedy:  kennedye@hallevans.com
Amy Colony:  acolony@coag.gov