1      I assume that happened, Ms. Colony.

2              MS. COLONY:  Yes, some time ago, back in May.

3              THE COURT:  And I don't see -- I don't see ever

4      requiring an inventory, so that issue is --

5              MS. RYAN:  Actually, I can give you that where it's

6      at on the transcript, Your Honor.

7              THE COURT:  Yeah, that's fine, because I don't see

8      it.

9              MS. RYAN:  This is back to the June 24.

10             THE COURT:  I'm there.

11             MS. RYAN:  On page 26 we're discussing -- your

12     order ended up being to the extent plaintiff is asking --

13     seeking to prevent Ms. Colony, that is denied.  And I've

14     given my challenge.  That's not what I've ever said.

15             Page 27.

16             THE COURT:  Yes.

17             MS. RYAN:  -- to at least see what you don't have,

18     did --

19             THE COURT:  What line are you reading from?

20             MS. RYAN:  I don't have the transcript.  I do

21     actually, I can pull it up.  Because at that point nobody

22     knew what was in the boxes, Hall & Evans, the plaintiff,

23     nobody did.  And as my spreadsheets that I gave show, she had

24     had them in her possession since the end of March, and nobody

25     knew what was in them, and so that's the topic that was being

1    discussed.

2            So page 27, line 10.  The Court:  So what I would

3    like you to do is take a look at those records that you get

4    from Ms. Colony.  If you think you're missing something, then

5    you ask for another status conference or you can start

6    issuing subpoenas.

7            Now, when you issue subpoenas, we'll help you do

8    that, then you go on to number 21, line 21, to at least see

9    that you don't have -- what you don't have so you can be

10   educated and have pinpoint requests so that you don't

11   duplicate.

12           You then go on on page 28, when I ask:  What is

13   done then.  When I look through, you've ordered Ms. Colony to

14   give everything that she's got.  And the Court:  About you?

15   And I answer:  About me.  And then you go on to talk about

16   how she may have to redact.

17           So if she withholds it, then she puts it on a list

18   and she describes the document with sufficient particularity,

19   and then the entirety of page 29 is applicable, so is page

20   30, and that was June 24.

21           THE COURT:  Right.

22           MS. RYAN:  Nothing ever came to that.  And so

23   finally the things that I am missing and the things that I

24   repeatedly asked for, which are in my subpoena duces tecum, I

25   put onto the two spreadsheets that I submitted in 147 and

48

1    148.  I have maybe 40 percent of my medical records from DOC.

2         The irony of this is that I don't think Ms. Colony

3    understands.  I don't need them.  I need them for Hall &

4    Evans.  I need to be able to take my own data and properly

5    classify it, because on that spreadsheet the numerous things

6    that she put through, if we're not going to go down the road

7    with anything with the Court doing it, which is the only

8    reason I contacted Director Williams myself, was because I am

9    required to report when I think that my -- there has been

10    something wrong in AR 950-02.

11         Now that I've gotten that answer, I did go through

12    Ms. Colony, I have the e-mails to prove that.  She knew it

13    was going to Mr. Williams, she knew it was going to Major Rio

14    (ph).

15         And so where we are right now, I did the inventory

16    list, it's all done.  Every single document, and then I gave

17    a screenshot to the Court.

18         THE COURT:  How many are there?

19         MS. RYAN:  6400, something like that.

20         THE COURT:  Documents?

21         MS. RYAN:  Documents.

22         THE COURT:  All right.

23         MS. RYAN:  And that's only 40 percent, Your Honor.

24         THE COURT:  So, Ms. Colony, do you believe you

25    received her entire medical file from DOC?

1           MS. COLONY:  Yes, I do.  That's what —

2           THE COURT:  You turned over everything that you

3    have?

4           MS. COLONY:  Yes, I did.

5           THE COURT:  Okay, that's all I can do, Ms. Ryan.

6           MS. RYAN:  I understand.

7           THE COURT:  She said you got it all, you say it's

8    40 percent.  I'm not going to decide that.  I'm going to take

9    her word for it, because if an attorney says something to a

10   Court and they misrepresent it, they're in a whole lot of

11   trouble and I'm going to assume that didn't happen.

12          MS. RYAN:  It's honorable that you feel that way,

13   Your Honor.

14          MS. COLONY:  Your Honor, if I may, I have had a

15   number of discussions with management level folks and

16   clinical staff to explain to me, you know, where things are

17   kept.  And there have been specific items that she has asked

18   about, for example, related to nephrology, I think, was an

19   issue.  And I've been told over and over again, this is

20   everything, it's all kept in one place.  Those are the

21   records that were delivered to me at the beginning -- when

22   the AG's office became involved in the case.

23          And they have been -- as far as boxes, that's just

24   a printout of everything that we have electronically, and I

25   think that has caused some confusion.

1          THE COURT:  Right.  Well, here is what you should

2    know.  I had to represent a client such as yours when I

3    practiced law, and an attorney develops an intuition whether

4    they're getting everything or not.  So you have to use your

5    intuition as to DOC.

6          If you don't believe you've been given everything

7    or maybe you didn't receive everything, you've got to get

8    down there and look at the files yourself.  That's your

9    obligation and that's what I did when I practiced.  You know,

10   they've just got to let me look at their records and see that

11   I've got everything because I did not want to stand in front

12   of a federal judge with a document produced at trial that I

13   didn't produce that came from my client's Bureau of Prisons'

14   files.  That's a terrible thing to happen.

15         So I'm taking your word for it.  You use that

16   however you feel you need to, but you've told me you have

17   everything from DOC, and if you assure yourself that's

18   correct, that's all we need to do; but if you think that

19   might not be correct, I think you ought to probably engage in

20   a little bit of investigation.

21         MS. COLONY:  Well, I will state that, Your Honor, I

22   have not had time to go through them and do a detailed

23   review, simply because of all these distracting discovery and

24   custody issues and chain of custody and all the things that

25   Ms. Ryan has repeatedly brought up again and again for the

1   last four months.  I have not had time to do a deep dive into

2   the medical records.

3          THE COURT:  Okay, but just -- you need to know I'm

4   counting on your word that you have produced all of her

5   medical records, not all that you have, not all that they

6   sent you, but all that exist in the history of the DOC.  So

7   that's what we're proceeding on, that you've already done

8   that, okay.

9          MS. RYAN:  Thank you, Your Honor.

10          THE COURT:  So what's the next issue?

11          MS. RYAN:  With that said, I think I can help a

12   little bit here.  Because I do not need, the plaintiff --

13   Shawnee Ryan is entitled to all of her records, and I can get

14   what's missing through open records.  I can go pay for it, I

15   can go do all of that.  And I also am not adverse to pointing

16   out, as we go along down the road, that these were the things

17   that were missing, this counter balanced this argument,

18   whatever you're going to bring forth at trial or ADR.  And if

19   you don't have it in your possession with this order today,

20   all I have to do is say you have a chance to go get it.

21          THE COURT:  Ms. Ryan, I've already dealt with that

22   issue.  I want the next issue.

23          MS. RYAN:  And so -- okay.

24          THE COURT:  What's the next issue?

25          MS. RYAN:  So there is Claims 5 and 6 against

1   Hilary Victoroff.

2       THE COURT:  Okay.

3       MS. RYAN:  And you mentioned developing an

4   intuition about her client.  I not only have an intuition

5   about that client, I have six years of experience with that

6   client.  And at this point in time the sole reason I

7   contacted Director Williams and Major Rio was because as a

8   parolee, I am first and foremost under the jurisdiction of

9   Colorado Department of Corrections, and it orders me in AR

10  950-02 to report.  That is what I did.

11      Finally I got a straight answer back from

12  Ms. Colony that says, The only investigation that will be

13  done will go through me, which I consider to be a conflict.

14      So my question for you, Your Honor, I am totally

15  taking my hands off with your order today the DOC problem of

16  not having my records.  Do I need to just simply keep a

17  subpoena out there in limbo in case -- because basically

18  she's defying it.

19      THE COURT:  Wait a second, I'm not sure what you're

20  talking about.

21      MS. RYAN:  I have a subpoena duces tecum that the

22  Court allowed me after a lot of discussion and all these

23  hearings prior to this one to be able to issue that subpoena

24  duces tecum.  The Court served the subpoena duces tecum.

25      THE COURT:  When?

53

1          MS. RYAN:  It was --

2          THE COURT:  On who and for what?

3          MS. RYAN:  It was the Colorado Department of

4    Corrections and it was listed -- let me find the ECF number

5    for you.  It would be easier than looking for it.  I don't

6    think I have it.

7          And so they have not answered that.  I have 40

8    percent of the documents, regardless of what Ms. Colony says.

9    So if Ms. Colony had her word taken, then that's where we

10   leave it.

11         The certificate of service by the clerk, for the

12   subpoena to produce documents, was given to me on -- sent to

13   me on 1 -- Document 141.  I can go back here and find --

14   actually, it should say the document number in the subpoena.

15   Your minutes ordering it were 138.

16         THE COURT:  So maybe 141?

17         MS. RYAN:  141 I think was just the -- my receipt

18   in the mail.  They sent me this, the copy of the certificate

19   certified mail that they used.  I believe it was end of June.

20   I did the fourth amended complaint, we had the hearing.  I'll

21   find it here in just -- just a moment.

22         So that is basically just sitting there and I've

23   been getting tremendous amount of pressure from Ms. Colony to

24   release DOC from their subpoena.

25         THE COURT:  What do you mean?  Give me an example

54

1    of what you're calling pressure.

2        MS. RYAN: Pressure is repeated e-mails, and my

3    repeated statement with the very simple answer, no. Until my

4    records are complete, no, I will not release the subpoena.

5        THE COURT: Well --

6        MS. RYAN: So that's the question, Your Honor. If

7    you are going to take -- if the Court is going to take her

8    word that we have everything, and Ms. Colony says on the

9    record today that she hasn't even looked through the medical,

10   a deep dive she calls it, then I'm still in limbo, but I

11   don't know if that just means I leave that sitting out there.

12        THE COURT: Okay. Well, let me find out about

13   this. So I see a subpoena, Document 141-2. It's directed to

14   Colorado Department of Corrections and Executive Director

15   Dean Williams and it is dated June 28, 2019.

16        MS. RYAN: Yes.

17        THE COURT: And it has -- I'm talking to Ms. Colony

18   right now. And it has a return date of 30 days, which would

19   be end of July. Ms. Colony, what do you understand about

20   this subpoena as the DOC's response to it?

21        MS. COLONY: As far as my understanding, Your

22   Honor, first of all, it's the CDOC's position that the

23   subpoena was never properly served on it, but we have

24   endeavored to honor it nonetheless, and I have worked through

25   each category of the requests for documents and provided them

55

1    through my office to Ms. Ryan.

2            THE COURT:  Wait a second.  Let's go backwards --

3    go back a little bit.  Do you understand -- have you seen the

4    subpoena?  Would you like a copy of it right now?

5            MS. COLONY:  Yes, I've seen it several times.

6            THE COURT:  Okay.  So it looks duly executed by our

7    Clerk of the Court.

8            MS. COLONY:  That doesn't have to be personally

9    served?

10           THE COURT:  Well, let's do one step at a time.

11   Does it looks like it's normal to you, duly executed by the

12   Clerk of the Court, Mr. Sheridan?

13           MS. COLONY:  I saw that it was executed by the

14   Clerk of Court, but my client was perplexed because they

15   received it in certified mail.  What their expectation would

16   be that it would be personally served.

17           THE COURT:  Okay.  I would say this, that maybe --

18   did you send it by certified mail?

19           MS. RYAN:  I didn't touch it, because Your Honor

20   ordered me in forma pauperis to let the clerk handle it.

21           MS. COLONY:  The clerk delivered it, Your Honor.

22           MS. RYAN:  Magistrate service or certified mail.

23           THE COURT:  You can't both talk at the same time.

24   I would say this, and I think Mr. Kennedy will back me up.

25   In my experience, this is how we've operated with the CDOC

1    and you're changing the rules right now, okay.  CDOC has

2    always cooperated with this Court in the past.  Is that your

3    experience, Mr. Kennedy?

4              MR. KENNEDY:  Yes, Your Honor.

5              THE COURT:  And so a subpoena that comes from the

6    United States District Court that's not a fraud and it

7    arrives by certified mail, I have never had a deputy or a

8    assistant attorney general, whichever that you call yourself,

9    tell me that it needs to be personally served in my 14 years

10   on the bench.  Are you saying that is how they are operating?

11             MS. COLONY:  Your Honor, it was just perplexing,

12   and I consulted with several people in the corrections unit

13   and my office, and they said they had never heard of that

14   before, a subpoena being served via certified mail, and CDOC

15   was perplexed about it and wanted to know what to do.  And

16   what we did was provide the documents, but we had been

17   providing the documents long before this arrived in the

18   certified mail because --

19             THE COURT:  So you believe you responded -- did you

20   respond --

21             MS. COLONY:  Yes.

22             THE COURT:  -- to it?

23             MS. COLONY:  We responded, we provided the

24   materials with the cover e-mail explaining to her what's

25   being sent to her.  I know we've sent her clinical standards,

59

1          MS. COLONY:  So A16 is her response to the State

2   defendants.

3          MS. RYAN:  A16?

4          MS. COLONY:  Interrogatories which I think is A15.

5          THE COURT:  Okay.

6          MS. COLONY:  And then --

7          THE COURT:  Wait.  So plaintiff's response to State

8   first set of written interrogatories?  Is that what we're

9   talking about?

10          MS. COLONY:  Yeah, A16 is her response.

11          THE COURT:  Right.

12          MS. COLONY:  Yeah, A16 is her response.

13          THE COURT:  I've got it.

14          MS. COLONY:  A18 is the interrogatories that CHP

15   served, and I believe A19 is the response.

16          THE COURT:  Okay, I'm ready.  You were going to

17   raise some issues with it.

18          MS. COLONY:  The answers are largely

19   incomprehensible is the main problem.

20          THE COURT:  Okay, point out an example.

21          MS. COLONY:  Because my set of exhibits, Your

22   Honor, that I brought with me today is missing my actual

23   questions, I am struggling with this, I admit, since I don't

24   have A15 in front of me.

25          MS. RYAN:  I do.

1        MS. COLONY:  Here is an example.  Like here is an

2  example, Number 5, I've -- in A16, I think -- and Ms. Ryan

3  did not include the questions, you know, type out the

4  questions before she answered so that's where I'm struggling,

5  Your Honor.

6        THE COURT:  Okay.

7        MS. COLONY:  But, for example, all six years -- I

8  think this must have been a question about, you know, support

9  for allegations.  She says all six years --

10       THE COURT:  Which number?

11       MS. COLONY:  Number 5 --

12       THE COURT:  Okay.

13       MS. COLONY:  -- in A16.  All six years of

14  administrative processes, dozens of records of staffing and

15  administrative --

16       THE COURT:  Well, let me get the questions first.

17       MS. COLONY:  Okay.

18       THE COURT:  So your questions are at what?

19       MS. COLONY:  A15, I think.

20       THE COURT:  Okay.

21       MS. RYAN:  A15 is CHP.

22       MS. COLONY:  Of CHP's discovery?

23       MS. RYAN:  Yes, it's not the State.  What you were

24  asking for, if I remember correctly, see if this jogs your

25  memory, was the question was something along the lines of

61

1    what exactly do I believe is being withheld from my DOC

2    records, and we've just been through all that.  So maybe the

3    answer I gave makes a little bit more sense now.

4            THE COURT:  All right.  So A15, question 5.  A15 is

5    Ryan's answer -- sorry -- A --

6            MS. RYAN:  But that's CHP, Your Honor, not the

7    State.  She doesn't -- she didn't give you a copy -- any of

8    us a copy of the first set of written interrogatories upon

9    the plaintiff that I'm answering in A16.  We don't have the

10   questions is what I think -- I'm not trying to put words in

11   her mouth, but I think that's what she's trying to say.

12           MS. COLONY:  I don't have A15, Your Honor.

13           THE COURT:  I can call these up.  It's just a whole

14   lot of junk that are (inaudible).  A16 is plaintiff's

15   response -- you want A what?  15?

16           MS. COLONY:  A15 -- if I'm right about this, A15

17   is --

18           THE COURT:  A15 is plaintiff's answers.

19           MS. RYAN:  To defendant Correction Department.

20           THE COURT:  Yes.

21           MS. RYAN:  16 is my answers to the State.

22           THE COURT:  Yeah, but I need their questions is

23   what I need.

24           MS. RYAN:  And we don't have that, they're not

25   here.

62

1          THE COURT:  They're not submitted?

2          MS. RYAN:  She didn't --

3          MS. COLONY:  If they're not submitted, Your Honor,

4    it's in error on my part.  I thought that they were included

5    with the motion, but I may have just included the answers,

6    but I certainly intended to include --

7          THE COURT:  Yeah.  Well, so I'm in the dark.

8          MS. RYAN:  I'll continue to look.

9          THE COURT:  Obviously, it's hard for me --

10         MS. COLONY:  But I think the questions -- do you

11   have the answers to yours?

12         MS. RYAN:  Let me see if I can help her out.  Maybe

13   I do have a copy of it.  I don't know if I do or not.  I

14   didn't think to bring it with me.  I do not.  I didn't bring

15   them.

16         Mr. Kennedy, I did find the e-mail where you asked

17   for more time to answer Dr. Mix.

18         THE COURT:  Ms. Colony, give me the responses

19   you're saying are deficient so maybe we can work it out.

20         MS. COLONY:  These interrogatories, I know that I

21   asked the usual questions about the support for the specific

22   issues in the allegations in the complaint, and how she

23   responded was to continue to complain about how I became

24   about in possession of her records at CDOC.  You'll see that

25   in Number 5.  And I am missing --

1          THE COURT:  Well, let me ask you this.  Are any of

2    these matters -- can they be resolved by her deposition,

3    because you have her deposition scheduled here, right?

4          MS. COLONY:  We do.

5          THE COURT:  So do you think a lot of this could be

6    resolved by her answering questions under oath?

7          MS. COLONY:  Hopefully, Your Honor.

8          THE COURT:  Okay.  So why don't we reserve fighting

9    over her responses until -- what day is that, by the way?

10          UNIDENTIFIED SPEAKER:  18th, I believe, Your Honor.

11          THE COURT:  18th.  And -- so that's -- I'm in

12   Chambers that day, so if you come across what you believe to

13   be evasive or nonresponsive answers, then you'll buzz us,

14   I'll walk into the jury room and I'll make rulings on the

15   record, okay.

16          MS. COLONY:  Okay.

17          THE COURT:  So it's only now -- so contemplate her

18   being under oath, you're having a full opportunity to ask her

19   questions.  What else can we deal with today that is ripe?

20          And then specifically, Ms. Ryan, your objections to

21   anything Ms. Colony has done with records are noted.  I do

22   ask that you please not bring those up again because you've

23   made a good record of those, and so please do not accuse

24   Ms. Colony or -- of anything improper with your medical

25   records or use that again in any kind of messages because we

64

1    need to move on.

2            MS. RYAN:  I will -- I will do that.  I was asking

3    that question in its entirety.  Claims 5 and 6.

4            MS. COLONY:  I'm not finished yet, Your Honor, and

5    it's my motion.

6            THE COURT:  Anyway, we're going to pick this issue

7    up again if we need to after your deposition.  Go ahead.

8            MS. COLONY:  I guess the only -- the other thing I

9    would ask for, as you advised plaintiff earlier in the summer

10   in this case, that she -- she wants materials from CDOC, that

11   she serve a written discovery request as opposed to a

12   subpoena.  That way it directly comes to me.  That's the

13   proper way to seek these materials.

14           THE COURT:  You mean on CDOC?

15           MS. COLONY:  Well, when she is asking for materials

16   related to her case, if she could put them in a written

17   discovery request as opposed to a subpoena, that would be a

18   lot cleaner and easier.

19           THE COURT:  True, but who would it be directed to?

20           MS. RYAN:  Exactly.

21           THE COURT:  Ms. Ryan, sorry, I don't need your

22   help.

23           MS. RYAN:  Okay.

24           THE COURT:  I've been doing this for 14 years.

25           MS. RYAN:  I'm sorry, I apologize, Your Honor.  Has

1    just been a very long haul.

2           THE COURT:  I understand.

3           MS. RYAN:  We've already just resolved all this.

4           THE COURT:  But I can't accept disrespect so you've

5    got to be quiet.  Go ahead.

6           MS. COLONY:  Typically it has been my experience in

7    cases where CDOC individual employees are named as

8    defendants.  When we get a discovery request directed to the

9    individuals that we're representing, we treat it like it is a

10   request to CDOC.  We don't play games with people and say --

11          THE COURT:  No, you're always right.  That's what I

12   brought up earlier, CDOC has always played straight out, I

13   understand, I agree.

14          So what you're saying is, if it's directed, you

15   want -- you want a request directed to CDOC, you'll accept

16   that?  Is that what you're saying?

17          MS. COLONY:  Well, technically it should be in the

18   names of Ms. Victoroff and Ms. Sommerschield --

19          THE COURT:  Okay.

20          MS. COLONY:  -- but I answer it --

21          THE COURT:  Understood.

22          MS. COLONY:  I answer it as CDOC because obviously

23   Ms. Victoroff and Ms. Sommerschield don't have custody of

24   materials.

25          THE COURT:  Agreed.

1            MS. COLONY:  But that's the way we've always

2     treated it in my office.

3            THE COURT:  All right.  So what are you asking

4     right now?

5            MS. COLONY:  I would prefer that she issue requests

6     for production rather than go through the subpoena process.

7            THE COURT:  Okay, very good.  So what -- in

8     essence, what Ms. Colony is doing is doing you a favor.

9     She's saying that although we're entitled to have you

10    subpoena DOC because they're not party, she will through her

11    two clients who are named, accept requests that are in

12    essence directed toward CDOC.  So you can just simply call

13    those discovery requests from now on to the extent you have

14    any left to use.  Is that what you're saying, Ms. Colony?

15           MS. COLONY:  I'm not sure if she does have very

16    many left to use.

17           THE COURT:  I don't know, yeah.  I'm not saying

18    right now whether she does or she doesn't, but if you do and

19    want information that probably more appropriately comes from

20    CDOC, you can direct it to either defendant Ms. Victoroff or

21    Sommerschield and ask documents or questions, and Ms. Colony

22    will treat those as against CDOC and respond.

23           MS. RYAN:  Thank you for clarifying that, Your

24    Honor.

25           THE COURT:  Okay.

67

1          MS. RYAN:  For the record, I have made discovery

2     requests of the three items that I have needed for defendants

3     Victoroff and Sommerschield exactly as Mr. Colony just

4     directed and as you have directed, and outside of the

5     subpoena duces tecum, which is -- duces tecum for my medical

6     records.  It doesn't have anything to do with Victoroff and

7     Sommerschield.

8          THE COURT:  Okay.

9          MS. RYAN:  And we have already resolved all of that

10    with all of your discussion prior to that.

11         THE COURT:  Okay.

12         MS. RYAN:  The only thing that is remaining, and

13    I -- my sense is that this is where this is headed.  We

14    have -- my understanding is we have resolved the issue of the

15    subpoena.  I will be filing a motion for contempt and I will

16    be detailed listing exactly where the documents that I need

17    are, what's at fault for what's already been given.  For

18    example, the standards of care are not AR's.  They are

19    multiple operational procedures that say things like, Hilary

20    Victoroff, you should take this person out of the hospital,

21    put her directly in the infirmary, not general population.

22         Those are things that I will list out specifically

23    as the Court has directed me that I'm able to do, and I will

24    reissue that.

25         THE COURT:  Okay.

68

1      MS. RYAN:  Lastly --

2      THE COURT:  Wait, wait, we were on Ms. Colony's

3 issues.  Go ahead.

4      MS. COLONY:  I guess the last thing that I would

5 ask the Court to address is the vitriolic and the harassing

6 correspondence.  If Ms. Ryan could --

7      THE COURT:  Could you give me an example.

8      MS. COLONY:  There is multiple examples that I

9 attached as exhibits to my motion.

10      THE COURT:  One issue.  I mean, I can't deal with

11 generalities, so give me a page.  Everything is documented at

12 the top as far as ECF numbers, so give me a number.

13      MS. COLONY:  A11 and A12.

14      THE COURT:  All right, hold on.

15      MS. RYAN:  Ms. Colony, your money and your cards

16 and everything fell out of your pocket on the floor over

17 there by Ed.

18      MS. COLONY:  Oh, thank you.

19      THE COURT:  All right.  Let's see, A11 --

20 Defendant's Exhibit A11.

21      MS. COLONY:  A1 --

22      THE COURT:  Let's do one or two at a time.  So you

23 told me A11, A12.

24      MS. COLONY:  A13.

25      THE COURT:  All right, we're going to stop there.

69

```
 1          (Pause)
 2          THE COURT:  Okay.  So, Ms. Ryan, you have some
 3  experience with the criminal justice system, right?
 4          MS. RYAN:  Yes.
 5          THE COURT:  And you were accused of and convicted
 6  of a theft crime, correct?
 7          MS. RYAN:  Yes.
 8          THE COURT:  So when you accuse somebody, including
 9  a government official, or especially a government official
10  engaging in shady conduct, you understand what you're doing?
11          MS. RYAN:  I do.
12          THE COURT:  All right, I want you to do that.  If
13  you're going to do -- if you're going to make allegations
14  against Ms. Colony or anyone else who has acted illegally,
15  you can bring those through a proper motion.
16          MS. RYAN:  I did.
17          THE COURT:  But let's not engage in that kind of
18  discussion or speech anymore, okay.  It's not productive.
19  You -- what discovery is intended to do is ask questions and
20  receive responses, and it's not to get sidetracked on
21  personal attacks.  It detracts from what we're doing, it's
22  against the rules that we have as far as how we treat one
23  another.  If you have an issue that you think you deserve
24  relief on, file a motion, okay.  Is that okay, Ms. Colony?
25  All right, that's the ground rules on that going forward.  So
```

1   no more personal attacks.

2          What else Ms. Colony, from you?

3          MS. COLONY:  That's all, Your Honor.

4          THE COURT:  Okay.  And what else from you?

5          MS. RYAN:  That final portion, Claims Number 5 and

6   6, I did file them to the Court and that has been the

7   contention back from Ms. Colony.

8          THE COURT:  What do you mean you filed them to the

9   Court?

10         MS. RYAN:  I filed my complaints about an

11  accusation in Claims Number 5 and 6 in ECF 119.

12         THE COURT:  But that means they're formal claims

13  and so that's fine.

14         MS. RYAN:  They are, they are, which is -- you're

15  right, they are fine.

16         THE COURT:  Well, you've asserted them.

17         MS. RYAN:  I have asserted them.

18         THE COURT:  Okay.

19         MS. RYAN:  And so now we are done because the Court

20  today has resolved all of these issues except for this last

21  remaining one.

22         THE COURT:  Go ahead.

23         MS. RYAN:  If we are going to proceed based on Your

24  Honor taking the word of Ms. Colony that she has submitted

25  everything and that she's completed the process with DOC and

1    plaintiff is going to file a motion for contempt and list

2    those things out and let that avenue run its course, is it

3    possible -- since Ms. Colony I feel is conflicted in

4    investigating Claims Number 5 and 6 and she denies them and

5    DOC is saying, take it through Ms. Colony, is it possible,

6    then, the only next step I have is to take that to a law

7    enforcement agency or a regulatory agency the investigation

8    of those two claims, which I -- even more so after today am

9    firmly convinced that we have a problem.  I would be taking

10   it to the state nursing board, to DORA, and turning it over

11   the same thing I would have turned over under AR 9502.

12           One of the things that I did not give the Court a

13   complete copy of, but I did bring with me today is

14   Ms. Victoroff's signature that I got through giving a

15   discovery request to Ms. Colony on AR 950-02(b), which is a

16   sworn affidavit of what an employee can and cannot do with

17   medical records of an inmate.  And that's where I believe

18   that wrongdoing has happened.

19           And so it's completely out of the realm of the

20   Court right now.  You've taken it and given us directions and

21   we are covered, but I still have to investigate and get some

22   kind of closure answer on those two claims.  The only ones

23   left are DOC IG office or DORA.

24           THE COURT:  So you filed a motion already with

25   regard to Claims 5 and 6.

1           MS. RYAN:  Right.

2           THE COURT:  It's at docket --

3           MS. RYAN:  ECF 119.

4           THE COURT:  No, that's your fourth amended

5    complaint.

6           MS. RYAN:  And that's --

7           THE COURT:  Docket 147 --

8           MS. RYAN:  No, sir.

9           THE COURT:  -- which seeks bifurcation --

10          MS. RYAN:  No, sir.

11          THE COURT:  -- 5 and 6.  Well, it does do that.

12          MS. RYAN:  Yes, that's true, that is up today, but

13   the claims.

14          THE COURT:  That's not before me.  That's before

15   Judge Krieger.

16          MS. RYAN:  The claims are in ECF 119.

17          THE COURT:  Right.

18          MS. RYAN:  Claims Number 5 and 6, when that was --

19   amendment was put in, we had just gotten all of this starting

20   to come to the surface and I put those claims in and that's

21   what Ms. Colony and I have been going around and around on

22   for some time now.

23          And I haven't removed those in my proposed fifth

24   amended and I am not going to remove those until I have

25   discovery.  Ms. Colony is denying them on behalf of her

73

1    client.

2            THE COURT:  Denying what?

3            MS. RYAN:  Pardon me?

4            THE COURT:  You said Mr. Colony is denying them.

5    What is she dying you?

6            MS. RYAN:  She wants to -- she won't let DOC do the

7    investigation, which is what the AR that Ms. Victoroff's

8    affidavit -- sworn, signed affidavit says --

9            THE COURT:  Wait, so I'm dealing with discovery

10   issues.

11           MS. RYAN:  -- has to happen.

12           THE COURT:  I'm not dealing with the merits of the

13   case.  What discovery issues do you have?

14           MS. RYAN:  Exactly.  So the issue is, I cannot get

15   any discovery on what did happen here with these records.

16   Something did.

17           THE COURT:  Why can't you?  I don't understand.

18           MS. RYAN:  What still hasn't been answered by

19   Ms. Colony is exactly where did she get the records, two

20   banker boxes full.  Why were they held for months with nobody

21   seeing them, why were they paper, brought to you as paper

22   when I know for a fact that my digital records have been

23   given to every physician that I have retained since I left

24   parole.

25               Did your client or did she not?  Why are they

1    sporadic?  Why are they not in sequence?  They are not in the

2    format of the medical records custodian because they don't

3    match anything that the medical records custodian has given

4    to everybody else.  Where did you get the files that are

5    sensitive information for LSI classifications, mental health?

6    All of those things that have absolutely nothing to do with,

7    quote, medical records which you continue to say that you

8    have.

9          THE COURT:  So isn't this the same issue that I

10   said we're going to move on from.

11         MS. RYAN:  We are.

12         MS. COLONY:  Yes, Your Honor, that specific issue

13   you have addressed that there will be no more contention over

14   my office's receipt of the records and how that happened and

15   whether that was proper.  I do acknowledge that is the way I

16   interpret Claims 5 and 6, that it's just more of her

17   objection, another way for her to express her objection to

18   the fact that my office obtained her records.

19         And I guess if that conflicts me out as if these

20   claims are stated against me or I'm conflicted out as a

21   witness, I don't -- that seems to be what she is suggesting.

22         THE COURT:  Well, that's up to Judge Krieger.  So

23   nobody is entitled to create an issue that will disqualify an

24   attorney as part of the discovery process.  We can't stop

25   them in the first instance of trying to claim that, but there

75

1    are certainly dispositive motions you can bring that would

2    resolve that issue.

3          I don't know how to handle that at the moment

4    because, again, it's Judge Krieger's case, it's not my case.

5    So I think you'll just have to file a dispositive motion

6    at -- well, you can do that any time, you don't have to wait

7    until the dispositive deadline.

8          And if she -- if Ms. Ryan thinks that you're

9    disqualified, again, we have means of raising that to the

10    Court.  So those kind of things have to be done on motion.

11    It's not something that I would ever decide, even if I could,

12    in an oral record in a hearing like this because they're too

13    important.  So --

14          MS. COLONY:  Well, and I think she's referencing

15    discovery that she has served that seem directed to those two

16    claims, and the majority, if not the entirety, of the

17    discovery request seeks attorney/client and work product.

18    How I obtain the documents, who I talk to, who -- that's none

19    of her business.

20          THE COURT:  You assert the privilege.

21          MS. COLONY:  And I did.  I've asserted the

22    privilege.  I know she's very frustrated with that.

23          THE COURT:  Okay.

24          MS. RYAN:  And I've ended my frustration today.

25          THE COURT:  Okay.

1          MS. RYAN:  This is the document that makes up the

2    basis that I didn't get to you.  If I can have you take a

3    look at.  Hilary Victoroff's signature, it's a sworn

4    affidavit that says she absolutely will not do or engage in

5    what had happened in Claims Number 5 and 6.

6          And so all of this ends today.  Ms. Colony doesn't

7    have to worry about me talking to her about any of it because

8    I am filing my motion for contempt, the Court will deal with

9    that in the due process that it is.  She states that she has

10   given me everything.  The Court has taken her word, and so

11   that's the end of it until something changes in the due

12   process possibly of the contempt motion.

13         THE COURT:  Is this a document everybody signs as

14   an employee?

15         MS. RYAN:  Yes.

16         MS. COLONY:  That's correct, Your Honor.

17         THE COURT:  Okay.  Well, it's not an affidavit, it

18   just --

19         MS. COLONY:  Right.  It said they're required to --

20         THE COURT:  It's not even signed under oath, it's

21   just a statement acknowledging application of certain

22   policies and rules.

23         MS. COLONY:  Right.

24         MS. RYAN:  Right.

25         MS. COLONY:  That's correct.

1          THE COURT:  Okay.

2          MS. COLONY:  I will add that even though I am not

3     obligated to do so, I have more than once informed Ms. Ryan

4     that Ms. Victoroff had nothing to do with the transfer of her

5     records from CDOC to my office.  Ms. Victoroff was not

6     involved in that in any way, so I --

7          THE COURT:  Okay.

8          MS. COLONY:  -- I don't know why the issue

9     continues.

10          MS. RYAN:  To finish, at that point now there is no

11     investigation through 950-02.  I'm clear with parole.  I did

12     obey the direct order from DOC by going directly to Director

13     Williams, and Director William and DOC, my parole, back to

14     them, she tried, she tried to obey your AR.  You wouldn't

15     allow it, the attorney wouldn't allow it.  We're considering

16     Ryan to be clear, she's not at fault.

17          THE COURT:  But Ms. Ryan, again, I'm dealing with

18     discovery issues.  What does this have to do with anything I

19     can issue an order on?

20          MS. RYAN:  Am I free to take my evidence that I

21     consider to be evidence that validates Claims Number 5 and 6

22     to the Department of Regulatory Agency State Nursing Board

23     for investigation.

24          THE COURT:  That's something I absolutely can't

25     answer.  I have no idea and I wouldn't answer it if I knew

1    the answer.

2            MS. RYAN:  Okay.

3            THE COURT:  So I have to deal with the issues that

4    are within my jurisdiction, so.

5            MS. RYAN:  Then my intent, Ms. Colony --

6            THE COURT:  Wait, no, no, no.

7            MS. RYAN:  -- is to do that.

8            THE COURT:  But that has -- again, that question to

9    me doesn't have anything to do with discovery.  So do you

10   have anything with regard to discovery that remains to be

11   discussed?

12           MS. RYAN:  At this point on Claims Number 5 and 6,

13   until an investigation is complete, Ms. Colony has completed

14   her end of discovery that she feels.  If I find -- if an

15   investigation finds any more, then I understand I'm capable

16   of bringing that to the Court and saying, Here you go --

17           THE COURT:  Right.

18           MS. RYAN:  -- this is what the nursing board turned

19   up and this is what I would like to do with Claims 5 and 6.

20   Otherwise, we are completely, totally done.

21           THE COURT:  Okay.  So just to reiterate the

22   overarching rule regarding how we proceed in court, cases are

23   won on the facts of the law and I would not look favorably on

24   any further contentious conduct.  Discovery is supposed to be

25   a cooperative process where parties ask for information, the

1    other side provides it.  If they don't provide it, they say

2    they don't have it, or they object, and then I handle those

3    objections.

4           These are the processes we're going to have to

5    engage in in this lawsuit, but I certainly don't want to see

6    starting on October 7 of 2019 any more inappropriate or

7    scandalous allegations.  Those have got to cease.  They would

8    be the subject of punitive court order if I see that again.

9           Okay.  Anything further, Ms. Ryan?

10          MS. RYAN:  Something with regard to the way, the

11   Friday filings were made electronically with Ms. Colony, and

12   I don't know if this is something that -- I don't think the

13   State has any interest in it.  She obviously just filed

14   straight through without doing Level 1.

15          THE COURT:  What Friday?

16          MS. RYAN:  On her filings of Friday where she

17   exhibited -- she put all of her exhibits in, the motion for

18   stay and protective order, et cetera.

19          THE COURT:  Okay.

20          MS. RYAN:  It's a -- it's something that -- an

21   observation that I would like to direct to Mr. Kennedy to see

22   what his view is on it.

23          My view on it is I -- I don't have any control over

24   how you all file to CMECF.

25          THE COURT:  Ms. Ryan, direct your comments to me,

80

1   please.

2       MS. RYAN:  Okay, but the bottom line with that is

3   that we are under a protective order and there is nothing in

4   this case that has even completed discovery yet, that has

5   anything concluded yet, and to -- I filed everything as Level

6   1 for the parties to be able to look at.

7       The reason that I do that is because I have been

8   getting a lot of help from the pro se clinic and external

9   attorneys, two -- two firms that are exceptionally familiar

10  currently, past with CHP.

11      This case, to everyone's knowledge that they can

12  come up with, they didn't reason know that HCPF 1406 existed.

13  They didn't even know of the inmate catastrophic Medicaid

14  provision.  They all have researched that law and very

15  thoroughly explained to me what the law says and the solidity

16  of my case.

17      THE COURT:  Wait.  Are you trying to say that the

18  Government is -- or any of the defendants are filing

19  documents that should have been restricted that aren't?

20      MS. RYAN:  No.  I think that -- Ms. Colony, all of

21  them can file however they wish, but there is a dual edged

22  sword there.  When you file documents that even though they

23  don't say confidential because they're not medical records,

24  you are putting out into the stratosphere a foundation of

25  this case.  For example --

1            THE COURT:  Well, wait a second, Ms. Ryan, we don't

2    have star chamber proceedings in the United States.

3    Everything that is filed is presumably open to the public,

4    the public gets to look at what we do.

5            MS. RYAN:  All right.

6            THE COURT:  Only if you had a legal reason to

7    restrict a document can you even do that so all these

8    proceedings are open.  That's just the way the lawsuit is.

9    It has been that way since we were founded.  What are you

10   saying?  I don't know what you're saying.

11           MS. RYAN:  What I am -- then let me -- let me

12   finish it.  I will stop worrying about the fact that this

13   case can become the poster child for are numerous inmate

14   cases just based on the release out into the stratosphere of

15   Jennifer Mix's CV materials.  No one has ever identified that

16   CHP is tied to -- whether they do it themselves or it's by

17   their contract or whatever, is responsible for conducting

18   business according to federal regulation -- to all

19   legislation, all health plans, state and federal.  And that

20   is what Jennifer Mix's documents do

21           THE COURT:  Again, I can't -- I can only deal with

22   discovery issues.

23           MS. RYAN:  And so -- yes.

24           THE COURT:  Do you have anything further with

25   regard to discovery?

82

1           MS. RYAN:  If -- would you please consider not

2    putting those materials out there without some level of

3    caution, because I want no more media contacting me.  I am

4    not here for this case to be blown up --

5           THE COURT:  Okay, I don't have this discussion in

6    front of me.  You guys can talk about that.  That has nothing

7    to do with me.  You can ask her whatever you want, but again,

8    do it professionally, with no --

9           MS. RYAN:  All right.

10          THE COURT:  -- harassment.  We'll be in recess.

11          (Whereupon, the within hearing was then in

12   conclusion at 12:30 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                    October 23, 2019

8    Signature of Transcriber               Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PATTERSON TRANSCRIPTION COMPANY**
**scheduling@pattersontranscription.com**