IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.    18 – cv – 00956 – MSK-MEH

**SHAWNEE RYAN, Plaintiff**

**V.**

**Defendants:**
**CORRECTIONAL HEALTH PARTNERS (et al) (dba Correctional Health Partners, Inc.; Physician Health Partners, Inc.)**

**DR. JENNIFER MIX, M.D.  (personal and professional capacity)**
**HILARY VICTOROFF N.P.  (personal and professional capacity)**

**PLAINTIFF RESPONSE TO DEFENDANT HILARY VICTOROFF'S MOTION FOR SUMMARY JUDGMENT (ECF 224)**

Plaintiff Shawnee Ryan comes now with the following response to Defendant Hilary Victoroff's Motion for Summary Judgment at (ECF 224):

**Preliminary Statements Information and Facts**

1. **Attorney Amy Colony and Defendant Victoroff's claims (Page 2, para 1):** "…On February 6, 2017 Victoroff admitted Plaintiff to the infirmary for "neutropenic precautions" based on the results of labs drawn on the same date and upon the advice of Plaintiff's oncologist…" (and) "Plaintiff was ultimately transferred back to the hospital pursuant to her oncologist's orders…"; are utterly false.  **See Attached Exhibit One** (*which are the same records attached to Plaintiff's Motion for Summary Judgment (and) the same exact records obtained from Aurora South as were obtained by Attorney Colony*).  **Note that Plaintiff was admitted to Aurora South emergency room on <u>Tuesday, February 7, 2017, which marked Defendant Victoroff's first return to work after four days off (see Attached Exhibit One):</u> admitted on February 7, 2017 at "20:33" (8:33) p.m.  Not on "February 6, 2017" as claimed by Attorney Colony and her client and "after" seeing the LabCorp draw done on Monday, February 6, 2017 at 10:53 a.m. local time.**

1

2. **Note within Exhibit One** that Defendant Victoroff, according to her time sheet, <u>was nowhere ON SHIFT AT DWCF and not in direct physical care of Plaintiff</u>.  Nor do Attorney Colony and Defendant Victoroff provide any CDOC Infirmary records backing up their attempted claim now that infirmary admittance and hospital admittance occurred on Monday, February 6, 2017. **Unless using CDOC medical records the rest of the parties do not have; they cannot due to the handling by the State on all CDOC discovery to date. All infirmary records for the dates of this event are missing from what Attorney Colony obtained from CDOC during discovery.  Thus, there is no chronological record <u>available to view</u>, that is in the hands of the parties in this case.  NOTHING that shows that Ryan was NOT admitted to the infirmary on Feb. 6, 2017 and instead, was admitted to the infirmary on Feb. 7, 2017 into the hands of Dr. Yegappan.  And within two hours was in the ER of Aurora South Hospital. We have only Attorney Colony's 'word' to the Magistrate Court that duty logs, transport logs and departments, no such thing as full printouts and only 'condensed' printouts exist within CDOC, that there is 'no such thing' as full grievance logs and accountability, no such thing as medical administration and CMO files.  The parties, once again, have NOTHING to actually look at when trying to vet Amy Colony and her client.  NOWHERE, within the CDOC medical discovery obtained by Attorney Colony is there a fax stamp from RMCC and Dr. Burke's nurse "Bonnie" that says RMCC received the February 6 lab on February 6th.  NOWHERE, in the CDOC medical discovery from Attorney Colony is there ANY record of "Dr. Burke" starting an antibiotic ("Levolfloxin") <u>nor Ryan being given same.</u> NOWHERE, are there ANY infirmary records <u>and the entire block of INFIRMARY time is missing from infirmary records; thus, we have nothing from the only MD present at CDOC and involved:  Dr. Yegappan.  Plaintiff Shawnee Ryan attests, that if she had access to discovery duty logs and admittance to DRDC and discharge from DWCF records that she asked for in subpoena duces tecum and contempt citation (which is what is required when going to the infirmary and IS shown in duty logs and files); that if she had the full and unbroken chronological records that show the NAMES of all nursing staff and NP Debra Reilly who are the ones who took care of Ryan on February 6, 2017 when Hilary Victoroff was not present at DWCF medical clinic (never once did Victoroff EVER examine Ryan during these 4 days) (every single detail of anytime an inmate is touched by staff, are chronological logged into records and security witnessed): we would HAVE</u>**

2

**the records details backing up the Plaintiff and impeaching Defendant Victoroff's claims now.**

3. **Shawnee Ryan was facility transferred/discharged from DWCF and facility transferred/admitted to the DRDC infirmary**, with security and OCA escorting her, on the evening of Tuesday February 7, 2017 at aprx. 6:30 in the evening. She passed through checkpoint and was carefully attended to due to the fact that she was so ill, the C/O who knew her well and her OCA were genuinely concerned. Dr. Yegappan spoke directly to Dr. Burke via phone, was ordered to transport to hospital emergency room, did so and Shawnee Ryan was transported by C/O Maes as her hospital duty and admitted at 8:33 p.m. **on Tuesday, February 7, 2017.**

4. **Shawnee Ryan presented, upon admittance (attached Two and Three):** with SEPSIS of the blood and NOT a Staph infection as Attorney Colony and Defendant Victoroff continue to attempt to lower threat level to; with blood labs registering critical and markedly declined from the draw taken on Feb. 6, 2017; was given transfusions of whole blood and platelets in order to bring her to ANY level of safety in order to treat; was diagnosed with Influenza A; was diagnosed with critical neutropenic fever; was diagnosed with critical neutropenia and pancyptopenia; was diagnosed with an open 'bite/wound' in obvious state of acute infection which was diagnosed as having grown to MRSA at the site of the infected wound. Shawnee Ryan was placed in progressive, tenuous to critical classification.

5. She was hospitalized for 10 days until having reached enough stability to be returned to the prison. Where she was admitted into DRDC infirmary and resided <u>for the next 18 months</u>, with never again having Hilary Victoroff treating even when on rotation to the infirmary. Ryan remained on flu antibiotics and medication until she entered her 2nd round of DTPACE in March 2017. She remained on antibiotics and medication for the infected wound until aprx. April 2017 when all traces were recorded as being finally over. She was kept, in the infirmary, on neutropenic and pancyptopenic (and) hypogammaglobulin risks precautions for aprx. 8 months longer including DTPACE Round 2 and stem cell transplant June 2017.

6. **There has NEVER been raised the question of whether Shawnee Ryan was stable when discharged from DTPACE #1 on February 3, 2017.** The ONLY hospital records attached to Defendant Victoroff's Motion for Summary Judgment are the <u>DTPACE Round One</u> records and it is assumed that is to show Ryan's stability on February 3, 2017 in labs and discharge orders.

7. **From ECF 1 forward, Defendant Hilary Victoroff is charged with the unequivocal and undeniable fact that Shawnee Ryan was turned over to her medically professional care and custody at aprx. 3:30 pm on Friday the 3rd of February. And, for four short days of being solely under the care of Victoroff, was readmitted via the emergency room at Aurora South Hospital at 8:33 pm on Tuesday February 7, 2017 in tenuous progressing to critical care state of health. Aurora South Hospital staff was not present at the prison during those four days; Dr. John Burke was not present during those four days; FORMER CMO Tiona was not there during those four days AND no other CDOC employee was assigned to Shawnee Ryan's care. The ONLY examination physically was completed in full by Dr. Yegappan, in the form of fast triage in order to call Dr. Burke and receive his orders on the night of Tuesday, February 7, 2017. NOT ONE PROFESSIONALLY LICENSED caregiver was present nor made ANY decisions regarding 'what' care and "what" follow through was given to Shawnee Ryan during the four days in question <u>EXCEPT</u> State of Colorado licensed mid-level, general practice nurse practitioner Hilary Victoroff (See attached exhibit 5).**

8. **In light of those facts, it is utterly irrelevant: other than to show the exceptionally reckless, willful, poor and inadequate lack of action and foresight of N.P. Hilary Victoroff from the afternoon of February 3, 2017 through to out of facility transport <u>upon the intervention of another</u> to emergency room on the night of February 7, 2017; that Hilary Victoroff in NOT admitting Shawnee Ryan as precaution to the infirmary on February 3, 2017. WHAT IS relevant is the obvious (even to security guards in a prison unit who called medical with emergency status to come to the unit) are the fact(s) that Shawnee Ryan, over the short span of four days, came very close to death before getting adequate to keep her alive care. That fact, cannot be blamed on ANYONE but Hilary Victoroff who did not even have the wherewithal to push any barrier(s) present in her way to get Ryan over to an infirmary BEFORE she was in such critical condition that she had to be**

4

**revived in a hospital with whole blood transfusions and intensive hands-on care.**

9. With regard to "Footnote Two", Plaintiff refers to Exhibit Six attached. Which is the voluntary motion of dismissal <u>for the civil liability only, not the alleged criminal liability within Claims 5 and 6 against Hilary Victoroff. Hilary Victoroff has not been dismissed from ANY aspect of these charges against her. She has been given a reprieve from civil liability on Claims 5 and 6 solely due to Plaintiff's health needs to eliminate as much stress as possible at this time (and) to get the nuisance of Victoroff and her attorney off of this case so it can proceed forward.</u> Ms. Colony's footnote claim is not in full disclosure.

10. **With regard to Attorney Colony attempting to claim dismissal from joinder to State Negligence statutes:** the Senior Court dismissed one claim and one claim only with her previous dismissal and that was Claim One against CHP Defendants. That dismissal, and the dismissal of joinder as being an amendment to the complaint as not being what Plaintiff was requesting to join; is currently in the hands of the Senior Court for reconsideration. With additional clarity that it is only a joinder to allowance of state negligence statutes for negligent claims within this lawsuit. Not an amendment made at the time. Of which, Hilary Victoroff is charged within Claim Four with Gross Negligence resulting in Deliberate Indifference to serious medical needs. **The Senior Court pends.**

11. **With regard to Attorney Colony attempting now, to turn physical pain and mental anguish during this event**; into broader "punitive loss and suffering" in an attempt to avoid relief: the claim falls clearly under the ability under negligence to be able to charge monetary damages for inflicted pain and mental anguish during an act of negligence. In this case, Plaintiff stands upon her Motion for Summary Judgment and all descriptions within it that she endured. Her reliefs are requested as both, as both occurred. Her request for the Senior Court to further order reliefs as the Senior Court see fit also fall within the power of the court to be able to do under negligence statutes and are at the court's discretion.

### Re: "Standard for Summary Judgment"

***With one very important caveat that "movant" (below as Plaintiff quotes Attorney Colony) is changed to "Plaintiff" as the "Movant" (and) "Non-Moving" party is changed to Defendant Hilary Victoroff (basically, Plaintiff is reverting attention back to the Motion for Summary Judgment against Defendant Hilary Victoroff):*** **Plaintiff Shawnee Ryan states as her response:  "She is in complete agreement."**

==**As follows, with "Movant" Shawnee Ryan/Plaintiff speaking (and) in concert with the Statement of Fact and Exhibits given above (and) in concert with Plaintiff's Motion for Summary Judgment at (ECF180):**==

**"…Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party does not have to negate the nonmovant's claims in order to obtain summary judgment. Allen v. Muskogee, 119 F.3d 837, 840 (10th Cir.1997). Rather, the moving party is merely required to show "'that there is an absence of evidence to support the nonmoving party's case.'"  Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the movant carries its initial burden, the plaintiff must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir.2000)).**

**A material fact is one that "might affect the outcome of the suit."  see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–50 (1986).  An issue is "genuine" only "if the evidence is such that a reasonable jury could return**

**a verdict for the nonmoving party." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. 4.**

**Evidence sufficient to defeat a motion for summary judgment "must be based On Evidence sufficient to defeat a motion for summary judgment "must be based on more than mere speculation, conjecture, or surmise." Self, 439 F.3d at 1230 (10th Cir. 2006) (quoting Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir.2004)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." Phillips v. Calhoun, 956 F.2d 949, 951 n. 3 (10th Cir.1992); accord Annett v. Univ. of Kan., 371 F.3d 1233, 1237 (10th Cir.2004) (noting that "unsupported conclusory allegations ... do not create a genuine issue of fact").
A pro se party's materials may be afforded a liberal construction, but the court does "not act as his advocate." Campbell v. Jones, 684 Fed. Appx. 750, 753 (10th Cir. 2017). Rather, "[t]he court views the record and draws all inferences in the light most favorable to the non-moving party." Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc., 431 F.3d 1241, 1255 (10th Cir. 2005). However,"[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).**

**RE: "CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT"**

**A. Plaintiff is striking, per the Magistrate Court's orders of October 7, 2019 to Attorney Colony to remain contained ONLY upon her own scope within this case:** any and all references to any medical history of Shawnee Ryan other than **what her client is charged with.** We are NOT trying years of medical history. We are NOT trying "multiple myeloma" and/or ANY other care other than the 4 days in question with the charge. Attorney Colony's continued recalcitrance and utter disregard to the integrity of this case and the rules and order of the Court, each and every time she crosses a line outside of her own scope and/or attempts to divert attention from the grossly incomplete CDOC records she inserted herself into discovery that

7

was not hers to obtain; is brought BACK, again, for the 5th time, to the Magistrate Court on February 20th, 2020. And within the sequential filing to this response today of Plaintiff's Motion for Sanctions and Discipline which is forthcoming in time for that hearing. **Plaintiff is disregarding ANY and ALL movements out of Attorney Colony's scope of this claim and is NOT responding.**

With that said:

B. **With regard to affidavit of Susan Tiona:  See #10 on her affidavit.** Susan Tiona not only has no recall of the scope of this claim (likely because she was not involved in any way nor was she present) the very idea that a FORMER employee, *requested to leave by her employer and replaced by the long-time formerly assigned CDOC M.D. to Shawnee Ryan (Dr. Rishi Ariola-Tirella),* and who was originally charged in this case due to her actions that Dr. Tirella will be testifying to at trial; leaves Plaintiff dumbfounded that this extent of disregard to any accountability to discovery and facts of what the actual CDOC discovery in this case is, has been gone to by Attorney Colony at this time. **In order to void being sucked 'around the twist' again, at this time (see sequentially filed Motion for Sanctions and transcript of upcoming hearing), with Attorney Colony and the reality of CDOC discovery and containment of scope:  we are NOT trying ANYTHING within Susan Tiona's post-employment 'reviews' or 'hearsay';  we are NOT trying ANYTHING except the decisions, actions and choices of Hilary Victoroff spanning the four days in question;  we ARE NOT (YET) bringing Susan Tiona BACK into this case due to the circumstances Dr. Tirella is testifying to AND her now plain spoken personal disclosures of denials of care based solely on her 'authority' and 'powers' that she lays claim to in her affidavit.** For now:  Plaintiff responds that Susan Tiona is utterly irrelevant to the facts of **this claim**.

C. **With regard to the affidavit of Hilary Victoroff:**   1.  Defendant Victoroff cannot, and has not, provided a single CDOC Infirmary or Record of fact to back herself up (nor) provided the full Aurora South medical record for the four days (nor) given ANY professional explanation other than to discredit

8

her professionalism by attempting to blame exposure to Influenza at hospital (moot point "where" exposed.  The point is Influenza A developed and became critical on Hilary Victoroff's watch and no one else's). Attempts to point the finger and lay blame on the good credibility of Dr. John Burke and Dr. Yegappan while simultaneously insinuating against the honesty and credibility of the patient who was utterly and completely at the mercy of Hilary Victoroff's decision and could not human possibly "fake" the diagnoses upon re-entry into Aurora south Hospital on the 7th. 3. Attempts to blame "penological" influences and prior employees long, long gone (Tiona) and not even first-hand present. And an attorney who assists in that despite the existence of extensive case law both federal and state and constitutionality that DO NOT ALLOW willful and knowing infliction of harm that could bring death to ANY human being.  Inmate or no. 4. 'CONTINUES to attempt to go outside of scope of charge and insert implications that Plaintiff's cancer diagnoses and pre-existing conditions are to be considered. 5.  We ARE trying:  Influenza A.  Sepsis of the blood. A HALO level drop from 10's of thousands of feet up in blood stability (for Ryan) that was stable when she took custody and near death needing whole blood transfusions four days later. 6.   We ARE trying:  Hilary Victoroff's watch.  **Plaintiff responds to Hilary Victoroff's affidavit as just stated.  It is not backed up by factual evidence that clears her.**

**D.  As to Attorney Colony's remaining Claims, Defenses and Elements:**
Plaintiff Shawnee Ryan responds to all as stated in the above "Preliminary Statement of Information and Fact" (and) her response to "Standard for Summary Judgment".  Plaintiff Shawnee Ryan further stands in response upon **(ECF 180) her Motion for Summary Judgment and all stated and shown within it.**

**Plaintiff pleads in response as follows:**

Nothing more than conjecture combined with both lack of bringing forward verifiable factual hard evidence to vet herself and her claims (and) an obvious twisting/spoliation of facts that are already on record as verified and highly

credible **in the date and time stamp of admittance to Aurora South Hospital as on a completely different day than Attorney Colony is claiming on behalf of her client**; is found within this Motion for Summary Judgment (and) the Response to Plaintiff's Motion for Summary Judgment at (ECF 211).

Nothing has been given, assisted with or ANY standing up and stating to Plaintiff that she KNOWS the medical records of Aurora South are truthful has been given by Hilary Victoroff in this case. **At this time, Plaintiff gives a personal truthful story of an encounter with Hilary Victoroff many months after the facts of this event in Claim Four: "On a rotation of work at the infirmary, the one and only time Hilary Victoroff even spoke to Shawnee Ryan was to enter her room at the infirmary, sit down in a chair and ask "how she was". Keep in mind, that Shawnee Ryan and Hilary Victoroff had known each other for over 5 years at this point with many, many encounters. "OK" was the answer. "You had Influenza A" and looked as though she wanted to cry. She was obviously distraught. "I waited until Tiona was in court before putting in the order to bring you over here". Ryan gave no answer. The conversation ended." Hilary Victoroff has a conscience, albeit overpowered now by fear and self-preservation. At this time, she should stand up and just stop any alleged disinforming and/or alleged deceit. Why? <u>Because we ARE trying the results shown in the medical records started at 8:33 p.m. on Tuesday, February 7, 2017.</u> We ARE also trying, Ryan being left alone, for no humane reason, for four days in a single ADA cell with every single one of the diagnoses seen on those credible records. She nearly died. After all she had been through and remained in the future to go through with terminal cancer diagnoses; Shawnee Ryan nearly died from those diagnoses given on February 7, 2017.**

Plaintiff asks the Senior Court to deny Hilary Victoroff's movement for Summary Judgment (and) to grant Plaintiff's Motion for Summary Judgment at (ECF 180) and her Motion for Reconsideration that would attach Hilary Victoroff to State Negligence Statutes governing her in addition to federal jurisdiction.

10

Respectfully submitted this 9th day of February 2020.


S/Shawnee Ryan
12081 West Alameda Parkway Box 218
Lakewood, Colorado 80228
720-431-8319
shawneeryan216@gmail.com

**CERTIFICATE OF SERVICE**
I have served a complete and full copy of the foregoing via CMECF to the parties below on this 9th day of February 2020.


S/Shawnee Ryan
12081 West Alameda Parkway Box 218
Lakewood, Colorado 80228
720-431-8319
shawneeryan216@gmail.com



Clerk of Court:  cod_cmecf@cod.uscourts.gov




Andrew David Ringel:  ringela@hallevans.com
Edmund Martin Kennedy:  kennedye@hallevans.com
Amy Colony:  acolony@coag.gov