IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.   18 – cv – 00956 – MSK-MEH

SHAWNEE RYAN, Plaintiff

V.

Defendants:
CORRECTIONAL HEALTH PARTNERS (et al) (dba Correctional Health Partners, Inc.; Physician Health Partners, Inc.)

DR. JENNIFER MIX, M.D.  (personal and professional capacity)
HILARY VICTOROFF N.P.  (personal and professional capacity)

**PLAINTIFF'S RESPONSE TO (ECF 235) "REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FROM CHP DEFENDANTS"**

**Plaintiff Shawnee Ryan,** now that Discovery Conference of February 20, 2020 before the Magistrate Court is completed; comes now and responds to the CHP reply as follows:

*A.* Plaintiff's response focuses on the (2) most basic and fundamental premises of complaint/argument continued to be raised by CHP Defendants during this dispositive phase of this case:  "…**because Plaintiff _cannot establish_ any action or omission…caused Plaintiff's claimed violation of her constitutional rights related to the medical treatment provided…Second, also similar to Dr. Mix, _even if the requisite causal link_ could be shown…Plaintiff also _cannot advance evidence_ of any subjective intent by anyone associated with CHP necessary for any cognizable claim against CHP…Third, _the decisions made by a single CHP Medical Director do not constitute a custom, policy or practice of CHP, which is needed to establish entity liability on the part of CHP for any constitutional claim._ … Fourth, _based on the evidence in the summary judgment record,_** Plaintiff's state tort claim for negligence fails as a matter of law based on the corporate practice of medicine doctrine, the lack of any evidence to establish negligence, and Plaintiff's failure to present any expert to opine about the applicable standard of care and its violation or that any alleged negligence caused Plaintiff any injury.  Finally, Plaintiff's assertion that Medicaid should

1

**have somehow been involved in the decision whether to authorize her stem cell transplant treatment *is inapposite and fails to provide any basis for any cognizable claim….*"**

    B.  **Plaintiff is NOT going to further burden the Senior Court, at this time, NOR place any further continued stress upon herself, by regurgitating FACTS already in record and already placed to the Senior Court within the Plaintiff's filings.  Plaintiff believes the Senior Court (and for the most part to the limited extent of involvement, the Magistrate Court) already have clear grasp of the long, winding and very detailed trail of discovery paths in this case to date (and) that Plaintiff has recently been successful enough in her reveals that the incredibly broad deviation, by CHP counsels AWAY FROM the two primary foundations of law the jurisdiction of this case is under: are substantial enough information for the Senior Court to round out her abilities to opine and order during this Summary Judgment phase.  What Plaintiff IS going to once again; hopefully as brief and succinct as possible below, state for the purpose of making clear record and attempting to not allow other counsels to lead the case down another twisted segment of the path to date in this case:  is return attention to three unequivocal facts that DO bring this case to ability to be tried and heard before a jury rather than a sweep into summary judgment.**

**With that said:**

1.  Attorney Ringel, at his first ever physical appearance in this case, at Discovery Conference February 20, 2020; was quite verbose and detailed in his personal views and summaries of what he believes this lawsuit to be at this time and what he believes it to have been all along.  **Plaintiff asks the Senior Court to review the audio of the conference at this time, as written transcript will not be done timely for the court's needs presently.**

2.  Attorney Ringel gave, then retracted as the Magistrate Court gave him factual case information, then summarized:    what he appears to believe the Plaintiff is "trying" to do with this case.

3. What REMAINS afterwards, is that CHP Defendants still did not answer or produce ANY further discovery requested of them by the Plaintiff since the beginning of this case, which she summarized into the October 7, 2019 ordered interrogatories which never got answered. (Copy given again, as attached Exhibit Two).

4. Also now on record from the February 20th conference is a clear explanation from the Plaintiff of exactly how limited, how incomplete and in some areas missing pages and chapters; that the production Hall and Evans is often stating as 'enough' to substantiate their claims regarding how they handle Medicaid and the new laws (and/or) revealing as never having been produced at all to Plaintiff.  **Missing appendices, one contract (from 2010 and former Governor Bill Ritter) NOTHING whatsoever of ANY of the areas proudly spoken of by Dr. Mix as being ongoing duties and scopes she has** (Exhibit Three attached**), NO explanations of any kind regarding Kellie Wasko (who is now allegedly the VP of the entire CHP company (we have no proofs or job duty scopes as Mr. Kennedy's supplements did not upload and remain unavailable (despite Plaintiff asking for them)) who was, for the entire incarceration of the Plaintiff, the second in command over the Clinical Services of the CDOC (and) eventually the CDOC itself, and who would have been front and center in establishing practices and policies that DID end up affecting the Plaintiff regarding the charges Plaintiff brings forward in this case.**

5. **EVEN WHEN, after being specifically asked by Plaintiff "what is the creation date of this manual?"** (Hall and Evans finally producing a single Provider Manual after the October 7, 2019 discovery conference)**: the CHP Defendants HAVE STILL not answered even that simplistic question.  Plaintiff asked it, based on her first-hand 2018 knowledge (see below footnote). Plaintiff suspects, since her question was not answered and there have been zero Medicaid related productions from the years 2014 through 2018; that the manual was likely created after April 2018. (See footnote below).**[1]

---

[1] The question is HIGHLY relevant**, as Ms. Wasko is aware it being so**, due to the extreme change the CDOC underwent, in the Spring of 2018 when Plaintiff finally filed a lawsuit against them raising the Medicaid questions, within their Chief Medical Office as former CMO Dr. Bill Frost literally walked off his post citing "too big" of a problem the CDOC was now then facing. Dr. Frost, had worked very closely with Plaintiff and former CMO (and former assigned CDOC MD to Plaintiff for a long period of time) Dr. Rishi Ariola-Tirella.  Dr. Frost and Dr. Tirella are being compelled forward to trial by Plaintiff (Plaintiff intended to depose both but as stated to record previously

3

## SUMMARY OF RESPONSE

With little to no cooperation from Attorney's Ringel and Kennedy in PRODUCING REQUESTED DISCOVERY (and/or) EVEN ANSWERING relevant practices and policies questions (with any measure of good intent (which was not done as one reviews Attorney Ringel's many objections over the months)) Plaintiff was very effectively prevented from:

- **Them (CHP and counsels):** giving no credibility whatsoever to the discoverable information Plaintiff gave them (and instead) solely relying, for a year, upon Attorney Colony and the State AG documented discovery path; DID NOT occur. A choice, that will forever remain their own to deal with and IS NOT within the human capabilities of the Plaintiff to force forward, *for a summary judgment phase* the advancing of "advance evidence", of "requisite" links: BECAUSE they did not pull discovery. Basically, comes down to Plaintiff being blocked and subsequently forced to bring 'cold' to trial and a jury, every single piece of evidence and testimony she has. **Highly effective strategy so far, on surface, but does not hold up to being grounds of award for summary judgement granting now.**

- **They (CHP and counsels) represent:** a one-owner, privately owned, for-profit, public sector and nationwide corporate entity that is publicly recorded as being affiliated with (at least one (we do not know because they have not produced)) other corporate entity (Physician Health Partners) and that boasts of annual revenues in excess of $16 million dollars per year. To even try, that long of a "long-stretch" of the imagination, to believe CHP operates on the extremely limited production to date of a "provider manual", "a 2010 state contract under a long-gone former Governor" and that Attorney Ringel is to be believed in all of his statements to date that 'everything asked for' is "proprietary", "irrelevant to this case", etc. etc.: MIGHT BE adequate enough for them to continue to attempt to intimidate a Pro Se prisoner case out of court and ability to pursue them. IT IS NOT, in Plaintiff's beliefs, adequate enough to grant them summary judgment.

---

was so contended and 'walled' from deposition ability by all three defends counsels she finally could not afford to and could not break through the logistical barriers to) to testify that Plaintiff's lawsuit (Frost) was a full-out reveal to CDOC that they DID NOT have adequate practices in place. And that Plaintiff's case was very well documented spanning years. (Tirella) will be testifying, amongst many other areas, to Dr. Mix very specifically and personally engaging in emails citing Plaintiff would "never" be given a transplant.

**Shawnee Ryan was and remains required to produce questions of enough legitimacy to be brought forward to a jury of peers at trial.  Triable issues.**

**Despite alleged lack of cooperation from all defense counsels; she has done so.**

**That jury, is not, just a jury of Shawnee Ryan's peers.  It is also a jury of peers that Correctional Health Partners (et al), in their position of many years being paid through the resources of the public and taxpayers, must face and account for their policies and practices fully meeting the requirements and intents as written of Medicaid incorporated into the new federal laws.  Their duties DO fall, not just as a private business associate to CDOC, they also fall under the same business guidelines as the rest of private industry that works within regulatory arenas such as insurance coverages (and)  public responsibilities such as health and welfare in medical care.  There is no "straddle of the fence".  Business, corporate, regulatory, health and welfare.**

**The personal choices of all three defense counsels throughout this entire case are extremely problematic for the Court to wade through.  As Shawnee Ryan had/has the right to obtain the relevant discovery she moved for.  She had the further right to exercise the ability that will always remain the foundation of 'why' the discovery process works:  to reveal answers and facts.**

**One piece can lead to another piece and the process goes on.  To obstruct her so effectively, right out of the gate in this case and then continue to allegedly obstruct (and now allegedly evade (Wasko withheld)) may have been effective to date.**

**But is not grounds for being granted summary judgment on the sole grounds of all the conjecture (no proofs) they have raised to date.**

170  **Plaintiff retains her entire pleading to the Senior Court to deny Motion for**
171  **Summary Judgment on behalf of CHP Defendants and to grant Plaintiff**
172  **whatever reliefs the court believes to be appropriate.**
173
174  **Respectfully submitted this 22nd day of February 2020.**
175
176  S/Shawnee Ryan
177  12081 West Alameda Parkway Box 218
178  Lakewood, Colorado 80228
179  720-431-8319
180  shawneeryan216@gmail.com

**CERTIFICATE OF SERVICE**
I have served a complete and full copy of the foregoing via CMECF to the parties below on this 22nd day of February 2020.


S/Shawnee Ryan
12081 West Alameda Parkway Box 218
Lakewood, Colorado 80228
720-431-8319
shawneeryan216@gmail.com



Clerk of Court:  cod_cmecf@cod.uscourts.gov




Andrew David Ringel:  ringela@hallevans.com
Edmund Martin Kennedy:  kennedye@hallevans.com
Amy Colony:  acolony@coag.gov