**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No.    18 – cv – 00956 – MSK-MEH

**SHAWNEE RYAN, Plaintiff**

**V.**

**Defendants:**
**CORRECTIONAL HEALTH PARTNERS (et al) (dba Correctional Health Partners,**
**Inc.; Physician Health Partners, Inc.)**

**DR. JENNIFER MIX, M.D.  (personal and professional capacity)**
**HILARY VICTOROFF N.P.  (personal and professional capacity)**

**PLAINTIFF'S FINAL RESPONSE TO "DEFENDANT HILARY VICTOROFF'S TO PLAINTIFF'S MOTION UNDER F.R.C.P. 37, FOR SANCTIONS AND DISCIPLINE, ON GROUNDS (sic) OF FAIL TO COOPERATE IN DISCOVERY AND SPOLIATION OF DISCOVERY; AGAINST SENIOR ASSISTANT ATTORNEY GENERAL AMY COLONY (DOC.236)"**

**Plaintiff Shawnee Ryan comes now with the following <u>final response:</u>**

"<u>Despite the very succinct and clear order of the Magistrate Court</u>: (May 29th Rule 26 initial and start of discovery conference at transcript page 18 lines 3 through 18):  "(The Court) So I think we put this on a fast track.  I think we do four months.  We try to get discovery wrapped up in four months, so it's not a case you can sit on.  So I won't be sympathetic, if we reach September, she's got her issues to deal with and your discovery is not finished.  So you put it on a fast track, okay." (Exhibit Two attached)

**Attorney Colony has asked for and received (5) extensions of time**.  Attorney Colony, despite Plaintiff continuing to keep the court informed, as she was instructed to do on May 29, 2019, of ongoing and increasing medical needs urgency;<u> has kept this case strung out for just under one year.</u>

**Further made many claims (and) 'painted' the Plaintiff, repeatedly, as being frivolous, harassing, bringing "fear" to a non-party client(s), unfounded,**

1

**"paranoid"** (and) even gone so far as to not only obstruct and damage the abilities for Plaintiff to dispose individuals that *are not even in the State AG scope and are fully and totally within the scope of the CHP Group (including a private attorney for a private citizen named Callee Redmond neither associated to CDOC).*

**Plaintiff defining as a "final" response** where Attorney Colony's present issues pending before the Senior Court are concerned is **due to the obvious to Plaintiff facts** that Attorney Colony *remains* refusing to answer specific questions poised to her and her client that would, *if answered favorably to them,* end ALL discovery concerns and she would not be finding herself facing the Senior Court now. **And in the fact** that Plaintiff has now, over the passage of time in litigation, been proven highly accurate in her early on statements that BOTH defense groups were going to find that it is the truth that the CDOC discovery seized by Attorney Colony pre-discovery is so incomplete and tainted the case and their clients would suffer loss in time due to:  crucial facts of medical record that are missing and will/are needed for their use. The integrity of the litigation due to the repeated recalcitrance; the actual defiance of Magistrate Court orders (*refer to Plaintiff at (ECF 166) October 19, 2019);* her peers now being unable to actually argue correctly or adequately against the factual and simple charges of this case and the specificity of the (1) law of federal question/jurisdiction (and) it's (1) state adaption those charges are premised on.  Every vital point of this case, whether State scope or not are compromised by Attorney Colony's actions to date.

**Plaintiff respectfully pleads the court to 'cut-off' the ongoing delaying in order to be able to be at the point of issuing orders.  Plaintiff assists by informing now that she will not be filing any further on this issue. Nor in regard to the Motions for Summary Judgments from both herself and State.**

### PLAINTIFF'S FINAL RESPONSE

- **Plaintiff's Motion for Summary Judgment (ECF 180) was filed on November 9, 2019.**

- **This case is just under one full year (March 26, 2019 ECF 89)** since Attorney Colony took into her possession (*what has now been proven through multiple discovery hearings recorded to record in this case*) as what

2

amounts to 95% or greater of "CDOC Discovery Records" of the Plaintiff. And DOES amount to ALL obtained by all defense counsels, for use, medical records in this case.  **Just under one year that Attorney Colony (her own words ECF 89) received entire medical records plus inmate records and then examined, investigated, interviewed and obtained expert viewpoints on same (her own sworn/filed statement) …for a total of <u>63 days</u> *prior to the start of discovery* and with zero disclosure she had the discovery to the other parties OR exchange that discovery with other parties. (Reference Exhibit One attached.  Further reference Exhibit Two attached which is the start of discovery transcript on May 29th, 2019 revealing Attorney Colony's first disclosure).**

- **Just <u>that singular violation</u>** of Rule 26 (a) (d) (1) (Timing), combined with that extraordinary <u>covert use</u> (ECF 89) *of gathering such significant to the case discovery and unfairly weighing to herself (and using the supreme power of the State AG office as the mechanism to do so) of <u>63 days (March 26, 2019 through May 28, 2019)</u> to develop strategy, opinion(s), planning, and influence the tone/direction of the entire case*:  ***is (or should be) singularly enough to sanction Attorney Colony <u>AND</u> dispose of <u>ALL</u> of the now seized discovery material and Quash the work product resulting.***

- *It is NOT as though the other parties could NOT do their own petitioning of the non-party Colorado Department of Corrections, for their own discovery disclosures pertaining to their own scopes.  **IN FACT,** five discovery hearings reveal clearly the numerous records made that even the separate defense group of CHP would NOT touch or use Attorney Colony's pre-discovery seizures AND hold numerous arguments and movements from ALL other parties trying to get free from the obstructions by Attorney Colony in order to proceed freely in this case. **The CDOC records of the Plaintiff would have been in the hands of ALL parties and available for use in this case.***

-  *AS IT STANDS NOW, that ability has been DESTROYED by Attorney Colony's cumulative actions surrounding the CDOC discovery in question, and DUE TO the clock having been fully run out. <u>The decisions of Hall and Evans in NOT pulling all their own discovery; are their own burden to bear.  HOWEVER, the Plaintiff was unilaterally obstructed by Attorney Colony.</u>*

3

- **EVEN STILL, due to the unusual nature of this prisoner case and all of Plaintiff's outside care; Attorney Amy Colony and Defendant Victoroff HAD/HAVE medical records of Aurora South Hospital and Rocky Mountain Cancer Centers to pull and rely upon *for their full and entire scope of charges.*  FULL, COMPLETE, UNQUESTIONABLE IN INTEGRITY FROM AN OUTSIDE SOURCE *records. Take away the records within the issue and even still they have the ability to try their scope in this case. They are not at a loss.***

- **PLAINTIFF'S 'point of no return' in filing Motion for Sanctions and the reliefs she has asked for, at Attorney Colony's self-serving attempts:** *to 'validate' and 'give 'credibility' to non-chronological notations selectively printed as "condensed encounters", that do not hold a single medical records custodian certification that the records were even obtained legally and within CDOC parameters back on March 26, 2019; and to claim a former defendant's (Tiona) "review" after the fact, over an event she was not present at and admits as such, as "expert" and ABLE to be definitive in giving credibility rather than the outright hearsay that it is, in light of the their own display of their claimed records revealing ZERO orders for care from Victoroff entered until the morning of February 7, 2017, despite Plaintiff at a near-death level of neutropenia and pancyptopenia***...is both understandable and justifiable.**

- **The credible records remain the outside records that no party had access to in order to alter or taint them in any way. Plaintiff knows, as she was there and remains believing even stronger in watching every attempt now made to conceal:** that all the outside records are shocking to the conscience in how clear it is that Shawnee Ryan nearly died <u>**during the four days**</u> she was in the care and custody of Hilary Victoroff. **Even Victoroff's own affidavit** clearly states that inmates returning from the hospital were only being "phased out" of being screened at infirmary prior to putting into general population.  Contrary to the 'story' Victoroff started her filings off with, in that "no screening policy" existed. **The utterly complete lack of credibility from that first claim by Hilary Victoroff, to changing her story of defense again when <u>the Plaintiff</u> brought to light the buried blood lab of February 6, 2017 (and) yet again in all the in-between culminating to present day; show the truth of unfavorable light Hilary Victoroff is**

4

**standing in. *There is no comparison.*  Even Hilary Victoroff's cowardly attempt to place blames onto Dr. John Burke M.D., when in reality the RMCC records are as Plaintiff has stated:  there are no records of contact other than Friday, February 3, 2017 and again from Dr. Yegappan on Tuesday February 7, 2017; is disgusting as how self-serving the attempt is. Not even producing her claimed faxing originating from DWCF on February 6 (or) ANY validated computer logs with time and date stamps.  The only credible records are now the outside records that we do have from Aurora South Hospital.**

**Plaintiff Shawnee Ryan brought to the Court,** a solid in fact and solid in view case in the federal questions raised (and) also in challenge to the personal responsibility as medical licensed individuals supposedly trained and licensed to uphold the scopes they claim while making decisions that literally affected whether Shawnee Ryan lived or died (and/or) released to freedom with the abilities to recover fully.

**It is devastating to her, in light of the depth of severity of the damages to her health;  that the full and complete records that she left in the care and custody of the Colorado Department of Corrections are not in the hands of everyone supposed to have them in this case.  It is asinine to give any credence to Attorney Colony's claims that the CDOC bases no contact with *a former inmate that they secured for over 6* years due to their "fear" of her. Asinine and ludicrous to even consider seeing the CDOC in the light of "needing" the entire power of the State AG in releasing simple records to a former inmate. Shawnee Ryan never expected bringing this case to be easy.  She did, however.  Expect it to be fair and fully within the rules, the law both federal and state (and) the constitutionality everything falls under.**

- Attorney Amy Colony is also NOT a "just graduated law school" attorney sitting in the State AG office.  Only an illiterate or incapable person would NOT be able to see, at every historical turn surrounding CDOC discovery in this case, that Shawnee Ryan is speaking facts and truth regarding her own records and what Colony seized is seriously lacking in content and obviously missing significant portions.  Prisons record every moment, of every day, of every inmate for their entire incarceration.  There is no such thing as their releasing records to a case headed to trial, as large as this

5

one, without their medical records custodian and designated staff that they authorize and oversee (AR 950-02) handling it all.  They ARE accountable, eventually, for what was left in their care and custody.

- <u>What is not as obvious in this case; is how far-reaching the ramifications of its outcome are.</u>  The scope of the CHP Defendants had critical need for the full and complete records (everywhere and all records).  Attorney Amy Colony has now <u>led</u> this entire case and the court, based on her actions and strategies, into an impossible situation.  This is an important, complex and large case that "win-lose-or draw" affects hundreds of thousands of incarcerated people nationwide.  The Act in question did not alter the areas of need Medicaid covers nor the processes within the medical portions of Medicaid.  It only altered "when" **payment** through Medicaid **can be asked** for.  Shawnee Ryan's case has first-hand credible professionals coming forward to trial, who were actually employees of the CDOC, that reveal that the CHP Group did not have a correct interpretation or use of the new law(s) in place during her time of need.  During the years of her isolation during illness, numerous others with some of them passing away, did not receive care and procedures that fully met the requirements of the Act and HCPF14-006.  Unequivocally, Shawnee Ryan's case is now in court process and the public eye from the moment it was filed.  <u>It will be relied on for future cases.  No matter what the outcome is.</u>

- Destruction of evidence (which is what Attorney Colony's cumulative actions have done (and) orchestrated the CDOC to do) are, in Plaintiff's view:  unconscionable.

- The visible to the Court proof, that Plaintiff Shawnee Ryan's full and complete records of her entire incarcerated life spanning over 6 years, as vitally important to this case, is in how hard she has figuratively fought to be able to obtain them.  She is anxious and devastated in the wait to hear orders as it is blatantly obvious that this issue caused by the State AG has impregnated every aspect of the case and every party's scope.  Frozen us all with no ability to move in any direction. This is a life essential case in importance to Shawnee Ryan.

**As we all are here to rely upon the authority of law.  The following authorities are respectfully asked to be supplemented, by the Plaintiff, into her Motion at ECF236:**

**RELEVANT USES OF AUTHORITIES WITHIN THE 10TH US DISTRICT CIRCUIT**

- **WYOMING:  Source:  US Law Spoliation of Evidence Compendium:**
   *"Rather than recognize an independent tort claim for fraudulent creation of evidence (or spoliation of evidence), Wyoming law allows courts to draw an **adverse inference** against a party responsible for losing or destroying evidence. **See Coletti v. Cudd Pressure Control, 165 F.3d 767, 775 -776 (10th Cir.1999) (Applying Wyoming law).***

   *Wyoming is well settled that a party's bad-faith withholding, destruction, or alteration of a document or other physical evidence relevant to proof of an issue at trial gives rise to a presumption or inference **that the evidence would have been unfavorable to the party responsible for its non-production**, destruction, or alteration. The Wyoming Supreme Court stated that, "for example, in a negligence action, where a party demonstrates that evidence was concealed or destroyed in bad faith (either deliberately or with reckless disregard for its relevance), that fact should be admitted, counsel should be permitted to argue the inference to the jury, the court should instruct the jury as to the inference, and the jury may infer that the fact would have helped prove negligence; a court's refusal may be an abuse of discretion. **Indeed, some courts have held that such destruction creates a presumption that shifts the burden of production,** or even persuasion, to the party responsible for the destruction." **Abraham v. Great Western Energy, LLC, 101 P.3d 446, 455 -456 (Wyo.,2004).**  Where the evidence, rather than being destroyed, has been tampered with in bad faith, **a court has the option of excluding it, thus denying its use by the tampering party.** Where the alteration is not in bad faith and is not so egregious, however, the evidence itself should be admitted, together with information relating to how it was altered, and counsel may argue the issue to the jury. **Id. Where the loss or destruction of evidence is not intentional or reckless, by contrast, some courts give the trial court discretion to admit or exclude testimony relating to the missing evidence, and discretion to give or withhold a "missing evidence" instruction.***

7

258   ➢ **COLORADO:**  Source:  US Law Spoliation of Evidence Compendium:
259      *"Important considerations should include the state of mind of the party*
260      *destroying and can be given even in the absence of bad faith."  "Special*
261      *caution must be exercised to ensure that the interference is commensurate*
262      *with the information that was likely to have been contained in the*
263      *destroyed evidence." (Pfantz v Kmart Corp. 85 P.3d 564 (Colo. App. 2003).*
264
265   ➢ **NEW MEXICO:**  Source:  US Law Spoliation of Evidence Compendium:
266      **Recognizes** *tort of intentional spoliation of evidence.  (Coleman v Eddy*
267      *Potash, Inc.*, *120 N.M. 645, 649, 905 P.2d 185, 189 (1995), overruled on*
268      *other grounds.  Delgado v Phelps Dodge Chino Inc, 34 P.3d 1148 (N.M.*
269      *2001):  recognizing elements of intentional spoliation of evidence (to*
270      *contain the elements of):  1.  Existence of a potential lawsuit.  2.  Knowledge*
271      *of the potential lawsuit.  3.  The destruction, mutilation or significant*
272      *alteration of potential evidence.  4.  Intent to defeat or disrupt the potential*
273      *lawsuit.  5.  A casual relationship between the act of spoliation and the*
274      *inability to prove the lawsuit and damages forthcoming."*
275
276   ➢ **KANSAS:**  Source:  US Law Spoliation of Evidence Compendium:  *Defines*
277      *inferences arising from failure to produce evidence as an applicable jury*
278      *instruction (KPJI 102.73):  "If a party to the case has failed to offer evidence*
279      *within the power to produce, you may infer that the evidence would have*
280      *been adverse to that party if you believe each of the following elements:  1.*
281      *The evidence was under the control of the party and could have been*
282      *produced by the exercise of reasonable diligence.  2. The evidence was not*
283      *equally available to an adverse party.  3. A reasonably prudent person*
284      *under the same or similar circumstances would have offered if (he) (she)*
285      *believed it to be favorable to him.  4.  No reasonable excuse for the failure*
286      *has been shown."*
287
288   ➢ **OKLAHOMA:**  Source:  US Law Spoliation of Evidence Compendium:
289      "*Spoliation occurs when evidence relevant to prospective civil litigation is*
290      *destroyed, adversely affecting the ability of a litigant to prove his or her*
291      *claim.  (Patel v OMH Medical Center Inc., 987 P.2d at 1202.  (and)*
292      *Manpower Inc. v Brawdy, 62 P.3d 391, 392 (Okla. Ct. App. 2002)*
293

8

**Respectfully submitted on this 9th day of March 2020.**

S/Shawnee Ryan
12081 West Alameda Parkway Box 218
Lakewood, Colorado 80228
720-431-8319
shawneeryan216@gmail.com

**CERTIFICATE OF SERVICE**
I have served a complete and full copy of the foregoing via CMECF to the parties below on this 8th day of March 2019.

S/Shawnee Ryan
12081 West Alameda Parkway Box 218
Lakewood, Colorado 80228
720-431-8319
shawneeryan216@gmail.com



Clerk of Court:  cod_cmecf@cod.uscourts.gov


Andrew David Ringel:  ringela@hallevans.com
Edmund Martin Kennedy:  kennedye@hallevans.com
Amy Colony:  acolony@coag.gov