1

1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
Case No. 18-cv-00956-MSK-MEH
3    _____

4    SHAWNEE RYAN,

5        Plaintiff,

6    vs.

7    JENNIFER (I) MIX, HILLARY (I) VICTOROFF, LAURA (I)
     SOMMERSCHIELD,
8
         Defendants.
9    _____

10

11           Proceedings before MICHAEL E. HEGARTY, United

12   States Magistrate Judge, United States District Court for the

13   District of Colorado, commencing at 10:05 a.m., May 29, 2019,

14   in the United States Courthouse, Denver, Colorado.

15   _____

16           WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

18   _____

19                    APPEARANCES

20           SHAWNEE RYAN, appearing Pro Se.

21           EDMUND KENNEDY and AMY COLONY, Attorneys at Law,

22   appearing for the Defendants.

23   _____

24                  STATUS CONFERENCE

25

2

```
 1              P R O C E E D I N G S

 2              (Whereupon, the within electronically recorded

 3    proceedings are herein transcribed, pursuant to order of

 4    counsel.)

 5              THE COURT:  18-cv-956, Shawnee Ryan vs. Jennifer

 6    Mix, et al.  Molly, you can start preparing the criminal

 7    stuff if you want, if you can multitask.

 8              Okay, go ahead and make your appearances, please.

 9              MS. RYAN:  My name is Shawnee Ryan.  I'm the

10    plaintiff.

11              THE COURT:  Okay, good morning.

12              MS. RYAN:  Good morning.

13              MS. COLONY:  Your Honor, Amy Colony with the

14    Attorney General's Office.  I'm here on behalf of defendants

15    Hillary Victoroff and Laura Sommerschield.

16              MR. KENNEDY:  Edmund Kennedy for defendant Jennifer

17    Mix.

18              THE COURT:  Okay.  And did you owe me a phone call

19    on another thing?

20              MR. KENNEDY:  Tomorrow.

21              THE COURT:  Tomorrow?  Okay, I've got it on my

22    calendar.

23              Okay.  So Ms. Ryan, you've asked to amend your

24    complaint.  You don't have to stand.  You can remain seated.

25    Thank you, though.
```

1          MS. RYAN:  Thank you.

2          THE COURT:  But you need to provide to us the

3    proposed complaint when you do that.  So do you have a copy

4    of a proposed amended complaint?

5          MS. RYAN:  Not at this time.  I'm not sure which

6    format to use, if I use a prisoner complaint.  There was a

7    filing by Ms. Colony that said I needed to strike through

8    everything, file it in a certain way according to a certain

9    rule.  I don't interpret it that way.  I'm not sure if it's

10   just a regular motion filing that I do.

11         I do know --

12         THE COURT:  Do you know that we have a pro se

13   clinic downstairs?

14         MS. RYAN:  I do and I am using them, they are

15   helping me, but they were a little unsure as well.

16         THE COURT:  Well, the actual form you used is more

17   of a state system form, with all the boxes and things.

18         MS. RYAN:  Right.

19         THE COURT:  We don't use that kind of form.

20         MS. RYAN:  Not to interrupt you, Your Honor, but

21   what you're saying is the same prisoner complaint form.  We

22   had some issues with Magistrate Gallagher that first he had

23   me on one type of incarcerated complaint form, and then I was

24   released and I was a nonprisoner complaint form.  The clerks

25   were sending out what he was ordering.  So that's where my

4

1   confusion comes in.  I don't want to do this on the wrong.

2          THE COURT:  Right.  Well, tell me what your status

3   is right now.  Are you still --

4          MS. RYAN:  I've been moved to completely

5   unsupervised parole, we're moving to an early release.

6          THE COURT:  Okay.  So unsupervised means you just

7   can't violate the law and every now and then --

8          MS. RYAN:  Right.

9          THE COURT:  -- they check the records to see if you

10  have?

11         MS. RYAN:  I call the 800 number once a month.

12         THE COURT:  Okay.  And for how long?

13         MS. RYAN:  Pardon me?

14         THE COURT:  How long does that last?

15         MS. RYAN:  Right now it will be the end of December

16  before I'm done completely.

17         THE COURT:  So if you don't violate anything by the

18  end of December, you're off?

19         MS. RYAN:  Exactly.  And we are -- potentially,

20  depend on the transplant, we are moving for early release.

21         THE COURT:  Okay.  Do you have any problem with her

22  just -- do you think she has to use any particular form, now

23  that she's out of incarceration?

24         MS. COLONY:  No, Your Honor.  Just if she could do

25  an amended complaint with the typical, you know, strike

1    through of the allegations that she might be illuminating or

2    changing, and then just something to demonstrate what she's

3    adding I guess is the main point.

4            MS. RYAN:  The format that the pro se clinic had

5    me -- advised me to use, the attorney that I was talking with

6    there, was to follow exactly the same thing as the complaint

7    that I have filed now, only add in the return of CHP, which I

8    am trying to amend to and an additional complaint against

9    Defendant Victoroff.  And I'm not sure if I could highlight

10   that or if I'm supposed to strike through everything else.

11           CHP will be a large -- a large complaint, short and

12   plain, but large.

13           THE COURT:  So in Docket 51, that was your amended

14   complaint titled Prisoner Complaint Third Amended?

15           MS. RYAN:  Yes.

16           THE COURT:  Okay.  Do you remember that?

17           MS. RYAN:  I do.  I have it in front of me.

18           THE COURT:  Okay.  That was January 16, 2019.  Just

19   use the same format.  Do you still have that on some kind of

20   word processing?

21           MS. RYAN:  I do.

22           THE COURT:  So do you want her to just use track

23   changes?

24           MS. COLONY:  Sure, that would be fine.  It doesn't

25   have to be on this specific, you know, prisoner complaint

6

1   form.

2          THE COURT:  Well, I think it would be fine if it

3   is.  So why don't you use that form, okay, the same form you

4   used in January.

5          MS. RYAN:  All right.

6          THE COURT:  And just draft that.  Do you think this

7   will probably be your last one?

8          MS. RYAN:  I think that it will be.  I -- yes, I

9   do, barring anything that develops that I can't see down the

10  road through discovery.

11         THE COURT:  Okay.  So then just to clean up the

12  record, I'm going to deny 98 and 105 with leave for you to

13  file a motion to amend your complaint.  Just give a short and

14  plain reason why you need to amend in the motion itself and

15  attach what you would call plaintiff's proposed fourth

16  amended complaint using the same format that you used for 51.

17  Okay?

18         MS. RYAN:  So file a new leave, short and plain,

19  and attach to that a proposed --

20         THE COURT:  Yes, and I think that would be fine.

21         MS. RYAN:  Is there a timeframe?

22         THE COURT:  Well, we'll talk about that.  So

23  theoretically, do you guys oppose the motion to file it, the

24  fourth amended complaint?

25         MS. COLONY:  Well, Your Honor, and as I explained

7

1    in the response that I filed last week, it seems that the

2    amended complaint is only prompted by the fact that the

3    answers -- the answer to the complaint filed by Defendant

4    Victoroff apparently frustrated plaintiff because she denied

5    certain things and we also included additional information on

6    our own version of events.

7              If we keep doing that every time, it's going to be

8    a continual back and forth and that's not -- I mean, she

9    can't state her claims piecemeal.  And she also seemed to

10   indicate that she had this information, but decided to not

11   make a claim out of it, and now she wants to, and we're on

12   the fourth version and I'm -- I just -- we need to know how

13   long this is going to go on.

14             THE COURT:  Yeah, it ends here, it ends today.  So

15   you need to take everything into account that the defendants

16   have filed, consider what that means for you and for your

17   next complaint, and file a nice, clean final fourth amended

18   complaint.  I will give you leave to do that.

19             MS. RYAN:  Thank you.

20             THE COURT:  But we do have to at some point stop it

21   and then just see where the case lands, okay.  And since the

22   attorney -- the defendant has answered, that means that we're

23   not going to at least have a motion to dismiss, I suspect?

24   We're going to go into discovery; is that right?

25             MS. COLONY:  I think that's correct, Your Honor.

8

1          THE COURT:  So you're going to have discovery

2     anyway.  And sometimes discovery for either side produces new

3     facts that may warrant slight changes.  So let's wait and see

4     what discovery produces before we try to amend anything

5     further, okay.

6          All right, timing.  What do you think you need?

7     Where do you live?

8          MS. RYAN:  I live in Aurora, Your Honor.  And the

9     only issue that has come up that I am having with discovery

10    beginning and moving forward is that there was only one

11    person in the entire six years that handled the ability to

12    review all of my outside medical records and DOC's medical

13    records and behavioral health, which would be inmate records,

14    and that's Dr. Mix and CHP.

15         There was some pressure to provide full releases.

16    Once I advised them that there was all of this other data out

17    there, which -- with respect to Ms. Colony, her client did

18    not tell her.  From that point, both of the opposing counsels

19    want full access to absolutely everything.  I have no problem

20    with that, with the exception of this.

21         If I give Dr. Mix and her attorneys full and

22    complete access now, without seeing what she actually

23    reviewed when she denied autologous transplant five times,

24    that evidence is lost forever.  I would never --

25         THE COURT:  Wait, wait.  What's lost?

9

1          MS. RYAN:  The evidence on what Dr. Mix actually

2    based her decision to deny a transplant.

3          THE COURT:  Why would that be lost?  You'll be

4    entitled to take depositions.  She'll be under oath and

5    required to tell the truth under penalty of perjury, so I'm

6    not sure what you're saying what will be lost.

7          MS. RYAN:  I have no way of knowing that everything

8    that I am giving them is not being seen for the first time by

9    Dr. Mix.  And what I hear Your Honor saying is that I need to

10   trust that the Court will enforce under penalty of perjury.

11         The other thing that has arisen that both counsels

12   seem to have an issue with, right now, without Correctional

13   Health Partners involved -- they are not a defendant yet

14   until we get my amendment in -- Dr. Mix, Hillary Victoroff,

15   Laura Sommerschield are all contained to very specific

16   events.  Victoroff and Sommerschield, one event each.  And

17   neither one of them was anything more than a rotating care

18   provider.  They were not my solid care provider for six

19   years.  Dr. Mix is the only one who was.

20         And so Ms. Colony would like to have access to

21   absolutely everything.  I have -- I have difficulty with that

22   because she's really got a very contained scope to one event

23   certain days, which I already released a release for her to

24   access those medical records.  The same thing for Laura

25   Sommerschield.  And I don't know if they have already gotten

1  those, but neither one of them was my caregiver after these

2  events that I have charged them with.  Dr. Mix is an entirely

3  separate issue.

4          So I don't see that there is any need for them to

5  have full and complete access to all of my medical records,

6  inmate records, administrative use, this is six years' worth,

7  there are four banker's boxes, there are little really

8  thousands of pages of outside medical records just simply due

9  to the nature of my being sent out two to four times a week

10  for six years.

11          THE COURT:  Right, but the problem -- the problem

12  we see when somebody gets to pick and choose what documents

13  that the defendants would be entitled to is that we may not

14  have the same view of the case as they have, and so if you've

15  got three banker's boxes full, but you get to be the one that

16  picks out the documents and gives them to them, do you see

17  how that would produce mistrust on their part?

18          MS. RYAN:  I do.  My question, then, because I

19  did -- I have seriously considered that, which is why I gave

20  them something to get started with.  Just the one for Laura

21  Sommerschield, it's nearly 600 pages.  It's very extensive

22  and it's just everything that involves that complaint.

23          Is there any type of rule that contains them to

24  keep from fishing further into things that don't pertain to

25  their client?

11

1              THE COURT:  Yes, the rules of evidence.

2              MS. RYAN:  Okay.

3              THE COURT:  It requires evidence to be material to

4     their case --

5              MS. RYAN:  Exactly.

6              THE COURT:  -- in your case before they can get it,

7     so, yes.

8              MS. RYAN:  That's what I'm trying to say.

9              THE COURT:  Right.

10             MS. RYAN:  Is that I feel that the releases for all

11    of my records is to be held as relevant to what is in front

12    of Ms. Colony or Defendant Victoroff and Defendant

13    Sommerschield.

14             THE COURT:  Right, but I'm unaware of a release

15    I've ever seen that's titled All of My Records.  So any

16    release is tied to some person, like the Social Security

17    administration, like a doctor, like a hospital.  There is no

18    release that I know of that says show this to anybody and

19    they have to produce documents.  The releases would be tied

20    to a specific medical care provider or some government

21    agency.

22             So who is it -- what provider are you objecting to

23    them getting documents from?

24             MS. RYAN:  I am not objecting at all.  What I'm

25    trying to accomplish is what you just said.  Both Ms. Colony,

12

1 Mr. Ringel and Mr. Kennedy, wish to have access -- blanket

2 access to all care providers, all hospitals, all labs,

3 absolutely everything that I listed as existing when I put my

4 limited reply on file to court record.

5          THE COURT:  Okay.  So the medical issues we're

6 talking about are what for you?

7          MS. RYAN:  The one medical issue for Defendant

8 Victoroff is the dates of February 3.

9          THE COURT:  No, no, your medical condition.

10          MS. RYAN:  My medical?

11          THE COURT:  Yes.

12          MS. RYAN:  There are three primary, the

13 diagnoses -- two terminal diagnoses while incarcerated,

14 multiple myeloma and lambda light-chain deposition disease.

15 The third has arisen as I was being released, and that is an

16 MDS acute leukemia gene mutation.

17          The difference with -- the thing that makes this

18 inmate medical case a little bit different is that those are

19 very rare and uncommon things.  I was sent out from the --

20 moment of diagnosis, which happened after I had only been in

21 for three months in 2013, I was sent out to outside care

22 because DOC was incapable of caring for it, two to four times

23 a week for six years, and this is for oncology, hematology,

24 cardiologist, kidney.  There are all of these specialists out

25 there --

13

1          THE COURT:  Right.

2          MS. RYAN:  -- with these records, and in my case, I

3    could not even attend a Medline and be given my life

4    essential medication, which I take every day, unless they

5    drew blood from my body and analyzed my level.

6          THE COURT:  Okay.  Well, let me ask you a question.

7    Are you seeking emotional damages?

8          MS. RYAN:  Not from these defendants?

9          THE COURT:  Okay.

10         MS. RYAN:  But with the exception possibly of Dr.

11   Mix, once we get the amendment in here for Correctional.

12         THE COURT:  So when someone seeks damages for

13   emotional harm, then almost everything about that person

14   becomes relevant because there might have been other what we

15   refer to as stressors that were occurring in your life.  So

16   even poor relationships with family members, the death of a

17   mother, other physical conditions would all have an impact on

18   your psychological well-being.

19         And when someone seeks emotional harm from another

20   person, that person gets to explore all the potential causes

21   of emotional damage to the plaintiff's life and, say, Listen

22   jury, she is claiming that we caused all this emotional harm,

23   but look at the dozen other things she had going on in her

24   life.

25         So that's why I ask if you have a claim for

14

1  emotional damages, because that would expand the scope of

2  discovery.  If you don't, then discovery would be limited to

3  those conditions reasonably associated with the claims in

4  this case.

5          MS. RYAN:  As I'm looking at the prisoner complaint

6  third amended, that's -- it's not there.

7          THE COURT:  Okay, so if you're willing to waive

8  that -- if you're willing to waive that, then discovery is

9  going to be far more limited.

10          MS. RYAN:  I am willing to waive that in the

11  cases -- the defendants that we have on file right now.

12          THE COURT:  Well, that's the only case -- that's

13  the only defendants we have.

14          MS. RYAN:  We do until --

15          THE COURT:  All right.

16          MS. RYAN:  Until -- if and when we get broader with

17  the amendment.

18          THE COURT:  So from the defense, the scope of your

19  releases, in your representation to this Court, do they

20  include only those conditions that are at issue in this case?

21          MR. KENNEDY:  I believe that it's going to be a

22  mix.  It's not going to be a lot more, but we want

23  information of those doctors that treated (inaudible) in this

24  case, (inaudible) we want to know what else has been done.

25          THE COURT:  Why?

1          MR. KENNEDY:  Because it goes to damages about

2    whether or not --

3          THE COURT:  No, but what if they're gynecological

4    records.

5          MR. KENNEDY:  No, okay, no.

6          THE COURT:  What if they consider her feet or, you

7    know, skin condition or something that is completely

8    unconnected with her claims?  Those are irrelevant, right.

9          MS. COLONY:  Well, releases don't -- we ask for the

10   documents (inaudible), because we don't know what is and

11   isn't --

12         THE COURT:  Well, was Dr. Mix an internal medicine,

13   general practitioner?

14         MS. RYAN:  No.  Dr. Mix is the chief medical

15   officer, and as the answers stated, she was the -- when I

16   reviewed my records through DOC and through all the

17   specialists that I've gathered up from, she was the sole

18   individual at Correctional Health Partners who approved and

19   denied medical care for me throughout the entire six years.

20         THE COURT:  Okay.

21         MS. RYAN:  So I think I can help a little bit.

22         THE COURT:  Well, so one of the ways we deal with

23   this is I'm going to require the defendants to draft a

24   protective order, okay.  The protective order means that you

25   can designate all of your medical records as confidential and

16

```
1    they can only use those in a very limited capacity and then

2    they have to return all of them or destroy them potentially

3    at the end of the case, okay.

4              MS. RYAN:  That's perfect.

5              THE COURT:  All right, that's what we're going to

6    do.

7              MS. RYAN:  Thank you.

8              THE COURT:  So that will address her issues, okay.

9              Now, are there -- madam, is there any rush -- Bob,

10   are you okay?

11             BOB:  I'm all right.

12             THE COURT:  So since she's not incarcerated, I

13   think a scheduling order would be appropriate.  Is that

14   agreeable?

15             MS. COLONY:  Yes, Your Honor.  My only concern is

16   that the plaintiff has represented both in pleadings to this

17   Court and, correspondence with counsel that she has an

18   ongoing serious condition that requires hospitalization and

19   apparently embarking on another bone marrow transplant.  And

20   it seems to me her ability to participate in discovery might

21   be very limited.  So I think that needs to be addressed.

22             THE COURT:  I will, but let's do a scheduling

23   order, okay, and you guys will produce a draft for her.  When

24   someone is incarcerated, we use a very short form, but I

25   think we can use the regular form in this case since you're
```

17

1    not incarcerated.

2           MS. RYAN:  I do have that, Your Honor.  The

3    attorneys at pro se have been helping me with that.

4           THE COURT:  Okay.  Are you -- are you under

5    restrictions right now?

6           MS. RYAN:  Yes, I am.

7           THE COURT:  What are the restrictions?

8           MS. RYAN:  Right now the only given is that there

9    definitely will be an allogeneic marrow transplant, which is

10   the donor, which I have explained to you in my filings.  One

11   of them are restricted one, because I went into detail, and

12   the way that that is governed is by the growth of the MDS

13   gene mutation for the leukemia, and that is monitored by my

14   blood labs.

15          THE COURT:  So the timing is uncertain?

16          MS. RYAN:  The timing is uncertain right now.  It

17   looks like there will be another biopsy at the end of June,

18   and from what we can tell from my lab levels, it looks like

19   it will be early fall.

20          THE COURT:  Okay.

21          MS. RYAN:  And from that point forward, Ms. Colony

22   is absolutely correct, I will be incapacitated for a minimum

23   of five to six months.

24          THE COURT:  Okay.  So do you feel capable

25   emotionally, intellectually of engaging in the discovery

1   process right now?

2          MS. RYAN:  I do.

3          THE COURT:  So I think we put this on a fast track.

4   I think we do four months.  We try to get discovery wrapped

5   up in four months, so it's not a case you can sit on.  So I

6   won't be sympathetic, if we reach September, she's got her

7   issue to deal with and your discovery is not finished.  So

8   put it on a fast track, okay.

9          MS. RYAN:  Your Honor, the only thing I would add

10  to that is that I obviously have no control over parole.

11  There is a possibility that the complexity of my having all

12  three, two terminal and one life risking, while going into

13  this transplant.  They are talking about potentially sending

14  me to the Fred Hutchinson Cancer Center at University of

15  Washington.

16         THE COURT:  Who is "they"?

17         MS. RYAN:  That is doctors and parole.  We're

18  waiting for the levels to find out how things look.  If it's

19  still where it looks like University can handle it, but

20  again, I can't hold the Court or the proceedings up because I

21  won't know that --

22         THE COURT:  Well --

23         MS. RYAN:  -- until later this summer.

24         THE COURT:  Well, you can hold them up.  We hold up

25  proceedings all the time based on someone's health

19

1    limitations, but it sounds like it's in your best interest to

2    do this now if you do want to have a case.

3              MS. RYAN:  The faster the better.

4              THE COURT:  So four months is smoking fast in our

5    world, okay.

6              MS. RYAN:  It is?

7              THE COURT:  Yeah.

8              MS. RYAN:  Okay.

9              THE COURT:  The case before you, they're getting a

10   year.

11             MS. RYAN:  I saw that.

12             THE COURT:  So four months is very fast.

13             MS. RYAN:  I did have a question about mediation

14   that you answered when you were speaking with the other

15   attorneys, so I've got my answer.

16             THE COURT:  Yeah.  Now that's available, but the

17   ball is usually in the government's Court on that sort of

18   thing, so -- but Mr. Kennedy and I have resolved many cases

19   and we're trying to resolve another one right now, so I've

20   worked with him many times.  And my son does work at his

21   firm, but would never work on his case.

22             MS. RYAN:  All right.

23             THE COURT:  All right.  So let's do a four-month

24   discovery period, and since she's not incarcerated, you won't

25   need my permission to take her deposition, so you might want

20

1    to do that sooner than later.  Do you expect any depositions?

2              MS. RYAN:  I do actually.  I have a number of them.

3    Every care provider on the outside has volunteered to do that

4    at no cost for me.

5              THE COURT:  Do what?

6              MS. RYAN:  To give a deposition.

7              THE COURT:  Okay.

8              MS. RYAN:  And --

9              THE COURT:  Well, you mean --

10             MS. RYAN:  I'm just not sure exactly how this is

11   all going to come down until --

12             THE COURT:  Okay, I'm not going to advise you on

13   how to do your case, but typically, if you have a

14   relationship with a witness and that witness is going to

15   testify in your behalf, you don't need typically to go

16   through the expense of a deposition because you'll be able to

17   work with that person for trial.

18             You would typically only take the depositions of

19   people who are adverse to you so that you can lock in their

20   testimony and know exactly what they're going to say, because

21   it's likely that the defense will file a motion for summary

22   judgment.  If they have witnesses, especially their clients

23   who they have relationship with, they'll submit affidavits in

24   support of that motion.

25             So your goal in the discovery process will be to

1   find out information you can't otherwise get access to, but

2   if you have people who are friendly to you, you can have

3   access to them anytime and you can draft up affidavits for

4   them and they can sign those affidavits.  So you -- people on

5   your side wouldn't normally spend the money for a deposition

6   on a person who they're friendly with already.  Does that

7   make sense?

8          MS. RYAN:  It does.  How does that relate to the

9   fact that what's going to be at the most contentious here

10  that I can see would be an argument on the need for care.

11  And so these are very highly specialized oncologists and

12  hematologists, which is why -- what I hear you saying, is if

13  I brought them, they will be coming on my behalf.  And at

14  that time they can give their professional technical

15  viewpoints when I question them.

16         THE COURT:  Yes, but if -- if they're not treaters,

17  if someone is not a treating doctor and you want them to come

18  into court and offer testimony in the form of an opinion,

19  then you have to have that person write a report, then you

20  have to disclose that person as an expert so they know who is

21  coming in.

22         Now, if it's a treating doctor who is just going to

23  come in and testify about their treatment, and even if they

24  made a diagnosis or prognosis, if all they're doing is

25  testifying about something that was historical evidence,

1   then -- then they're not what we call, you know, a 702

2   expert, okay.

3           MS. RYAN:  Yes, I understand that.

4           THE COURT:  Okay.

5           MS. RYAN:  And there will be on my side none of

6   those because my medical records speak for themselves.

7           THE COURT:  Okay.  So you're not going to have a

8   specially retained expert; you're only going to have

9   treaters?

10          MS. RYAN:  No.

11          THE COURT:  Is that true, you're only going to have

12  treaters?

13          MS. RYAN:  Only treaters.

14          THE COURT:  Do you guys expect to have any experts

15  that aren't treaters or your clients?

16          MR. KENNEDY:  (Inaudible).  I mean, we obviously

17  (inaudible) treating will testify.

18          THE COURT:  Okay.  Well, and you guys know Judge

19  Krieger's requirements better that I know do.  I haven't

20  practiced in front of her for 13 years.  So whatever she

21  requires as far as a treating physician who will be

22  testifying in an expert sort of capacity, I don't know what

23  she requires.  So -- but build in -- go ahead and build in

24  some expert disclosure dates then, okay.

25          All right.  And Judge Krieger does her own final

23

1   pretrial conferences, so you get to say that that will be set

2   at a later date by Judge Krieger.

3          Regarding your request for counsel, are you going

4   to -- do you intend to renew that?

5          MS. RYAN:  I do, Your Honor.  I just feel that

6   it -- with my health and as complex as this could get --

7          THE COURT:  I agree.  I'm going to grant a motion

8   for pro bono counsel and direct Deputy Clerk of the Court, Ed

9   Butler, to look for an attorney for her, okay.

10         MS. RYAN:  Thank you, Your Honor.

11         THE COURT:  All right.  Okay, so we don't need to

12   have another scheduling conference.  If you guys can just

13   work with her over the next week, send her a draft, ask any

14   questions, but they will be in charge of a draft scheduling

15   order, and as far as I'm concerned, discovery can commence

16   now, all right.  And just put the typical limits in of 25 and

17   five depos is fine.  I mean, if you guys can live with five.

18         MS. RYAN:  Your Honor?

19         THE COURT:  Yes.

20         MS. RYAN:  Am I still held then to prisoner status

21   for issuing subpoenas, like duces tecums that I have in front

22   of you.

23         THE COURT:  Well, were you granted it in forma

24   pauperis status?

25         MS. RYAN:  I am.  And I filed my duces tecums

1   February 5 and that is my only access to the ability to get

2   discovery.

3          THE COURT:  I think -- I think the clerk's office

4   assists in the issuance of subpoenas.  So use the pro se

5   clinic for that.

6          MS. RYAN:  Okay, all right.

7          THE COURT:  Who do you expect to subpoena?  Because

8   you don't have to subpoena the witness -- the defendants.

9   You can just work with them and say, When can I take their

10  deposition.

11         MS. RYAN:  It's for documents.  I have the, of

12  course, DOC for certain documents, Correctional Health for

13  certain documents and defendants Victoroff and Sommerschield,

14  a very simple document that I've asked for.

15         THE COURT:  Well, those aren't subpoenas, though.

16  Those are just requests for production of documents.  So

17  you're going to have to subpoena parties.  And you may even

18  be able to work with defense counsel to arrange for the

19  discovery of other documents, okay, so just try to do that

20  informally before you go issuing subpoenas, all right.

21         MS. RYAN:  Okay.  So Dr. Mix, the things that I've

22  asked for, which Mr. Kennedy and Mr. Ringel have seen,

23  because they're -- they're filed, I can try to just obtain

24  those things through them.

25         THE COURT:  You can.

1          MS. RYAN:  And I can also try to do the same thing

2     for DOC with Ms. Colony, even though she doesn't represent

3     DOC.

4          THE COURT:  Well, I mean, DOC is not a party here,

5     but it's not unheard of that she might not be able to grease

6     the wheel.

7          MS. COLONY:  Your Honor, if I may, I think I can

8     illuminate the subpoena question as far as DOC is concerned.

9     My plan was to do initial disclosures.  I've got two banker's

10    boxes of Ms. Ryan's medical records from DOC.  And it's the

11    defendant's position that she has waived privilege as to

12    those and I was just going to disclose those in my Rule 26(a)

13    disclosures and we can provide them to her a disk, and I

14    think we can take care of --

15         THE COURT:  Okay.

16         MS. COLONY:  -- of what she's looking for.

17         THE COURT:  Would you rather have your documents

18    electronically?  Is that okay?

19         MS. RYAN:  That's fine.

20         THE COURT:  All right.

21         MS. RYAN:  I do have a specific list of the things

22    I need to see.  I'm not sure that she has all of those, so if

23    I provide that to her, then maybe we can work that out.

24         THE COURT:  I think that would be fine.  That would

25    be fine.

26

1          MS. RYAN:  All right.

2          THE COURT:  And I want to keep it informal as far

3    as a discovery request.  If you feel that they're being

4    exceeded, let me know, okay.  You can be as formal as you

5    feel like you need to be, all right.  All right, anything

6    further from you?

7          MS. RYAN:  No.  I did have a question.  I received

8    a notice yesterday telling me that Ms. Colony, Mr. Kennedy

9    and Mr. Ringel were terminated, but obviously they are not

10   because they're here.  This was Document Number 106.  There

11   was no document attached.  It was a memorandum of text only,

12   and it lists all of them as terminated counsel.  So I just

13   wanted to make sure that obviously since they participated

14   today --

15         THE COURT:  Mr. Kennedy, do you want to address

16   that for her application?

17         MR. KENNEDY:  You say Docket 106?

18         THE COURT:  Yeah, 106 is an entry by us.

19         MS. RYAN:  Yes, and you wrote that they were all

20   terminated, everybody but me, so I can let them see that if

21   they like.

22         UNIDENTIFIED SPEAKER:  (Inaudible).

23         THE COURT:  106?

24         UNIDENTIFIED SPEAKER:  Yes.

25         THE COURT:  All it says is motions are referred to

1   me by Judge Krieger.  Will you just tell me what you're

2   referring to?

3          MS. RYAN:  Yes.

4          THE COURT:  Okay.  Well, it's -- no, I think Mr. --

5   I think Mr. -- it shows terminated as to any party other than

6   Dr. Mix or Ms. Mix.  That's your only client, isn't it,

7   Mr. Kennedy?

8          MR. KENNEDY:  Yes, Your Honor.

9          THE COURT:  So this was just making clear that he's

10  only representing Jennifer Mix, both he and Mr. Ringel, and I

11  think probably the Court had them as representing -- it's a

12  technical thing, don't worry about it.

13         MS. RYAN:  Just as long as it's not something I

14  have to do.

15         THE COURT:  You don't have to do anything, okay.

16  And then you'll need to keep us advised, Ms. Ryan, about any

17  change in your health that would affect your ability.

18         MS. RYAN:  How do you wish me to do that?

19         THE COURT:  So you call them.  Then you

20  collectively can -- they can send an e-mail or you can send

21  an e-mail copying everybody.  It can informal.

22         MS. RYAN:  Informally?

23         THE COURT:  But if there is any changes, you need

24  to let us know, okay.

25         MS. RYAN:  I would appreciate if the Court would

1  continue to leave open the ability for me to appear by phone

2  if I need to in something that is not -- that's just --

3          THE COURT:  I don't think we'll have to be together

4  again for a while, so that's not going to be necessary, but

5  we do allow people to appear by phone.

6          MS. RYAN:  All right, thank you.

7          THE COURT:  All right.  Anything further from the

8  defense?

9          MR. KENNEDY:  No, Your Honor.

10         THE COURT:  Okay.

11         MS. COLONY:  No, Your Honor.

12         THE COURT:  So we didn't talk about amendment.  How

13 soon can you file an amended complaint?

14         MS. RYAN:  Based on that we are now on record that

15 Correctional Health and Dr. Mix will be under oath to what

16 they give me, I have no problem at all in issuing this

17 amendment quickly.  I can do it this week.  Is there a

18 certain -- like by Monday?

19         THE COURT:  Monday is fine.

20         MS. RYAN:  Monday would be fine.  And then from

21 there I assume that I will have the containment descriptions,

22 whatever they are technically called, from both opposing

23 counsels.  And if my amendment is granted from that point

24 forward, I have absolutely no problem at all in giving Hall &

25 Evans, Mr. Ringel and Mr. Kennedy, who I understand will be

1   representing Correctional Health, if they are admitting full

2   disclosure.

3           THE COURT:  So I'm granting you leave to amend

4   already.  I want you to file a proposed fourth amended

5   complaint that has all the track changes on it so they can

6   see exactly what you've done.  If you believe that what she

7   is doing exceeds the scope of what we all expect, then you

8   can object, okay.  Does that make sense?  All right.

9           MS. RYAN:  Okay.

10          THE COURT:  Okay.  Anything further?

11          MS. RYAN:  No.

12          THE COURT:  Okay, thank you.  Anything further?

13          MS. COLONY:  No.

14          THE COURT:   All right, thank you guys.  We'll be

15  in recess.

16          (Whereupon, the within hearing was then in

17  conclusion at 10:43 a.m.)

18

19

20

21

22

23

24

25

30

```
1                    TRANSCRIBER'S CERTIFICATION

2    I certify that the foregoing is a correct transcript to the

3    best of my ability to hear and understand the audio recording

4    and based on the quality of the audio recording from the

5    above-entitled matter.

6

7    /s/ Dyann Labo                   June 14, 2019

8    Signature of Transcriber              Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```